David F. Sorensen (Pro Hac Vice)
Neill W. Clark (Pro Hac Vice)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile:  (215) 875-4604
dsorensen@bm.net
nclark@bm.net
**Attorneys for Plaintiffs**
*Additional Counsel on Signature Page*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cindy Johnson, Barbara A. Craig, and Stephanie L. Walker, on behalf of themselves and all others similarly situated, : : : : | No. CV07-1292-PHX-SRB |
| Plaintiffs, : : | **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF THE SETTLEMENT CLASSES,** |
| vs. : : | **APPROVAL OF THE FORM OF NOTICE AND MEMORANDUM IN SUPPORT** |
| Arizona Hospital and Healthcare Association et al., : : : | |
| Defendants. : | |

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................2

II.    BACKGROUND ............................................................................4

III.   ARGUMENT ................................................................................8

    A.   The Standards for Preliminary Approval. .................................8

    B.   The Proposed Settlement Merits Preliminary Approval. ...........10

        1.   The Settlement Resulted From Arm's Length and Informed Negotiations. ..............................................10

        2.   The Settlement Has No Obvious Deficiencies And Falls Within The Range For Approval. ..............................13

        3.   The Settlement Does Not Improperly Grant Preferential Treatment To Class Representatives Or Segments Of The Class. ..................................................17

        4.   The Proceedings Are Sufficiently Advanced To Permit Preliminary Approval Of The Settlement. ...................19

    C.   Modification of the Per Diem Class Definition, and Certification of a Traveler Settlement Class are Appropriate. .................20

        1.   The Per Diem Class Definition Should be Modified for Settlement Purposes. ...........................................20

        2.   It is Appropriate to Certify a Traveler Settlement Class. ..............22

            a.   The Requirements Of Rule 23(a) Are Met. .......23

            b.   The Traveler Settlement Class May be Certified Under Rule 23(b)(3). ...................................27

    D.   The Plan of Allocation Should Be Preliminarily Approved. .....................30

    E.   The Court Should Approve The Notice Plan, The Proposed Form And Manner of Notice And The Proposed Schedule Leading Up To The Fairness Hearing. ......................................32

        1.   The Notice Plan ...................................................33

        2.   Proposed Schedule ..............................................40

IV.   CONCLUSION ............................................................................42

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alberto v. GMRI, Inc.,*
No. CIV. 07-1895, 2008 WL 4891201 (E.D. Cal. Nov. 12, 1998)............................. 31

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)................................................................................. 22, 29

*Arnold v. Ariz. Dep't of Corr.,*
No.CV-01-1463-PHX-LOA, 2006 WL 2168637 (D.Ariz. July 31, 2006)................. 36

*Bellows v. NCO Fin. Sys., Inc.,*
No. 3:07-cv-01413, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008)...................... 16, 36

*Browning v. Yahoo Inc.,*
No. C04-01463, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ................................ 36

*Browning v. Yahoo Inc.,*
No. C04-01463, 2006 WL 3826714 (N.D. Cal. Dec. 27, 2006)................................. 37

*Carnegie v. Household Int'l, Inc.,*
376 F.3d 656 (7th. Cir. 2004) ................................................................. 30

*Carson v. Am. Brands, Inc.,*
450 U.S. 79 (1981)................................................................................ 13

*Cervantex v. Celestica Corp.,*
No. EDCV 07-729-VAP, 2010 WL 2712267 (C.D. Cal. July 6, 2010) .................... 39

*Churchill Village LLC v. General Electric,*
361 F.3d 566 (9th Cir. 2004) ................................................................. 32

*City P'ship Co. v. Atlantic Acquisition Ltd. P'ship,*
100 F.3d 1041 (1st Cir. 1996)............................................................... 8,10

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) ............................................................... 8

*Colesberry v. Ruiz Food Prod., Inc.*,
    No. CV F 04-5516, 2006 WL 1875444 (E.D. Cal. June 30, 2006) ............................. 36

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
    258 F.R.D. 545 (N.D. Ga. 2007)...................................................................... 22, 28

*Craft v. County of San Bernardino*,
    624 F.Supp.2d 1113 (C.D. Cal. 2008) .................................................................. 17

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*
    No. C 06-3903, 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) .................................. 17

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ............................................................................... 15

*Dukes v. Wal-Mart*,
    603 F. 3d 571 (9th Cir. 2010) ....................................................................... 24, 25

*Gacy v. Gammage & Burnham*,
    No. 04CV1934, 2005 WL 3455105 (D. Ariz. Dec. 15, 2005).................................... 38

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)  .................................................................... 8,10, 25

*Hernandez v. Kovacevich*,
    No. 1:04CV5515, 2005 WL 2435906 (E.D. Cal. Sept. 30, 2005)............................... 37

*Hopson v. Hanesbrands Inc.*,
    No. CV-08-0844, 2009 WL 928133 (N.D. Cal. April 3, 2009)................................... 32

*In re Apple Computer Derivative Litig.*,
    No. C 06-4128, 2008 WL 4820784 (N.D. Cal. Nov. 5, 2009) ................................... 15

*In re Carbon Black Antitrust Litig.*
    No. 03-10191, 2005 WL 102966 (D. Mass. Jan. 18, 2005)....................................... 30

*In re Diet Drugs Products Liability Litig.*,
    Nos. 1203, 99-20593, 2000 WL 1222042 (E.D. Pa. Aug. 28, 2000) .......................... 28

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
    256 F.R.D. 82 (D. Conn. 2009) .......................................................................... 29

*In re Excess Value Ins. Coverage Litig.*,
   MDL No. 1339, 2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. July 30, 2004) ................ 11

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
   MDL No. 901, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) ................. 10

*In re Healthsouth Corp. Secs. Litig*,
   334 Fed.Appx. 248, No. 07-11908, 2009 WL 1684422 (11th Cir. June 17,
   2009) ................................................................................................................... 39

*In re Inter-Op Hip Prothesis Liability Litig.*,
   204 F.R.D. 330 (N.D. Ohio 2001) ......................................................................... 28

*In re LDK Solar Sec. Litig.*,
   No. C 07-05182, 2010 WL 598361 (N.D. Cal. Feb. 17, 2010) ................................. 15

*In re Medical X-Ray Film Antitrust Litig.*,
   Master File No. CV 93-5904, 1997 U.S. Dist. LEXIS 21936
   (E.D.N.Y. Dec. 10, 1997) ....................................................................................... 10

*In re Mercury Interactive Corp. Securities Litig.*,
   __F.3d __, No 08-17372, 2010 WL 3239460 (9th Cir. Aug. 18, 2010) .................... 39

*In re MotorSports Merchandise Antitrust Litig.*,
   112 F. Supp. 2d 1329 (N.D. Ga. 2000) .......................................................... 28, 30

*In re Pharmaceutical Industry Average Wholesale Price Litig.*,
   588 F.3d 24 (1st Cir. 2009) .................................................................................... 22

*In re Portal Software, Inc. Sec. Litig.*,
   No. 03-5138, 2007 U.S. Dist. LEXIS 51794 (N.D. Cal. June 30, 2007).......... 9, 18, 37

*In re Prudential Ins. Co. of America Sales Practices Litig.*,
   177 F.R.D. 216 (D.N.J. 1997).................................................................................. 38

*In re Tableware Antitrust Litig.*,
   484 F.Supp.2d 1078 (N.D. Cal. 2007) .................................................................. 9,10

*In re Tableware Antitrust Litig.*,
   No. C-04-3514 VRW, 2007 WL 4219394 (N.D. Cal. Nov. 28, 2007)....................... 15

*In re Toys "R" Us Antitrust Litig.*,
191 F.R.D. 347 (E.D.N.Y. 2000) ................................................................ 11

*In re Wells Fargo Securities Litig.*,
991 F.Supp. 1193 (N.D. Cal. 1998) ........................................................... 32

*In re Wireless Facilities, Inc. Securities Litigation II*,
253 F.R.D. 607 (S.D. Cal. 2008) ......................................................... 29, 37

*Jaffe v. Morgan Stanley*,
No. C 06-3903 TEH, 2008 WL 346417 (N.D. Cal. Feb. 9, 2008) ............... 33

*Linney v. Cellular Alaska P'ship.*,
Nos. C-96-3008, C-97-0203, C-97-0425, C-97-0457,
1997 WL 450064 (N.D. Cal. July 18, 1997)............................................. 17

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950)................................................................................ 32

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ............................................................... 9

*O'Connor v. Boeing*,
184 F.R.D. 311 (C.D. Cal. 1998) ............................................................. 25

*O'Keefe v. Mercedes-Benz USA, LLC*,
214 F.R.D. 266 (E.D. Pa. 2003)......................................................... 28, 30

*Rankin v. Rots*,
No. 02-71045, 2006 U.S. Dist. LEXIS 45706 (E.D. Mich. June 28, 2006) ............... 13

*Sandoval v. Tharaldson Employee Mgmt.*,
No. EDCV 08-00482-VAP, 2009 WL 3877203 (C.D. Cal. No. 17, 2009) ................ 39

*UAW v. GMC*,
497 F.3d 615 (6th Cir. 2007) .................................................................. 13

*Waller v. Financial Corp. of America*,
828 F.2d 579 (9th Cir. 1987) .................................................................... 3

*Wright v. Linkus Enter., Inc.*,
259 F.R.D. 468 (E.D. Cal. 2009) ............................................................. 37

**FEDERAL STATUTES AND RULES**

15 U.S.C. § 1 ..................................................................................... 4, 16

Fed. R. Civ. P.
  Rule 23 ..................................................................................... passim
  Rule 23(a)(1) ................................................................................. 24
  Rule 23(c)(1)(C) ............................................................................ 21
  Rule 23(c)(4) ................................................................................... 7
  Rule 23(e) ................................................................................. passim
  Rule 23(f) ........................................................................................ 7

**STATE STATUTES AND RULES**

Ariz. R. Civ. P 26(b)(5) ......................................................................... 4

Ariz. Rev. Stat.
  § 12-2506(b) ..................................................................................... 4
  § 44-102 ........................................................................................... 4
  § 44-1401 ....................................................................................... 16

**OTHER AUTHORITIES**

3 ALBA CONTE & HERBERT NEWBERG,
  NEWBERG ON CLASS ACTIONS § 10.15 (4th 2002) ...................................... 31

MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004)
  §13.14 ............................................................................................... 9
  §40.42 ............................................................................................... 9
  §21.311 ........................................................................................... 34

Plaintiffs hereby respectfully move, pursuant to Fed. R. Civ. P. 23, for:

(1) preliminary approval of the proposed settlement with nearly all Defendants, including the proposed claim form and plan of allocation;

(2) approval of the proposed form and manner of class notice;

(3) modification of the class definition of the class of temporary Per Diem nursing personnel previously certified by the Court (*see* Doc. No. 584);

(4) certification, for settlement purposes, of a settlement class of temporary Traveler nursing personnel ("Traveler Settlement Class"), and appointment of plaintiffs Barbara A. Craig and Stephanie L. Walker as class representatives, and David F. Sorensen of Berger & Montague, P.C. and David Balto of the Law Offices of David Balto as co-lead class counsel; and Mark Samson and the law firm of Keller Rohrback, LLP and Allen Grunes and the law firm of Brownstein Hyatt Schreck, LLP as additional class counsel for the Traveler Settlement Class;

(5) appointment of RG/2 Claims Administration L.L.C. ("RG/2") as Claims Administrator for the settlement; and

(6) establishment of deadlines for members of the classes to exclude themselves from the proposed classes; for filing of a motion for attorney's fees and reimbursement of costs and expenses and service awards for the representative plaintiffs; for filing objections to the proposed settlement; for filing of papers in support of final approval of the proposed settlement; for a hearing on final approval of

the proposed settlement; and for filing of claim forms.  A proposed form of order has been lodged with the Court.

Plaintiffs' Motion is based on this memorandum, the accompanying exhibits, and all other pleadings and matters of record.

## I.    <u>INTRODUCTION</u>

Plaintiffs have reached a proposed settlement in this litigation with all Defendants, except for one hospital system.[1]  As discussed below, the proposed settlement provides substantial monetary and non-monetary relief for temporary nursing personnel who have provided temporary "Per Diem" or temporary "Traveler" nursing services for hospitals in Arizona that have participated in the nurse registry program ("Registry Program") operated by defendants Arizona Hospital and Healthcare Association and its subsidiary, the AzHHA Service Corp. (collectively, "AzHHA").

At this stage, Plaintiffs respectfully ask that the Court:

(1) preliminarily approve the proposed settlement, including the proposed claim form and plan of allocation;

(2) approve the proposed form and manner of class notice;

---

[1]  The only non-settling defendant hospital system is Abrazo, which operates the hospitals identified in paragraphs 37-42 of the Consolidated Third Amended Complaint, filed Nov. 10, 2008 (Doc. No. 317) ("Complaint").  This litigation will continue against the entities identified in paragraphs 37-42 of the Complaint.

2

(3) modify the class definition of the class of temporary Per Diem nursing personnel previously certified by the Court (*see* Doc. No. 584);

(4) certify, for settlement purposes, a settlement class of temporary Traveler nursing personnel ("Traveler Settlement Class"), and appoint plaintiffs Barbara A. Craig and Stephanie L. Walker as class representatives, and David F. Sorensen of Berger & Montague, P.C. and David Balto of the Law Offices of David Balto as co-lead class counsel;

(5) appoint RG/2 Claims Administration L.L.C. ("RG/2") as Claims Administrator for the settlement; and

(6) establish deadlines for members of the classes to exclude themselves from the proposed classes; for the filing of a motion for attorney's fees and reimbursement of costs and expenses and service awards for the representative plaintiffs;  for filing objections to the proposed settlement; for filing of papers in support of final approval of the proposed settlement; for a hearing on final approval of the proposed settlement; and for the filing of claim forms.

All of Plaintiffs' requests are *unopposed* by all Defendants who have settled ( "All Settling Defendants"), while the lone non-settling Defendant lacks standing to object.[2]

Accordingly, Plaintiffs respectfully request that their Motion be granted.

---

[2] *See, e.g., Waller v. Financial Corp. of America*, 828 F.2d 579, 582-83 (9th Cir. 1987) ("[A] non-settling defendant, in general, lacks standing to object to a partial settlement").

## II.   <u>BACKGROUND</u>

This case was filed in July 2007 against AzHHA and a number of Arizona hospitals, and alleged that the hospitals and AzHHA had unlawfully fixed and suppressed the wages paid to temporary nursing personnel, since at least 1997, by agreeing amongst themselves to fix and suppress the "bill rates" paid to temporary nurse staffing agencies.   Plaintiffs alleged that the wrongful suppression of bill rates necessarily suppressed compensation to temporary nursing personnel, because bill rates are correlated to wage rates.

The named plaintiffs are three registered nurses: Cindy Johnson, Barbara A. Craig, and Stephanie L. Walker ("Plaintiffs" or "Class Representatives").   Plaintiffs brought claims both under federal and state antitrust law, and asserted additional state law causes of action.   *See* Complaint.   Three defendants moved to dismiss.   After extensive briefing and oral argument, the Court denied the motion as to Plaintiffs' claims under the Sherman Act, 15 U.S.C. § 1 (Count I); the Arizona Uniform State Antitrust Act, A.R.S. § 44-102 (Count II); and for unjust enrichment under Arizona state law (Count V); while dismissing other state law claims (Counts III and IV).   *See* Order dated March 19, 2009 (Doc. No. 449).

Various of the originally-named defendants, in February 2008, filed "Notices of Non-Parties at Fault" pursuant to A.R.S. § 12-2506(b), and Arizona Rule of Civil Procedure 26(b)(5), naming additional parties as allegedly "at fault" by virtue of these additional parties' participation in the Registry Program.   *See* Complaint ¶ 35; Doc.

4

1    Nos. 151-160.   Thereafter, Plaintiffs named these additional parties as defendants.

2    *See* Complaint ¶¶ 36-64.

3        Plaintiffs have engaged in vigorous discovery, including: (1) obtaining and

4

5    reviewing many thousands of documents from Defendants; (2) obtaining and

6    analyzing electronic data from Defendants; (3) obtaining data and documents from a

7

8    number of third parties pursuant to subpoena; (4) obtaining and reviewing the

9    discovery record from *PC Healthcare Enterprises, Inc. dba Health Temp v. Arizona*

10

11   *Hospital and Healthcare Association, et al.,* No. CV-05-1793-PHX-MHM (D. Ariz.)

12   ("*Health Temp*" case); and (5) conducting 13 depositions of fact witnesses (both

13

14   current and former employees of Defendants), in Phoenix, Tucson, Rhode Island, and

15   California.

16       The parties began settlement discussions last year, and completed two rounds

17

18   of mediation conducted by an outside mediator, the Honorable Edward Infante (Ret.),

19   of JAMS, a leading alternative dispute resolution firm over four full days last

20

21   summer, in June and August, 2009.   Subsequently, the parties engaged in months of

22   discussions, working out numerous issues and complexities associated with settling a

23

24   case with so many defendants, while also taking into account Abrazo's decision not to

25   settle, which, in turn, implicated a judgment sharing agreement among all

26

27   Defendants.[3]   The Settling Defendants also compiled thousands of names of potential

28

---

[3]There are 45 separately named defendants in the Complaint, though a number are associated with a particular parent company.

class members so that the best notice practicable, as required by Rule 23, could be provided.

There are technically two proposed settlements: one relating to nearly all the hospital defendants (the "Settlement Agreement," Ex. A hereto); and one relating just to the AzHHA defendants (the "AzHHA Settlement Agreement," Ex. C hereto).[4] For all practical purposes, there is one overall settlement, that, combined, provides for: (1) payment of $22,476,818.18 in cash that, per the agreements, will include any award of attorney's fees, costs and expenses made by the Court, any incentive awards to the representative plaintiffs, and the costs of notice and claims processing or other costs of the settlement as may be approved by the Court; and (2) important prospective relief to prevent any repetition of prior conduct by AzHHA or the hospitals that gave rise to this litigation. Significantly, the prior proceeding brought by the United States Department of Justice ("DOJ") and the State of Arizona, *United States of America and the State of Arizona v. Arizona Hospital and Healthcare Association and AzHHA Service Corporation*, No. 07-1030 (D. Arizona) ("DOJ Action"), did not provide any monetary relief whatsoever for any temporary nurses. Nor were the hospitals themselves named in the Final Judgment entered in the DOJ Action.[5] The significant monetary relief, and the important prospective relief (particularly as to the hospitals,

---

[4] The escrow agreements associated with each settlement are attached as Exs. B and D, respectively.

[5] A copy of the DOJ Final Judgment was previously submitted as Ex. 3 to Plaintiffs' Class Certification Exhibits (Doc. No. 428).

but also encompassing AzHHA, as explained below), was the product of this litigation and settlement.   All Settling Defendants also agree to provide certain limited cooperation in the continued litigation.

In connection with the proposed settlement, Plaintiffs are asking the Court to modify the Per Diem class definition the Court previously certified, and to certify a Traveler Settlement Class.

Plaintiffs initially moved for class certification on January 26, 2009 (Doc. No. 428).   The parties' briefing was lengthy and extensive, and included submission of hundreds of pages of exhibits (including detailed economic reports from both sides' experts).   On July 14, 2009, the Court certified a litigation class of Per Diem personnel but declined to certify a class of Traveler personnel.   *See* Doc. No. 584 ("Class Certification Order").[6]   As we discuss further below, the Court can and should certify a settlement class of traveler personnel, given that: (1) there will be no trial as to All Settling Defendants, and so individual issues that might otherwise arise at such a trial fall away; and (2) the proposed Traveler Settlement Class is, in several significant respects, *narrower* than the prior proposed litigation class.[7]

---

[6] Plaintiffs subsequently filed a petition under Fed. R. Civ. P. 23(f) with the Ninth Circuit Court of Appeals for review of this decision, and Defendants filed a contingent cross-petition.   Those proceedings have been stayed by agreement of the parties (with the concurrence of the Court of Appeals acting through a Court mediator), pending settlement.   Plaintiffs also filed, in this Court, an Alternative Motion for Class Certification Under Fed. R. Civ. P. 23(c)(4) (Doc. Nos. 593, 594).   That Motion remains pending as well, but briefing has been stayed (again, pending settlement talks).

[7] As explained in Paragraph 33 of each agreement, All Settling Defendants "are not waiving in any way any objections they may have or may have asserted to certification of any class, whether of traveler or per diem

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   ARGUMENT

### A.   The Standards for Preliminary Approval.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class basis.  *See* Fed. R. Civ. P. 23(e). The basic legal guidelines are straightforward.  Approval of a proposed settlement is a matter particularly committed to the district court's authority.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998) ("Fed. R. Civ. P. 23(d) vests a district court with the authority and discretion to protect the interests and rights of class members and to ensure its control over the integrity of the settlement approval process."); *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1044 (1st Cir. 1996) ("Great deference is given to the trial court [regarding its decision to approve a class action settlement].").  Moreover, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). A court's decision to approve a class action settlement may be reversed "'only upon a strong showing that the district court's decision was a clear abuse of discretion.'"  *Seattle,* 955 F.2d at 1276 (citation omitted).

Rule 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then,

---

personnel, in the event that [the] Settlement Agreement does not become final, and the Litigation proceeds, in which event the parties will be restored to their respective positions in the Litigation as if no settlement agreement had been reached."  Ex. A ¶ 33.  *See also* Ex. C ¶ 33.

after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). First, "the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing.  If so, the final decision on approval is made after the hearing." *Manual for Complex Litigation, Fourth,* §13.14 (2004). Preliminary approval permits notice to be given to class members of a final settlement approval hearing, at which class members and the settling parties may be heard.

At the preliminary approval stage, the court examines the materials submitted in support of the settlement and decides whether the settlement appears fair on its face, i.e., is "within the range of reasonableness," and ensures that it does not have any obvious deficiencies. *Manual for Complex Litigation, Fourth,* §40.42. "The preliminary determination establishes an initial presumption of fairness." *In re Portal Software, Inc. Sec. Litig.*, No. 03-5138,  2007 U.S. Dist. LEXIS 51794, *14 (N.D. Cal. June 30, 2007) (internal quotations and citation omitted).

Preliminary approval of a settlement and notice to the proposed class is appropriate:

> [i]f the proposed settlement appears to be the product of serious, informed, non collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.

*In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (internal quotation and citation omitted).

9

Preliminary approval does not require the district court to answer the ultimate question whether a proposed settlement is fair, reasonable and adequate.   That analysis occurs later, at the final approval stage, after notice of the settlement has been given to the class members, and they have had an opportunity to voice their views of the settlement.

### B.      The Proposed Settlement Merits Preliminary Approval.

#### 1.      The Settlement Resulted From Arm's Length and Informed Negotiations.

The Court should look to whether the proposed settlement appears to be the product of "serious, informed and non-collusive negotiations." *In re Medical X-Ray Film Antitrust Litig.,* 1997 U.S. Dist. LEXIS 21936, at *10 (E.D.N.Y. Dec. 10, 1997). In applying this factor, courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement.  *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1080. *See also Hanlon*, 150 F.3d at 1038.

When a settlement is negotiated at arm's length by experienced counsel, there is a presumption that it is fair and reasonable.  *See Tableware*, 484 F.Supp.2d at 1080; *City P'ship,* 100 F.3d at 1043 ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 U.S. Dist. LEXIS 14337, at *2 (C.D. Cal. June 10, 1992) (finding that belief of counsel that the proposed settlement represented the most beneficial result

for the class to be a compelling factor in approval of settlement); *In re Excess Value Ins. Coverage Litig.*, MDL No. 1339, 2004 U.S. Dist. LEXIS 14822, at *34 (S.D.N.Y. July 30, 2004) ("Where the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.") (internal quote and citation omitted).

Courts may also consider whether the settlement was reached with the assistance of a mediator. *See In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("[m]ost significantly, the settlements were reached only after arduous settlement discussions conducted in a good faith, non-collusive manner, over a lengthy period of time, and with the assistance of a highly experienced neutral mediator").  Here, the settlement was reached with the assistance of a highly skilled mediator, the Honorable Edward Infante (Ret.) of JAMS.

The proposed settlement here was the product of extensive, arm's-length negotiation by informed counsel supervised by an experienced mediator.  Discovery in this case spanned more than two years, was extensive, and involved review of many thousands of pages of documents produced by Defendants, including documents produced and pleadings submitted in the *Health Temp.* matter, pleadings from the DOJ Action, and documents produced by third party nursing agencies in response to subpoenas.  The representative plaintiffs (Ms. Johnson, Ms. Craig and Ms.

Walker) each produced documents, and each was deposed.  Plaintiffs' counsel took 13 fact depositions and an expert deposition, and defended the depositions of the three plaintiffs.  *See* Ex. I (list of depositions).

The parties briefed and argued a motion to dismiss, and during class certification proceedings, Plaintiffs and Defendants submitted lengthy reports by expert economists, reports which -- though submitted in the context of class certification -- analyzed a number of issues, such as methods of proving antitrust damages, that relate to the merits of the case as well.[8]   Both side's experts were deposed.

Armed with this knowledge, Class Counsel participated in two rounds of mediation with counsel for All Settling Defendants, the first on June 29-30, 2009, in Phoenix; and the second on August 20-21, 2009, in San Francisco, and months of subsequent negotiations.

The parties continued negotiating for months, and have periodically updated the Court and sought to continue the stay in the case, first entered in July 2009 (see Doc. No. 589) and August 2009 (*see* Doc. No. 600).[9]

---

[8] *See* Class Certification Report of Hal J. Singer, Ph.D., dated Dec. 22, 2008 (Doc. No. 428, Ex. 1) (opening, 53-page report by Plaintiffs' expert economist); Class Certification Declaration of David T. Scheffman, Ph. D., dated April 3, 2009 (91-page report by Defendants' expert economist) (Doc. No. 461);   Reply Class Certification Report of Hal J. Singer, dated June 5, 2009 (65-page reply report by Plaintiffs' expert economist) (Doc. No. 556).

[9] All Defendants, including non-settling Abrazo, stipulated to toll the statute of limitations as to claims of putative members of the traveler class proposed in the Complaint, to allow the parties to focus on settlement. *See* Doc. No. 606 (filed October 14, 2009).

Though in Plaintiffs' view the case here is very strong, there are obviously risks and challenges as well.  Defendants, for example, have claimed that the statute of limitations would substantially reduce the alleged class period and the amount of recoverable damages, while Plaintiffs have alleged that Defendants' fraudulent concealment defeats such an argument.  This is just one example of issues that could have a very significant effect on the scope of the case.  As the Ninth Circuit has observed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citation omitted).

### 2.    The Settlement Has No Obvious Deficiencies And Falls Within The Range For Approval.

When evaluating the adequacy of a settlement, the court does "not decide the merits of the case or resolve unsettled legal questions."  *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).  Nor should a court "substitute its business judgment for that of the parties."  *Rankin v. Rots,* No. 02-71045, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006).[10]

This complex case involves a range of disputed issues.  In particular, among the disputed issues are Plaintiffs' ability or inability to prove an antitrust violation under *per se*, quick look, or rule of reason analysis; whether the Plaintiffs have

---

[10] As the Sixth Circuit explains: "Our task is not to decide whether one side is right or even whether one side has the better of the[] arguments.  Otherwise, we would be compelled to defeat the purpose of a settlement in order to approve a settlement."  *UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007).

suffered antitrust injury; and the amount of damages.  While Plaintiffs believe that they have very meritorious claims, All Settling Defendants have denied, and continue to deny, each and all of the arguments and contentions asserted by Plaintiffs.  For example, All Settling Defendants have argued that, even if Plaintiffs can establish liability, class members did not suffer any damages, or any significant damages.

As part of the compromise embodied in any settlement, however, All Settling Defendants have agreed to pay more than $22.4 million in cash, and agreed to significant prospective relief, designed to prevent a re-occurrence of the alleged conduct that gave rise to this litigation, and to provide certain limited cooperation in the continued litigation, in return for the dismissal of the litigation and the release of all claims against them.  Plaintiffs have not yet developed a merits damages analysis. In the class certification briefing, however, Plaintiffs identified certain AzHHA documents and argued they supported the proposition that AzHHA bill rates were $10/hour lower than they otherwise would have been.[11]   In opposing class certification, however, Defendants disputed the probative value of the AzHHA documents relied upon by Plaintiffs.  Defendants argued that the $10/hour reference was puffing by AzHHA employees and unsupported by data, and Defendants cited

---

[11] *See, e.g.,* Class Certification Report of Hal J. Singer, Ph.D., dated Dec. 22, 2008 (Doc. No. 428, Ex. 1) at ¶ 58 & n. 84 (citing documents).

other evidence which Defendants contended showed that there was little or no difference between AzHHA and non-AzHHA bill rates.[12]

However, multiplying the $10/hr figure by all AzHHA Registry usage hours for the entire 1997-2007 time period (approximately 23.9 million hours, *see* Ex. H), yields an overall figure of $239 million in single damages.  Even using that figure as a point of comparison (a figure which does not factor in, for example, defendants' argument that the class period should be shorter, or defendants' other arguments), a settlement of more than $22.4 million is well within the range of reasonableness.  *See, e.g.*, *In re Tableware Antitrust Litig.*, No. C-04-3514 VRW, 2007 WL 4219394 at * 2 (N.D. Cal. Nov. 28, 2007) (settlement representing 4 percent of estimated single damages was reasonable);  *In re LDK Solar Sec. Litig.*, 2010 WL 598361 at *2  (N.D. Cal. Feb. 17, 2010) (approving settlement amount that was 5% of potential damages); *In re Apple Computer Derivative Litig.*, 2008 WL 4820784  at * 2 (N.D. Cal. Nov. 5, 2009) (citing to study of settlements in securities litigation and observing that average settlement was 2.4% of estimated damages).  Indeed, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of potential recovery." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974).

In addition, All Settling Defendants have agreed to significant prospective

---

[12] *See e.g.,* Doc. No. 486

relief.  AzHHA, which is subject to the DOJ Final Judgment until 2017, has agreed to

an additional five years of prospective relief on top of that, which provides that

AzHHA will not operate its Registry Program in a manner that violates Section 1 of

the Sherman Act, 15 U.S.C. § 1, the Arizona state antitrust act, A.R.S. § 44-1401, and

the limitations imposed by the DOJ Final Judgment.  *See* AzHHA Settlement

Agreement ¶ 70 (Ex. C).  Similarly, the settling hospital defendants have agreed to

seven years of prospective relief (beginning when the settlement becomes final),

which provides that they will not participate in, or establish, a program similar to the

Registry Program for obtaining temporary nursing services unless such program

operates in compliance with Section 1 of the Sherman Act, 15 U.S.C. § 1, the Arizona

state antitrust act, A.R.S. § 44-1401, and the limitations imposed by the DOJ Final

Judgment.  Additionally, both agreements provide members of the two settlement

classes with special rights including accelerated discovery and attorneys' fees in case

of any violation by the settling hospital defendants or AzHHA.  *See* Settlement

Agreement ¶ 70 (Ex. A); AzHHA Settlement Agreement ¶ 70 (Ex. C).  Significantly,

though the DOJ Final Judgment named AzHHA, it did not expressly name any

hospitals, and the hospital defendants have contended that the Final Judgment did not

bind them.  The significant prospective relief provided by the settlements is a factor

that may be weighed in evaluating the settlement's reasonableness.  *See, e.g., Bellows

v. NCO Fin. Sys., Inc.*, 2008 WL 5458986   at *8 (S.D. Cal. Dec. 10, 2008)

("Considering the claims process implemented here, the injunction requirements, and the substantial *cy pres* award, the undersigned finds the settlement fair, reasonable, and adequate."); *Curtis-Bauer v. Morgan Stanley & Co., Inc.* 2008 WL 4667090 at *5 (N.D. Cal. Oct. 22, 2008) ("Most important, however, are the strength of the injunctive and monetary relief the Settlement provides. This Court has already found, on preliminary approval of the settlement, that the Settlement Agreement provides substantial injunctive relief to the Plaintiff class."); *Craft v. County of San Bernardino,* 624 F.Supp.2d 1113, 1121 (C.D. Cal. 2008)( "Nor can the results in this case be judged solely by the monetary component of the settlement. Due to the litigation, the County has stopped all of the strip search practices addressed in this settlement. . . .  That is a major accomplishment, independently of the monetary settlement." ); *Linney v. Cellular Alaska P'ship.,* 1997 WL 450064 at * 7 (N.D. Cal. July 18, 1997) ("The settlement approved today by the Court continues to provide a benefit based upon injunctive relief . . .[.]").

   In short, the proposed settlement here is well within the range of possible approval and has no obvious deficiencies.

   **3.    The Settlement Does Not Improperly Grant Preferential Treatment To Class Representatives Or Segments Of The Class.**

   The relief provided in the settlement will benefit all members of the Classes. They will, as explained in the proposed class notice (*see* Settlement Agreement at Exs. 3-4 thereto;  AzHHA Settlement Agreement at Exs 3-4 thereto), share in the

settlement funds depending on whether they provided per diem or traveler nurse services, what position they held (RN, LPN, etc.), the number of hours worked, whether the hospitals at which they worked were participating in the Registry Program at the time of their placement, and whether the agency that placed them participated in the Registry Program.  *See* Proposed Allocation Plan by Hal J. Singer, Ph.D. ("Allocation Plan") (Ex. E hereto).  And all members of the classes will benefit from the significant prospective relief obtained.

The Court previously certified a class of Per Diem nursing personnel, but not one of Traveler nursing personnel.  Plaintiffs, without opposition from All Settling Defendants, are asking that a settlement class of traveler nursing personnel be certified (for settlement purposes only) which, as explained further below, is warranted here.  Absent settlement, however, traveler class members faced the risk that their only recovery would come only through expensive, and highly impractical, individual litigation.  Thus, in the proposed allocation plan, Per Diem Settlement class members will recover, overall and on average with everything else being equal, four times more per hour claimed than Traveler Settlement Class members.  *See* Allocation Plan ¶ 4.  As this difference reflects an underlying difference in risks, it supports the reasonableness of the settlement.  *See In re Portal Software, Inc. Sec. Litig.* 2007 LEXIS 51794 at * 17 ("Courts frequently endorse distributing settlement proceeds

18

according to the relative strengths and weaknesses of the various claims.") (collecting cases).

### 4. The Proceedings Are Sufficiently Advanced To Permit Preliminary Approval Of The Settlement.

As discussed, Plaintiffs have conducted sufficient discovery to fairly evaluate the fairness of the proposed settlement.  Plaintiffs' counsel reviewed thousands of documents, and conducted 13 fact depositions; deposed Defendants' expert economist (in the context of class certification proceeding); and defended the depositions of the three plaintiffs (*see* list of depositions attached as Ex. I).  Plaintiffs also subpoenaed numerous third party nurse staffing agencies (*see* list of subpoenas attached as Ex. J). Plaintiffs' economic expert, Hal. J. Singer, Ph.D., conducted an extensive economic analysis which, though done in the context of class certification proceedings, included extensive analysis of data and documents bearing on both liability issues and damages.

The discovery record and the defenses put forth by All Settling Defendants, considered in light of the uncertainties of any trial, and the unpredictable delays that would attend waiting for recovery after trial, verdict and any appeal, all strongly counsel in favor of preliminary approval of the proposed settlement. The Court should therefore grant preliminary approval of the settlement and direct that notice of it be given to the settlement classes in order to give class members the chance to opt out or express their views of the settlement.

In conjunction with the settlement, Plaintiffs are asking that the Court certify a settlement class of Traveler nursing personnel, and modify for settlement purposes the definition of the Per Diem Class previously certified, as discussed below.

### C.   Modification of the Per Diem Class Definition, and Certification of a Traveler Settlement Class are Appropriate.

Plaintiffs and All Settling Defendants agree that, for settlement purposes only: (1) the per diem class definition in the Court's July 14, 2009 Order should be amended to conform with the definition of the Per Diem Settlement Class in the Settlement Agreement; and (2) a Traveler Settlement Class, as defined below, should be certified pursuant to Rule 23(b)(3).

### 1.   The Per Diem Class Definition Should be Modified for Settlement Purposes.

This Court previously certified a class defined as:

All natural persons who have provided per diem nurse service in the state of Arizona for any Hospital Defendant or other Participating Hospital at any time from January 1, 1997, until the effects of Defendants' anticompetitive conduct cease[].

*See* Class Certification Order at 18.

In connection with the settlement, the Plaintiffs and All Settling Defendants ask the Court to modify this definition by (1) fixing the end date for class membership at September 12, 2007; and (2) specifying certain exclusions and identifying more

precisely the positions included in "per diem nurse service".[13]  *See* Settlement Agreement ¶ 23(a);  AzHHA Settlement Agreement ¶ 23(a).

The proposed class period end date, September 12, 2007, is the date of entry of the Final Judgment in the DOJ Matter.

The proposed exclusions are as follows:

> **Excluded** from both Settlement Classes are (a) Defendants and their parents, officers, directors, subsidiaries and affiliates; (b) those natural persons whose sole activity during the Class Period was (i) working for one of the Defendants' or other Participating Hospitals' internal registries or pools and not through an agency, and/or (ii) being employed directly by one or more of the Defendants or Participating Hospitals but not working through an agency; and (c) those natural persons whose sole activity working for one or more of the Defendants or Participating Hospitals during the Class Period was for a Defendant or other Participating Hospital which was not at that time participating in the AzHHA registry program.

*See*  Settlement Agreement ¶ 23;  AzHHA Settlement Agreement ¶ 23.

These exclusions make clear that, for example, persons who did not work for a Registry Program participating hospital while it was participating in the Registry Program, or who did not work through an outside agency, would not be part of the Per Diem class.  In addition, both agreements specify the temporary Per Diem nursing positions included in the class, and for what years—a clarification that will assist in the claims administration process.  *See* Settlement Agreement ¶ 16 and Ex. 6 thereto

---

[13] Fed. R. Civ. P. 23(c)(1)(C) provides that: "An order that grants or denies class certification may be altered or amended before final judgment."

1

2

(identifying specific Per Diem positions and time periods included);   AzHHA

Settlement Agreement (same).

### 2.   It is Appropriate to Certify a Traveler Settlement Class.

This Court may, and should, certify a settlement class of temporary traveler nursing personnel, in light of the proposed settlement and for purposes of the settlement.  All Settling Defendants agree.  The Court's prior litigation class decision, made in the context of Defendants' opposition and set against the demands of a trial, and involving a single, broader proposed class, does not prevent the Court from certifying a Traveler Settlement Class now in connection with settlement.  As the Supreme Court has explained, the fact of "settlement is relevant to a class certification.… Confronted with a request for settlement-only class certification, a district court need not inquire into whether the case, if tried, would present intractable management problems."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997).

The First Circuit, for example, recently affirmed a settlement, including certification of a settlement class that included individuals whom the district court had previously excluded based on predominance of common issues. *See In re Pharmaceutical Industry Average Wholesale Price Litig.*, 588 F.3d 24, 29, 40-41 (1st Cir. 2009).  *See also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258

1    F.R.D. 545, 557-58 (N.D. Ga. 2007) (fact of settlement can weigh in favor of

2    certification).

### a.      The Requirements Of Rule 23(a) Are Met.

The proposed Traveler Settlement Class is defined as follows:

> All natural persons who have provided Traveling Nurse Services in the State of Arizona for any Defendant or other Participating Hospital at any time from January 1, 1997, until September 12, 2007.

*See* Settlement Agreement ¶ 23;  AzHHA Settlement Agreement ¶ 23.

Excluded from the Traveler Settlement Class are

> (a) Defendants and their parents, officers, directors, subsidiaries and affiliates; (b) those natural persons whose sole activity during the Class Period was (i) working for one of the Defendants' or other Participating Hospitals' internal registries or pools and not through an agency, and/or (ii) being employed directly by one or more of the Defendants or Participating Hospitals but not working through an agency; and (c) those natural persons whose sole activity working for one or more of the Defendants or Participating Hospitals during the Class Period was for a Defendant or other Participating Hospital which was not at that time participating in the AzHHA registry program.

*See* Settlement Agreement ¶ 23;  AzHHA Settlement Agreement ¶ 23.   The agreements also identify the specific temporary traveler nursing positions included in the Traveler Settlement Class, and for what years.  *See* Settlement Agreement ¶ 28 and Ex. 7 thereto (identifying specific Traveler positions and years included); AzHHA Settlement Agreement (same).

The proposed Traveler Settlement Class meets all the requirements of Rule 23(a), i.e., numerosity, commonality, typicality, and adequacy.

**Numerosity:**   Class certification requires that the class is so numerous that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). There is no dispute here that a settlement class of Traveler nursing personnel satisfies the numerosity requirement.  The class period spans 10 years, and involves purchases by AzHHA Registry Program participating hospitals of millions of hours of traveler nursing services.

**Commonality:**   Rule 23(a)(2) requires the existence of "questions of law or fact common to the Class."  Even "one significant issue common to the class may be sufficient to warrant certification."  *Dukes v. Wal-Mart,* 603 F. 3d 571, 599 (9th Cir. 2010).

Notably, the Court previously concluded -- in evaluating a proposed single, broader class that included both Per Diem and Traveler nursing personnel -- that: "common issues of law and fact exist across the proposed class, thus satisfying the commonality requirement of Rule 23(a)(2)."  Class Certification Order at 5.  That conclusion plainly still holds with respect to a Traveler-only settlement class.  Among the issues common to the entire Traveler Settlement class are whether Defendants' conduct violated federal and/or state antitrust law, and whether the conduct constitutes a *per se* antitrust violation.  *See* Class Certification Order at 5.

**Typicality:**   The typicality requirement of Rule 23(a) is established where, as here, the claims of the Plaintiffs arise from the same event or course of conduct that

gives rise to the claims of other class members, and where the claims are based on the same legal theory. *See Dukes,* 603 F.3d at 613 ("We stated in *Hanlon* that '[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical.'") (citation omitted).

The claims of the class representatives for the Traveler Settlement Class (Ms. Craig and Ms. Walker) arise from the same course of allegedly wrongful conduct that gives rise to the claims of the entire Traveler Settlement class, namely Defendants' allegedly wrongful and illegal agreement and conduct to jointly and collusively fix and suppress bill rates for Traveler nursing personnel.   Hence, the typicality requirement is satisfied for the Traveler Settlement Class.

**Adequacy:**   Rule 23(a)(4) requires that plaintiffs will "fairly and adequately protect the interests of the class."  *See, e.g., O'Connor v. Boeing*, 184 F.R.D. 311, 335 (C.D. Cal. 1998).  *See also* Class Certification Order at 8-9 (Court's prior discussion of the adequacy requirement).

Rule 23(a)(4) "requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel."  *Dukes*, 603 F.3d at 614.  That standard has already been met here.  As the Court noted in certifying the Per Diem class, "Defendants have not made any … arguments as to adequacy[] beside the

statute of limitations issue [as to Ms. Johnson], and Defendants have not suggested that proposed class counsel are in any way inadequate.  The Court concludes that the adequacy requirement is met."   Class Certification Order at 8-9.   Nothing has occurred since that would alter that conclusion as to a Traveler Settlement Class, and Plaintiffs Ms. Walker and Ms. Craig.   And the Court previously found that Class Counsel David Balto and David F. Sorensen "are qualified and experienced."  Class Certification Order at 9.   Similarly, Mark Samson and the law firm of Keller Rohrback, LLP and Allen Grunes and the law firm of Brownstein Hyatt Farber Schreck have antitrust class action and complex litigation experience, and have served as co-counsel for Plaintiffs in this case.   Accordingly, Plaintiffs request appointment of (1) Ms. Craig and Ms. Walker as representatives of the Traveler Settlement Class; and (2) David F. Sorensen and the law firm of Berger & Montague, P.C. and David Balto and the law firm Law Offices of David Balto as Co-Lead Counsel for the Traveler Settlement Class; and Mark Samson and the law firm of Keller Rohrback, LLP and Allen Grunes and the law firm of Brownstein Hyatt Farber Schreck as additional Class Counsel for the Traveler Settlement Class.

### b. The Traveler Settlement Class May be Certified Under Rule 23(b)(3).

In addition to meeting the prerequisites of Rule 23(a), the Traveler Settlement Class also satisfies Rule 23(b)(3).

As discussed above, and in previous briefs, there are numerous common issues of law and fact in this case.  *See* Class Certification Order at 5 ("common issues of law and fact exist across the proposed class").

In previously denying certification of a single class that included traveler personnel in the face of opposition by Defendants, the Court focused on the issue of proof of antitrust impact, or injury.  *See* Class Certification Order at 14-15.  The proposed Traveler Settlement Class, however, is significantly *narrower* than the prior class that the Court declined to certify.  First, the prior proposed class included both traveler and per diem personnel in one class, while here traveler nursing personnel are in their own class.  Second, the Traveler Settlement Class includes a fixed end date (September 12, 2007) that was not set forth in the prior proposed class.  Third, the Traveler Settlement Class is limited by specified exclusions, such as traveler personnel who never worked for a hospital when the hospital was participating in the AzHHA Registry Program.  *See* Settlement Agreement ¶ 23; AzHHA Settlement Agreement ¶ 23.  Fourth, the Traveler Settlement Class is limited by the specific traveler nurse positions (and applicable time periods) set forth in Ex. 7 to both

27

settlement agreements.  In short, the Court may evaluate the Traveler Settlement Class on its own terms.

All Settling Defendants are not contesting certification of a Traveler Settlement Class for purposes of settlement (while preserving their rights to contest class certification if the settlement does not become final for any reason).  *See* Settlement Agreement ¶ 33;  AzHHA Settlement Agreement ¶ 33.  Under similar circumstances, many courts have concluded that certification is appropriate.  *See O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 291 & n.19 (E.D. Pa. 2003) (noting that individual questions regarding damages, variations in state law and reliance do not prevent a finding of predominance for the purpose of certifying a settlement class because those issues go to the question of manageability); *In re Inter-Op Hip Prothesis Liability Litig.*, 204 F.R.D. 330, 347 (N.D. Ohio 2001) (noting that the settlement established a means of resolving issues of causation, injury and damage that otherwise potentially gave rise to individual questions, so satisfying predominance for purpose of certification of settlement class); *In re Diet Drugs Products Liability Litig.*, 2000 WL 1222042 at *43 (E.D. Pa. Aug. 28, 2000) ("[W]hen taking the settlement into consideration for purposes of determining class certification, individual issues which are normally present in personal injury litigation become irrelevant, allowing the common issues to predominate."); *Masco Corp.*, 258 F.R.D. at 557 (same); *In re MotorSports Merchandise Antitrust Litig.,* 112 F. Supp. 2d

1329, 1334 (N.D. Ga. 2000) ("[t]he settlements are a positive alternative to the prospect of receiving no recovery[.]").  *See also In re Wireless Facilities, Inc. Secs. Litig.,*  253 F.R.D. 607 (S.D. Cal. 2008) (certifying class for purposes of settlement and granting preliminary approval of settlement).

The limitations of the Traveler Settlement Class, and the narrowing of this class as discussed above, can be viewed as increasing class cohesion, and diminishing the relative importance of any remaining individual issues.   And, All Settling Defendants have agreed to pay a settlement sum which is to be distributed to members of the Traveler Settlement Class, obviating any need for a trial to establish the extent of damages.[14]  *See also Amchem,* 521 U.S. at 635-36 (Breyer, concurring in part and dissenting in part) ("The [fact of] settlement is relevant [to the question of class certification] because it means that … the differences [that exist among class members] … are of diminished importance in respect to a proposed settlement in

_____

[14] Moreover, Plaintiffs contend that even if some traveler nurses may have negotiated certain terms of their compensation, it does not mean they were not impacted.  As one court recently stated:

> Proving damages proves injury because damages necessarily indicate that the plaintiff has been impacted or injured by the antitrust violation; the converse, however, is not necessarily true. That is, it is possible for a plaintiff to suffer antitrust injury-in-fact and yet have no damages because it has taken steps to mitigate the actual price paid through rebates, discounts, and other non-price factors such as lowered shipping costs, technical services, or any other type of purchase incentive. By expending resources to negotiate down from the supracompetitive prices established by the cartel, plaintiffs who have suffered no damages may still have suffered an injury-in-fact from the antitrust conspiracy. The fact that a plaintiff may have successfully employed bargaining power to fend off the *effect* of the conspiratorial practices does not mean that it has not been put in a worse position but-for the conspiracy.

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 88-89 (D. Conn. 2009).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

which the defendants have waived all defenses and agreed to compensate all those who were injured.").

In addition, this Court has already recognized that "a class action is superior to other methods of adjudication for Per Diem Nurses, because the amount of each nurse's damages is relatively small and would not provide sufficient incentive for most individual nurses to pursue litigation against a large group of deep-pocketed hospitals." Class Certification Order at 17.[15]  This conclusion applies equally, or even more so, to the claims of the Traveler Settlement Class members, who face the same prospect of costly individual litigation against numerous defendants. *See also O'Keefe* 214 F.R.D. at 293; *In re MotorSports*, 112 F. Supp. 2d at 1334.

### D.   The Plan of Allocation Should Be Preliminarily Approved.

Plaintiffs also request that the Court approve the proposed plan of allocation at this time (such approval may also occur later, at time of final approval).  As explained in proposed Allocation Plan (Ex. E), the settlement funds will be allocated to class members depending on: (1) whether they worked as a Per Diem or Traveler Nurse; (2) the position they worked (e.g. RN, LPN, Or/Surg Tech); (3) whether the hospital and agency were participants in the AzHHA Registry Program;  (4) the number of hours

---

[15] *See also*, *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th. Cir. 2004) ("[T]he realistic alternative to a class action is not [a large number of] individual suits, but zero individual suits, as only a lunatic or a fanatic sues for [a recovery that is insignificant relative to the cost of suit].");  *In re Carbon Black Antitrust Litig*. No. 03-10191, 2005 WL 102966 at *22 (D. Mass. Jan. 18, 2005) ("Antitrust class actions are expensive endeavors and joining forces with other similarly situated plaintiffs is often the only way to effectuate a case.").

worked; and  (5) how many class members submit timely and valid claim forms.  *See* Allocation Plan.

The formula for computing each class member's recovery uses objective data that will fairly allocate the settlement.  For example, the amount allocated to each nursing position is determined by and reflects the hourly AzHHA Registry bill rate for that position. And the relative allocation amounts, similarly, reflect the relative relationship between the Registry Program bill rates.  Allocation Plan ¶¶ 14-20.

Additionally, because not all eligible Class Members may actually file claims, and thus the total hours claimed will be less than the total hours worked,  some settlement funds may be reallocated, both among the two classes and among positions, to reflect the filed claims. *See* Allocation Plan at ¶¶ 13, 21.  This process of reallocation is the same as redistributing unclaimed funds to class members that previously submitted a claim form -- a procedure courts often approve as a method of allocating the settlement amount.[16]   Any excess funds that may remain after the

---

[16] It is entirely proper to redistribute unclaimed funds to Class Members that previously submitted a claim form. As discussed in *3 Newberg On Class Actions* §10:15 at 512 (4th ed)**:**

> In a settlement context, subject to court approval, counsel for the parties have great flexibility in negotiating an agreement concerning how unclaimed balance of an aggregate class recovery should be distributed.
> The parties may agree that any surplus funds . . .should be distributed in a designated manner to class members who have filed individual claims, or they may agree that the distribution of the surplus funds for the benefit of the class will be determined by the court or determined by the parties subject to court approval.

*See also Alberto v. GMRI, Inc.*, 2008 WL 4891201 at * 7 n.4 (E.D. Cal. Nov. 12, 1998) ("The settlement administrator will calculate Individual Payment Amounts twice. First he will calculate Individual Payment Amounts assuming every class member opted into the settlement and allocate the Net Payment using the three-step process described above. Because it is realistic to assume that many class members will not return claim

reallocation and distribution to Class Members will be disputed *cy pres* to one or more accredited nursing schools in Arizona.  *See* Settlement Agreement ¶ 52;  AzHHA Settlement Agreement ¶ 52.[17]

       **E.**     **The Court Should Approve The Notice Plan, The Proposed Form And Manner of Notice And The Proposed Schedule Leading Up To The Fairness Hearing.**

Rule 23(e)(1) provides "[t]hat the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed R. Civ. P. 23(e)(1).  A class action settlement notice is "satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard'." *Churchill Village LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted). To be substantively acceptable under Rule 23(c)(2), the notice given to a class must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

---

forms, the settlement administrator will also calculate the remainder, or the unclaimed portion of the net payment, and allocate it to the claimants using the same three-step process.") (citation omitted);  *Hopson v. Hanesbrands Inc.*, 2009 WL 928133 at * 9-10 (N.D. Cal. April 3, 2009) (granting final approval of class settlement where "[t]he parties propose[d] that if the residual settlement amount (the amount of settlement checks not cashed after 120 days) is more than $15,000, then that amount will be distributed to claimants on a pro rata basis according to the value of their settlement shares.");  *In re Wells Fargo Securities Litig.,* 991 F.Supp. 1193 (N.D. Cal. 1998) (granting plaintiffs' motion to distribute some of the residue of the settlement fund to class members that previously submitted claim forms where the residue was the result of interest that accrued after distribution checks were mailed and unanticipated savings in administering fund).

[17] *See, e.g., Hopson v. Hanesbrands Inc.*, 2009 WL 928133 at * 9-10 (N.D. Cal. April 3, 2009) (granting approval of cy pres award to two charities, United Way and Family and Children's Law Center in a case alleging that employer failed to pay overtime and committed other violations of the Fair Labor Standards Act).

### 1.   The Notice Plan

Plaintiffs' plan of notifying class members about the settlement and the certification of the classes has three parts: (1) mailing a notice to approximately 25,000 potential class members who have been identified by Settling Defendants from their reasonably accessible records; Arizona Nurse Licensing Data provided by the Arizona Board of Nursing; and data provided by nursing agencies that supplied Per Diem and Traveler Nurses to Participating Hospitals ("Mailed Notice"); (2) publishing a notice in journals, magazines, newspapers and websites with wide circulation among nurses generally and traveler nurses specifically ("Publication Notice"); and (3) establishing a dedicated website.

As explained in the Declaration of Stephen M. Durbin, attached as Ex. G ("Durbin Decl.") the Settling Defendants whose records were reasonably accessible culled their records to develop a list of over 18,000 names of potential class members.[18]   Because this list   did not contain addresses, the proposed claims administrator, RG/2 Claims Administration L.L.C. engaged by Plaintiffs, compared this list to a database of licensed nurses provided by the Arizona Board of Nursing to match the names provided by the Settling Defendants with names and addresses in the

---

[18]   Mr. Durbin identifies those settling defendants, primarily smaller hospitals, whose records were not reasonably accessible.  Plaintiffs have specifically agreed with one such smaller settling defendant, Arizona Heart Hospital, that its records were not reasonably accessible and that, therefore, its obligations (beyond paying its settlement amount share of $336,363.64) are more limited.  Plaintiffs do not intend to file the agreement with Arizona Heart unless a dispute arises, or the Court otherwise deems it necessary.  *See Jaffe v. Morgan Stanley*, 2008 WL 346417 at *6 (N.D. Cal. Feb. 9, 2008) (Rule 23(e) requires identification of agreement, not necessarily its filing).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Arizona State Board of Nursing data.  Through this process, RG/2 was able to obtain

addresses for nearly 80% of those persons on the list created by the Settling

Defendants.  *See* Declaration of Claims Administrator (Ex. F hereto).   Because there

were multiple matches for certain names, approximately 25,000 mailed notices will be

sent out.

The  proposed Mailed Notice (Ex. 3 to each settlement agreement) complies

with the requirements of Rule 23(c)(2)(B) and the recommendations contained in

Section 21.311 of the *Manual for Complex Litigation (Fourth)*, which suggests that

such notice should: (1) describe succinctly the positions of the parties; (2) identify the

opposing parties, class representatives, and counsel; (3) describe the relief sought;

and, (4) explain any risks and benefits of retaining class membership and opting out,

while emphasizing that the court has not ruled on the merits of any claims or defenses.

The  proposed  Mailed  Notice  explains  in  plain  language,  and  in  a

question/answer format: (1) the nature of the action (see Mailed Notice at

question/answer No. 2); (2) the definitions of the classes certified (question/answer

No. 6); (3) the class claims, issues, or defenses (question/answer No. 2); (4) that a

class member may enter an appearance through an attorney if the member so desires

(question/answer No. 17); (5) that the court will exclude from the class any member

who timely requests exclusion (questions 8, 9 & 13); (6) the time and manner for

34

requesting exclusion (question 9); and (7) the binding effect of a class judgment on members under Rule 23(c)(3) (questions 7, 10).

Similarly, the Mailed Notice succinctly describes each party's position (page 1 and question 2); identifies the opposing parties, class representatives and counsel (page 1 and questions 3, 16);  describes the relief sought (page 1 and question 2); explains any risks and benefits of retaining class membership and opting out (questions 8-10) while emphasizing that the Court has not yet ruled on the merits (page 1 and question 2).  The proposed  Mailed Notice also describes the proposed settlement and how the settlement will be allocated (question 11-12);  how class counsel will seek to be compensated (question 18); when and where the Fairness Hearing will be held and whether and how to enter an appearance at the Fairness Hearing (questions 20-22);  and how to obtain more information (question 23).

The proposed Publication Notice (Ex. 4 to each settlement agreement) likewise complies with Rule 23(e).  The Publication Notice informs Class members about the litigation (notice at 1);  provides the class definitions and how individuals can obtain more information to determine whether they are class members (*id.* at 1-2); provides information regarding attorneys' fees (*id.* at 2);  describes the settlement (*id.* at 2-3);  explains how to participate in, opt out of, and object to the settlement (*id.* at 2-3);  and provides the date and location of the Fairness Hearing and how Class Members can obtain more information about the Settlement from the litigation website or calling the

toll-free number (*id.* at 2-3).  The proposed notice thus meets the requirements of Rule 23.  *See e.g. Arnold v. Ariz. Dep't of Corr.*, No.CV-01-1463-PHX-LOA, 2006 WL 2168637 at *5 (D.Ariz. July 31, 2006) (approving published notice that "describes the essential terms of the Settlement Agreement, provides information regarding attorneys' fees, indicates the time and place of the hearing to consider approval of the Settlement Agreement, prominently displays the address and phone number of counsel and the procedure for making inquiries or objections regarding the Settlement Agreement."); *Bellows v. NCO Financial Sys., Inc.* No. 3:07-cv-01413, 2008 WL 5458986 at * 3 (S.D. Cal. Dec. 10, 2008) (approving published notice that "directed Class Members to the Settlement Website to obtain information regarding the case and class settlement  . . .[and provided a ] toll-free telephone number . . .[.]");

Significantly, "[f]or approval, the notice need not have been perfect.  Rather it needed to be the 'best notice practicable under the circumstances' and directed 'in a reasonable manner to all members who would be bound.'"  *Browning v. Yahoo Inc.*, 2007 WL 4105971, at *7 (N.D. Cal. 2007) (citing FRCP 23(c)(2) and 23(e)(1)(B)).  "Rule 23(e) gives the court 'virtually complete' discretion as to the manner of service of settlement notice."  *Colesberry v. Ruiz Food Prod., Inc.*, 2006 WL 1875444, at *7 (E.D. Cal. June 30, 2006) (citation omitted).

Plaintiffs propose a combination of first class mailing to those potential class members whose names and addresses it was practical to identify; and published notice

in publications and websites that target the same populations encompassing the potential classes.  This meets the requirements of Rule 23.  *See Wright v. Linkus Enter., Inc.*, 259 F.R.D. 468, 475 (E.D. Cal. 2009) (approving mailed notice);  *In re Wireless Facilities, Inc. Securities Litigation II*, 253 F.R.D. 607, 620-21 (S.D. Cal. 2008) (authorizing proposed settlement notice plan that sent notice via mail and newspaper publications); *Hernandez v. Kovacevich*, 2005 WL 2435906, at *3 (E.D. Cal. Sept. 30, 2005) (approving settlement notice plan that mailed terms to potential class members, published a shortened notice in a local Spanish-language newspaper because the class claims were made primarily by Hispanic workers, and mailed reminder post-cards that highlighted the relevant deadlines).

Plaintiffs propose to place the Published Notice in journals, magazines, newspapers and websites with  national and regional circulation including wide circulation among the class members,[19] and to establish a dedicated website.  This method of notice is both "extensive, multifaceted, and innovative": and thus satisfies Rule 23(e)'s requirements.  *Browning,* 2006 WL 3826714, at 8;  *Portal Software*, 2007 U.S. Dist. LEXIS 51794, at *19 (finding that notice by mail and publication satisfy the requirements of due process and Rule 23).

Additionally, all pertinent documents (the Mailed Notice, Settlement Agreement, and other documents related to the Settlement) will be posted on a

---

[19] The proposed publication notice plan is attached as Ex. 5 to each settlement agreement.

dedicated website established and maintained by RG/2.  *See* Settlement Agreement ¶ 44;  AzHHA Settlement Agreement ¶44.

Plaintiffs propose mailing the Mailed Notice within thirty (30) days after the Court grants preliminary approval of the settlement and approves the form of Class Notice.  Plaintiffs also propose publishing the Published notice in the next available publication dates after preliminary approval.  Assuming the Court grants preliminary approval, and depending on when that occurs, notice should be complete by December 1, 2010.  *See* Ex. 5 to the Settlement Agreement and AzHHA Settlement Agreement (publication plan with dates of publication).

Class members will be provided 44 days thereafter to opt out, a period well within the range routinely approved by courts.  *See, e.g., In re Prudential Ins. Co. of America Sales Practices Litig.*, 177 F.R.D. 216, 240-41 (D.N.J. 1997) (30 to 60 days is a typical opt out period considered reasonable); *Gacy v. Gammage & Burnham*, 2005 WL 3455105 at *2 (D. Ariz. Dec. 15, 2005) (approving interval of six weeks between mailing of notice and the deadline for opting out).  Plaintiffs have entered into separate confidential agreements with All Settling Defendants providing that they may elect to withdraw from the settlement if certain numbers of class members choose to opt out (commonly called "blow-out" provisions"); and allowing Plaintiffs to withdraw, in turn, if too many defendants elect to withdraw.  Such agreements typically are identified, though not publicly filed, to meet the requirements of Rule

23(e) (requiring the identification of agreements), while encouraging settlement and discouraging third parties from soliciting class members to opt out.  *See, e.g., In re Healthsouth Corp. Secs. Litig,* 2009 WL 1684422 (11th Cir. June 17, 2009).  Thus, these blow-out provision agreements are not being filed at this time, and will not be unless a dispute arises, or the Court requires they be filed.

After the opt-out period, class members will be provided an opportunity to object to the proposed settlement, as well as to the attorney's fee and costs and expenses application of Plaintiffs' counsel, which will be filed before the deadline for objections, in accord with *In re Mercury Interactive Corp. Securities Litig.,* __F.3d __, 2010 WL 3239460 (9th Cir. Aug. 18, 2010).

In addition, the Court should approve the Claim Form attached to the proposed form of Mailed Notice.  In consultation with RG/2 and Plaintiffs' expert economist, Hal J. Singer Ph. D, Class Counsel prepared a claim form which seeks information from class members in order to allocate and distribute the settlement funds in accordance with the Allocation Plan.  As with the Allocation Plan, the Court is not required to approve the claim form at this time, but may.  *See, e.g., Sandoval v. Tharaldson Employee Mgmt.,* 2009 WL 3877203 at *7 (C.D. Cal. No. 17, 2009) ("At this preliminary stage, the plan for distributing the settlement appears sufficiently fair for conditional approval.");  *Cervantex v. Celestica Corp.,* 2010 WL 2712267 at * 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(C.D. Cal. July 6, 2010) (reviewing and approving proposed claim form at time of preliminary approval).

Finally, Plaintiffs propose that RG/2 Claims Administration L.L.C. be appointed to serve as claims administrator for the settlement. After reviewing proposals by four other claims administration companies, Co-Lead Class Counsel selected RG/2 based on its extensive experience (particularly in administering settlements in cases involving employees' wages and hours), responsiveness and reasonable pricing. See RG/2's website at *http://www.rg2claims.com/*.  *See also* Ex. F at ¶ 2 (Declaration of Claims Administrator).

### 2.   **Proposed Schedule**

Plaintiffs propose the following schedule:

| Event | Deadline/Time |
|---|---|
| Date by which the Claims Administrator shall serve notice on the Attorney General of the United States and all state attorneys general pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715. | Within 10 days after this Motion is filed with the Court. |
| Date by which the Claims Administrator shall cause a copy of Mailed Notice to be mailed by first class mail to all class members who can be identified with reasonable effort: | Within 30 days of preliminary approval by the Court, and certification of the settlement classes as proposed. |
| Completion of publishing the Publication Notice: | December 1, 2010 (this date, and hence other dates following it, may change depending on date of preliminary approval) |
| Mailing of exclusion or "opt out" requests by class members: | January 14, 2011 |
| Filing of memoranda in support of Class Counsels' application for an award of attorneys' fees and reimbursement of costs and expenses, and award of incentive awards to representative plaintiffs: | January 28, 2011 |
| Filing of objections by class members: | February 11, 2011 |
| Filing of memoranda in support of final approval of the settlement[20] | February 25, 2011 |
| Final Fairness Hearing: | March 4, 2011 |
| Final Deadline for Submitting Claim Forms: | 90 days after final Fairness Hearing |

---

[20] The Class Notice will alert the class members that the date may change, and that they should check the dedicated website for updated information.

## IV.   CONCLUSION

Plaintiffs respectfully request that the Court grant this motion. A form of order is being separately lodged with the Court.

Dated: September 9, 2010

**BERGER & MONTAGUE, P.C.**

By: /s/ David F. Sorensen
David F. Sorensen
Neill W. Clark
1622 Locust Street
Philadelphia, PA  19103
Tel: 215-875-3000
Fax: 215-875-4673

**LAW OFFICES OF DAVID BALTO**
David Balto
1350 I Street, N.W., Suite 850
Washington, D.C. 20005-3355
Tel: 202-577-5424
Fax: 202-333-4186

**KELLER ROHRBACK, P.L.C.**
Mark Samson
Ron Kilgard
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: 602-248-0088
Fax: 602-248-2822

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
Allen P. Grunes
1350 I Street, Suite 510
Washington, D.C. 20005-3355
Tel: 202-296-7353
Fax: 202-296-7009

42

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Timothy R. Beyer
Martha F. Bauer
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
Tel: 303-223-1100
Fax: 303-223-1111

Jeffrey S. Rugg
100 City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Tel: 702-382-2101
Fax: 702-382-8135

*Attorneys for Plaintiffs*

1
2

## CERTIFICATE OF SERVICE

3

4

    The undersigned hereby certifies that on September 9, 2010 the foregoing Plaintiffs' Preliminary Approval of Settlement, Certification of the Settlement Classes, Approval of the Form of Notice and Memorandum in Support was served via electronic mail to the following parties and notice of this filing will be sent to all parties listed below by operation of the Court's CM/ECF System:

5

6

7

8

9

10

11

12

13

14

15

16

Keith Beauchamp
Lauren Jacqueline Weinzweig
Roopali H. Desai
**COPPERSMITH SCHERMER**
  **& BROCKELMAN PLC**
2800 North Central Avenue, Suite 1200
Phoenix, AZ 85004
kbeauchamp@csblaw.com
lweinzweig@csblaw.com
rdesai@csblaw.com
*Attorneys for Arizona Hospital and Healthcare Association and AzHHA Service Corporation*

Timothy J. Burke
Jamie Brown
**FENNEMORE CRAIG PC**
3003 North Central Avenue, Suite 2600
Phoenix, AZ 85012
tburke@fclaw.com
pklein@fclaw.com
*Attorneys for Northern Arizona Healthcare Corporation, Catholic Healthcare West, Bullhead City Hospital Corporation, Payson Hospital Corporation, Oro Valley Hospital, LLC, Northwest Hospital, LLC*

17

18

19

20

21

22

23

24

25

Teisha C. Johnson
Katherine I. Funk
**SONNENSCHEIN NATH &**
**ROSENTHAL LLP**
1301 K Street N.W.
Suite 600 East Tower
Washington, DC 20005
tcjohnson@sonnenschein.com
kfunk@sonnenschein.com
*Attorneys for University Medical Center Corporation*

David A. Ettinger
**HONIGMAN MILLER SCHWARTZ &**
**COHN LLP**
2290 1st National Building
660 Woodward Avenue
Detroit, MI 48226
dettinger@honigman.com
*Attorneys for Northern Arizona Healthcare Corporation*

26

27

28

Randall Papetti
**LEWIS & ROCA LLP**
40 North Central Avenue
Phoenix, AZ 85004-4429
rpapetti@lrlaw.com

Andrew L. Pringle
**MARISCAL WEEKS MCINTYRE &**
  **FRIEDLANDER PA**
2901 North Central Avenue, Suite 200
Phoenix, AZ 85012-2705

44

1

2

*Attorneys for University Medical Center Corporation*

3

4   Joel W. Nomkin

5   Jessica L. Everett-Garcia

6   Michael T. Liburdi

7   Jill Louise Ripke

8   Scott Sebastian Minder

9   Tyler Reese Bowen

    **PERKINS COIE BROWN & BAIN PA**

10  P.O. Box 400

11  Phoenix, AZ 85012

12  jnomkin@perkinscoie.com

13  jeverettgarcia@perkinscoie.com

14  mliburdi@perkinscoie.com

15  jripke@perkinscoie.com

16  sminder@perkinscoie.com

17  tbowen@perkinscoie.com

    *Attorneys for Banner Health and Sun Health Corporation*

18

19

20

21

22

23

24   Dennis Palmer

25   **POLSINELLI SHUGHART  PC**

26   120 West 12th Street, Suite 1700

27   Kansas City, MO 64105

28   *Attorneys for Summit Healthcare Association and University Physicians Healthcare*

Brian M. Flaherty
**POLSINELLI SHUGHART  PC**
3636 North Central Avenue, Suite 1200
Phoenix, Arizona 85012
bflaherty@stklaw.com
*Attorneys for Summit Healthcare Association and University Physicians Healthcare*

larry.pringle@mwmf.com
*Attorneys for  John C. Lincoln Health Network*

Allen Spencer Boston
David B. Helms
Richard B. Walsh, Jr.
Stephen Michael Durbin
Winthrop Blackstone Reed, III
**LEWIS RICE & FINGERSH LC**
500 North Broadway, Suite 2000
St. Louis, MO 63102
aboston@lewisrice.com
dhelms@lewisrice.com
rwalsh@lewisrice.com
sdurbin@lewisrice.com
wreed@lewisrice.com
*Attorneys for Carondelet Health Network*

CLARKE H. GREGER
**RYLEY CARLOCK & APPLEWHITE PC**
1 North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4417
cgreger@rcalaw.com
*Attorneys for Carondelet Health Network*

James A. Craft
**GAMMAGE & BURNHAM PLC**
2 North Central Avenue, 18th Floor
Phoenix, AZ 85004
jcraft@gblaw.com
*Attorneys for Yuma Regional Medical Center, Inc.*

45

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Randy Yavitz
**HUNTER, HUMPHREY & YAVITZ, PLC**
2633 East Indian School Road, Suite 440
Phoenix, AZ 85008
randy@hhylaw.com
*Attorneys for Cobre Valley Community Hospital and Brim Healthcare*

James R. Broening
Robert T. Sullivan
**BROENING OBERG WOODS & WILSON**
P.O. Box 20527
Phoenix, Arizona 85036
jrb@bowwlaw.com
rts@bowwlaw.com
*Attorneys for Sierra Vista Regional Health Center*

Joan McPhee
Jane E. Willis
Matthew P. Garvey
**ROPES & GRAY LLP**
One International Place
Boston, MA 02110-2624
joan.mcphee@ropesgray.com
jane.willis@ropesgray.com
matthew.garvey@ropesgray.com
*Attorneys for Iasis Healthcare Holdings, Inc., St. Luke's Medical Center, L.P., St. Luke's Behavioral Hospital, L.P., Mesa General Hospital, L.P.*

Douglas Gerlach
**JENNINGS STROUSS & SALMON PLC**
201 East Washington, Suite 1100
Phoenix, AZ 85004
dgerlach@jsslaw.com
*Attorneys for Regional Care Services Corp.*

Jeffrey A. LeVee
Catherine T. Broderick
**JONES DAY**
555 South Flower Street
50th Floor
Los Angeles, CA 90071
jlevee@jonesday.com
cbroderick@jonesday.com
*Attorneys for TMC Healthcare*

Jeffrey J. Campbell
**CAMPBELL YOST CLARE & NORELL PC**
101 North 1st Avenue, Suite 2500
Phoenix, AZ 85003
jcampbell@cycn-phx.com
*Attorneys for TMC Healthcare*

46

David B. Rosenbaum
Debbie A. Hill
Robert T. Weeks
**OSBORN MALEDON, P.A.**
2929 North Central Avenue
Phoenix, AZ 85012-2794
drosenbaum@omlaw.com
dhill@omlaw.com
rweeks@omlaw.com
*Attorneys for Iasis Healthcare*
*Holdings, Inc., St. Luke's Medical*
*Center, L.P., St. Luke's Behavioral*
*Hospital, L.P., Mesa General Hospital,*
*L.P.*

Lawrence Allen Katz
P. Bruce Converse
Kami S. Galvani
**STEPTOE & JOHNSON LLP**
Collier Center
201 East Washington Street, Suite 1600
Phoenix, AZ 85004-2382
lkatz@steptoe.com
bconverse@steptoe.com
kgalvani@steptoe.com
*Attorneys for Healthsouth Valley of the*
*Sun, L.P., Healthsouth Rehabilitation*
*Institute of Tucson, LLC and Southern*
*Arizona Regional Rehabilitation*
*Hospital, L.P.*

Brian A. Hayles
Mark J. Horoschak
Debbie Weston Harden
**WOMBLE CARLYLE SANDRIDGE &**
**RICE PLLC**
301 South College Street, Suite 3500
Charlotte, NC 28202-6037
bhayles@wcsr.com
mhoroschak@wcsr.com
dharden@wcsr.com
*Attorneys for Bullhead City Hospital*
*Corporation, Payson Hospital*
*Corporation, Oro Valley Hospital,*
*L.L.C.,*
*Northwest Hospital, L.L.C.*

Kerry Scott Martin
**OGLETREE DEAKINS NASH SMOAK &**
**STEWART**
2415 East Camelback Road, Suite 800
Phoenix, AZ 85016
kerry.martin@ogletreedeakins.com
*Attorneys for Hospital Development of*
*West Phoenix, Inc., VHS Acquisition*
*Subsidiary Number 1, Inc., VHS*
*Acquisition Corporation,VHS of*
*Arrowhead, Inc.,VHS of Phoenix, Inc.,*
*VHS Acquisition Company Number 1,*
*L.L.C., PHC-Fort Mohave, Inc.,*
*Havasu Regional Medical Center,*
*L.L.C.,*
*Kingman Hospital, Inc.*

James P. McLoughlin, Jr.
Tonya L. Mitchell
Penny Hirsch Edwards
Charles Price
**MOORE & VAN ALLEN, P.L.L.C.**
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
jimmcloughlin@mvalaw.com
tonyamitchell@mvalaw.com
pennyedwards@mvalaw.com
Charles.Price@mwmf.com
*Attorneys for Arizona Heart Hospital,*
*LLC and AHH Management, Inc.*

Barry D. Halpern
Daniel Joseph McAuliffe
Dan W. Goldfine
**SNELL & WILMER LLP**
1 Arizona Center
400 East Van Buren
Phoenix, AZ 85004-2202
bhalpern@swlaw.com
dmcauliffe@swlaw.com
dgoldfine@swlaw.com
*Attorneys for Mayo Clinic Arizona,*
*Phoenix Children's Hospital, Inc.,*
*Scottsdale Healthcare Corporation*

Nicole Maroulakos Goodwin
**QUARLES & BRADY LLP**
1 Renaissance Square
2 North Central Avenue
Phoenix, AZ 85004-2391
ngoodwin@quarles.com
*Attorneys for Select Specialty Hospital*
*– Phoenix, Inc.and Select Specialty*
*Hospital – Arizona, Inc.*

Thomas P. Hanrahan
**SIDLEY AUSTIN LLP**
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
thanrahan@sidley.com
*Attorneys for Kindred Hospitals, West*
*LLC*

Franklin J. Hoover
**MANGUM, WALL, STOOPS &**
**WARDEN, PLLC**
100 N. Elden St.
P.O. Box 10
Flagstaff, Arizon  86002-0010
fhoover@mwswlaw.com
*Attorneys for Navajo Health*
*Foundation – Sage Memorial Hospital,*
*Inc.*

*/s/* Neill W. Clark
**Neill W. Clark**

48