David F. Sorensen (Pro Hac Vice)
Neill W. Clark (Pro Hac Vice)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile:  (215) 875-4604
dsorensen@bm.net
nclark@bm.net
**Attorneys for Plaintiffs**
*Additional Counsel on Signature Page*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cindy Johnson, Barbara A. Craig, and Stephanie L. Walker on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>Arizona Hospital and Healthcare Association et al.,<br><br>        Defendants. | No. CV07-1292-PHX-SRB |

## INDEX OF EXHIBITS

Exhibit A:    Class Settlement Agreement and Release;

Exhibit B:    Escrow Agreement;

Exhibit C:    AzHHA Class Settlement Agreement and Release;

Exhibit D:    AZHHA Escrow Agreement;

Exhibit E:    Proposed Allocation Plan By Hal J. Singer, PH.D;

Exhibit F:    Declaration of Claims Administrator;

Exhibit G:    Declaration of Stephen M. Durbin;

Exhibit H:    AzHHA Registry Usage (Jan. 1997 -- Sept. 2007);

Exhibit I:    List of Depositions;

Exhibit J:    List of Agencies Subpoenaed.

# EXHIBIT A

David F. Sorensen (Admitted *Pro Hac Vice)*
Neill W. Clark (Admitted *Pro Hac Vice*)
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4673
dsorensen@bm.net
nclark@bm.net
**Attorneys for Plaintiffs**
*Additional Counsel on Signature Page*

Attorneys for Plaintiffs
*Additional Counsel on Signature Page*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

|  |  |
|---|---|
| CINDY JOHNSON, BARBARA A. CRAIG : and STEPHANIE L. WALKER on behalf : of themselves and all others similarly : situated, : <br> Plaintiffs, : <br> : <br> vs. : <br> : <br> ARIZONA HOSPITAL AND HEALTH- : CARE ASSOCIATION; AzHHA : SERVICE CORPORATION; et al., : Defendants. : | **No. 07-1292 SRB- PHX** <br> **(consolidated case)** <br><br> **CLASS SETTLEMENT** <br> **AGREEMENT AND RELEASE** |

## CLASS SETTLEMENT AGREEMENT AND RELEASE

This Class Settlement Agreement and Release ("Settlement Agreement") is made and entered into this 3n̄ day of September, 2010 (the "Execution Date"), by and among the Defendants in this action set forth on Exhibit 1 to this Settlement Agreement (hereafter, "Settling

Defendants"), and plaintiffs Cindy Johnson, Barbara A. Craig, and Stephanie L. Walker (hereafter, collectively "Plaintiffs"), individually and as representatives of the "Settlement Classes" as defined below.

WHEREAS, Plaintiffs are the named plaintiffs in the above-captioned action (the "Litigation"), which they filed on their own behalf and on behalf of proposed classes of allegedly similarly situated temporary healthcare personnel against Settling Defendants and other defendants;

WHEREAS, on November 10, 2008, Plaintiffs filed a Consolidated Third Amended Complaint, Doc. No. 317 (the "Complaint"), alleging, among other things, that Settling Defendants, and other defendants, by and through their membership and participation in a registry operated by the Arizona Hospital and Healthcare Association and the AzHHA Service Corporation (collectively, "AzHHA") participated in an unlawful conspiracy to depress wages for temporary health care personnel by fixing below-market rates paid to agencies which placed the temporary health care personnel at hospitals in Arizona owned or operated by the Settling Defendants and other defendants and AzHHA participants. Among other things, the Complaint sought damages and other relief for alleged violations of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1; the Arizona state antitrust act, A.R.S. §44-1401, and alleged breaches of various common law duties;

WHEREAS, Settling Defendants have denied any wrongdoing whatsoever, deny Plaintiffs' allegations, have not conceded or admitted any liability, have denied that certification of any litigation class is appropriate, and have asserted affirmative and other defenses to

Plaintiffs' claims;

WHEREAS, many Defendants in the Litigation and various third-parties have produced thousands of pages of documents in discovery, and Plaintiffs have reviewed thousands of documents and conducted 13 depositions of defendants and reviewed depositions taken in *PC Healthcare Enterprises, Inc., dba Health Temp v. Arizona Hospital and Healthcare Association, et al.,* No. CV-05-1793-PHX-MHM (D. Ariz.);

WHEREAS, Plaintiffs and their counsel have conducted an investigation into the facts and the law regarding the Litigation, weighed the arguments and defenses of the Settling Defendants, and have concluded that a settlement with Settling Defendants according to the terms set forth herein is in the best interest of Plaintiffs and the Settlement Classes;

WHEREAS, Settling Defendants have decided, despite their belief that they have strong and valid defenses to the claims asserted, to enter into this Settlement Agreement in order to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, to obtain the releases, orders and judgment contemplated by this Settlement Agreement, and to put to rest, with finality, all Released Claims;

WHEREAS, extensive, arm's-length settlement negotiations have taken place between counsel for Plaintiffs and Settling Defendants, including four days of mediation facilitated by an experienced professional mediator, retired Judge Edward A. Infante, on June 29-30, 2009 and August 20-21, 2009, resulting in the basis of this Settlement Agreement;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein, it is agreed by and among the undersigned that the Litigation be settled,

compromised, and dismissed on the merits with prejudice as to Settling Defendants only, without costs except as expressly provided in this Settlement Agreement, subject to the approval of the Court, on the following terms and conditions:

A.    **Definitions**

The following terms, as used in this Settlement Agreement, have the following meanings:

1.    "Claims Administrator" or "Settlement Administrator" means RG/2 Claims Administration LLC, which shall administer the settlement.

2.    "Class Member" means each member of the Settlement Classes who does not timely and validly elect to be excluded from the Settlement Classes established under the terms of this Settlement Agreement and Release.

3.    "Class Notice" means the notice that will be provided to Class Members in the form of (a) mailed notice, in the form attached hereto as Exhibit 3 ("Mailed Notice");   (b) published notice in the form attached as Exhibit 4 ("Published Notice"); and any other notice of this Settlement Agreement as may be provided and directed by the Court.

4.    "Class Period" in the Litigation means the period from and including January 1, 1997, until September 12, 2007.

5.    "Claim Share Payment" means the payment to individual Class Members resulting from the plan of allocation and claims process to be developed by Class Counsel.

6.    "Co-Lead Class Counsel" means David F. Sorensen and the law firm of Berger & Montague, P.C., 1622 Locust Street, Philadelphia, PA 19103; and David Balto of the Law Offices of David Balto, 1350 I Street, NW, Suite 850, Washington, D.C. 20005.   "Class

Counsel" include Co-Lead Class Counsel as well as Mark Samson and the law firm of Keller Rohrback, L.L.P. 1201 Third Avenue, Suite 3200, Seattle WA, 98101; Keller Rohrback, P.L.C., 3101 North Central Avenue, Phoenix, Arizona 85012; and Allen Grunes and the law firm of Brownstein Hyatt Farber Schrek, 1350 I Street, NW, Suite 510, Washington, D.C. 20005.

7.    "Court" means the United States District Court for the District of Arizona, in which the Litigation is pending.

8.    "Defendant" means each entity named as a defendant in the Complaint.

9.    "Effective Date" means the date on which the Settlement Agreement has become final as set forth in paragraph 47 below.

10.    "Escrow Account" means an account, established with the consent of Settling Defendants and subject to an agreed escrow agreement by Class Counsel and administered in accordance with the terms of this Settlement Agreement by the Escrow Agent for receipt of the Settlement Amount.  It is intended that the Escrow Account be treated as a "qualified settlement fund" ("QSF") for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1 (26 C.F.R. § 1.468B-1) and that any taxes due as a result of income earned by the Settlement Fund will be paid from the Settlement Fund.

11.    "Escrow Agent" means The Huntington National Bank, which has been appointed Escrow Agent in the Escrow Agreement dated September 3rd, 2010.

12.    "Final Judgment" means an order granting final approval of this Settlement Agreement under Rule 23(e) of the Federal Rules of Civil Procedure together with entry of the final judgment dismissing the Litigation and all claims therein against Settling Defendants on the

merits with prejudice as to all Class Members substantially in the form attached as Exhibit 9 hereto, and which is certified as a final judgment by the Court under Rule 54(b) at the time of entry or, if not so certified, then said order at such later time when a final judgment is entered by the Court that adjudicates all the claims and all of the rights and liabilities of all of the parties to the Litigation.  Notwithstanding the foregoing, the parties agree that the Court's determination of the amount of any fee to be awarded to Class Counsel, or any modification of such fees on appeal or remand, shall not affect whether a judgment or other order is deemed a Final Judgment. It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. §1651, shall be taken into account in determining when the judgment in this Litigation becomes final.

13.    "Non-Settling Defendant" means any defendant named in the Complaint, other than Settling Defendants as defined in paragraph 25.

14.    "Opt-Out" means a person who would have been a member of the Settlement Classes except for his or her timely and valid request for exclusion as set forth in the Class Notice.

15.    "Participating Hospitals" means hospitals or hospital systems that are or were members of AzHHA that used the Registry Program to purchase Per Diem Nurse Services or Traveling Nurse Services.

16.    "Per Diem Nurse Services" means those positions included in the AzHHA Registry rate sheets, for both the Northern Per Diem and Southern Per Diem portions of the AzHHA Registry program during the Class Period, as set forth in Exhibit 6 hereto.

17.     "Plaintiffs" means Cindy Johnson, Barbara A. Craig, and Stephanie L. Walker.

18.     "Registry Program" means the programs for the purchase of Per Diem Nurse Services and Traveling Nurse Services through the registry operated by AzHHA.

19.     "Released Claims" means those claims released pursuant to Paragraph 48 of this Settlement Agreement.

20.     "Releasees" shall refer jointly and severally, individually and collectively to the Settling Defendants listed on Exhibit 1 and their respective past and present parents, subsidiaries, affiliates, officers, directors, insurers, employees, agents, attorneys, servants, representatives (and the parents', subsidiaries', and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators, and assigns of each of them.

21.     "Releasors" shall refer jointly and severally, individually and collectively to Plaintiffs, the Class Members, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

22.     "Settlement Amount" is the amount of money to be paid by the Settling Defendants pursuant to this Settlement Agreement.  That amount is calculated, for each Settling Defendant other than Kindred Hospitals West, LLC ("Kindred"), by multiplying $25,000,000.00 USD by the number that represents the Settling Defendant's percentage as determined by agreement among the Settling Defendants.   The percentage share (the percentage of $25,000,000.00 USD) and the amount of money to be paid by each Settling Defendant is listed on Exhibit 2.  The amount for Kindred is $300,000.00 USD.  In exchange for the payment of the

Settlement Amount, the Settling Defendants desired, demanded, and are paying for a release from all members of the Per Diem Settlement Class and the Traveler Settlement Class, but by executing this Settlement Agreement they warrant and agree that they did not negotiate the terms of any allocation of the Settlement Amount among members of the Settlement Classes and are not conditioning their payment on any expectation of how the overall settlement amount or each individual Settling Defendant's payment is to be allocated between the two Classes and among Class members.  Each Settling Defendant agrees that proposing such allocation for approval by the Court is the sole responsibility of Class Counsel.

23.     "Settlement Classes" means all natural persons in either of the two following classes:

(a) The "Per Diem Settlement Class" is defined as:  All natural persons who have provided Per Diem Nurse Services in the state of Arizona for any Defendant or other Participating Hospital at any time from January 1, 1997, until September 12, 2007;

(b) The "Traveler Settlement Class," is defined as:  All natural persons who have provided Traveling Nurse Services in the state of Arizona for any Defendant or other Participating Hospital at any time from January 1, 1997, until September 12, 2007.

**Excluded** from both Settlement Classes are (a) Defendants and their parents, officers, directors, subsidiaries and affiliates;  (b) those natural persons whose sole activity during the Class Period was (i) working for one of the Defendants' or other Participating Hospitals' internal registries or pools and not through an agency, and/or (ii) being employed directly by one or more of the Defendants or Participating Hospitals but not working through an agency; and (c) those

natural persons whose sole activity working for one or more of the Defendants or Participating Hospitals during the Class Period was for a Defendant or other Participating Hospital which was not at that time participating in the AzHHA registry program.

24.     "Settlement Fund" means the Settlement Amount plus any interest earned on that amount.

25.     "Settling Defendants" means those entities listed in Exhibit 1 and their respective past and present parents, subsidiaries, affiliates, officers, directors, employees, attorneys and agents, and the predecessors, successors, heirs, executors, administrators, and assigns of each of them.

26.     "Tax Expenses" means any and all reasonable fees and costs due to be paid to tax preparers, tax consultants or others for determining the tax liability of the Settlement Fund.

27.     "Taxes" means any sums due to be paid to governmental taxing authorities from the Settlement Fund, including taxes, estimated taxes, interest and penalties.

28.     "Traveling Nurse Services" means those positions included in the AzHHA Registry rate sheets for the travel registry, as set forth in Exhibit 7 hereto.

29.     "Unknown Claims" means any Released Claims which any Plaintiff or Class Member does not know or suspect to exist at the time of the Releases including without limitation those which, if known by him or her, might have affected his or her decision with respect to the Settlement Agreement.  With respect to any and all claims, the parties stipulate and agree that upon final approval of the Settlement Agreement by the Court, Plaintiffs and Class Members expressly waive any and all of the provisions, rights and benefits conferred by

California Civil Code § 1542 or any law of any state or territory of the United States, or any

other state, sovereign or jurisdiction, or principle of common law which is similar, comparable,

or equivalent to California Civil Code § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

B.    **Payment**

30.       Within 30 days of entry of the order granting preliminary approval of the

Settlement Agreement, Defendants shall pay, and/or cause their insurance carriers to pay, the

portion of the Settlement Amount attributable to each of them as set forth in Paragraph 22,

above, and Exhibit 2 hereto, for the benefit of the Settlement Classes, into the Escrow Account

held and administered by the Escrow Agent.  Promptly following execution of this Settlement

Agreement, Class Counsel shall provide Settling Defendants with instructions for depositing the

Settlement Amounts into the Settlement Fund.  It is intended that the Escrow Account be treated

as a "qualified settlement fund" ("QSF") for federal income tax purposes pursuant to Treas. Reg.

§ 1.468B-1, 26 C.F.R. § 1.468B-1, and that any taxes due as a result of income earned by the

Settlement Fund will be paid from the Settlement Fund.  The Settlement Fund and any interest

earned by the Settlement Fund shall be for the benefit of the Settlement Classes, less (a) any

Court-approved award of reasonable attorneys' fees and expenses; (b) any Court-approved

Plaintiff incentive awards to Plaintiffs for serving as Class representatives; and (c) payment of

applicable taxes and costs of notice and claims processing as set forth in this Settlement Agreement; (d) other Court-approved payment. Except as provided expressly in this Settlement Agreement, the Settlement Amounts in the Settlement Fund shall be disbursed only by order of the Court or by further agreement of the parties to this Settlement Agreement.

## C.    Class Certification

31.    The Court has already certified a class in the Litigation of certain persons who have provided per diem nurse services as set forth in the Court's order. *See* Doc. No. 584. Plaintiffs shall ask the Court to modify the class definition  to conform to the definition of the Per Diem Settlement Class.

32.    As described in Paragraph 36 below, Plaintiffs shall move for certification of the Traveler Settlement Class as defined above in light of this Settlement Agreement, and appointment of Co-Lead Class Counsel as Co-Lead Class Counsel for the Traveler Settlement Class. The motion for such certification shall include the definition of the Traveler Settlement Class to be certified by the Court as set forth in this Settlement Agreement. Settling Defendants agree to stipulate to certification of a Per Diem Settlement Class and a Traveler Settlement Class as defined herein for settlement purposes only.

33.    By agreeing to a Traveler Settlement Class and a Per Diem Settlement Class, Settling Defendants are not waiving in any way any objections they may have or may have asserted to certification of any class, whether of traveler or per diem personnel, in the event that this Settlement Agreement does not become final, and the Litigation proceeds, in which event the parties will be restored to their respective positions in the Litigation as if no settlement

agreement had been reached.  Plaintiffs agree not to assert, on grounds of judicial estoppel or otherwise, that Settling Defendants' agreement to this Settlement Agreement and/or stipulation to certification of a Per Diem Settlement Class and/or a Traveler Settlement Class precludes Settling Defendants from objecting to any litigation class if this Settlement Agreement is not finally approved.

34.     Plaintiffs agree not to "opt out" of either the Per Diem Settlement Class or the Traveler Settlement Class if either is certified by the Court for settlement.

D.     **Approval of this Settlement Agreement and Dismissal of Claims**

35.     Plaintiffs shall use their best efforts to effectuate this Settlement Agreement, and shall timely seek to obtain the Court's preliminary and final approval of it.  Plaintiffs shall use their best efforts to secure the prompt, complete and final dismissal with prejudice of the Litigation as to Settling Defendants.  Settling Defendants shall use their best efforts to cooperate in the foregoing.

36.     As soon as practicable after the Execution Date, Plaintiffs shall submit to the Court a motion (i) requesting entry of an Order preliminarily approving the Settlement Agreement, (ii) to certify the Per Diem Settlement Class and the Traveler Settlement Class, (iii) authorizing dissemination of the Class Notice to both Settlement Classes and the method for, and timetable for dissemination of Class Notice as set forth in this Settlement Agreement, (iv) authorizing the payment of certain expenses specified herein from the Settlement Fund, and (v) staying all proceedings against Settling Defendants except those proceedings provided for or required by this Settlement Agreement.

37.      Within 10 days of the Settlement Agreement's filing with the Court, the Claims Administrator shall serve upon the Arizona Attorney General, the United States Attorney General, and the attorneys general of every other state, a notice of this settlement, comprised of materials designated or supplied by Settling Defendants in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.  This Settlement Agreement may be included in such notice.

38.      Plaintiffs and Settling Defendants jointly agree that it is not feasible, with the information reasonably accessible to them and within the time limits of 28 U.S.C. §1715(b), to identify which states' attorneys general (other than Arizona's) require notification.  Accordingly, the Settlement Administrator shall serve the notice specified in Paragraph 37, above, on the attorneys general of every state.  Plaintiffs and Settling Defendants also jointly agree that it is not feasible, with the information reasonably accessible to them and within the time limits of 28 U.S.C. §1715 (b), to provide, to each state's attorney general, the names of class members who reside in each state and their estimated proportionate share in the Settlement Amount. Accordingly, pursuant to 28 U.S.C. §1715 (b)(7)(B), the notice served by the claims administrator shall include a reasonable estimate of the number of class members residing in each state and the estimated proportionate share of the claims of such members to the entire Settlement Amount.

39.      Within 5 business days of the Execution Date, each of the Settling Defendants shall make available to Class Counsel, in electronic format, to the extent the information is reasonably accessible, a list of names and addresses of those Class Members known to them, and

information, where reasonably accessible, regarding the Class Members' date or dates of service and whether the service on each date was as a Per Diem or a Traveler (the "Class Notice List"). The Class Notice List shall be considered confidential and subject to the Protective Orders entered in this action, Doc. Nos. 129 and 448, provided, however, that the Claims Administrator shall retain a record of the mailings of the Class Notice for a period of six (6) years after the Effective Date.  Settling Defendants agree to exercise reasonable effort to assist in compiling names and addresses of potential Class Members so that the "best notice that is practicable under the circumstances" may be effectuated.  *See* Fed.R.Civ.P. 23(c)(2)(B).  To the extent such information is, despite the exercise of reasonable effort, unavailable, Settling Defendants agree to provide a declaration so stating.  Settling Defendants agree to bear all costs of their efforts. All other costs of notice shall be paid out of the Settlement Fund.

40.     After entry of an Order of Preliminary Approval by the Court, the Claims Administrator shall mail to each member of the Settlement Classes on the Class Notice List, as updated, by first class mail postage prepaid, the Mailed Notice attached as Exhibit 3.  If a Mailed Notice is returned as undeliverable, and the United States Postal Service ("USPS") provides a forwarding address, the Claims Administrator shall resend the Mailed Notice to the potential Class Member using the corrected address provided by the USPS.

41.     In the application for Preliminary Approval, Plaintiffs will ask the Court to include in its Order of Preliminary Approval a provision that the Claims Administrator cause to be published the Published Notice in the publications listed in Exhibit 5, so as to be published in the nearest month following Preliminary Approval as is practical.

42.     The Class Notice shall incorporate an opt-out deadline of no less than 40 days from the date the Claims Administrator anticipates completion of the latter of (a) the initial mailing of the Mailed Notice (without regard to returned envelopes), or (b) publication of Published Notice, or such other time as set by the Court. The Class Notice shall incorporate a final fairness hearing date as established by the Court which is not less than 30 days and not more than 60 days from the opt-out deadline.

43.     The Mailed Notice may include a Claim Form in a form as approved by the Court. The Published Notice shall provide information on obtaining a claim form, including through a toll-free telephone number and a website, operated by the Claims Administrator (see below).

44.     At or about the time of the mailing of the Mailed Notice, the Claims Administrator shall establish and maintain a web site on the internet, the URL of which (after it is registered and established) shall be included in the Class Notice (the "Class Settlement Web Site"). The Claims Administrator shall post on the Class Settlement Web Site at least the following items:  (i) the Class Notice; (ii) the Settlement Agreement; (iii) the Preliminary Approval Order as entered by the Court; (iv) information as to the date and time of the final approval hearing, including any changes to such hearing time or place received by the Claims Administrator at least 5 business days prior to the final approval hearing; (v) contact information for Class Counsel; (vi) notification of the deadline by which any objections to final approval of the Settlement Agreement must be filed with the Court and served on counsel for the parties; (vii) notification of Class Members' right to be represented at the final approval hearing by counsel of their own choosing, at their own expense, and the deadline for notification of any

intent to appear and request to be heard at the final fairness hearing; (viii) the Complaint; (ix) when available, Class Counsel's Plan of Allocation and any orders relating thereto; (x) when available, the Claim Form; and (xi) any other document or notification stipulated to by the parties or directed by the Court. The Class Settlement Web Site shall be maintained for a period of at least 60 days after the entry of an order approving the final distribution of the Settlement Fund.

45.     Within 10 business days after the deadline for opting out as set by the Court, the Claims Administrator shall provide Settling Defendants and Class Counsel notice of the number of Opt-Outs together with copies of all opt out letters or forms and the associated postmarked envelopes or forms.

E.     **Final Approval of the Settlement**

46.     After the expiration of Settling Defendants' right (if any) to terminate this Settlement Agreement under the provision set forth in Paragraph 58 hereof, Class Counsel and Settling Defendants shall submit a motion for final approval of the settlement to the Court, on a timetable consistent with Paragraph 42. Class Counsel shall be primarily responsible for drafting the motion.

47.     This Settlement Agreement shall become final only upon: (a) the entry by the Court of the Final Judgment, and (b) the expiration of the time for appeal or to seek permission to appeal from the Court's approval of the Settlement Agreement and entry of the Final Judgment or, if an appeal from an approval and Final Judgment is taken, the affirmance of such Final Judgment in its entirety, without substantial modification, by the court of last resort to

which an appeal of such Final Judgment may be taken, except that any modification of the Final

Judgment on appeal to which the parties agree shall not affect the finality of this Settlement

Agreement or the Effective Date. Notwithstanding the foregoing, the modification of any award

of fees or costs to Class Counsel on appeal or on remand shall not affect the finality of this

Settlement Agreement, or the Effective Date. It is agreed that neither the provisions of Rule 60

of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken

into account in determining when the judgment in this Litigation becomes final.

F.      **Release and Discharge**

48.      Upon the occurrence of the Effective Date and in consideration of the payment of

the Settlement Amount, the Releasees shall be completely released, acquitted, and forever

discharged from any and all claims, demands, actions, suits, and causes of action (including

without limitation claims under the Arizona Antitrust Act and any state or federal antitrust or

unfair competition laws, and claims under any common law theories), whether class, individual,

or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever,

including costs, expenses, penalties, and attorneys' fees that Releasors, or any one of them,

whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or

hereafter can, shall, or may have against the Releasees, whether known or unknown, relating in

any way to the conduct alleged in the Complaint prior to the Execution Date. The Released

Claims include, without limitation, all claims related to or arising out of the facts, occurrences,

transactions, or other matters alleged or which could have been alleged in the Complaint. Upon

the Effective Date, Class Members shall be forever enjoined from prosecuting Released Claims

against any Releasee.  Furthermore, in the event that Plaintiffs obtain a judgment against AzHHA at trial, Plaintiffs and Class Members shall not seek to recover AzHHA's liability against any Settling Defendant under any theory.  Released Claims do not include any claim unrelated to the conduct at issue in the Complaint, arising in the ordinary course of work, such as a claim based on allegations of personal injury, unpaid wages, overtime, worker's compensation, or breach of contract, or a claim such as discrimination on account of race, gender or age based on violations of federal or state statutes, laws or regulations not at issue in the Complaint.

G.     **The Settlement Fund**

49.     Each Class Member shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all claims released by the Releasors.  Except as provided by order of the Court, no Class Member shall have any interest in the Settlement Fund or any portion thereof.  Except as expressly provided in this Settlement Agreement, or as otherwise ordered by a court, Settling Defendants' responsibility to Class Members for any expenses, costs, damages or fees of any nature is limited to the Settlement Amount.

50.     Claim Forms will be processed by the Claims Administrator.  Settling Defendants agree to use reasonable efforts, based on their reasonably accessible records, to assist Plaintiffs and the Claims Administrator with the claims process.  If the information requested of Settling Defendants exists only in hard copy form, Settling Defendants will identify any relevant, previously-produced records by production number, or other applicable means of identification. If that information has previously been produced in hard copy form, but also exists, in whole or

in part, in a reasonably accessible electronic or computerized form, Settling Defendants agree to re-produce the information in such electronic or computerized form. If the information requested has not been previously produced, Settling Defendants agree to produce it in electronic or computerized form, where reasonably accessible, and otherwise in hard copy form. Settling Defendants will bear all costs of their efforts, which Settling Defendants agree to undertake consistent with the schedule set by the Court, including all reasonable costs associated with responding to inquires from Class Counsel or the Claims Administrator. Settling Defendants' obligations will continue until the claims process is complete. All other costs of claims processing will be paid out of the Settlement Fund.

51.     With Court approval, the Settlement Fund may be distributed to pay the following expenses as they are incurred: Taxes, Tax Expenses, charges of the Escrow Agent, and charges of the Claims Administrator including notice costs before final approval of the Settlement Agreement.

52.     Class Counsel shall be responsible for developing a plan of allocation and of claims processing for submission to the Court. Settling Defendants agree to take no position on such plan, though counsel for Settling Defendants may provide accurate factual information if asked for such information by the Court. Class Counsel intend to propose an allocation plan that allocates funds among all eligible class members who submit timely and valid claims, and in the event that there are any unclaimed and unallocated funds, to ask the Court to approve a *cy pres* award to one or more accredited nursing schools in the state of Arizona. Settling Defendants agree to stipulate to this request. Settling Defendants understand and agree that in no event shall

any unclaimed settlement funds revert or be returned to Settling Defendants, except as expressly provided for herein or as otherwise ordered by a court.

53.     Coincident with a request for final approval of the Settlement Agreement by the Court, Class Counsel may petition the Court for payment from the Settlement Fund: (1) of reasonable incentive awards to the Plaintiffs for serving as representative plaintiffs in the following amounts: $15,000 each for Barbara A. Craig and Stephanie L. Walker, and $30,000 for Cindy Johnson; and (2) an award of reasonable attorneys' fees to Class Counsel of up to 25% of the Settlement Fund, plus  reimbursement of their reasonable litigation costs and expenses (including expert witness fees, deposition costs, travel costs, and other out-of-pocket disbursements).  The award of attorneys' fees and reimbursement of litigation costs and expenses will be sought pursuant to the common fund doctrine and will be payable from the Settlement Fund in an amount determined by the Court.  Settling Defendants agree to take no position on such petitions and such requests, although counsel for Settling Defendants may provide accurate factual information if asked for such information by the Court.  If the settlement does not become effective or is rescinded for any reason, Class Counsel shall reimburse Settling Defendants or its insurers for all such monies paid out of the Settlement Fund pursuant to this paragraph.

54.     Except as otherwise provided in this Settlement Agreement, the approval of the Court shall be required prior to the distribution of any monies from the Settlement Fund, Escrow Account, or QSF Accounts.

55.     The Settlement Amount shall be invested at the recommendation of the Claims

Administrator and Class Counsel and with the consent of Settling Defendants, in fully-insured QSF Accounts. All interest earned by the Settlement Amount shall become and remain part of the Settlement Fund.

56.     The Settlement Fund shall be distributed, after the Effective Date (except as provided above), in accordance with a Plan of Allocation approved by the Court.

H.    **Rescission if this Settlement Agreement is Not Approved**

57.     If the Court declines preliminarily to approve this Settlement Agreement substantially on the terms set forth herein, or if the Court declines to finally approve the Settlement Agreement at or after the final fairness hearing substantially on the terms set forth herein or as modified by stipulation by the parties, or if the Court does not enter Final Judgment, or if such approval or Final Judgment is materially modified or otherwise not approved on appeal then any Settling Defendant and Plaintiffs shall, each in their sole discretion, have the option to rescind this Settlement Agreement in its entirety with respect to itself, or to agree to a modification of the Settlement Agreement.

58.     Simultaneously herewith, counsel for Plaintiffs and the Settling Defendants are executing a confidential "Supplemental Agreement." The Supplemental Agreement sets forth certain conditions under which: (1) the Settlement Agreement may be terminated by any Settling Defendant as to itself if a certain percentage or number of persons request exclusion from the Settlement Classes; and (2) the Settlement Agreement may be terminated by Plaintiffs in its entirety if one or more Settling Defendants, collectively representing a certain percentage of the Settlement Amount, elects to terminate the Settlement Agreement as to itself pursuant to the

Supplemental Agreement. Unless otherwise directed by the Court, the Supplemental Agreement will not be filed with the Court unless and until a dispute among the Parties concerning its interpretation or application arises. In the event of a termination of the Settlement Agreement by any Party pursuant to the Supplemental Agreement or a rescission of the Settlement Agreement by any Party pursuant to Paragraph 57, this Settlement Agreement will become null and void and of no further force or effect with respect to the terminating or rescinding Party, with the exception of Paragraphs 33, 57, 58, 59, 60 and 65.

59.　　　If this Settlement Agreement does not become effective or final or is terminated or rescinded for any reason, any and all amounts constituting the Settlement Fund less any amounts disbursed, or approved to be disbursed and which Plaintiffs are contractually bound to pay, for Class Notice, claims processing, and/or pursuant to Paragraph 51 above (together with any net interest earned, the "Net Settlement Fund"), shall be returned to each of the Settling Defendants in proportion to each Settling Defendant's payment to the Settlement Fund and this Settlement Agreement shall be deemed null and void. In such event, the Escrow Agent or Claims Administrator shall disburse the Net Settlement Fund to Settling Defendants in accordance with this Paragraph within 30 days after receipt of either (i) written notice signed by counsel for Settling Defendants or by Class Counsel stating that this Settlement Agreement has been rescinded, canceled, or terminated, or (ii) any order of the Court so directing. If this Settlement Agreement is rescinded, canceled, or terminated pursuant to this Paragraph, any obligations pursuant to this Settlement Agreement other than repayment of the Net Settlement Fund (as set forth above) shall cease immediately.

60.     Settling Defendants and Plaintiffs expressly reserve all of their respective rights to the extent that this Settlement Agreement does not become effective or if this Settlement Agreement is rescinded or terminated by Settling Defendants or Plaintiffs pursuant to the terms of this Settlement Agreement.

I.     **Taxes**

61.     Class Counsel shall be solely responsible for directing the Escrow Agent or Claims Administrator to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund.  Further, Class Counsel shall be solely responsible for directing the Escrow Agent or Claims Administrator to make any tax payments, including interest and penalties due, on income earned by the Settlement Fund. Settling Defendants shall have no responsibility to make any tax filings relating to this Settlement Agreement or the Settlement Fund, and shall have no responsibility to pay Taxes on any income earned by the Net Settlement Fund, or to pay any Taxes with respect thereto unless the settlement is not consummated and the Settlement Fund is returned to Settling Defendants.  If for any reason, for any period of time, any Settling Defendant is required to pay Taxes on income earned by the Settlement Fund, the Escrow Agent or Claims Administrator shall, upon written instructions from Settling Defendant with notice to Class Counsel, timely pay to Settling Defendant sufficient funds to enable it to pay all Taxes (state, federal, or other) on income earned by the applicable Settlement Funds.

62.     For the purpose of Treas. Reg. § 1.468B-1, the "Administrator" of the Escrow Accounts or QSF shall be the Claims Administrator, who shall timely and properly file or cause

to be filed on a timely basis, all tax returns necessary or advisable with respect to the Escrow Accounts or QSF.

63.     The parties to this Settlement Agreement and their counsel shall treat, and shall cause the Claims Administrator to treat, the Escrow Account or other QSF as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  The parties, their counsel, the Claims Administrator, and the Escrow Agent agree that they will not ask the Court to take any action inconsistent with the treatment of the Escrow Accounts or QSF in such manner.  In addition, the Claims Administrator and, as required, the parties shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(j)) back to the earliest permitted date.   Such elections shall be made in compliance with the procedures and requirements contained in such regulations.   It shall be the responsibility of the Claims Administrator timely and properly to prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur.  All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the Escrow Account or QSF being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

64.     The Claims Administrator shall make appropriate employee withholding and employers payroll tax deductions from such payments as required by law. The Claims Administrator shall be responsible for calculating all required or appropriate local, state and federal payroll taxes resulting from this Settlement Agreement, including without limitation

Social Security, Medicare, income and other taxes or assessments arising from distribution or allocation of the Settlement Fund to Class Members, including the employer portion of any payroll or other tax. The Claims Administrator shall withhold such taxes or assessments from any distribution or allocation, and make all required tax payments, including the employer portion of any tax obligation, from the Settlement Fund. The Claims Administrator shall assure compliance with all applicable local, state and federal statutes, rules and regulations applicable to such distributions or allocation. The Claims Administrator shall prepare and distribute all necessary or appropriate tax forms (including, without limitation, W-2 forms), and perform any customary or appropriate procedures attendant to processing or issuing such payments and forms. The Claims Administrator shall also establish an Employer Identification Number for the Settlement Fund to be used for processing payroll tax payments and forms. All payments, costs and fees made or incurred under this paragraph shall be made solely from the Settlement Fund.

J.     **Use of this Settlement Agreement**

65.     This Settlement Agreement and all negotiations, statements, and proceedings in connection herewith shall not, in any event, be construed or deemed to be evidence of an admission or concession on the part of the Plaintiffs, any Settling Defendant, any of the Releasees, any member of the Settlement Class, or any other person as an admission of liability or wrongdoing by them, or of the merit of any claim or defense, and shall not be offered into evidence in any action or proceeding (except an action or proceeding to enforce this Settlement Agreement and the settlement contemplated thereby) or be used in any way as an admission, concession or evidence of any liability or wrongdoing of any nature, and shall not be construed

or deemed to be evidence of, an admission or concession that the Plaintiffs or any other person

has or has not suffered any damage, except that the Releasees may file this Settlement

Agreement and/or the Judgment in any action that may be brought against them in order to

support a defense or counterclaim based on principles of res judicata, collateral estoppel, release,

good faith settlement, judgment bar or reduction or any other similar theory of claim preclusion

or issue preclusion or similar defense or counterclaim.

K.    **Judgment Sharing Agreement**

66.      Settling Defendants are parties to a Judgment Sharing Agreement ("JSA") in the

Litigation.  Plaintiffs agree that if they obtain a final judgment against any Defendants in the

Litigation, any amount that Plaintiffs may ultimately be entitled to collect pursuant to a Final

Judgment from any parties to the JSA that are not parties to this Settlement Agreement shall be

reduced in an amount calculated as follows: (a) to the extent the amounts paid by the Settling

Defendants are offsets that were deducted in determining the Final Judgment Amount, those

amounts shall be added to the Final Judgment Amount to determine a Gross Judgment Amount;

(b) the Gross Judgment Amount shall then be multiplied by the fractional share that the settling

party would have had under Sections 3.4 through 3.6 of the JSA (if it had not settled and was a

sharing party) to obtain a Judgment Reduction Amount.  In the event there is more than one

settling party, a Judgment Reduction Amount shall be calculated in this manner separately for

each settling party;  (c) the Judgment Reduction Amount -- or the sum of all such Judgment

Reduction Amounts if there is more than one settling party -- shall then be subtracted from the

Gross Judgment Amount to obtain an Adjusted Judgment Amount;  (d) the amount that Plaintiffs

shall be entitled to collect from the parties to the JSA that did not settle with Plaintiffs shall not exceed the Adjusted Judgment Amount less payments by any judgment debtor or judgment debtors that are not parties to the JSA. The sum of the fractional shares that each Settling Defendant would have had pursuant to Sections 3.4 through 3.6 of the JSA (if those Settling Defendants had not settled) is set forth in Exhibit 8. The express purpose of this reduction required by the JSA is to ensure that the total amount that the non-settling Defendants may in the future become obligated to pay in satisfaction of any Final Judgment shall not be greater than the amount they would have been obligated to pay in satisfaction of a Final Judgment under the JSA if there had been no settlement between Plaintiffs and the Settling Defendants. Capitalized terms in this paragraph 66 have the same meaning that they have in the JSA.

67.    The following are express, intended third-party beneficiaries of Paragraph 66 above: Hospital Development of West Phoenix, Inc., VHS Acquisition Company Number 1, LLC, VHS Acquisition Corporation, VHS Acquisition Subsidiary Number 1, Inc., VHS of Arrowhead, Inc., and VHS of Phoenix, Inc. (collectively, "Abrazo").

68.    Plaintiffs, however, are not conceding or agreeing that, in the event that a judgment is entered in the Litigation after trial against any Non-Settling Defendant on any basis other than joint and several liability, that any such judgment is or would be subject to any reduction of any kind pursuant to or as a consequence of the JSA or this Settlement Agreement. Except as agreed to herein, Plaintiffs also are not hereby waiving any arguments they might otherwise have in response to positions any Non-Settling Defendant may take regarding the interpretation and application of the JSA and this Settlement Agreement.

L.    **Cooperation**

69.    As this Settlement Agreement does not include all Defendants, the Settling Defendants agree to continue to provide limited discovery to Plaintiffs, including reasonable efforts to provide: (a) production of any documents and data that have already been collected and are ready for production or could be produced with relatively little additional effort; (b) assistance, if requested, in providing the foundation for the admissibility of documents and deposition testimony at trial, including providing affidavits and live testimony as required; (c) information, in admissible form, regarding the number of hospitals beds owned or operated or formerly owned or operated by year from 1995 forward; (d) information in an admissible form regarding usage (in hours and dollars and by position) of the AzHHA Registry (per diem and travel) from 1995 forward; (e) information in an admissible form regarding the dates of participation in the AzHHA Registry (per diem and travel); and (f) such other reasonable "clean up" discovery, such as providing legible copies of documents, supplying missing attachments to email, and the like, and copies of AzHHA registry contracts and agreements, as may be requested. Settling Defendants also agree that, from and after the date of this Settlement Agreement, each Settling Defendant shall provide to the Plaintiffs equivalent cooperation as set forth in Section 5.9 of the JSA,[1] and any and all cooperation, information, documents, data, testimony, witness access, etc. that any such Settlement Defendant provides to any non-settling Defendant in this matter.  Nothing herein obligates any Settling Defendant to provide Plaintiffs

---

[1] That section provides that: "Continuing Cooperation.  Settling Parties shall continue to cooperate with the non-settling Parties in the defense of the Action, including providing factual information and making one or more witnesses available for live testimony at any trial of the Action as may be reasonably requested by any non-settling Party.  The costs incurred in providing any such factual information and making such witnesses available shall be paid by the non-settling Parties requesting such information and witnesses."

with any information that such Settling Defendants had previously provided to any Non-Settling Defendant that would not otherwise be called for by this Settlement Agreement. Plaintiffs, however, retain all discovery rights under the Federal Rules and applicable law against any Non-Settling Defendant. Plaintiffs agree that upon conclusion of this Litigation, by settlement or otherwise, against all parties who are named as Defendants as of the date of this Settlement Agreement, Settling Defendants shall have no further discovery obligations arising from this Settlement Agreement, other than any that may arise from proceedings relating to enforcement or adjudication of the Settlement Agreement itself, including pursuant to Paragraph 70.

M.   **Prospective Relief**

70.       Settling Defendants shall not participate in, or establish, a program similar to the Registry Program for obtaining temporary nursing services unless such program operates in compliance with Section 1 of the Sherman Act, 15 U.S.C. § 1, the Arizona state antitrust act, A.R.S. § 44-1401, and the limitations imposed by the final judgment entered in *United States of America and the State of Arizona v. Arizona Hospital and Healthcare Association and AzHHA Service Corporation*, No. CV 07-1020-PHX (D. Ariz.), on September 12, 2007. Settling Defendants specifically agree that Plaintiffs or any other Class Member may bring an action in this Court to seek to enforce compliance with this Paragraph, and, in that event, Settling Defendants agree to expedite the proceedings, including agreeing to stipulate to a request by Plaintiffs or other Class Member for a hearing within 14 days of any complaint or other similar pleading being filed with the Court, for the purpose of seeking a temporary restraining order, injunction, or other similar relief to enforce this Paragraph. Settling Defendants also agree to

expedited discovery, if requested. Settling Defendants also agree that, in the event the Court finds any Settling Defendant to be in breach of this paragraph, such Settling Defendant shall pay Plaintiffs, or other Class Member, their reasonable attorneys' fees, costs and expenses, in addition to any other relief awarded by the Court. The Parties agree that this paragraph shall remain in effect for seven years after the Effective Date.

N.    **Miscellaneous**

71.    This Settlement Agreement including its Exhibits, the Escrow Agreement, and Supplemental Agreement constitute the entire agreement among Plaintiffs and Settling Defendants pertaining to the settlement of the Litigation against Settling Defendants only and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and Settling Defendants in connection therewith.   No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any party hereto to any other party concerning the subject matter hereof.   This is an integrated agreement.   This Settlement Agreement may be modified or amended only by a writing executed by Class Counsel and Settling Defendants and approved by the Court.

All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of Arizona without regard to its choice of law or conflict of law principles.

72.    The United States District Court for the District of Arizona shall retain exclusive jurisdiction over all matters relating to the implementation and enforcement of the Settlement Agreement.

73.    Neither Settling Defendants nor Plaintiffs, nor any of them, shall be considered to

be the drafter of this Settlement Agreement, or any of their provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Settlement Agreement.

74.     Nothing expressed or implied in this Settlement Agreement (other than as set forth in Paragraph 67 above) is intended to or shall be construed to confer upon or give any person or entity other than Plaintiffs, Class Members, Settling Defendants, Releasors, and Releasees any right or remedy under or by reason of this Settlement Agreement.

75.     Where this Settlement Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document shall be provided by email, facsimile or letter by overnight delivery at the address reflected on the signature pages, with notice to be considered received on the day of receipt; provided, however, that any notice of non-delivery shall cause such notice to be invalid.

76.     This Settlement Agreement may be executed in counterparts by Plaintiffs and Settling Defendants, and a facsimile or emailed image of a signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

77.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement, by and on behalf of his or her respective clients.


IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement, including Exhibits 1 through 9, as of the date first herein written above.

**BERGER & MONTAGUE, P.C.**

By: _____
David F. Sorensen
Neill W. Clark
1622 Locust Street
Philadelphia, PA 19103
Tel: 215-875-3000
Fax: 215-875-4604

LAW OFFICES OF DAVID BALTO

By: _____
David Balto
1350 I Street, NW
Suite 850
Washington, D.C. 20005-3355
Tel: 202-577-5424
Fax: 202-333-4186

KELLER ROHRBACK, P.L.C.

By: _____
Mark Samson
Ron Kilgard
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: 602-230-6324
Fax: 602-230-6350

KELLER ROHRBACK, L.L.P.

By: _____
Lynn L. Sarko
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: 206-623-1900
Fax: 206-623-3384

-32-

**BROWNSTEIN HYATT FARBER
SCHRECK, LLP**

By: _____

    Allen P. Grunes
    1350 I Street, NW
    Suite 510
    Washington, D.C. 20005-3355
    Tel: 202-296-7353
    Fax: 202-296-7009

**Attorneys for Plaintiffs**


**MOORE & VAN ALLEN, PLLC**

By: _____

    James P. McLoughlin, Jr.
    Penny Hirsch Edwards
    Tonya L. Mitchell
    100 North Tryon Street, Suite 4700
    Charlotte, North Carolina 28202
    Tel: (704) 331-1000
        and

**MARISCAL WEEKS MCINTYRE &
FRIEDLANDER P.A.**

    Charles S. Price
    2901 North Central Avenue, Suite 200
    Phoenix, AZ 85012-2705
    Tel: (602) 285-5000

Attorneys for Defendants AHH Management
Inc. and Arizona Heart Hospital LLC

- 33 -

PERKINS COIE BROWN & BAIN P.A.

By: _Joel W. Nomkin_

        Joel W. Nomkin
        Jessica L. Everett-Garcia
        Michael T. Liburdi
        Jill L. Ripke
        2901 North Central Avenue, Suite 2000
        Phoenix, AZ 85012-2788
        Tel: (602) 351-8000
Attorneys for Defendants Banner Health and
Sun Health Corporation


**WOMBLE CARLYLE SANDRIDGE &
RICE, PLLC**

By:_____

        Mark J. Horoschak
        Debbie Weston Harden
        Brian A. Hayles
        301 South College Street, Suite 3500
        Charlotte, NC 28202-6037
        Tel: (704) 331-4900
                and
**FENNEMORE CRAIG, P.C.**
        Timothy J. Burke
        Jamie A. Brown
        3003 North Central Avenue, Suite 2600
        Phoenix, AZ 85012
        Tel: (602) 916-5000
Attorneys for Defendants Bullhead City
Hospital Corporation, Northwest Hospital
L.L.C., Oro Valley Hospital, L.L.C., and
Payson Hospital Corporation

PERKINS COIE BROWN & BAIN P.A.

By:_____
      Joel W. Nomkin
      Jessica L. Everett-Garcia
      Michael T. Liburdi
      Jill L. Ripke
      2901 North Central Avenue, Suite 2000
      Phoenix, AZ 85012-2788
      Tel: (602) 351-8000
Attorneys for Defendants Banner Health and
Sun Health Corporation


WOMBLE CARLYLE SANDRIDGE &
RICE, PLLC

By:_____
     Mark J. Horoschak
      Debbie Weston Harden
      Brian A. Hayles
      301 South College Street, Suite 3500
      Charlotte, NC 28202-6037
      Tel: (704) 331-4900
        and
FENNEMORE CRAIG, P.C.
      Timothy J. Burke
      Jamie A. Brown
      3003 North Central Avenue, Suite 2600
      Phoenix, AZ 85012
      Tel: (602) 916-5000
Attorneys for Defendants Bullhead City
Hospital Corporation, Northwest Hospital
L.L.C., Oro Valley Hospital, L.L.C., and
Payson Hospital Corporation

LEWIS, RICE & FINGERSH, L.C.

By: _____
     Winthrop B. Reed, III
     Allen S. Boston
     Richard B. Walsh, Jr.
     David B. Helms
     Stephen M. Durbin
     600 Washington, Suite 2500
     St. Louis, MO 63101
     Tel: (314) 444-7600
         and

RYLEY CARLOCK & APPLEWHITE PC

     One North Central Avenue, Suite 1200
     Phoenix, Arizona 85004-4417
     Tel: (602) 258-7701
Attorneys for Defendant Carondelet Health
Network


FENNEMORE CRAIG, P.C.

By: _____
     Timothy J. Burke
     Jamie A. Brown
     3003 North Central Avenue, Suite 2600
     Phoenix, AZ 85012
     Tel: (602) 916-5000
Attorneys for Defendant Catholic Healthcare
West

LEWIS, RICE & FINGERSH, L.C.

By:_____
       Winthrop B. Reed, III
       Allen S. Boston
       Richard B. Walsh, Jr.
       David B. Helms
       Stephen M. Durbin
       600 Washington, Suite 2500
       St. Louis, MO 63101
       Tel: (314) 444-7600
          and

RYLEY CARLOCK & APPLEWHITE PC
       Robert J. Pohlman
       One North Central Avenue, Suite 1200
       Phoenix, Arizona 85004-4417
       Tel: (602) 258-7701
Attorneys for Defendant Carondelet Health
Network

FENNEMORE CRAIG, P.C.

By:_____
       Timothy J. Burke
       Jamie A. Brown
       3003 North Central Avenue, Suite 2600
       Phoenix, AZ 85012
       Tel: (602) 916-5000
Attorneys for Defendant Catholic Healthcare
West

HUNTER, HUMPHREY & YAVITZ, PLC

By: _____
      Randy S. Yavitz
      2633 East Indian School Rd., Suite 440
      Phoenix, AZ 85016
      Tel: (602) 275-7733
Attorneys for Defendants Cobre Valley
Community Hospital and Brim Healthcare


STEPTOE & JOHNSON LLP

By: _____
      Lawrence A. Katz
      P. Bruce Converse
      Kami S. Galvani
      Collier Center
      201 East Washington Street, Suite 1600
      Phoenix, AZ 85004-2382
      Tel: (602) 257-5200
Attorneys for Defendant Healthsouth Valley of
the Sun, L.P., Healthsouth Rehabilitation
Institute of Tucson, L.L.C., and Southern
Arizona Regional Rehabilitation Hospital, L.P.

HUNTER, HUMPHREY & YAVITZ, PLC

By: _____
      Randy S. Yavitz
      2633 East Indian School Rd., Suite 440
      Phoenix, AZ 85016
      Tel: (602) 275-7733
Attorneys for Defendants Cobre Valley
Community Hospital and Brim Healthcare


STEPTOE & JOHNSON LLP

By: _P. Bruce Converse_____
      Lawrence A. Katz
      P. Bruce Converse
      Kami S. Galvani
      Collier Center
      201 East Washington Street, Suite 1600
      Phoenix, AZ 85004-2382
      Tel: (602) 257-5200
Attorneys for Defendant Healthsouth Valley of
the Sun, L.P., Healthsouth Rehabilitation
Institute of Tucson, L.L.C., and Southern
Arizona Regional Rehabilitation Hospital, L.P.

OSBORN MALEDON, P.A.

By: _____
     David B. Rosenbaum
     Ronda R. Fisk
     2929 North Central Avenue, Suite 2100
     Phoenix, AZ 85012-2793
     Tel: (602) 640-9000
        and
ROPES & GRAY LLP
     Joan McPhee
     Jane E. Willis
     One International Place
     Boston, MA 02110-2624
     Tel: (617) 951-7000
Attorneys for Defendants IASIS Healthcare
Holdings, Inc., Mesa General Hospital, L.P., St.
Luke's Behavioral Hospital, L.P., and St.
Luke's Medical Center, L.P.


MARISCAL, WEEKS, MCINTYRE &
FRIEDLANDER, P.A.

By: _____
     Andrew L. Pringle
     2901 North Central Avenue, Suite 200
     Phoenix, AZ 85012-2705
     Tel: (602) 285-5000
Attorneys for Defendant John C. Lincoln Health
Network

OSBORN MALEDON, P.A.

By:_____

David B. Rosenbaum
Ronda R. Fisk
2929 North Central Avenue, Suite 2100
Phoenix, AZ 85012-2793
Tel: (602) 640-9000
and

ROPES & GRAY LLP

Joan McPhee
Jane E. Willis
One International Place
Boston, MA 02110-2624
Tel: (617) 951-7000

Attorneys for Defendants IASIS Healthcare
Holdings, Inc., Mesa General Hospital, L.P., St.
Luke's Behavioral Hospital, L.P., and St.
Luke's Medical Center, L.P.


MARISCAL, WEEKS, MCINTYRE &
FRIEDLANDER, P.A.

By:_____

Andrew L. Pringle
2901 North Central Avenue, Suite 200
Phoenix, AZ 85012-2705
Tel: (602) 285-5000

Attorneys for Defendant John C. Lincoln Health
Network

OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.

By: _____
      L. Eric Dowell
      Kerry S. Martin
      2415 East Camelback Road, Suite 800
      Phoenix, AZ 85016
      Tel: (602) 778-3700
Attorneys for Defendants Kingman Hospital,
Inc., PHC-Fort Mohave, Inc. and Havasu
Regional Medical Center, L.L.C.


HONIGMAN MILLER SCHWARTZ &
COHN LLP

By: _____
      David A. Ettinger
      2290 First National Building
      660 Woodward Avenue
      Detroit, MI 48226-3506
      Tel: (313) 465-7000
         and
FENNEMORE CRAIG, P.C.
      Timothy J. Burke
      Jamie A. Brown
      3003 North Central Avenue, Suite 2600
      Phoenix, AZ 85012
      Tel: (602) 916-5000
Attorneys for Defendant Northern Arizona
Healthcare Corporation

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

By:_____

L. Eric Dowell
Kerry S. Martin
2415 East Camelback Road, Suite 800
Phoenix, AZ 85016
Tel: (602) 778-3700
Attorneys for Defendants Kingman Hospital, Inc., PHC-Fort Mohave, Inc. and Havasu Regional Medical Center, L.L.C.


**HONIGMAN MILLER SCHWARTZ & COHN LLP**

By:_____

David A. Ettinger
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Tel: (313) 465-7000
                    and
**FENNEMORE CRAIG, P.C.**

Timothy J. Burke
Jamie A. Brown
3003 North Central Avenue, Suite 2600
Phoenix, AZ 85012
Tel: (602) 916-5000
Attorneys for Defendant Northern Arizona Healthcare Corporation

-38-

JENNINGS STROUSS & SALMON PLC

By: _____
       Douglas Gerlach
       John C. West
       201 East Washington Street, Suite 1100
       Phoenix, AZ 85004
       Tel: (602) 262-5911
Attorneys for Defendant Regional Care Service
Corporation


MANGUM WALL STOOPS & WARDEN
PLLC

By: _____
       Franklin J. Hoover
       P.O. Box 10
       Flagstaff, AZ  86002-0010
       Tel: (928) 779-6951
Attorneys for Defendant Navajo Health
Foundation-Sage Memorial Hospital, Inc.


QUARLES & BRADY LLP

By: _____
       Nicole M. Goodwin
       Two North Central Avenue
       Renaissance One
       Phoenix, AZ 85004-2391
       Tel: (602) 229-5200
Attorneys for Defendants Select Specialty
Hospital – Arizona, Inc. and Select Specialty
Hospital – Phoenix, Inc.

JENNINGS STROUSS & SALMON PLC

By:_____
      Douglas Gerlach
      John C. West
      201 East Washington Street, Suite 1100
      Phoenix, AZ 85004
      Tel: (602) 262-5911
Attorneys for Defendant Regional Care Service
Corporation


MANGUM WALL STOOPS & WARDEN
PLLC

By:_____
      Franklin J. Hoover
      P.O. Box 10
      Flagstaff, AZ 86002-0010
      Tel: (928) 779-6951
Attorneys for Defendant Navajo Health
Foundation-Sage Memorial Hospital, Inc.


QUARLES & BRADY LLP

By:_____
      Nicole M. Goodwin
      Two North Central Avenue
      Renaissance One
      Phoenix, AZ 85004-2391
      Tel: (602) 229-5200
Attorneys for Defendants Select Specialty
Hospital – Arizona, Inc. and Select Specialty
Hospital – Phoenix, Inc.

**JENNINGS STROUSS & SALMON PLC**

By:_____

      Douglas Gerlach
      John C. West
      201 East Washington Street, Suite 1100
      Phoenix, AZ 85004
      Tel: (602) 262-5911
Attorneys for Defendant Regional Care Service
Corporation


**MANGUM WALL STOOPS & WARDEN
PLLC**

By:_____

      Franklin J. Hoover
      P.O. Box 10
      Flagstaff, AZ  86002-0010
      Tel: (928) 779-6951
Attorneys for Defendant Navajo Health
Foundation-Sage Memorial Hospital, Inc.


**QUARLES & BRADY LLP**

By:_____

      Nicole M. Goodwin
      Two North Central Avenue
      Renaissance One
      Phoenix, AZ 85004-2391
      Tel: (602) 229-5200
Attorneys for Defendants Select Specialty
Hospital – Arizona, Inc. and Select Specialty
Hospital – Phoenix, Inc.

POLSINELLI SHUGHART PC

By: _____

Dennis Palmer
120 West 12th Street, Suite 1700
Kansas City, MO 64105
Tel: (816) 421-3355
and
Kelly J. Flood
Brian M. Flaherty
Security Title Plaza
3636 North Central Avenue, Suite 1200
Phoenix, AZ 85012
Tel: (602) 650-2000

Attorneys for Defendants Summit Healthcare
Association and University Physicians
Healthcare


JONES DAY

By:_____

Jeffrey A. LeVee
Catherine T. Broderick
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Tel: (213) 489-3939
and

CAMPBELL YOST CLARKE & NORELL
PC

Jeffrey J. Campbell
101 North First Avenue, Suite 2500
Phoenix, AZ 85003
Tel: (602) 322-1600

Attorneys for Defendant TMC Healthcare

POLSINELLI SHUGHART PC

By:_____

      Dennis Palmer
      120 West 12th Street, Suite 1700
      Kansas City, MO 64105
      Tel: (816) 421-3355
            and
      Kelly J. Flood
      Brian M. Flaherty
      Security Title Plaza
      3636 North Central Avenue, Suite 1200
      Phoenix, AZ 85012
      Tel: (602) 650-2000
Attorneys for Defendants Summit Healthcare
Association and University Physicians
Healthcare


JONES DAY

By:_____
      Jeffrey A. LeVee
      Catherine T. Broderick
      555 South Flower Street, 50th Floor
      Los Angeles, CA 90071
      Tel: (213) 489-3939
            and
CAMPBELL YOST CLARKE & NORELL
PC
      Jeffrey J. Campbell
      101 North First Avenue, Suite 2500
      Phoenix, AZ 85003
      Tel: (602) 322-1600
Attorneys for Defendant TMC Healthcare

- 40 -

**SONNENSCHEIN NATH & ROSENTHAL LLP**

By:_____
  Katherine T. Funk
  Teisha C. Johnson
  1301 K Street N.W., Suite 600,
  East Tower
  Washington, DC 20005
  Tel: (202) 408-6400
    and

**LEWIS & ROCA LLP**
  Randall Papetti
  40 North Central Avenue, Suite 1900
  Phoenix, AZ 85004-4429
  Tel:  (602) 262-5311
Attorneys for Defendant University Medical
Center Corporation


**GAMMAGE & BURNHAM PLC**

By:_____
  James A. Craft
  Two North Central Avenue, 18th Floor
  Phoenix, AZ 85004
  Tel: (602) 256-0566
Attorneys for Defendant Yuma Regional
Medical Center, Inc.


**SCOTTSDALE HEALTHCARE CORP.**

By:_____
  Alan B. Kelly, Esq.
  LL.M in Trial Advocacy
  Tel: (480) 882-4007
 Senior Vice President & General
Counsel  Scottsdale Healthcare Corp.

- 41 -

SONNENSCHEIN NATH & ROSENTHAL
LLP

By:_____
      Katherine I. Funk
      Teisha C. Johnson
      1301 K Street N.W., Suite 600,
      East Tower
      Washington, DC 20005
      Tel: (202) 408-6400
          and

**LEWIS & ROCA LLP**
      Randall Papetti
      40 North Central Avenue, Suite 1900
      Phoenix, AZ 85004-4429
      Tel:  (602) 262-5311
Attorneys for Defendant University Medical
Center Corporation


**GAMMAGE & BURNHAM PLC**

By:  _James A. Craft_
      James A. Craft
      Two North Central Avenue, 18th Floor
      Phoenix, AZ 85004
      Tel: (602) 256-0566
Attorneys for Defendant Yuma Regional
Medical Center, Inc.


**SCOTTSDALE HEALTHCARE CORP.**

By:_____
      Alan B. Kelly, Esq.
      LL.M in Trial Advocacy
      Tel: (480) 882-4007
   Senior Vice President & General
Counsel  Scottsdale Healthcare Corp.

**SONNENSCHEIN NATH & ROSENTHAL LLP**

By:_____
     Katherine I. Funk
     Teisha C. Johnson
     1301 K Street N.W., Suite 600,
     East Tower
     Washington, DC 20005
     Tel: (202) 408-6400
          and
**LEWIS & ROCA LLP**
     Randall Papetti
     40 North Central Avenue, Suite 1900
     Phoenix, AZ 85004-4429
     Tel: (602) 262-5311
Attorneys for Defendant University Medical
Center Corporation


**GAMMAGE & BURNHAM PLC**

By:_____
     James A. Craft
     Two North Central Avenue, 18th Floor
     Phoenix, AZ 85004
     Tel: (602) 256-0566
Attorneys for Defendant Yuma Regional
Medical Center, Inc.


**SCOTTSDALE HEALTHCARE CORP.**

By:_____
     Alan B. Kelly, Esq.
     LL.M in Trial Advocacy
     Tel: (480) 882-4007
Senior Vice President & General
Counsel  Scottsdale Healthcare Corp.


- 41 -

**PHOENIX CHILDREN'S HOSPITAL, INC.**

By:  _____

      Robert L. Meyer, President and CEO
      Phoenix Children's Hospital
      1919 E. Thomas Road
      Building C, Suite 2360
      Phoenix, AZ 85016

**MAYO CLINIC ARIZONA**

By:  _____

      Victor F. Trastek, M.D.
      Vice President, Mayo Clinic
      CEO for Mayo Clinic in Arizona
      13400 E. Shea Boulevard
      Scottsdale, AZ  85259

**BROENING OBERG WOODS & WILSON**

By:  _____

      James R. Broening
      Robert T. Sullivan
      P.O. Box 20527
      Phoenix, AZ 85036
      Tel: (602) 271-7700
Attorneys for Sierra Vista Regional Health
Center

**SIDLEY AUSTIN LLP**

By:  _____

      Thomas P. Hanrahan
      T. John Fitzgibbons
      555 West Fifth Street, Suite 4000
      Los Angeles, CA 90013

**PHOENIX CHILDREN'S HOSPITAL, INC.**

By:_____
      Robert L. Meyer,  President and CEO
      Phoenix Children's Hospital
      1919 E. Thomas Road
      Building C, Suite 2360
      Phoenix, AZ 85016


**MAYO CLINIC ARIZONA**

By:_____
      Victor F. Trastek, M.D.
      Vice President, Mayo Clinic
      CEO for Mayo Clinic in Arizona
      13400 E. Shea Boulevard
      Scottsdale, AZ  85259


**BROENING OBERG WOODS & WILSON**

By:_____
      James R. Broening
      Robert T. Sullivan
      P.O. Box 20527
      Phoenix, AZ 85036
      Tel: (602) 271-7700
Attorneys for Sierra Vista Regional Health
Center


**SIDLEY AUSTIN LLP**

By:_____
      Thomas P. Hanrahan
      T. John Fitzgibbons
      555 West Fifth Street, Suite 4000
      Los Angeles, CA 90013

**PHOENIX CHILDREN'S HOSPITAL, INC.**

By:_____
       Robert L. Meyer, President and CEO
       Phoenix Children's Hospital
       1919 E. Thomas Road
       Building C, Suite 2360
       Phoenix, AZ 85016


**MAYO CLINIC ARIZONA**

By:_____
       Victor F. Trastek, M.D.
       Vice President, Mayo Clinic
       CEO for Mayo Clinic in Arizona
       13400 E. Shea Boulevard
       Scottsdale, AZ 85259


**BROENING OBERG WOODS & WILSON**

By:_____
       James R. Broening
       Robert T. Sullivan
       Jon L. Phelps
       P.O. Box 20527
       Phoenix, AZ 85036
       Tel: (602) 271-7700
Attorneys for Sierra Vista Regional Health
Center


**SIDLEY AUSTIN LLP**

By:_____
       Thomas P. Hanrahan
       T. John Fitzgibbons
       555 West Fifth Street, Suite 4000
       Los Angeles, CA 90013

- 42 -

**PHOENIX CHILDREN'S HOSPITAL, INC.**

By:_____
    Robert L. Meyer,  President and CEO
    Phoenix Children's Hospital
    1919 E. Thomas Road
    Building C, Suite 2360
    Phoenix, AZ 85016


**MAYO CLINIC ARIZONA**

By:_____
    Victor F. Trastek, M.D.
    Vice President, Mayo Clinic
    CEO for Mayo Clinic in Arizona
    13400 E. Shea Boulevard
    Scottsdale, AZ  85259


**BROENING OBERG WOODS & WILSON**

By:_____
    James R. Broening
    Robert T. Sullivan
    P.O. Box 20527
    Phoenix, AZ 85036
    Tel: (602) 271-7700
Attorneys for Sierra Vista Regional Health
Center


**SIDLEY AUSTIN LLP**

By:_____
    Thomas P. Hanrahan
    T. John Fitzgibbons
    555 West Fifth Street, Suite 4000
    Los Angeles, CA 90013

Tel: (213) 896-6000
Attorneys for Defendant Kindred Hospitals
West, LLC

**Exhibit 1**
**Settling Defendants**

AHH Management Inc.

Arizona Heart Hospital L.L.C.

Banner Health

Sun Health Corporation

Bullhead City Hospital Corporation

Northwest Hospital L.L.C.

Oro Valley Hospital, L.L.C.

Payson Hospital Corporation

Carondelet Health Network

Catholic Healthcare West

Brim Healthcare – Cobre Valley Community Hospital

Healthsouth Valley of the Sun, L.P.

Healthsouth Rehabilitation Institute of Tucson, L.L.C.

Southern Arizona Regional Rehabilitation Hospital, L.P.

IASIS Healthcare Holdings, Inc.

Mesa General Hospital, L.P.

St. Luke's Behavioral Hospital, L.P.

St. Luke's Medical Center, L.P.

John C. Lincoln Health Network

Kingman Hospital, Inc.

Havasu Regional Medical Center, L.L.C.

PHC-Fort Mohave, Inc.

Northern Arizona Healthcare Corporation

Regional Care Service Corporation

Navajo Health Foundation-Sage Memorial Hospital, Inc.

Select Specialty Hospital – Arizona, Inc.

Select Specialty Hospital – Phoenix, Inc.

Summit Healthcare Association

University Physicians Healthcare

TMC Healthcare

University Medical Center Corporation

Yuma Regional Medical Center, Inc.

Phoenix Children's Hospital, Inc.

Scottsdale Healthcare Corp.

Mayo Clinic Arizona

Sierra Vista Regional Health Center

Kindred Hospitals West, L.L.C.

| Exhibit 2: Settling Defendant Shares | | |
|---|---|---|
| **Settling Defendant(s)** | **Combined Percentage** | **Allocations assuming 25M settlment (in millions)** |
| AHH Management Inc.; Arizona Heart Hospital L.L.C. | 1.35% | $336,363.64 |
| Banner Health | 13.86% | $3,465,909.09 |
| Brim Healthcare - Cobre Valley Community Hospital | 0.32% | $79,545.45 |
| Bullhead City Hospital Corporation; Northwest Hospital, L.L.C.; Oro Valley Hospital, L.L.C.; and Payson Hospital Corporation | 2.22% | $554,545.45 |
| Carondelet Health Network | 9.01% | $2,252,272.73 |
| Catholic Healthcare West | 12.32% | $3,079,545.45 |
| Havasu Regional Medical Center, L.L.C.; PHC-Fort Mohave, Inc. | 0.35% | $88,636.36 |
| Healthsouth Valley of the Sun, L.P.; Healthsouth Rehabilitation Institute of Tucson, L.L.C.; Southern Arizona Regional Rehabilitation Hospital, L.P. | 1.02% | $254,545.45 |
| IASIS Healthcare Holdings, Inc.; Mesa General Hospital, L.P.; St. Luke's Behavioral Hospital, L.P.; St Luke's Medical Center, L.P. | 5.35% | $1,336,363.64 |
| John C. Lincoln Health Network | 4.91% | $1,227,272.73 |
| Kingman Hospital, Inc. | 1.35% | $336,363.64 |
| Mayo Clinic Arizona | 2.26% | $565,909.09 |
| Navajo Health Foundation-Sage Memorial Hospital, Inc. | 0.17% | $43,181.82 |
| Northern Arizona Healthcare Corporation | 2.96% | $740,909.09 |
| Phoenix Children's Hospital, Inc. | 2.05% | $511,363.64 |
| Regional Care Services Corporation | 1.12% | $279,545.45 |
| Scottsdale Healthcare Corp. | 1.42% | $354,545.45 |
| Select Specialty Hospital - Arizona, Inc.; Select Specialty Hospital - Phoenix, Inc. | 0.74% | $184,090.91 |
| Sierra Vista Regional Health Center | 0.20% | $50,000.00 |
| Summit Healthcare Association | 0.56% | $140,909.09 |
| Sun Health Corporation | 10.67% | $2,668,181.82 |
| TMC Healthcare | 6.54% | $1,634,090.91 |
| University Medical Center Corporation | 3.30% | $825,000.00 |
| University Physicians Healthcare | 2.67% | $668,181.82 |
| Yuma Regional Medical Center, Inc. | 1.12% | $279,545.45 |
| **Total** | **87.83%** | **$21,956,818.18** |

# EXHIBIT 3

# If you worked as a temporary per diem or traveling nurse at a hospital in Arizona between 1997 and 2007 and were placed there or worked through a nurse staffing agency, your rights could be affected by a lawsuit and you could get a payment from a class action Settlement.

*A federal court authorized this notice.  It is not a solicitation from a lawyer.*

- The purpose of this notice is to notify you about the existence of a Class Action Lawsuit (the "Lawsuit") and a Class Settlement Agreement and Release, dated ___ (the "Settlement") that has been reached in the Lawsuit with many hospitals in Arizona ("Settling Defendants") that participated in the Arizona Hospital and Healthcare Association ("AzHHA") Registry Program relating to  temporary per diem and travel nurse services.  The case is *Cindy Johnson, et al., v. Arizona Hospital and Healthcare Association, et al.,* Civil Action No. 07-1292.  Judge Susan R. Bolton of the United States District Court for the District of Arizona is overseeing the Lawsuit.
- The Lawsuit alleges that AzHHA and certain hospitals (collectively, "Defendants"), through the AzHHA Registry Program, illegally agreed to fix the prices the hospitals paid for temporary travel and temporary per diem nurse services obtained through outside nurse staffing agencies, including RNs, LPNs, OR Techs, and CNAs, in violation of federal and state antitrust law, and other state law.  Defendants have denied the allegations.  No trial has taken place.
- This Notice is to inform you of the Lawsuit and Settlement, explain your rights and options, and explain how you can obtain more information.
- You received this Notice because, according to available records, you may be a member of one or both classes certified by the Court in this case.  The two classes are: (1) all persons who, between, January 1, 1997 and September 12, 2007, provided temporary per diem nurse services in Arizona for any Defendant or other hospital that participated in the AzHHA Registry Program, and who were placed there through an outside nurse staffing agency (the "Per Diem Settlement Class"); and (2) for settlement purposes only, all persons who, between, January 1, 1997 and September 12, 2007, provided temporary travel nurse services in Arizona for any Defendant or other hospital that participated in the AzHHA Registry Program, and who were placed there through an outside nurse staffing agency (the "Traveler Settlement Class").  Some people may be members of both classes, if they qualify for both.  The classes, and who is and who is not included, are described further below in Question 6.
- The Court has scheduled a hearing to decide upon Final Approval of the Settlement, the plan for allocating the Settlement Fund to class members (summarized in Questions 11

and 12 below), and Class Counsel's request for reimbursement of costs and expenses and award of attorney's fees. That hearing is scheduled for ____(**insert hearing date**)_____ before U.S. District Judge for the District of Arizona Susan R. Bolton in Courtroom ___ at the United States District Court for the District of Arizona, Sandra Day O'Connor U.S. Courthouse, 401 W. Washington Street, Phoenix, AZ 85003.

- Your legal rights are affected whether you act or don't act. Please read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT AND SETTLEMENT | |
|---|---|
| **DO NOTHING NOW SUBMIT A CLAIM FORM LATER** | You do not need to do anything now to remain a member of the classes. If you do nothing, you will keep the right to have the final outcome of the Lawsuit, whether favorable or unfavorable, apply to you. You will not, however, be able to sue the Settling Defendants separately about the same legal claims in this lawsuit. Later, if the Settlement is approved by the Court, and you are a Class Member, you will need to fill out, sign and return a Claim Form to get your share of the Settlement. |
| **EXCLUDE YOURSELF** | You can choose to exclude yourself, or "opt out" of this action. If you exclude yourself, you lose the right to share in this Settlement, and you may lose the right to participate in any future recovery that might result from a trial or Settlement of this lawsuit with the Non-Settling Defendants. If you opt out, you will not be bound by any decision in this lawsuit favorable to Defendants. If you wish to pursue any claim you may have, you would need to hire your own lawyer, at your own expense. |
| **OBJECT** | You can remain part of the Classes, and write to the Court about why you do not like the Settlement. |
| **GO TO A HEARING** | You can ask to speak to the Court about the fairness of the Settlement with the Settling Defendants. |

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ................................................................ **PAGES 4-6**
    1.   Why did I get this notice?
    2.   What is this lawsuit about?
    3.   Why is this a class action?
    4.   What has happened in the case so far?
    5.   Why is there a Settlement with Settling Defendants?

**WHO IS IN THE CLASSES AND SETTLEMENT** ....................................... **PAGE 6**
    6.   Am I part of the Classes and the Settlement with Settling Defendants?

**IF YOU DO NOTHING** ................................................................ **PAGE 7**

7.   What happens if I do nothing at all?

EXCLUDING YOURSELF FROM THE CLASSES & THE SETTLEMENT ....... PAGE 7
8.   Why would I ask to be excluded?
9.   How do I get out of the Classes?
10.  If I don't exclude myself, can I sue Defendants for the same thing later?

THE SETTLEMENT BENEFITS - WHAT YOU GET ................................. PAGE 8
11.  What does the Settlement with Settling Defendants provide?
12.  How much will my payment be?
13.  Can I get out of the Settlement?

HOW YOU GET A PAYMENT—SUBMITTING A CLAIM FORM ............... PAGE 9
14.  How can I get a payment?
15.  When would I get payment?

THE LAWYERS REPRESENTING YOU .......................................... PAGES 9-10
16.  Do I have a lawyer in this case?
17.  Should I get my own lawyer?
18.  How will Class Counsel be paid?

OBJECTING TO THE SETTLEMENT................................................. PAGE 10
19.  How do I tell the Court that I don't like the Settlement with Settling Defendants?

THE COURT'S FAIRNESS HEARING ......................................... PAGES 10-11
20.  When and where will the Court decide whether to approve the Settlement?
21.  Do I have to come to the hearing?
22.  May I speak at the hearing?

GETTING MORE INFORMATION ................................................... PAGE 11
23.  How do I get more information?

## BASIC INFORMATION

### 1. Why did I get this notice?

You received this Notice because available records show that you may have provided temporary per diem or traveling nurse services to a Defendant Hospital between January 1, 1997 and September 12, 2007, through one or more outside nurse staffing agencies, and therefore you may be a member of one, or both, classes certified by the Court.

This Notice explains the Lawsuit, the Settlement with the Settling Defendants, and the legal rights and obligations that you may exercise before the Court decides whether to approve the Settlement with the Settling Defendants or hold a trial.

### 2. What is this lawsuit about?

The Lawsuit alleges that AzHHA and the hospital Defendants, through the AzHHA Registry Program, violated the antitrust laws, and other laws, by illegally agreeing to set and suppress the prices that hospitals that participated in the Registry Program ("Participating Hospitals") paid outside nurse staffing agencies for the work of temporary per diem and temporary travel nursing personnel, including RNs, LPNs, OR Techs, BHTs, and CNAs.  The Lawsuit further alleges that AzHHA and the other Defendants set the prices at artificially low levels, causing temporary nursing personnel to be paid less than they would have been paid otherwise.

Defendants deny the allegations; deny that they have violated any laws or done anything unlawful; and deny that they have caused any damage to class members.

The Court has not decided whether Defendants violated any laws.  No trial has been held or scheduled. The Settlement is not an admission or indication of wrongdoing by Defendants of any kind.  Nor is it an admission by Plaintiffs of any kind.

The Lawsuit is known as *Cindy Johnson et al. v. Arizona Hospital and Health Care Association et al.,* Civil Action No. 07-1292.  Judge Susan R. Bolton of the United States District Court for the District of Arizona is overseeing this class action.

### 3.  Why is this a class action?

In a class action, one or more persons called "Class Representatives" sue on behalf of other persons with similar claims.  Here, there are three Class Representatives (all of whom are RNs): Cindy Johnson, Stephanie L. Walker, and Barbara Craig.  Ms. Walker and Ms. Craig have worked in Arizona as temporary travel nurses; Ms. Johnson has worked as both a temporary per diem and a temporary travel nurse.  The Class Representatives and the persons on whose behalf they have sued are together called a "Class" or "Class Members." They are also called the "Plaintiffs."  Their attorneys are called "Class Counsel."

The entities that have been sued are called the "Defendants."  There are a number of Defendants in this case: AzHHA; AHH Management, Inc., Arizona Heart Hospital, LLC, Banner Health, Brim Healthcare, Bullhead City Hospital Corporation, Carondelet Heath Network, Catholic Healthcare West, Cobre Valley Community Hospital, Havasu Regional Medical Center, LLC, HealthSouth Rehabilitation Institute of Tucson, LLC, HealthSouth Valley of the Sun LP, Hospital Development of West Phoenix, Inc., IASIS Healthcare Holdings, Inc. (General Partner of St. Luke's Medical Center, L.P. and St. Luke's Behavioral Hospital, L.P.), John C. Lincoln Health Network, Kindred Hospitals West, LLC, Kingman Hospital, Inc., Mayo Clinic Arizona, Mesa General Hospital, L.P., Navajo Health Foundation-Sage Memorial Hospital, Inc., Northern Arizona Healthcare Corporation, Northwest Hospital LLC, Oro Valley Hospital LLC, Payson Hospital Corporation, PHC-Fort Mohave, Inc., Phoenix Children's Hospital, Inc., Regional Care Services Corporation, Scottsdale Healthcare, Select Specialty Hospital - Arizona, Inc., Select Specialty Hospital - Phoenix, Inc., Sierra Vista Regional Health Center, Southern Arizona Regional Rehabilitation Hospital LP, St. Luke's Behavioral Hospital, L.P., St. Luke's Medical Center, L.P., Summit Healthcare Association, Sun Health Corporation, TMC Healthcare, University Medical Center Corporation, University Physicians Healthcare, VHS Acquisition Company Number 1, LLC, VHS Acquisition Corporation, VHS Acquisition Subsidiary Number 1, Inc., VHS of Arrowhead, Inc., VHS of Phoenix, Inc. (collectively, the "VHS entities"), and Yuma Regional Medical Center, Inc.

All of these Defendants are Settling Defendants except:  Hospital Development of West Phoenix, Inc. and the VHS entities, which are a part of Abrazo Health Care and operate Phoenix Baptist Hospital, Arrowhead Hospital, Maryvale Hospital, West Valley Hospital, and Paradise Valley Hospital and operated Phoenix Memorial Hospital before it closed. The Lawsuit will continue against these entities.

In a class action lawsuit, one court resolves the issues for everyone in the Class, except for those class members who exclude themselves from the class.  The deadline for requesting exclusion from this class action is on __(insert exclusion deadline)_____.

### 4. What has happened in the case so far?

Both sides have investigated the facts.  That is called "discovery." Over the course of nearly three years, the Plaintiffs have reviewed tens of thousands of pages of documents produced in the litigation, and taken depositions (sworn testimony) of numerous witnesses.  The Court denied Defendants' motion to dismiss, in part, on March 19, 2009, and decided that Plaintiffs had properly pled claims under: (1) Section 1 of the Sherman Act, a federal antitrust law; (2) Arizona's Uniform State Antitrust Act; and (3) unjust enrichment. The Court dismissed other state law claims.  On July 14, 2009, the Court certified a class of temporary per diem nurses and denied certification of a travel class.  Plaintiffs alleged that the  common classwide issues included : (a) whether Defendants' conduct constitutes a *per se* antitrust violation; (b) whether the anticompetitive effects of Defendants' wrongful conduct may be demonstrated directly without the need of proving a relevant market; and (c) whether, and to what extent, Defendants' conduct caused damages to Class members in the form, among others, of lower wages or compensation.  The Court agreed that common issues of law and fact exist across the Per Diem Class.

Although the Court previously denied certification of a travel class, in connection with and in light of the Settlement only, the Settling Defendants have agreed to the certification of a class of temporary travel nurses as well, and the Court has certified for settlement purposes only a class of temporary travel nurses in light of this Settlement.

### 5. Why is there a Settlement with the Settling Defendants?

The Plaintiffs and the Settling Defendants were working towards a trial, but they have now agreed to a Settlement.  The Settlement is the product of months of negotiation, and four days of settlement talks conducted by an outside mediator, a former judge. The Settlement does not mean that any law was violated or that Defendants did anything wrong. Defendants deny all legal claims in this case.  The Settlement allows both Plaintiffs and the Settling Defendants to avoid the cost of a trial, and avoid the  risk of losing at trial or on appeal, and avoid further delay.  If Plaintiffs were to lose at trial, class members would recover nothing. Without a settlement, based on the Court's previous denial of certification of a travel class, there might be no recovery at all for travel nurses. The Class Representatives and Class Counsel believe that the Settlement is in the best interests of the Classes.

## WHO IS IN THE CLASSES AND SETTLEMENT

To see if you are in one or both classes, and if you will get money from the Settlement, you first have to check to see that you are a Class Member (this Notice may have reached you in error).

## 6. Am I part of the Classes and the Settlements with the Settling Defendants?

You are in the Per Diem Class if you are a person who, between January 1, 1997 and September 12, 2007, provided temporary per diem nurse services in Arizona for any Defendant or other hospital that participated in the AzHHA Registry Program, and who was placed there through an outside nurse staffing agency. To decide whether you are in the Per Diem Class, you need to proceed through two steps:

Step 1:   Review the list, attached as Exhibit 1, of the AzHHA Participating Hospitals, and the years each hospital participated in the AzHHA Per Diem Registry. The hospitals are in alphabetical order, and hospitals that have since closed are included. Next to each hospital's name are the years it participated in the AzHHA Per Diem Registry. If you worked on a temporary, per diem basis at any of these hospitals at any time during the years listed for that hospital, and did so through an outside nurse staffing agency, you may be a Per Diem class member and you should go to Step 2.

Step 2:  Next, check if you worked in one of the positions included. The positions are listed in Exhibit 2 attached. Next to each position are the years that position was part of the Per Diem Registry. For example, RNs (both specialist and non-specialist) and LPNs were included from June 1, 1997 to September 12, 2007. If you worked, for example, as a temporary per diem RN or as a temporary per diem LPN through an outside nurse staffing agency and did so at any time from June 1, 1997 to September 12, 2007 (at one of the hospitals you identified in Step 1), you are in the Per Diem Class. Temporary per diem CNAs were also included, but from June 1, 1999 to September 12, 2007. So, for example, if you worked as a temporary per diem CNA but only in 1998, you would not be in the Per Diem Class.

You are in the Traveler Settlement Class if you are a person who, between January 1, 1997 and September 12, 2007, provided temporary travel nurse services in Arizona for any Defendant or other hospital that participated in the AzHHA Registry Program, and who was placed there through an outside nurse staffing agency.  To decide whether you are in the Traveler Settlement Class, you need to proceed through two steps:

Step 1:   Review the list, attached as Exhibit 3, of the AzHHA Participating Hospitals, and the years each hospital participated in the AzHHA Travel Registry. The hospitals are in alphabetical order, and hospitals that have since closed are included. Next to each hospital's name are the years it participated in the AzHHA Travel Registry. If you worked on a temporary, travel basis at any of these hospitals at any time during the years listed for that hospital, and did so through an outside nurse staffing agency, you may be a Traveler class member and you should go to Step 2.

Step 2:  Next, check if you worked in one of the positions included.  The positions included are listed in Exhibit 4.  Next to each position are the years that position was part of the Travel Registry.  For example, travel RNs (both specialists and non-specialist) and

travel LPNs were included from August 1, 1997 to September 12, 2007. If you worked, for example, as a travel RN or as a travel LPN through an outside nurse staffing agency and did so at any time from August 1, 1997 to September 12, 2007 (at one of the hospitals you identified in Step 1), you are in the Traveler Class. Travel CNAs were also included, but only from August 1, 1997 to July 31, 2000. So if you worked as a travel CNA in 1999 (at one of the hospitals you identified in Step 1 that was in the Travel Registry in 1999), you would be in the Traveler Class. But if you worked as a travel CNA only in 2004, you would not be in the Traveler Class.

You may be a member of both classes, if you qualify for both.

Excluded from both Classes are Defendants and their parents, officers, directors, subsidiaries and affiliates.

Remember, to be in either class you must have worked through an outside nurse staffing agency. You are not in either class if the only work you performed for a Participating Hospital, from January 1, 1997 to September 12, 2007, was for the hospital's internal pool or internal registry and not through an outside nurse staffing agency. You are not in either class if the only work you performed for a Participating Hospital from January 1, 1997 through September 12, 2007 was through direct employment by the hospital and not through an outside nurse staffing agency. You are not in either class if the only work you performed for a Participating Hospital was before January 1, 1997, or after September 12, 2007.

If you are not sure whether you are included, you may call, write or email the lawyers in this case at the telephone numbers or email addresses listed in Question 16 below. There is also a website with more information: _(insert website address)_____.

## IF YOU DO NOTHING

**7. What happens if I do nothing at all?**

If you do nothing, you will remain a class member. You will keep the right to get a share of the Settlement. If you are a member of the Per Diem Class, you will also keep the right to share in any recovery that may come from a trial or a future settlement with the Non-Settling Defendants. You will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants about the legal issues or claims in this case. All of the Court's Orders will apply to you and legally bind you. To actually obtain any payment, you will have to complete and submit a valid and timely Claim Form.

## EXCLUDING YOURSELF FROM THE CLASSES & THE SETTLEMENT

**8. Why would I ask to be excluded?**

If you do not want to be bound by any judgment, whether favorable or unfavorable, that may be made in this case, do not want a payment from this Settlement, and/or if you want

to hire you own lawyer to bring a suit for you separately, or for any other reason or for no reason, you can choose to exclude yourself from the classes. This is sometimes referred to as "opting out" of a class.

If you exclude yourself so you can start or continue your own lawsuit against Defendants, you should talk to your own lawyer soon, because your claims will be subject to a statute of limitations, which means that your claims will expire if you do not take timely action. You need to contact your own lawyer about this issue.

## 9. How do I get out of the Classes?

To exclude yourself from the Classes, you may send a letter by first class U.S. mail simply saying that you want to be excluded from *Cindy Johnson et al. v. Arizona Hospital and Health Care Association et al.,* Civil Action No.07-1292, or you may complete and return the attached form entitled "Request for Exclusion From Class Action Lawsuit And Settlement." Be sure to include your name, address, e-mail address if you have one, telephone number, and signature. You must mail your exclusion request postmarked on or before     __(insert     exclusion     deadline)____     to     _(insert     Claims     Admin Address)_____. You cannot exclude yourself by telephone, by email, or at the website.

If you ask to be excluded from the Per Diem Settlement Class, you will not get to share in the Settlement, or any other recovery that may come from trial or from a future Settlement with the Non-Settling Defendants. You will not be legally bound by anything that happens in this Lawsuit, including this Settlement, and you may be able to sue (or continue to sue) Defendants in the future about the legal issues in this case.

If you ask to be excluded from the Traveler Settlement Class, you will not get to share in the current Settlement. Because not all Defendants are settling, however, the case will continue after the Settlement. If a travel class is later certified with respect to those other Defendants, whether in light of a later settlement or by court order, you may be provided another chance to participate in such a travel class, depending on the definition of such a travel class.

If you are a member of both the Per Diem and the Travel Settlement Class, you may exclude yourself from both classes, but not just one or the other.

## 10. If I don't exclude myself, can I sue Defendants for the same thing later?

No. If you remain in the Classes and share in the Settlement, you give up your right to sue the Defendants who are settling. That is called "releasing" your claims and potential claims relating to your work as a temporary per diem or as a travel nurse. The full text of the release is included in the Settlement, which you can obtain through the website (**insert website address) _____.**

If you have your own pending lawsuit, speak to your lawyer in that case immediately, because you must exclude yourself from this Class to continue your own lawsuit. Remember the exclusion deadline is __(insert deadline date)_____.

## THE SETTLEMENT BENEFITS—WHAT YOU GET

### 11. What does the Settlement with the Settling Defendants provide?

The Settling Defendants have agreed, all together, to pay $22,476,818 into a Settlement Fund that will earn interest until it is distributed.  Class Counsel will apply to the Court for an award of reasonable attorneys' fees of up to 25% of the gross Settlement fund, and for reimbursement of costs and expenses, incentive awards to the Class Representatives totaling $60,000, and payment of notice costs and administering the Settlement.  If approved, those things will be paid from the Settlement Fund.  The remainder (the "Net Settlement Fund") will be divided among Class Members according to the Allocation Plan approved by the Court.  The Settlement also provides for other relief to prevent the alleged wrongful conduct from happening again.

The Settlement also provides that the amount the Non-Settling Defendants may ultimately be liable for, after any trial, will be reduced in light of the amount the Settling Defendants have agreed to pay.

A copy of the Settlement is available at **(insert website address)**_____.  The settlement with AzHHA is contained in a separate settlement document.  That settlement agreement is also available at **(insert website address)**.  AzHHA is contributing to the settlement and providing cooperation as well.  A copy of the current complaint is available _at **(insert website address)**_____.  A copy of the approved Allocation Plan is available at **(insert website address)**____.

### 12. How much will my payment be?

If the Court grants final approval to the Settlement, your share of the Net Settlement Fund will depend, first, on which class you are part of.  More money will go to members of the Per Diem Class than the Traveler Class because the Court previously certified a Per Diem Class to go forward to trial, but previously denied a Traveler Class.  The Settling Defendants agreed to certification of a Traveler Settlement Class in light of settlement, and the Court has certified a Traveler Settlement Class in light of settlement. But the different allocation amounts reflect the risk that, absent a settlement, no travel class would ever be certified in the face of opposition by Defendants, which would mean that temporary travel nurses would not recover anything unless they hired a lawyer, brought their own individual lawsuit, and then won at trial or obtained their own settlement.  Generally, Per Diem Class members will receive, on average, four times what Traveler Class members receive for each hour claimed.

Next, the amount you get will depend on the temporary position you filled, and for how many hours.  Temporary RNs will get more per hour  generally than LPNs, for example, because the AzHHA Registry rates were higher for RNs than LPNs.  The total number of hours you worked also will affect the amount.  Also, hours worked through agencies that

did not participate in the AzHHA program will be allocated less than hours worked through agencies that did participate.

Your share of the Net Settlement Fund will also depend on the total number of valid claim forms that Class Members submit.  The money will be distributed among all the class members submitting timely, valid claims.  If very few claims are submitted, there will be a maximum amount that anyone can receive, and the remaining money, and any money from uncashed checks, will be donated to one or more accredited nursing schools in Arizona.

The Allocation Plan is available at _**(insert website)**_____.

The benefits available under the Settlement will become available after the claims against the Settling Defendants are resolved, either through final approval of this Settlement, or after trial and any appeals or appeal rights have expired.

### 13.  Can I get out of the Settlement?

Yes, if you exclude yourself from this lawsuit on or before _____, 2010 by following the instructions in Question 9.

## HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM

### 14.  How can I get a payment?

You do not need to do anything now to keep the right to get a share of the total Settlement Fund, but to actually obtain any payment, you will have to complete and submit a valid and timely claim form.  Attached you will find a claim form.  You may complete that form and mail it to:

> Johnson v. AzHHA Settlement Administrator
> c/o RG/2 Claims Administration LLC
> P.O. Box 59479
> Philadelphia, PA 19102-9479

You may also file a claim online at www.rg2claims.com/azzha.html.  You may be asked to verify the accuracy of the information on the Claim Form.  You can obtain more copies of the form by calling 1-866-742-4955.

YOUR CLAIM FORM MUST BE POSTMARKED NO LATER THAN _____.

### 15.  When would I get payment?

Payment is conditioned on several matters, including the Court's approval of the Settlement with the Settling Defendants, and such approval being final and no longer subject to any appeals to any court.  Upon satisfaction of various conditions, the Net Settlement Fund will be allocated to Class Members pursuant to a Court-approved Plan of Allocation, as soon as possible after the Court grants final approval to the Settlement with

Settling Defendants.  Any appeal of the final approval, however, could take a year or two, or more.  Any accrued interest on the Settlement Fund will go to the Settlement Fund. The Settlement Agreement may be terminated on several grounds, including if the Court does not approve or materially modifies the Settlement, or if too many class members choose to exclude themselves.  Should the Settlement Agreement be terminated, the Settlement will be terminated and the lawsuit will proceed as if the Settlement had not been reached.

## THE LAWYERS REPRESENTING YOU

**16.  Do I have a lawyer in this case?**

The lawyers listed below have represented to the Court that they are qualified to represent you and all Class Members.  Together the law firms are called "Class Counsel."  They are experienced in handling similar cases against other companies.  The lawyers are:

David F. Sorensen
Neill W. Clark
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
www.bergermontague.com

David Balto
Law Offices of David Balto
1350 I Street, N.W.,
Suite 850
Washington, DC 20005-3355
(202) 577-5424
www.dcantitrustlaw.com

Mark Samson
Keller Rohrback, P.L.C.
3101 North Central Avenue
Suite 1400
Phoenix, AZ 85012
(602) 248-0088
www.kellerrohrback.com

Allen Grunes
Brownstein   Hyatt   Farber
Schreck, LLP
1350 I Street, Suite 510
Washington, DC 20005-3355
(202) 296-7353
www.bhfs.com

## 17. Should I get my own lawyer?

You do not need to hire your own lawyer because Class Counsel is working on your behalf. However, if you wish to do so, you may hire your own lawyer at your own expense.

## 18. How will Class Counsel be paid?

If the Court approves the Settlement, the Court will be asked to approve a fee to the lawyers of no more than 25% of the Settlement Fund, plus reimbursement to the lawyers for the expenses they have paid and/or incurred and payments of $15,000 each to Ms. Walker and Ms. Craig, and $30,000 to Ms. Johnson for serving as Class Representatives for the benefit of the classes and for their efforts in prosecuting this case, which has included, among other things, production of documents, providing written discovery responses, and being deposed for a full day each. You will not have to pay these fees and expenses. If the Court grants Class Counsels' requests, these amounts would be deducted from the Settlement Fund. Class Counsel's application for an award of attorneys' fees, reimbursement of expenses and incentive awards to the Class Representatives will be filed with the Court and made available for download and/or viewing on or before _____, 2010. You may obtain these document on the internet sites maintained by Class Counsel listed above, the website dedicated to this litigation (**insert website**), or by calling the toll free number (**insert number**) and requesting this information. These documents, and others in the case (unless they were filed under seal) will also be available at the office of the Clerk of the United States District Court for the District of Arizona, Sandra Day O'Connor U.S. Court House, 401 W. Washington Street, Phoenix, AZ 85003, during normal business hours.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement with the Settling Defendants or some part of it.

## 19. How do I tell the Court that I do not like the Settlement with the Settling Defendants?

If you are a Class Member, you can object to the Settlement if you do not like any part of it. You can explain why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter via first class U.S. mail saying that you object to *Johnson et al. v. Arizona Hospital and Healthcare Association et al.,* Civil Action No. 07-1292. Be sure to include your name, address, telephone number, your signature, and the reasons you object to the Settlement. Mail the objection no later than _____, 2010, to: (**insert short hand Name of case**) Objections, P.O. Box _____, _____(address), with a copy to Joel W. Nomkin, Perkins Coie Brown & Bain, 2901 N. Central Ave., Phoenix, AZ 85012.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement with the Settling Defendants.

## 20.  When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing at _____.m. on _____, 2010, in Courtroom ___ at the United States District Court for District of Arizona-Phoenix, Sandra Day O'Connor U.S. Court House, 401 W. Washington Street, Phoenix, AZ 85003.  At this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate. If there are objections, the Court will consider them.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take.

The Fairness Hearing may be moved to a different date or time without additional notice so it is a good idea periodically to check www._____.com for updated information.

## 21.  Do I have to come to the hearing?

No.  Class Counsel will answer questions that the Court may have.  But, you are welcome to come at your own expense.  If you send an objection, you do not have to come to Court to talk about it.  As long as you mailed your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend, but it is not necessary.  Moreover, you do not have to attend to share in the Settlement.

## 22.  May I speak at the hearing?

Class Counsel will speak on your behalf, but you may ask the Court for permission to speak at the Fairness Hearing.  To do so, you must send a letter via first class U.S. mail saying that it is your "Notice of Intention to Appear in *Johnson et al. v. Arizona Hospital and Healthcare Association et al.,* Civil Action No. 07-1292.  Be sure to include your name, address, telephone number, and your signature.  Your Notice of Intention to Appear must be postmarked no later than _____, **2010**, and must be sent to:  **(insert shorthand name of case)** Appearances, P.O. Box _____, _____(address). Please also send a copy of your Notice of Intention to Appear to Arizona District Court, Clerk of Court, Sandra Day O'Connor U.S. Courthouse, 401 W. Washington Street, Phoenix, AZ 85003.  You cannot speak at the hearing if you excluded yourself as a Class Member.

# GETTING MORE INFORMATION

## 23.  How do I get more information?

If you have questions about this case or want to get additional information, you may call or write to, or visit the websites of, any of the lawyers listed in Question 16.  In addition you may call a toll free number **(insert number)** and visit the website **(insert website) for questions.** This is only a summary of the proposed Settlement and is qualified in its entirety by the terms of the actual Settlement.  A copy of the Settlement, including the releases, is on public file with the United States District Court for the District of Arizona, Sandra Day O'Connor U.S. Courthouse, 401 W. Washington Street, Phoenix, AZ 85003, during normal business hours and is also available for download and/or viewing on the internet sites maintained by Class Counsel listed in Question 11.

## PLEASE DO NOT WRITE OR CALL THE COURT
## OR THE CLERK'S OFFICE FOR INFORMATION.

DATE: _____, 2010                BY THE COURT

                                             Honorable Susan R. Bolton

                                             United States District Judge

[COMPLETE THIS FORM *ONLY IF* YOU CHOOSE TO
NOT PARTICIPATE IN THIS LAWSUIT OR SETTLEMENT]

## REQUEST FOR EXCLUSION FROM CLASS ACTION LAWSUIT AND SETTLEMENT

Cindy Johnson, et al. v. Arizona Hospital and Healthcare Association, et al., No. 07-1292, United States District Court for the District of Arizona

INSTRUCTIONS:   TO OPT-OUT OF THE LAWSUIT AND THE  SETTLEMENT, YOU MUST COMPLETE, SIGN AND MAIL THIS FORM BY FIRST CLASS U.S. MAIL OR EQUIVALENT, POSTAGE PAID, POSTMARKED ON OR BEFORE (insert opt-out date), ADDRESSED AS FOLLOWS:

*Johnson et al., v. Arizona Hospital and Healthcare Association et al.,*
Class Action Claims Administrator
c/o RG2 Claims Administration LLC
P.O. Box (insert)
Philadelphia, PA 19102-9479
Tel. (866) 742-4955

YOU CAN ALSO FAX THIS SIGNED FORM TO -------------------------------

## IF YOU REQUEST EXCLUSION YOU ARE EXCLUDING YOURSELF FROM BOTH THE LAWSUIT AND THE SETTLEMENT

Please fill in all of the following information (type or print):

NAME (First, Middle, Last):
_____

STREET ADDRESS:_____

CITY, STATE, ZIP
CODE_____

EMAIL
ADDRESS_____

FORMER NAMES (if
any):_____

TELEPHONE NUMBERS: Home/Cell: _____   Work:
_____

Arizona Nursing license number (if you have one):
:_____

I [insert your name] _____ wish to be excluded from the Lawsuit and the Settlement Classes  in *Johnson, et al. v. Arizona Hospital and Healthcare Association, et al.,* No.

07-1292, United States District Court for the District of Arizona.  I understand that by signing this side of the form, I am voluntarily choosing to exclude myself from  the Lawsuit and the Settlement ("opting out").  I understand that by opting out of this Lawsuit and Settlement I will not receive money from the Settlement with Settling Defendants, and I may not be able to participate in any possible future settlement with the Non-Settling Defendants.  I also understand that if I wish to assert any claims related to those set forth in the Lawsuit, I  may have to hire my own lawyer to bring suit separately.  I understand that any such claims are subject to strict time limits, known as statutes of limitations, which restrict the time within which I may file any such action.  I understand that I should consult with an attorney if I wish to obtain advice regarding my rights with respect to the Lawsuit and  Settlement and/or my choice to opt out of the Lawsuit and Settlement.  I further verify that my name, address and other contact information  are accurately set forth above.  I received and read the Notice that was sent to me along with this form.  I have not been coerced by anyone to opt out of this Class Action, and I choose to opt out of my own free will.

I declare under penalty of perjury that the forgoing is true and correct.

Signed:_____     Date: _____

Print Name:_____

WE STRONGLY SUGGEST THAT AFTER YOU HAVE FILLED OUT THIS FORM AND SIGNED IT, YOU MAKE A COPY SHOWING WHEN YOU MAILED IT OR FAXED IT AND KEEP FOR YOUR RECORDS

*********************************************************************************

*********************************************************************************

WE REQUEST THAT YOU PROVIDE, BELOW, INFORMATION ABOUT THE TEMPORARY NURSING POSITIONS YOU WORKED DURING THE PERIOD FROM <u>JANUARY, 1 1997 TO SEPTEMBER 12, 2007</u>.  YOU DO <u>NOT</u> NEED TO PROVIDE THIS INFORMATION TO OPT OUT. IT IS YOUR CHOICE.

Position worked (such  as RN, LPN, CNA, etc.):

_____

_____

Hospitals in Arizona Worked at:

_____

Nurse Staffing Agency that Placed You:

_____

_____

Circle One, or Both, that Apply to You :

          PER DIEM                         TRAVELER

## EXHIBIT   1

## LIST OF PARTICIPATING HOSPITALS IN AZHHA PER DIEM REGISTRY

| Facility | Per Diem Program |
|---|---|
| Arizona Heart Hospital | 6/1/1998 - 2007 |
| Arizona Orthopedic Surgical Hospital | 11/2006 - 2007 |
| Arrowhead Community Hospital | 1997 - 10/25/2005 |
| Banner Baywood Heart Hospital (f/k/a Lutheran Heart Hospital) | 11/2/2000 - 7/31/2007 |
| Banner Baywood Medical Center (f/k/a Valley Lutheran Medical Center) | 6/1/2003 - 7/31/2007 |
| Banner Behavioral Health Hospital (f/k/a Samaritan Behavioral Health Center - Scottsdale) | 6/1/1997 - 7/31/2007 |
| Banner Desert Medical Center (f/k/a Desert Samaritan Medical Center) | 6/1/1997 - 7/31/2007 |
| Banner Estrella Medical Center (opened 2005) | 1/2005 - 7/31/2007 |
| Banner Good Samaritan Medical Center (f/k/a Good Samaritan Medical Center) | 6/1/1997 - 7/31/2007 |
| Banner Mesa Medical Center (f/k/a Mesa Lutheran Medical Center) (closed 9/18/2007) | 6/1/2003 - 7/31/2007 |
| Banner Thunderbird Medical Center (f/k/a Thunderbird Samaritan Medical Center) | 6/1/1997 - 7/31/2007 |
| Bullhead Community Hospital (see Western Arizona Regional Medical Center) | 1997 - 5/31/1998 |
| Carondelet Holy Cross Hospital - Nogales | 1997 - 2007 |
| Carondelet St. Joseph's Hospital - Tucson | 1997 - 2007 |
| Carondelet St. Mary's Hospital - Tucson | 1997 - 2007 |
| Casa Grande Regional Medical Center | 2002 - 7/31/2007 |
| Central Arizona Care Center | 1997 - 5/31/2000 |
| Central Arizona Medical Center (closed 10/1/1999) | 1997 - 10/1/1999 |

| Facility | Per Diem Program |
|---|---|
| Chandler Regional Hospital | 1997 - 2007 |
| Cobre Valley Community Hospital | 1997 - 2007 |
| Columbia El Dorado Medical Center (see El Dorado Medical Center) | 6/1/1997 - 5/31/1998 |
| Columbia Medical Center Phoenix (see Phoenix Regional Medical Center) | 7/21/1997 - 5/31/1998 |
| Columbia Northwest Medical Center | 6/1/1997 - 5/31/1998 |
| Community Hospital Medical Center (closed 11/15/1999) | 11/10/1997 - 11/15/1999 |
| Del E. Webb Memorial Hospital (see also Sun Health) | 6/1/1997 - 2007 |
| Desert Samaritan Medical Center (now Banner Desert Medical Center) | 6/1/1997 - 7/31/2007 |
| Desert Valley Care Center | 1997 - 2007 |
| El Dorado Medical Center (f/k/a Columbia El Dorado Medical Center) (closed 8/18/2006) | 1997 - 8/18/2006 |
| Flagstaff Medical Center | 2/12/1998 - 2007 |
| Gila River Health Care Corporation | 9/2005 - 2007 |
| Gilbert Hospital | March - August 2006 |
| Good Samaritan Care Center (Banner) | 6/1/1997 - 5/31/2003 |
| Good Samaritan Regional Medical Center (now Banner Good Samaritan Medical Center) | 6/1/1997 - 7/31/2007 |
| Havasu Regional Medical Center | 6/1/1997 - 2007 |
| Havasu Samaritan Regional Hospital | 6/1/1997 - 4/1998 |
| HealthSouth Rehab Hospital of Southern Arizona | 6/1/2003 - 2007 |
| HealthSouth Rehab Institute of Tucson | 6/1/2003 - 2007 |
| John C. Lincoln Hospital - Deer Valley | 1/1/2004 - 2007 |
| John C. Lincoln Hospital - North Mountain | 1/1/2004 - 2007 |
| Kindred Hospital - Arizona - Phoenix (f/k/a Vencor Hospital, Phoenix) | 6/1/2001 - 2007 |

| Facility | Per Diem Program |
|---|---|
| Kindred Hospital - Arizona - Tucson (f/k/a Vencor Hospital, Tucson) | 6/1/2001 - 2007 |
| Kindred Hospital Arizona - Scottsdale | 6/1/2001 - 2007 |
| Kingman Regional Medical Center | 6/1/2001 - 2007 |
| LaPaz Regional Hospital (f/k/a Parker Community Hospital) | 6/1/1998 - 6/30/2002 |
| Lutheran Heart Hospital (now Banner Baywood Heart Hospital) | 11/2/2000 - 7/31/2007 |
| Maryvale Hospital Medical Center | 6/1/1999 - 10/25/2005 |
| Maryvale Samaritan Medical Center | 6/1/1997 - 5/31/1998 |
| Mayo Clinic Hospital (opened 1998) | 6/1/1998 - 2007 |
| Mercy Gilbert Medical Center (opened 2006) | 2006 - 2007 |
| Mesa General Hospital (Closed June 2008) | 1997 - 7/31/2006 |
| Mountain Valley Regional Rehabilitation Hospital | 2/2007 - 2007 |
| Navapache Regional Medical Center (see Summit) | 1997 - 2007 |
| Northwest Hospital (see Columbia Northwest Medical Center & Northwest Medical Center) | Jan - June 1997 |
| Northwest Medical Center | 6/1/1998 - 2007 |
| Northwest Medical Center- Oro Valley (opened 2005) | 2/2005 - 2007 |
| Page Hospital | 6/1/1997 - 7/31/2007 |
| Palo Verde Hospital aka Palo Verde Mental Health | 1997 – 2007 |
| Paradise Valley Hospital | 6/1/2000 - 10/25/2005 |
| Parker Community Hospital (see LaPaz) | 6/9/1997 – 5/31/1998 |
| Payson Regional Medical Center | 6/1/2001 - 11/2003 |
| Phoenix Baptist Hospital | 1997 - 10/25/2005 |
| Phoenix Children's Hospital | 6/1/2001 - 2007 |

| Facility | Per Diem Program |
|---|---|
| Phoenix Memorial Hospital (closed 6/1/2007) | 1997 - 10/25/2005 |
| Phoenix Regional Medical Center (f/k/a Columbia Medical Center Phoenix) (closed 11/18/1999) | 6/1/1998 - 11/18/1999 |
| Sage Memorial Hospital | 1997 - 2007 |
| Samaritan Behavioral Health Center - Scottsdale (now Banner Behavioral Health Hospital) | 6/1/1997 - 7/31/2007 |
| Samaritan Rehabilitation Institute | 6/1/1997 - 5/31/2000 |
| Scottsdale Healthcare Osborn (f/k/a Scottsdale Memorial Hospital) | 1997 - 6/30/2002 |
| Scottsdale Healthcare Shea (f/k/a Scottsdale Memorial Hospital - North) | 1997 - 6/30/2002 |
| Scottsdale Memorial Hospital - North | 1997 |
| Scottsdale Memorial Hospital - Osborn | 1997 |
| Select Specialty Hospital - Mesa | 10/13/2003 - 2007 |
| Select Specialty Hospital - Phoenix | 10/13/2003 - 2007 |
| Select Specialty Hospital - Phoenix Downtown | 10/13/2003 - 2007 |
| Select Specialty Hospital - Scottsdale | 10/13/2003 - 2007 |
| Sierra Vista Regional Health Center | 1/1/2006 - 2007 |
| St. Joseph's Hospital & Medical Center | 4/20/1998 - 2007 |
| St. Luke's Behavioral Hospital | 1997 - 12/26/2005 |
| St. Luke's Medical Center | 1997 - 12/26/2005 |
| Summit Healthcare Regional Medical Center (f/k/a Navapache) | 1997 - 2007 |
| Sun Health Del E. Webb Hospital | 6/1/1997 - 2007 |
| Sun Health Walter O. Boswell Hospital | 6/1/1997 - 2007 |
| Tempe St. Luke's Hospital | 1997 - 7/31/2006 |
| Thunderbird Samaritan Medical Center (now Banner Thunderbird Medical Center) | 6/1/1997 - 7/31/2007 |

| Facility | Per Diem Program |
|---|---|
| Tucson Heart Hospital (opened 1997) | 9/8/1997 - 2007 |
| Tucson Medical Center (TMC Healthcare) | 2000 - Present |
| University Medical Center | 1997 - 2007 |
| University Physicians Healthcare | 6/1/2004 - 2007 |
| Valley View Medical Center (opened 2005) | 2005 - 2007 |
| Vencor Hospital - Phoenix (see Kindred) | 1997 - 5/31/2001 |
| Vencor Hospital - Tucson (see Kindred) | 1997 - 5/31/2001 |
| Verde Valley Medical Center | 5/2004 - 2007 |
| Walter O. Boswell Memorial Hospital (see also Sun Health) | 6/1/1997 - 2007 |
| Wendy Paine O'Brien Treatment Center - Phoenix (closed 9/15/1999) | 6/1/1997 - 9/15/1999 |
| West Valley Hospital | 6/1/2003 - 10/25/2005 |
| Western Arizona Regional Medical Center (f/k/a Bullhead Community Hospital) | 1997 - 5/1998 |
| White Mountain Regional Medical Center | 6/1/2005 - 2007 |
| Wickenburg Community Hospital (a/k/a Wickenburg Regional Hospital) | 1997 - 2007 |
| Yuma Regional Medical Center | 1997 - 2007 |

# EXHIBIT 2

## PER DIEM CLASS
### AzHHA Per Diem Registry - Southern and Northern Markets
### Positions Included

| Position | Dates |
|---|---|
| RN (Including Specialist and Non-Specialist) | June 1, 1997 - September 12, 2007 |
| LPN | June  1, 1997 - September 12, 2007 |
| CNA | June 1, 1999 - September 12, 2007 |
| Psych Tech | June 1, 1997 - May 31, 2000 |
| BHT | June 1, 2000 - September 12, 2007 |
| OR Tech | June 1, 1997 - September 12, 2007 |
| Monitor Tech | June 1, 1997 - May 31, 1999 |
| Nurse Aide | June 1, 1997 - May 31, 2000 |
| Sitter | June 1, 1997 - September 12, 2007 |

# EXHIBIT 3

## LIST OF PARTICIPATING HOSPITALS IN AZHHA TRAVEL REGISTRY

| Facility | Travel Program |
|---|---|
| Arizona Heart Hospital | 8/1/1999 - 2007 |
| Arrowhead Community Hospital | 5/1/1999 - 10/25/2005 |
| Banner Baywood Heart Hospital (f/k/a Lutheran Heart Hospital) | 12/2000 - 8/26/2007 |
| Banner Baywood Medical Center (f/k/a Valley Lutheran Medical Center) | 8/1/2003 - 8/26/2007 |
| Banner Behavioral Health Hospital (f/k/a Samaritan Behavioral Health Center - Scottsdale) | 8/1/1998 - 8/26/2007 |
| Banner Desert Medical Center (f/k/a Desert Samaritan Medical Center) | 8/1/1998 - 8/26/2007 |
| Banner Estrella Medical Center (opened 2005) | 1/2005 - 8/26/2007 |
| Banner Good Samaritan Medical Center (f/k/a Good Samaritan Medical Center) | 8/1/1998 - 8/26/2007 |
| Banner Mesa Medical Center (f/k/a Mesa Lutheran Medical Center) (closed 9/18/2007) | 8/1/2003 - 8/26/2007 |
| Banner Thunderbird Medical Center (f/k/a Thunderbird Samaritan Medical Center) | 8/1/1998 - 8/26/2007 |
| Carondelet Holy Cross Hospital - Nogales | 8/1/1999 - 2007 |
| Carondelet St. Joseph's Hospital - Tucson | 8/1/1999 - 2007 |
| Carondelet St. Mary's Hospital - Tucson | 8/1/1999 - 2007 |
| Casa Grande Regional Medical Center | 2002 - 2007 |
| Central Arizona Care Center | 8/1/1999 - 7/31/2000 |
| Central Arizona Medical Center (closed 10/1/1999) | 8/1/1999 - 10/1/1999 |
| Chandler Regional Hospital | 8/1/1998 - 2007 |
| Cobre Valley Community Hospital | 8/1/1999 - 2007 |
| Community Hospital Medical Center (closed 11/15/1999) | 8/1/1999 - 11/15/1999 |
| Copper Queen Community Hospital | 8/1/1999 - 7/31/2003 |
| Del E. Webb Memorial Hospital (see also Sun Health) | 8/1/1998 - 2007 |
| Desert Samaritan Medical Center (now Banner Desert Medical Center) | 8/1/1998 - 8/26/2007 |

| Facility | Travel Program |
|---|---|
| Desert Valley Care Center | 8/1/1999 - 10/31/2006 |
| El Dorado Medical Center (f/k/a Columbia El Dorado Medical Center) (closed 8/18/2006) | 1998 - 8/18/2006 |
| Flagstaff Medical Center | 8/1/1998 - 2007 |
| Gila River Health Care Corporation | 2/2007 - 2007 |
| Good Samaritan Care Center (Banner) | 8/1/1998 - 7/31/2003 |
| Good Samaritan Regional Medical Center (now Banner Good Samaritan Medical Center) | 8/1/1998 - 8/26/2007 |
| Havasu Regional Medical Center | 6/1/1999 - 2007 |
| John C. Lincoln Hospital - Deer Valley | 8/1/2003 - 2007 |
| John C. Lincoln Hospital - North Mountain | 8/1/2003 - 2007 |
| Kindred Hospital - Arizona - Phoenix (f/k/a Vencor Hospital, Phoenix) | 8/1/2001 - 2007 |
| Kindred Hospital - Arizona - Tucson (f/k/a Vencor Hospital, Tucson) | 8/1/2001 - 2007 |
| Kindred Hospital Arizona - Scottsdale | 8/1/2003 - 2007 |
| Kingman Regional Medical Center | 10/1/2002 - 2007 |
| LaPaz Regional Hospital (f/k/a Parker Community Hospital) | 8/1/1999 - 2007 |
| Lutheran Heart Hospital (now Banner Baywood Heart Hospital) | 12/2000 - 8/26/2007 |
| Maryvale Hospital Medical Center | 5/1/1999 - 10/25/2005 |
| Mayo Clinic Hospital (opened 1998) | 5/1/1999 - 2007 |
| Mercy Gilbert Medical Center (opened 2006) | 2006 - 2007 |
| Mesa General Hospital (Closed June 2008) | 6/1/1999 - 7/31/2006 |
| Mt. Graham Regional Medical Center | 8/1/1999 - 2007 |
| Navapache Regional Medical Center (see Summit) | 6/1/1999 - 2007 |
| Northern Cochise Community Hospital | 3/2005 - 2007 |
| Northwest Medical Center | 6/1998 - 2007 |
| Northwest Medical Center- Oro Valley (opened 2005) | 2005 - 2007 |
| Page Hospital | 8/1/1998 - 8/26/2007 |
| Palo Verde Hospital aka Palo Verde Mental Health | 1998 - 12/20/2004 |
| Paradise Valley Hospital | 8/1/1999 - 10/25/2005 |

| Facility | Travel Program |
|----------|----------------|
| Payson Regional Medical Center | 8/1/1999 - 11/2003 |
| Phoenix Baptist Hospital | 5/1/1999 - 10/25/2005 |
| Phoenix Children's Hospital | 5/1/1999 - 2007 |
| Phoenix Memorial Hospital (closed 6/1/2007) | 5/1/1999 - 10/25/2005 |
| Phoenix Regional Medical Center (f/k/a Columbia Medical Center Phoenix) (closed 11/18/1999) | 6/1/1999 - 11/18/1999 |
| Sage Memorial Hospital | 6/1/1999 - 2007 |
| Samaritan Behavioral Health Center - Scottsdale (now Banner Behavioral Health Hospital) | 8/1/1998 - 8/26/2007 |
| Samaritan Rehabilitation Institute | 8/1/1998 - 7/31/2003 |
| Scottsdale Healthcare Osborn (f/k/a Scottsdale Memorial Hospital) | 6/1/1999 - 2007 |
| Scottsdale Healthcare Shea (f/k/a Scottsdale Memorial Hospital - North) | 6/1/1999 - 2007 |
| Select Specialty Hospital - Mesa | 8/1/2003 - 2007 |
| Select Specialty Hospital - Phoenix | 6/1/1999 - 2007 |
| Select Specialty Hospital - Phoenix Downtown | 8/1/2003 - 2007 |
| Select Specialty Hospital - Scottsdale | 8/1/2003 - 2007 |
| Sierra Vista Regional Health Center | 1/1/2006 - 2007 |
| St. Joseph's Hospital & Medical Center | 7/1/1997 - 2007 |
| St. Luke's Behavioral Hospital | 6/1/1999 - 12/26/2005 |
| St. Luke's Medical Center | 6/1/1999 - 12/26/2005 |
| Summit Healthcare Regional Medical Center (f/k/a Navapache) | 1998 - 2007 |
| Sun Health Del E. Webb Hospital | 8/1/1998 - 2007 |
| Sun Health Walter O. Boswell Hospital | 8/1/1998 - 2007 |
| Tempe St. Luke's Hospital | 7/1/1999 - 7/31/2006 |
| Thunderbird Samaritan Medical Center (now Banner Thunderbird Medical Center) | 8/1/1998 - 8/26/2007 |
| Tucson Heart Hospital (opened 1997) | 5/1/1999 - 2007 |
| Tucson Medical Center (TMC Healthcare) | 1998 - 12/20/2004 |
| University Medical Center | 8/1/1998 - 2007 |
| University Physicians Healthcare | 6/2004 - 2007 |

| Facility | Travel Program |
|---|---|
| Vencor Hospital - Phoenix (see Kindred) | 6/1/1999 - 7/31/2001 |
| Vencor Hospital - Tucson (see Kindred) | 6/1/1999 - 7/31/2001 |
| Verde Valley Medical Center | 2/1/2000 - 2007 |
| Walter O. Boswell Memorial Hospital (see also Sun Health) | 8/1/1998 - 2007 |
| Wendy Paine O'Brien Treatment Center - Phoenix (closed 9/15/1999) | 8/1/1998 - 9/15/1999 |
| West Valley Hospital | 8/1/2003 - 10/25/2005 |
| Western Arizona Regional Medical Center (f/k/a Bullhead Community Hospital) | 1997 - May 1998 |
| White Mountain Regional Medical Center | 8/1/2000 - 2007 |
| Wickenburg Community Hospital (a/k/a Wickenburg Regional Hospital) | 8/1/2000 - 2007 |
| Yuma Regional Medical Center | 6/1/1999 - 2007 |

# EXHIBIT 4

**TRAVEL CLASS**
**AzHHA Travel Registry**
**Positions Included**

| Position | Dates |
|---|---|
| RN (Including Specialist and Non-Specialist) | June 1, 1997 - September 12, 2007 |
| LPN | August 1, 1997 - September 12, 2007 |
| CNA | August 1, 1997 - July 31, 2000 |
| COTA | August 1, 1997 - July 31, 1999 |
| CVOR Tech | August 1, 2000 - September 12, 2007 |
| Medical Tech | August 1, 1997 - July 31, 2000 |
| Nurse Practitioner | August 1, 1997 - July 31, 1999 |
| Occ. Therapist | August 1, 1997 - July 31, 1999 |
| OR Tech | August 1, 1997 - September 12, 2007 |
| Physical Therapist | August 1, 1997 - July 31, 1999 |
| Physician Asst. | August 1, 1997 - July 31, 1999 |
| Psych Tech | August 1, 1997 - July 31, 2000 |
| PT Assistant | August 1, 1997 - July 31, 1999 |
| Rad Tech | August 1, 1997 - July 31, 2001 |
| Resp. Therapist | August 1, 1997 - July 31, 1999 |
| Specialty Rad Tech | August 1, 2000 - July 31, 2001 |
| Speech Pathologist | August 1, 1997 - July 31, 1999 |

**You Can Also File Your Claim Online at www.rg2claims.com/azhha.html**

## CLAIM FORM

**You Can Also File Your Claim Online at www.rg2claims.com/azhha.html**

## JOHNSON, ET AL. V. ARIZONA HOSPITAL & HEALTHCARE ASSOCIATION, ET AL. UNITED STATES DISTRICT COURT CASE NO. 07-CV-01292-SRB, D. - AZ.

## YOUR CLAIM FORM MUST BE POSTMARKED ON OR BEFORE _____, __ 2010.

Please fill out the following information completely and submit this form, along with the documentation described below if required. If the information you provide is incomplete, your claim may be rejected.

---

### CLAIMANT INFORMATION

**First Name**

**M.I.**

**Last Name**

**Street Address**

**City**

**State**

**Zip Code**

**Foreign Province**

**Foreign Country**

**Arizona Nursing License Number (Please provide your most recently issued active or expired license number)**

**Social Security Number**

**Work Telephone Number (beginning with Area Code)**

**Home Telephone Number (beginning with Area Code)**

**Fax Number (beginning with Area Code)**

**E-Mail Address**

---

Please fill in below the information, by year from **January 1, 1997 through September 12, 2007,** for your work as a temporary per diem or temporary travel nurse. You may use pen or pencil, but please be neat. The first block asks the year you worked. If you worked at more than one hospital in a year, please list them separately. So, for example, you can fill in "1999" for the "Year" more than once, to cover each different hospital you worked at in the year 1999. Next, fill in the "Hospital Code" for the hospital where you worked. The 4-digit Hospital Codes are listed on Exhibit A to this form. Next, fill in the "Job Code," for the job you worked. The 2-digit Job Codes are listed on Exhibit B. For example, the Job Code for "RN" is 37. Next, fill in the "Agency Code" identifying the outside nurse staffing agency that placed you at the hospital. The 3-digit Agency Codes are listed on Exhibit C. If you do not see your agency listed, fill in 000, which means "other." IMPORTANT: If you were NOT placed by an outside nurse staffing agency, do NOT include those hours in this claim form. They are NOT part of this claim. Finally, fill in the total number of hours you worked for that hospital for that year. If you have work records, such as pay stubs or other documents, please refer to them as we may ask you for copies. Otherwise, please use your best estimate.

If you need more space, you can make copies of this form. You can also get more copies of this Claim Form and the Notice of Pendency of Class Action at www.rg2claims.com/azhha.html or by calling (866) 742-4955. You can also file your Claims online at www.rg2claims.com/azhha.html.

11001313625



www.rg2claims.com/azhha.html

# PER DIEM NURSE EMPLOYMENT INFORMATION

| Year | Hospital Code | Job Code | Agency Code | Hours |
|------|---------------|----------|-------------|-------|
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |

**You Can Also File Your Claim Online at**
**www.rg2claims.com/azhha.html**

## PER DIEM NURSE EMPLOYMENT INFORMATION

| Year | Hospital Code | Job Code | Agency Code | Hours |
|------|---------------|----------|-------------|-------|
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |

## TRAVEL NURSE EMPLOYMENT INFORMATION

| Year | Hospital Code | Job Code | Agency Code | Hours |
|------|---------------|----------|-------------|-------|
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |

**You Can Also File Your Claim Online at**
**www.rg2claims.com/azhha.html**

## TRAVEL NURSE EMPLOYMENT INFORMATION

| Year | Hospital Code | Job Code | Agency Code | Hours |
|------|---------------|----------|-------------|-------|
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |
| ☐☐☐☐ | ☐☐☐☐ | ☐☐ | ☐☐☐ | ☐☐☐☐ |

If your total hours claimed are more than _____, please send us copies of documents you have showing the work you performed, such as paystubs, an IRS Form 1099 indicating payment of self employment wages, or other written documentation establishing employment.

**I SUBMIT THIS CLAIM FORM UNDER THE PENALTY OF PERJURY AND STATE THAT THE INFORMATION I PROVIDED ABOVE IS TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE AND BELIEF.**

Signature: _____   Date: _____

Print Name: _____

**YOUR CLAIM FORM MUST BE POSTMARKED ON OR BEFORE _____, __ 2010.**

11001313625

(INSERT Class Member Name and Address)

Mail this Claim Form to the following address:

Johnson v. AzHHA Settlement Administrator
c/o RG/2 Claims Administration LLC
P.O. Box 59479
Philadelphia, PA 19102-9479
(866) 742-4955

# EXHIBIT A – HOSPITAL CODES

| HOSPITAL CODE | FACILITY |
|---|---|
| 1000 | ARIZONA HEART HOSPITAL |
| 1001 | ARIZONA ORTHOPEDIC SURGICAL HOSPITAL |
| 1002 | ARROWHEAD COMMUNITY HOSPITAL |
| 1003 | BANNER BAYWOOD HEART HOSPITAL (F/K/A LUTHERAN HEART HOSPITAL) |
| 1004 | BANNER BAYWOOD MEDICAL CENTER (F/K/A VALLEY LUTHERAN MEDICAL CENTER) |
| 1005 | BANNER BEHAVIORAL HEALTH HOSPITAL (F/K/A SAMARITAN BEHAVIORAL HEALTH CENTER - SCOTTSDALE) |
| 1006 | BANNER DESERT MEDICAL CENTER (F/K/A DESERT SAMARITAN MEDICAL CENTER) |
| 1007 | BANNER ESTRELLA MEDICAL CENTER (OPENED 2005) |
| 1008 | BANNER GOOD SAMARITAN MEDICAL CENTER (F/K/A GOOD SAMARITAN MEDICAL CENTER) |
| 1009 | BANNER MESA MEDICAL CENTER (F/K/A MESA LUTHERAN MEDICAL CENTER) (CLOSED 9/18/2007) |
| 1010 | BANNER THUNDERBIRD MEDICAL CENTER (F/K/A THUNDERBIRD SAMARTIAN MEDICAL CENTER) |
| 1011 | BULLHEAD COMMUNITY HOSPITAL (SEE WESTERN ARIZONA REGIONAL MEDICAL CENTER) |
| 1012 | CARONDELET HOLY CROSS HOSPITAL - NOGALES |
| 1013 | CARONDELET ST. JOSEPH'S HOSPITAL - TUCSON |
| 1014 | CARONDELET ST. MARY'S HOSPITAL - TUCSON |
| 1015 | CASA GRANDE REGIONAL MEDICAL CENTER |
| 1016 | CENTRAL ARIZONA CARE CENTER |
| 1017 | CENTRAL ARIZONA MEDICAL CENTER (CLOSED 10/1/1999) |
| 1018 | CHANDLER REGIONAL HOSPITAL |
| 1019 | COBRE VALLEY COMMUNITY HOSPITAL |
| 1020 | COLUMBIA EL DORADO MEDICAL CENTER (SEE EL DORADO MEDICAL CENTER) |
| 1021 | COLUMBIA MEDICAL CENTER PHOENIX (SEE PHOENIX REGIONAL MEDICAL CENTER) |
| 1022 | COLUMBIA NORTHWEST MEDICAL CENTER |
| 1023 | COMMUNITY HOSPITAL MEDICAL CENTER (CLOSED 11/15/1999) |
| 1024 | COPPER QUEEN COMMUNITY HOSPITAL |
| 1025 | DEL E. WEBB MEMORIAL HOSPITAL (SEE ALSO SUN HEALTH) |
| 1026 | DESERT SAMARITAN MEDICAL CENTER (NOW BANNER DESERT MEDICAL CENTER) |
| 1027 | DESERT VALLEY CARE CENTER |
| 1028 | EL DORADO MEDICAL CENTER (F/K/A COLUMBIA EL DORADO MEDICAL CENTER) (CLOSED 8/18/2006) |
| 1029 | FLAGSTAFF MEDICAL CENTER |
| 1030 | GILA RIVER HEALTH CARE CORPORATION |
| 1031 | GILBERT HOSPITAL |
| 1032 | GOOD SAMARITAN CARE CENTER (BANNER) |
| 1033 | GOOD SAMARITAN REGIONAL MEDICAL CENTER (NOW BANNER GOOD SAMARITAN MEDICAL CENTER) |
| 1034 | HAVASU REGIONAL MEDICAL CENTER |
| 1035 | HAVASU SAMARITAN REGIONAL HOSPITAL |
| 1036 | HEALTHSOUTH REHAB HOSPITAL OF SOUTHERN ARIZONA |
| 1037 | HEALTHSOUTH REHAB INSTITUTE OF TUCSON |
| 1038 | JOHN C. LINCOLN HOSPITAL - DEER VALLEY |
| 1039 | JOHN C. LINCOLN HOSPITAL - NORTH MOUNTAIN |
| 1040 | KINDRED HOSPITAL - ARIZONA - PHOENIX (F/K/A VENCOR HOSPITAL, PHOENIX) |
| 1041 | KINDRED HOSPITAL - ARIZONA - TUCSON (F/K/A VENCOR HOSPITAL, TUCSON) |
| 1042 | KINDRED HOSPITAL ARIZONA - SCOTTSDALE |
| 1043 | KINGMAN REGIONAL MEDICAL CENTER |
| 1044 | LAPAZ REGIONAL HOSPITAL (F/K/A PARKER COMMUNITY HOSPITAL) |
| 1045 | LUTHERAN HEART HOSPITAL (NOW BANNER BAYWOOD HEART HOSPITAL) |
| 1046 | MARYVALE HOSPITAL MEDICAL CENTER |
| 1047 | MARYVALE SAMARITAN MEDICAL CENTER |
| 1048 | MAYO CLINIC HOSPITAL (OPENED 1998) |

| HOSPITAL CODE | FACILITY |
|---|---|
| 1049 | MERCY GILBERT MEDICAL CENTER (OPENED 2006) |
| 1050 | MESA GENERAL HOSPITAL (CLOSED JUNE 2008) |
| 1051 | MOUNTAIN VALLEY REGIONAL REHABILITATION HOSPITAL |
| 1052 | MT. GRAHAM REGIONAL MEDICAL CENTER |
| 1053 | NAVAPACHE REGIONAL MEDICAL CENTER (SEE SUMMIT) |
| 1054 | NORTHERN COCHISE COMMUNITY HOSPITAL |
| 1055 | NORTHWEST HOSPITAL (SEE COLUMBIA NORTHWEST MEDICAL CENTER & NORTHWEST MEDICAL CENTER) |
| 1056 | NORTHWEST MEDICAL CENTER |
| 1057 | NORTHWEST MEDICAL CENTER- ORO VALLEY (OPENED 2005) |
| 1058 | PAGE HOSPITAL |
| 1059 | PALO VERDE HOSPITAL AKA PALO VERDE MENTAL HEALTH |
| 1060 | PARADISE VALLEY HOSPITAL |
| 1061 | PARKER COMMUNITY HOSPITAL (SEE LAPAZ) |
| 1062 | PAYSON REGIONAL MEDICAL CENTER |
| 1063 | PHOENIX BAPTIST HOSPITAL |
| 1064 | PHOENIX CHILDREN'S HOSPITAL |
| 1065 | PHOENIX MEMORIAL HOSPITAL (CLOSED 6/1/2007) |
| 1066 | PHOENIX REGIONAL MEDICAL CENTER (F/K/A COLUMBIA MEDICAL CENTER PHOENIX) (CLOSED 11/18/1999) |
| 1067 | SAGE MEMORIAL HOSPITAL |
| 1068 | SAMARITAN BEHAVIORAL HEALTH CENTER - SCOTTSDALE (NOW BANNER BEHAVIORAL HEALTH HOSPITAL) |
| 1069 | SAMARITAN REHABILITATION INSTITUTE |
| 1070 | SCOTTSDALE HEALTHCARE OSBORN (F/K/A SCOTTSDALE MEMORIAL HOSPITAL) |
| 1071 | SCOTTSDALE HEALTHCARE SHEA (F/K/A SCOTTSDALE MEMORIAL HOSPITAL - NORTH) |
| 1072 | SCOTTSDALE MEMORIAL HOSPITAL - NORTH |
| 1073 | SCOTTSDALE MEMORIAL HOSPITAL - OSBORN |
| 1074 | SELECT SPECIALTY HOSPITAL - MESA |
| 1075 | SELECT SPECIALTY HOSPITAL - PHOENIX |
| 1076 | SELECT SPECIALTY HOSPITAL - PHOENIX DOWNTOWN |
| 1077 | SELECT SPECIALTY HOSPITAL - SCOTTSDALE |
| 1078 | SIERRA VISTA REGIONAL HEALTH CENTER |
| 1079 | ST. JOSEPH'S HOSPITAL & MEDICAL CENTER |
| 1080 | ST. LUKE'S BEHAVIORAL HOSPITAL |
| 1081 | ST. LUKE'S MEDICAL CENTER |
| 1082 | SUMMIT HEALTHCARE REGIONAL MEDICAL CENTER (F/K/A NAVAPACHE) |
| 1083 | SUN HEALTH DEL E. WEBB HOSPITAL |
| 1084 | SUN HEALTH WALTER O. BOSWELL HOSPITAL |
| 1085 | TEMPE ST. LUKE'S HOSPITAL |
| 1086 | THUNDERBIRD SAMARITAN MEDICAL CENTER (NOW BANNER THUNDERBIRD MEDICAL CENTER) |
| 1087 | TUCSON HEART HOSPITAL (OPENED 1997) |
| 1088 | TUCSON MEDICAL CENTER (TMC HEALTHCARE) |
| 1089 | UNIVERSITY MEDICAL CENTER |
| 1090 | UNIVERSITY PHYSICIANS HEALTHCARE |
| 1091 | VALLEY VIEW MEDICAL CENTER (OPENED 2005) |
| 1092 | VENCOR HOSPITAL - PHOENIX (SEE KINDRED) |
| 1093 | VENCOR HOSPITAL - TUCSON (SEE KINDRED) |
| 1094 | VERDE VALLEY MEDICAL CENTER |
| 1095 | WALTER O. BOSWELL MEMORIAL HOSPITAL (SEE ALSO SUN HEALTH) |
| 1096 | WENDY PAINE O'BRIEN TREATMENT CENTER - PHOENIX (CLOSED 9/15/1999) |
| 1097 | WEST VALLEY HOSPITAL |
| 1098 | WESTERN ARIZONA REGIONAL MEDICAL CENTER (F/K/A BULLHEAD COMMUNITY HOSPITAL) |
| 1099 | WHITE MOUNTAIN REGIONAL MEDICAL CENTER |
| 1100 | WICKENBURG COMMUNITY HOSPITAL (A/K/A WICKENBURG REGIONAL HOSPITAL) |
| 1101 | YUMA REGIONAL MEDICAL CENTER |

# EXHIBIT B – JOB CODES

| JOB CODE | POSITION |
|---|---|
| 20 | BHT |
| 21 | CNA |
| 22 | COTA |
| 23 | CVOR TECH |
| 24 | LPN |
| 25 | MEDICAL TECH |
| 26 | MONITOR TECH |
| 27 | NURSE AIDE |

| JOB CODE | POSITION |
|---|---|
| 28 | NURSE PRACTITIONER |
| 29 | OCC. THERAPIST |
| 30 | OR TECH |
| 31 | PHYSICAL THERAPIST |
| 32 | PHYSICIAN ASST. |
| 33 | PSYCH TECH |
| 34 | PT ASSISTANT |
| 35 | RAD TECH |

| JOB CODE | POSITION |
|---|---|
| 36 | RESP. THERAPIST |
| 37 | RN (INCLUDING SPECIALIST AND NON-SPECIALIST) |
| 38 | SITTER |
| 39 | SPECIALTY RAD TECH |
| 40 | SPEECH PATHOLOGIST |

# EXHIBIT C – AGENCY CODES

| AGENCY CODE | AGENCY NAME |
|---|---|
| 301 | ABBOTT HUGHES |
| 302 | ACCESS NURSES |
| 303 | ACROSS AMERICA MED STAFFING |
| 304 | ACUTE NURSING SOLUTIONS |
| 305 | ADVANCE MEDICAL |
| 306 | ADVANCE NURSING |
| 307 | ADVANTAGE NURSE STAFFING OF ARIZONA |
| 308 | ADVANTAGE RN |
| 309 | ALACRITY/UNLIMITED MEDSTAFF |
| 310 | ALL'S WELL HEALTHCARE |
| 311 | ALLEGIANCE NURSE STAFFING, INC. |
| 312 | ALPHA-OMEGA MANAGEMENT SERVICES |
| 313 | AMEDISYS |
| 314 | AMERICAN TRAVELER |
| 315 | AMN HEALTHCARE, INC. |
| 316 | AMS HEALTHCARE STAFFING |
| 317 | ARCADIA HEALTH CARE |
| 318 | ARIZONA HEALTHCARE TRAVELERS NETWORK |
| 319 | ARIZONA HOME AND HEALTH CARE |
| 320 | ASSISTED HEALTH STAFFING |
| 321 | ATC HEALTHCARE SERVICES, INC. |
| 322 | ATC TRAVELERS |
| 323 | ATTENTIVE HEALTHCARE |
| 324 | AUREUS NURSING, LLC |
| 325 | BRIDGE STAFFING |
| 326 | BRIGHTMED |
| 327 | CALIFORNIA NURSES BUREAU |
| 328 | CAREERSTAFF UNLIMITED |
| 329 | CAREERSTAFF UNLIMITED/TRAVELCARE UNLIMITED |
| 330 | CARIANT HEALTH PARTNERS |
| 331 | CARRIGAN'S REGISTRY |
| 332 | CENTRALLINE HEALTHCARE |
| 333 | CHAMPION |
| 334 | CHAMPION MEDICAL STAFFING |
| 335 | CIRRUS MEDICAL STAFFING, LLC |
| 336 | CLINICAL ONE |
| 337 | CODE BLUE STAFFING SOLUTIONS |
| 338 | CODE BLUE STAFFING SOLUTIONS, LLC |
| 339 | COPLEY GROUP |
| 340 | COREMEDICAL GROUP |
| 341 | CREDENTIA |
| 342 | CREATIVE, A PLACEMENT SERVICE |
| 343 | CRITICAL NURSING SOLUTIONS, INC. |
| 344 | CROSS COUNTRY LOCAL |
| 345 | CROSS COUNTRY TRAVCORPS |
| 346 | CURA RECRUITING SYSTEMS |
| 347 | CURASTAT HEALTHCARE GROUP |
| 348 | CURASTAT HEALTHCARE GROUP/HUDSON HEALTHCARE/HUDSON GLOBAL RESOURCES |
| 349 | CYPRESS STAFFING SERVICES |
| 350 | DEDICATED HEALTH CARE PROFESSIONALS |
| 351 | DEPENDABLE HEALTH SERVICES, INC. |
| 352 | DEPENDABLE NURSES – PHOENIX |
| 353 | DEPENDABLE NURSES - TUCSON |
| 354 | DEPENDABLE STAFFING |
| 355 | DESERT NURSING |
| 356 | EAI HEALTHCARE STAFFING |
| 357 | ELITE HEALTHCARE |
| 358 | EXPEDIENT MEDSTAFF |
| 359 | FAVORITE NURSES |
| 360 | FIDELITY NURSING |
| 361 | FIRST ASSIST TRAVELERS |
| 362 | FLEXSTAFF ON-CALL |
| 363 | FORTE HEALTH STAFFING |
| 364 | GENTIVA FLYING NURSES |
| 365 | GENTIVA STAFFING |
| 366 | GROUP ONE/COMPHEALTH |

| AGENCY CODE | AGENCY NAME |
|---|---|
| 367 | HCRG STAFFING |
| 368 | HEALTH PROVIDERS CHOICE |
| 369 | HEALTH TEMP |
| 370 | HEALTHCARE EVERYWHERE |
| 371 | HEALTHCARE RESOURCE MANAGEMENT CORPS (HRMC) |
| 372 | HEALTHSTAF |
| 373 | HP STAFFING |
| 374 | HPO STAFFING (HEALTH PERSONNEL OPTIONS) |
| 375 | HRN SERVICES- GATEWAY TO TRAVEL |
| 376 | HUDSON GLOBAL RESOURCES |
| 377 | IN TOUCH NURSING |
| 378 | INDEPENDENT HEALTHCARE STAFFING |
| 379 | INDEPENDENT NURSING SERVICE |
| 380 | INNOVATIVE PLACEMENTS, INC. |
| 381 | INTEGRATED HEALTH SOLUTIONS |
| 382 | INTEGRATED HEALTHCARE |
| 383 | INTELISTAF |
| 384 | INTERIM HEALTHCARE |
| 385 | JOURNEY NURSES |
| 386 | KFORCE HEALTHCARE STAFFING |
| 387 | KOKOPELLI HEALTH CARE |
| 388 | LIFELINES CARE INC. (NURSE NET) |
| 389 | MATRIX PERSONNEL SERVICE, INC. |
| 390 | MAXIM HEALTHCARE SERVICE |
| 391 | MEDICAL EXPRESS |
| 392 | MEDICAL RESOURCE NETWORK |
| 393 | MEDICAL SOLUTIONS INTERNATIONAL |
| 394 | MEDICAL STAFFING NETWORK |
| 395 | MEDICAL STAFFING SERVICES |
| 396 | MEDIX STAFFING SOLUTIONS |
| 397 | MEDSTAFF CAROLINAS |
| 398 | MEDSTAFF, INC. |
| 399 | MILLENIA MEDICAL STAFFING |
| 400 | MINT MEDICAL STAFFING (F/K/A PRIME STAFF USA) |
| 401 | MOBILE MEDICAL STAFFING, LLC. |
| 402 | NET HEALTHCARE |
| 403 | NEW AGE TRAVEL NURSES |
| 404 | NEW DIRECTIONS |
| 405 | NIGHTINGALE NURSES |
| 406 | NURSE BROKERS |
| 407 | NURSEFINDERS |
| 408 | NURSENET (STAFFING PLUS) |
| 409 | NURSES IN MOTION |
| 410 | NURSES PLUS HEALTHCARE |
| 411 | NURSES RX, INC. |
| 412 | NURSING CENTERS |
| 413 | NURSING INNOVATIONS, INC. |
| 414 | NURSING MANAGEMENT SERVICES, INC. |
| 415 | NURSING SOLUTIONS |
| 416 | O'GRADY-PEYTON INTERNATIONAL |
| 417 | OLSTEN FLYING NURSES |
| 418 | OLSTEN HEALTH SERVICES |
| 419 | ON ASSIGNMENT HEALTHCARE STAFFING |
| 420 | ONWARD HEALTHCARE |
| 421 | PARKER QUALITY PROFESSIONALS |
| 422 | PINPOINT NURSING SERVICES/PINPOINT STAFFING SERVICES |
| 423 | PLATINUM SELECT STAFFING |
| 424 | PLUS ONE STAFFING, INC |
| 425 | PPR TRAVEL (PROFESSIONAL PLACEMENT RESOURCES) |
| 426 | PREFERRED HEALTHCARE STAFFING |
| 427 | PREMIER HEALTHCARE PROFESSIONALS |
| 428 | PROFESSIONAL INDEPENDENT NURSING SERVICES (PINS) |
| 429 | PROFESSIONAL NURSING STAFFING SERVICE (PNS) |

| AGENCY CODE | AGENCY NAME |
|---|---|
| 430 | PROFESSIONAL REGISTERED NURSING NETWORK (PRN) |
| 431 | PROFESSIONAL RESPIRATORY CARE SERVICES, INC. (PRCS) |
| 432 | PROFESSIONAL STAFFING RESOURCES (PSR) |
| 433 | PROFESSIONAL STAFFING SOLUTIONS |
| 434 | PROGRESSIVE TRAVEL |
| 435 | PRO-MED STAFFING, INC. |
| 436 | Q SHIFT NURSES |
| 437 | QUALITY LIFESTYLES HEALTHCARE |
| 438 | QUALITY NURSING PROFESSIONAL, INC. |
| 439 | QUALITY STAFFING SERVICES |
| 440 | RELIABLE HEALTHCARE |
| 441 | RELIABLE STAFFING SOLUTIONS MANAGEMENT, LLC |
| 442 | RESOLVE STAFFING |
| 443 | RICHARDS HEALTHCARE INC. |
| 444 | RN NETWORK |
| 445 | RN RESOURCES |
| 446 | RN TRAVEL CONNECTION |
| 447 | RNA HEALTHCARE SOLUTIONS |
| 448 | RNA STAFFING |
| 449 | ROBISON MEDICAL RESOURCE GROUP AKA ROBISON TRAVELERS |
| 450 | RTG MEDICAL |
| 451 | SACRED HEART NURSING SERVICES |
| 452 | SAGENT HEALTHSTAFF |
| 453 | SELECT NURSING SERVICES, INC. (FORMERLY RESOLVE) |
| 454 | SOLIANT HEALTH |
| 455 | STAFF RELIEF INC. |
| 456 | STAFF SEARCH HEALTHCARE |
| 457 | STAFFING PARTNERS |
| 458 | STAFFINGMEDICAL USA |
| 459 | STARMED STAFFING |
| 460 | STAT NURSING SERVICES |
| 461 | STATEWIDE NURSING SERVICES |
| 462 | SUN SPECIALTY UNIT NURSES F/K/A SUNURSE |
| 463 | SUNBELT STAFFING SOLUTIONS |
| 464 | SUPPLEMENTAL HEALTHCARE |
| 465 | SURGICAL ASSOCIATED SERVICES |
| 466 | THE FOUNTAINS AT HOME & HOSPITAL SERVICES |
| 467 | THE HEALTH EXCHANGE |
| 468 | THE QUEST GROUP |
| 469 | THE RIGHT SOLUTIONS (AMEDISTAF, LLC) |
| 470 | TRAVCORPS |
| 471 | TRAVEL NURSE ACROSS AMERICA |
| 472 | TRAVMED USA |
| 473 | TRINITY HEALTHCARE |
| 474 | TRINITY HEALTHCARE STAFFING GROUP, INC. |
| 475 | TSG HEALTHCARE |
| 476 | T.V.L HEALTHCARE |
| 477 | U.S. NURSING NETWORK |
| 478 | UNLIMITED MEDSTAFF |
| 479 | VALENTINE NURSING SERVICES |
| 480 | VITA MEDICAL STAFFING, LLC |
| 481 | WESTERN MEDICAL SERVICES |
| 482 | WORLD WIDE STAFFING |
| 000 | OTHER |

Exhibits B & C – Job Codes & Agency Codes

# EXHIBIT 4

<u>LEGAL NOTICE</u>

# If you worked as a temporary per diem or traveling nurse at a hospital in Arizona between 1997 and 2007 and were placed there or worked through a nurse staffing agency, your rights could be affected by a lawsuit and you could get a payment from a class action settlement.

*A federal court authorized this notice.  It is not a solicitation from a lawyer.*

The purpose of this notice is to notify you about  a class action lawsuit and a Class Settlement Agreement and Release dated _(insert date)___ ("Settlement") that has been reached with many hospitals in Arizona that participated in the Arizona Hospital and Healthcare Association ("AzHHA") relating to temporary per diem and travel nurse services.   The case is *Cindy Johnson, et al. v. Arizona Hospital and Health Care Association, et al.,* Civil Action No.07-1292 (the "Lawsuit").  Judge Susan R. Bolton of the United States District Court for the District of Arizona is overseeing this class action.

The Lawsuit alleges that AzHHA and certain hospitals, through the AzHHA Registry Program, illegally agreed to fix the prices the hospitals paid for temporary travel and per diem nurse services, including for RNs, LPNs, OR Techs, CNAs, and others, obtained through outside nurse staffing agencies.  Defendants have denied the allegations.  The Settlement is not an admission  of wrongdoing by Defendants of any kind.  The Court has not decided whether Defendants violated any laws. No trial has taken place.   The Settlement provides money to certain persons who provided temporary per diem and travel nurse services to certain hospitals from **January 1, 1997 to September 12, 2007**.   The Settlement also includes relief to prevent the alleged wrongful conduct from happening again.

Judge Bolton will hold a hearing on _____, 2010, to decide whether to finally approve the Settlement.  If it is approved, then class members who submit timely and valid claims will receive money from the settlement funds.  Eligible class members have legal rights and choices, including (1) whether to exclude themselves from the Lawsuit and Settlement; or (2) whether to object to the Settlement. You can obtain a detailed notice about this lawsuit and Settlement, review the Class Settlement Agreement and Release, find out how to obtain a claim form, and get more information about the Lawsuit and Settlement at **(insert**

web address) or by calling (insert toll free number).  The settlement with AzHHA is contained in a separate document, also available at (insert web address).

WHO'S INCLUDED

There are two classes:

(1) all persons who, between January 1, 1997 and September 12, 2007, provided temporary per diem nurse services in Arizona for any Defendant or other hospital that participated in the AzHHA Registry Program, and who were placed there or worked through an outside staffing agency (the "Per Diem Settlement Class");  and

(2) all persons who, between January 1, 1997 and September 12, 2007, provided temporary travel nurse services in Arizona for any Defendant or other hospital that participated in the AzHHA Registry Program, and who were placed there or worked through an outside staffing agency (the "Traveler Settlement Class").

**You may be a member of both classes, if you qualify for both.**

To decide whether you are a member of one or both classes, you should go to (insert website).  **The website will direct you to a page titled: "Am I a class member?"**  You need to review the list of hospitals that participated in the AzHHA Per Diem or the AzHHA Travel Registry from January 1, 1997 to September 12, 2007, and see whether you worked for at least one these hospitals while the hospital belonged to the Per Diem or Travel registry.  The website also lists all nursing positions that are included, such as per diem or travel RNs (specialist and non-specialist), LPNs, OR Techs, CNAs, and others. You should review this page to determine if you are a class member and thus affected by this lawsuit and entitled to receive money from the Settlement.  You may also call a toll-free number: **(insert toll free number)** to find out whether you are a class member.

Excluded from the classes are Defendants and their parents, officers, directors, subsidiaries and affiliates.

To be a class member, you must have worked on a temporary basis, either per diem or as a traveler, at an AzHHA Registry hospital in Arizona, sometime between Jan. 1, 1997 and Sept. 12, 2007, and have been placed there through an outside staffing agency.  You are NOT a class member if your only work at an Arizona hospital from Jan. 1, 1997 to Sept. 12, 2007 was for a hospital's  internal pool or internal registry or through direct employment by the hospital and not through an outside nurse staffing agency.

## WHAT DOES THE SETTLMENT PROVIDE?

Nearly all the Defendants (the "Settling Defendants") have agreed to pay, together, $22,476,818 to settle all claims against them (the "Settlement Fund").  Class Counsel will ask the Court for an award of attorneys' fees of up to 25% of the gross Settlement Fund (the Settlement Fund plus interest).  Class Counsel also will ask to use part of the Settlement Fund to reimburse counsel for litigation expenses advanced on behalf of the classes; for incentive awards to the three Class Representatives totaling $60,000, and for the costs of providing notice to class members and administering the Settlement.  Class Counsel's application for fees, expenses and incentive awards will be filed with the Court and be available for download and/or viewing on or before _(insert deadline for filing fee

petition)_____, **2010**, on the website (**insert website**) or may obtained by calling (**insert toll free number**), as well as at the office of the Clerk of the United States District Court for the District of Arizona, Sandra Day O'Connor U.S. Court House, 401 W. Washington Street, Phoenix, AZ 85003, during normal business hours.

The remaining funds (the "Net Settlement Fund") will be paid to eligible class members who submit signed, valid and timely claim forms. The amount a person receives will depend, first, on whether the person provided per diem or travel services. Overall and on average, for each hour claimed, Per Diem Class members will receive four times the amount of Traveler Class members. Previously, the Court certified a Per Diem Class but denied a Traveler Class. The Court has certified a Traveler Class in light of settlement, but the difference in payments reflects the risk that, without a settlement, no Traveler Class might ever be certified, so that Traveler Class members would get nothing and would have to hire their own lawyers to see if they could sue and recover on their own. Next, higher wage positions (such as RN) will receive more per hour than lower wage ones (such as LPN). Also, generally, the more temporary per diem or travel hours you worked, the more you will receive. You can obtain a copy of the Allocation Plan at [_insert website address_____].

The Settlement also provides for relief designed to prevent the alleged wrongful conduct from happening again. That relief will benefit all class members.

## HOW DO YOU PARTICIPATE?

If you want to participate in the Settlement, you do not have to do anything right now. All class members who do not exclude themselves by __(insert exclusion deadline)_____ (explained below) will automatically remain part of the class action. All the Court's rulings about the lawsuit will apply to any claim you may have. To obtain money from the Settlement, however, you will have to submit a signed, timely and valid claim form. You may  receive, in the mail, a claim form. If not, you can get one, and other information about this lawsuit and Settlement, by going to (**insert website**) or by calling (**insert toll free number**). **You will be able to download a claim form, or request that one be mailed to you. You can also fill out a claim online at www.rg2claims.com/azzha.html.**

## CAN YOU OBJECT TO THE SETTLEMENT?

Yes. You can choose to remain part of the Classes, but tell the Court that you do not agree with the Settlement or some part of it. To object, you must send a letter via first class U.S. mail postmarked no later than ___( insert objection deadline)_____ to ____(insert claim administration address)_____, saying that you object to *Johnson et al. v. Arizona Hospital and Healthcare Association et al.,* Civil Action No. 07-1292. Be sure to include your name, address, e-mail address (if you have one), telephone number, your signature, and the reasons you object to the settlement.

## FAIRNESS HEARING

The Court will hold a Fairness Hearing at _____ on _____, 2010, in Courtroom ___ at the United States District Court for District of Arizona-Phoenix, Sandra Day O'Connor U.S. Court House, 401 W. Washington Street, Phoenix, AZ 85003. At this

hearing, the Court will consider whether to approve the Settlement and the request by Class Counsel for fees and expenses, incentive awards to the Class Representative, and payment for costs of administering the settlement fund. You or your own lawyer are allowed to ask to appear and speak at the hearing at your own cost, but you don't have to. You do not have to attend the hearing to participate in this lawsuit or the Settlement. In addition you do not need to attend the hearing for the Court to consider your objection, provided it was submitted correctly.

## HOW DO YOU EXCLUDE YOURSELF FROM THIS LAWSUIT AND SETTLEMENT?

If you don't want to be legally bound by this lawsuit or Settlement, you must exclude yourself by **(insert date)**. If you exclude yourself (also called "opting out"), you will NOT get any money from the Settlement . You can hire your own lawyer, if you wish, to pursue any claim you may have against Defendants. To exclude yourself from the Class, send a letter by first class U.S. mail to __(insert claims administration address)_____, postmarked no later than ____(insert exclusion deadline)_____, saying you want to be excluded from *Cindy Johnson et al. v. Arizona Hospital and Health Care Association et al.,* Civil Action No.07-1292, **Be sure to include your name, address, email address (if you have one), telephone number, and signature**. Also please include your Arizona nursing license number (whether it has expired or not) if you have one.

Finally, you are requested to provide in the opt-out letter the following information: the positions you worked (such as RN, LPN, CNA, etc.); the Arizona hospitals you worked in, and the nurse staffing agency that placed you. You do not need to provide this information to opt out. It is up to you.

### For more information go to the website or call the toll free number shown below.

**(insert website)**                        **(insert toll free number)**

# EXHIBIT 5

| | | Nursing Publications | | |
|---|---|---|---|---|
| **Publication Name** | **Description of Publication** | **Circulation** | **Frequency of Publication** | **Publication Dates[1] and Deadlines** |
| Nurse Week | NurseWeek provides news and information to the nursing community. The magazine features local news as well as information related to various nursing specialties including Critical Care, Emergency, Medical/Surgical, Pediatrics, Perioperative and Oncology nursing. | South Central (Texas and Louisiana), Southwest (Arizona, New Mexico, Nevada) California, the Heartland (Colorado, Iowa, Kansas, Minnesota, Missouri, Nebraska, North Dakota, Oklahoma, South Dakota and Wisconsin), and the Northwest (Washington, Oregon, Alaska)  Average Circulation: 362,000 | There are 10 separate editions of Nurse Week and Nursing Spectrum. Every other month all 10 publications come out on the same date.  Those dates are listed here. | November 8, 2010 (Deadline: Nov. 4, 2010)  January 10, 2011 (Deadline: January 6, 2011) |
| Nursing Spectrum | Nursing Spectrum is a nursing magazine featuring local news.  It contains a Specialties section which contains news and information in the world of Critical Care, Emergency, Medical/Surgical, Pediatrics, Perioperative and Oncology nursing. | Philadelphia Tri-state, Greater Chicago, New England, Florida, DC/MD/VA, New York, New Jersey, the Midwest (Indiana, Michigan, Ohio, Kentucky), and the Southeast (North Carolina, South Carolina, Georgia) | There are 10 separate editions of Nurse Week and Nursing Spectrum. Every other month all 10 publications come out on the same date.  Those dates are listed here. | November 8, 2010 (Deadline: Nov. 4, 2010)  January 10, 2011 (Deadline: January 6, 2011) |

[1] The Publication Notice will be published once but multiple dates are listed because of the uncertainty of when the Court will rule on the Motion for Preliminary Approval. The first date listed is the next available publication date.

| | | Average Circulation: 358,000 | | |
|---|---|---|---|---|
| Healthcare Traveler | Healthcare Traveler is one of the most widely read resources for nurses and other healthcare professionals including occupational therapy, physical therapy, respiratory care, pharmacy, medical technology, speech language pathology, radiologic technology, and surgical technology.  It focuses on the needs of traveling practitioners by providing tips about life on the road,  expanding clinical knowledge, enhancing professional development, and exploring opportunities with travel companies. | Nationwide<br><br>Average Circulation: 40,000 | Monthly | December 1, 2010 (Deadline: October 29, 2010) |

| American Journal of Nursing | The American Journal of Nursing is the oldest and largest circulating, broad-based nursing journal in the world.  According to their website, AJN's mission is to promote excellence in nursing and health care through the dissemination of evidence-based, peer-reviewed clinical information and original research, discussion of relevant and controversial professional issues, adherence to the standards of journalistic integrity and excellence, and promotion of nursing perspectives to the health care community and the public. | Nationwide

Average Circulation: 105,000 | Monthly | December 1, 2010 (Deadline: November 1, 2010) |
| Nursing 2010 | Nursing2010 is a peer-reviewed journal offering a mix of clinical and professional topics. Although the focus is on acute and chronic care nursing, nurses in all specialties and settings find abundant information and advice. Nursing2010 has won more editorial awards than any other journal in its class. | Nationwide

Average Circulation: 232,023 | Monthly | December 1, 2010 (Deadline: November 3, 2010) |
| Arizona Nurse | Arizona Nurse is a publication used by the Arizona Nurses Association to communicate with its members. | Members of the Arizona Nurses Association

Average Circulation: 15,000 | Quarterly | November, 2010 (Deadline: October 7, 2010)

February, 2011 (Deadline: January 7, 2011)

May, 2011 (Deadline: April 7, 2011) |

**Websites**

| Website Address | Description of Website | Circulation | Frequency of Ad | Publication Deadlines |
|---|---|---|---|---|
| www.nursing center.com | Created by nurses, for nurses, NursingCenter.com provides clinical and professional resources including: Continuing education activities, Free peer-reviewed journal articles, Access to free eNewsletters, a Smart Search facilitating the searching of more than 100 nursing-specific web sites, Daily nursing news updates, Exclusive clinical and professional resources developed based on nurse's feedback, NursingJobsPlus.com, Virtual clinical expos and job fairs, Patient education materials, Drug news and updates. | Worldwide<br><br>Average Visitors Per Month: 265,000 | N/A | N/A |
| www.travel nursingmagazine.com | Travel Nursing Magazine offers the latest medical news, discussion forums, information about nursing, and job listings. | Worldwide<br><br>Average Visitors Per Month: Not Disclosed | N/A | N/A |
| www.Nurse.com | Website for Nurse Week and Nursing Spectrum magazines. | Worldwide<br><br>Average Visitors Per Month: 380,000 | N/A | N/A |
| Newspapers | | | | |
| Newspaper Name | Description of Newspaper | Circulation | Frequency of Publication | Publication Dates and Deadlines |

| Arizona Republic | Debuting in 1890, The Arizona Republic has become Arizona's largest newspaper offering local, national, and international news. | Arizona<br><br>Average Circulation on Sunday: 516,562 | Daily Sunday has the highest circulation so that is the day we chose | October 17, 2010 (Deadline: October 13, 2010 Noon)<br><br>October 24, 2010 (Deadline: October 20, 2010 Noon)<br><br>October 31, 2010 (Deadline: October 27, 2010 Noon) |
| --- | --- | --- | --- | --- |
| Arizona Daily Sun | The Arizona Daily Sun is a daily newspaper out of Flagstaff, Arizona providing news, sports, business, jobs and community events. | Arizona<br><br>Average Circulation on Sunday: 11,357 | Daily Sunday has the highest circulation so that is the day we chose | October 17, 2010 (Deadline: October 14, 2010 Noon)<br><br>October 24, 2010 (Deadline: October 21, 2010 Noon)<br><br>October 31, 2010 (Deadline: October 28, 2010 Noon) |

| Arizona Daily Star | The Arizona Daily Star is a major morning daily newspaper offering the latest headlines in news, sports, entertainment and lifestyles. | Tucson and surrounding districts of southern Arizona<br><br>Average Circulation on Sunday: 155,319 | Daily Sunday has the highest circulation so that is the day we chose | October 17, 2010 (Deadline: October 14, 2010 Noon)<br><br>October 24, 2010 (Deadline: October 21, 2010 Noon)<br><br>October 31, 2010 (Deadline: October 28, 2010 Noon) |
| Yuma Sun | The Yuma Sun is a daily newspaper offering its readers news, information and advertising. | Yuma and surrounding areas<br><br>Average Circulation on Sunday: 20,000 | Daily Sunday has the highest circulation so that is the day we chose | October 17, 2010 (Deadline: October 13, 2010 5 p.m.)<br><br>October 24, 2010 (Deadline: October 20, 2010 5 p.m.)<br><br>October 31, 2010 (Deadline: October 27, 2010 5 p.m.) |

| Prensa Hispana | Presna Hispana is Arizona's No. 1 Hispanic publication in the state of Arizona.  It offers its readers comprehensive news reports from across the valley, statewide, and worldwide. | Arizona<br><br>Average Circulation: 64,925 | Weekly | October 20, 2010 (Deadline: October 15, 2010 5 p.m.)<br><br>October 27, 2010 (Deadline: October 22, 2010 5 p.m.) |

# EXHIBIT 6

## PER DIEM CLASS
## AzHHA Per Diem Registry - Southern and Northern Markets
## Positions Included

| Position | Dates |
|---|---|
| RN (Including Specialist and Non-Specialist) | June 1, 1997 - September 12, 2007 |
| LPN | June  1, 1997 - September 12, 2007 |
| CNA | June 1, 1999 - September 12, 2007 |
| Psych Tech | June 1, 1997 - May 31, 2000 |
| BHT | June 1, 2000 - September 12, 2007 |
| OR Tech | June 1, 1997 - September 12, 2007 |
| Monitor Tech | June 1, 1997 - May 31, 1999 |
| Nurse Aide | June 1, 1997 - May 31, 2000 |
| Sitter | June 1, 1997 - September 12, 2007 |

# EXHIBIT 7

# TRAVEL CLASS
## AzHHA Travel Registry
## Positions Included

| Position | Dates |
|---|---|
| RN (Including Specialist and Non-Specialist) | June 1, 1997 - September 12, 2007 |
| LPN | August 1, 1997 - September 12, 2007 |
| CNA | August 1, 1997 - July 31, 2000 |
| COTA | August 1, 1997 - July 31, 1999 |
| CVOR Tech | August 1, 2000 - September 12, 2007 |
| Medical Tech | August 1, 1997 - July 31, 2000 |
| Nurse Practitioner | August 1, 1997 - July 31, 1999 |
| Occ. Therapist | August 1, 1997 - July 31, 1999 |
| OR Tech | August 1, 1997 - September 12, 2007 |
| Physical Therapist | August 1, 1997 - July 31, 1999 |
| Physician Asst. | August 1, 1997 - July 31, 1999 |
| Psych Tech | August 1, 1997 - July 31, 2000 |
| PT Assistant | August 1, 1997 - July 31, 1999 |
| Rad Tech | August 1, 1997 - July 31, 2001 |
| Resp. Therapist | August 1, 1997 - July 31, 1999 |
| Specialty Rad Tech | August 1, 2000 - July 31, 2001 |
| Speech Pathologist | August 1, 1997 - July 31, 1999 |

Exhibit 8 to Class Settlement Agreement and Release

1.   Except as provided in paragraphs 2 and 3 below, in the event that a Final Judgment against the non-settling Defendants is entered, the sum that the Settling Defendants would have had under Sections 3.4 through 3.6 of the JSA (if those Settling Defendants had not settled) is 93.8%.

2.   In the event that a Final Judgment against the non-Settling Defendants is entered with respect to a class that is defined as consisting only of individuals who provided per diem nurse services in Arizona, the sum that the Settling Defendants would have had under Sections 3.4 through 3.6 of the JSA (if those Settling Defendants had not settled) is 87.1%.

3.   In the event that a Final Judgment against the non-settling Defendants is entered with respect to a class that is defined as consisting only of individuals who provided traveler nurse services in Arizona, the sum that the Settling Defendants would have had under Sections 3.4 through 3.6 of the JSA (if those Settling Defendants had not settled) is 95.4%.

# EXHIBIT 9

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cindy Johnson, Barbara A. Craig, and Stephanie L. Walker on behalf of themselves and all others similarly situated, | No. CV07-1292-PHX-SRB |
| Plaintiffs, | |
| vs. | |
| Arizona Hospital and Healthcare Association et al., | |
| Defendants. | |

## [PROPOSED] ORDER AND FINAL JUDGMENT APPROVING SETTLEMENT, AWARDING ATTORNEYS' FEES, COSTS AND EXPENSES, AWARDING REPRESENTATIVE PLAINTIFF INCENTIVE AWARDS, APPROVING PLAN OF ALLOCATION, AND ORDERING DISMISSAL AS TO ALL SETTLING DEFENDANTS

The Court, having considered (a) the Plaintiffs' Motion for Final Settlement Approval; (b) the Brief in Support of Plaintiffs' Motion for Final Settlement Approval; (c) the Plan Of Allocation For the Settlement Classes; (d) the Declaration of Hal J. Singer, Ph.D. Regarding Proposed Plan of Allocation ("Singer Declaration"); (e) the Plaintiffs' Motion for an Award Of Attorneys' Fees, Reimbursement of Costs and Expenses and Incentive Awards to the Class Representatives; (f) the Brief In Support Of Plaintiffs' Class's Motion For An Award Of Attorneys' Fees, Reimbursement Of Costs and Expenses And Incentive Awards To The Class Representatives; (g) the Affidavits of Co- Lead Counsel David F. Sorensen, Esq. and other class counsel; and having held a hearing on _____**(insert )**_____; and having considered all of the submissions and arguments with respect thereto; pursuant to Rules 23 and 54 of the Federal Rules of Civil Procedure, and in accordance with the terms of the Class Settlement Agreement

and Release between Plaintiffs ("Plaintiffs") and Settling Defendants dated __**(insert)**__ (the

"Settlement Agreement), it is hereby **ORDERED, ADJUDGED and DECREED that:**

      1.     This Order and Final Judgment incorporates by reference the definitions in the

Settlement Agreement, and all capitalized terms used herein shall have the same meaning set

forth in the Settlement Agreement.  As set forth in the Preliminary Approval Order (D.I. No.

_**(insert)**), dated __**(insert)**__ , the previously certified Classes are defined as follows:

> (a)    The "Per Diem Settlement Class" is defined as:  All natural persons who have provided Per Diem Nurse Services in the state of Arizona for any Defendant or other Participating Hospital at any time from January 1, 1997, until September 12, 2007;

> (b)    The "Traveler Settlement Class," is defined as:  All natural persons who have provided Traveling Nurse Services in the state of Arizona for any Defendant or other Participating Hospital at any time from January 1, 1997, until September 12, 2007.

> "Per Diem Nurse Services" are those positions, for those years, as set forth in Exhibit 6 to the Settlement Agreement.

> "Travel Nurse Services" are those positions, for those years, as set forth in Exhibit 7 to the Settlement Agreement.

> **Excluded** from both Settlement Classes are (a) Defendants and their parents, officers, directors, subsidiaries and affiliates;  (b) those natural persons whose sole activity during the Class Period was (i) working for one of the Defendants' or other Participating Hospitals' internal registries or pools and not through an agency, and/or (ii) being employed directly by one or more of the Defendants or Participating Hospitals but not working through an agency; and (c) those natural persons whose sole activity working for one or more of the Defendants or Participating Hospitals during the Class Period was for a Defendant or other Participating Hospital which was not at that time participating in the AzHHA registry program (collectively, the "Classes").

2.     The Court has jurisdiction over these actions and over each of the parties and over all members of the Classes.

3.     As required by the Court in the Preliminary Approval Order, notice of the proposed Settlement was mailed by first-class mail to all members of the Classes whose addresses could be found after reasonable investigation and by publication in periodicals, newspapers and in websites likely to be read by class members. Such notice to members of the Classes is hereby determined to be fully in compliance with requirements of Fed.R.Civ. P.23(e) and due process of law and is found to be the best notice practicable under the circumstances and to constitute due and sufficient notice to all entities entitled thereto.

4.     Due and adequate notice of the proceedings having been given to the Classes and a full opportunity having been offered to the Classes to participate in the fairness hearing, it is hereby determined that all members of the Classes are bound by this Final Order and Judgment.

5.     The Settlement of this Plaintiffs' Action was not the product of collusion between Plaintiffs and Settling Defendants or their representative counsel, but rather was the result of *bona fide* and arm's-length negotiations conducted in good faith between Co-Lead Class Counsel and Class Counsel[1] and Settling Defendants' counsel. The parties also conducted two rounds of mediation, totaling four days, with an outside mediator, retired Judge Edward A. Infante.

6.     The Court has held a hearing to consider the fairness, reasonableness and adequacy of the proposed Settlement, and has been advised that there have been _(insert number)____ objections to the Settlement.

---

[1] The Court appointed David F. Sorensen of Berger & Montague, P.C. and David Balto, Law Offices of David Balto, as Co-Lead  Class Counsel and Mark Samson of Keller Rohrback, L.L.P. and Allen Grunes of Brownstein Hyatt Farber Schrek  as Class Counsel.

7.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby approves the Settlement, and finds that the Settlement is, in all respects, fair, reasonable and adequate to Class members.  Accordingly, the Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement.  The Settlement is fair, reasonable and adequate in light of the factors set forth in *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)(listing the following factors as relevant to determining whether a settlement is fair, adequate and reasonable: "the strengths of plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining a class action throughout trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement." (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)) and as follows:

a.      this case was highly complex, expensive and time consuming, and would have continued to be so if the case had not settled;

b.      there were no objections to the Settlement by Class members;

c.      because the parties participated in extensive discovery before settlement was reached with the Settling Defendants, Co-Lead Class Counsel and Class Counsel had a full appreciation of the strengths and weaknesses of their case before negotiating the Settlement;

d.      Co-Lead Class Counsel, Class Counsel and the Class would have faced serious risks in establishing both liability and damages if they had decided to continue to litigate rather than settle;

e.      the government participated in prior litigation against AzHHA and entered a final judgment in *United States of America and the State of Arizona v. Arizona Hospital and*

*Healthcare Association and AzHHA Service Corporation*, No. CV 07-1020-PHX (D. Ariz.) on September 12, 2007.  The government, however, did not participate in the above-captioned case, did not obtain any monetary relief for any temporary nurses, and the final judgment providing for injunctive relief did not name any of the hospitals themselves;

        f.     there was an uncertain risk of maintaining a class action through trial considering Defendants' contingent cross-appeal under Fed. R. Civ. P. 23(f) of this Court's July 14, 2009 order granting and denying in part Plaintiffs' motion for class certification and the Plaintiffs' Alternative Motion for Class Certification Under Fed. R. Civ. P. 23(C)(4) dated August 17, 2009; and

        g.     the Settlement amount is well within the range of reasonableness in light of the best possible recovery and the risks the parties would have faced if the case had continued to verdicts as to both liability and damages.

        8.     The Court approves the Plan of Allocation of the Settlement proceeds (net of attorneys' fees, reimbursed expenses and incentive awards) as proposed by Class Counsel in the Plan of Allocation (the "Plan"), and supported by the Singer Declaration.  The Plan, which had previously been summarized in the Notice of Proposed Settlement, proposes to distribute the net Settlement proceeds based upon, *inter alia,* whether the Class Member provided Per Diem or Travel Nurse Services to a Participating Hospital during the Class Period, and based on the position the Class Member held and the hours worked, and does so fairly and efficiently.  It directs RG/2 Claims Administration LLC, the firm retained by Class Counsel as the claims administrator, to distribute the net Settlement proceeds in the manner provided in the Plan.

        9.     All claims in the above-captioned action against the Settling Defendants are hereby dismissed with prejudice, and without costs.

10.    In accordance with paragraph 48 of the Settlement Agreement, upon the

Settlement's becoming final in accordance with its terms:

> Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, and causes of action (including without limitation claims under the Arizona Antitrust Act and any state or federal antitrust or unfair competition laws, and claims under any common law theories), whether class, individual, or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties, and attorneys' fees that Releasors, or any one of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have against the Releasees, whether known or unknown, relating in any way to the conduct alleged in the Complaint prior to the Execution Date.   The Released Claims include, without limitation, all claims related to or arising out of the facts, occurrences, transactions, or other matters alleged or which could have been alleged in the Complaint.  Upon the Effective Date, Plaintiffs and Class Members shall be forever enjoined from prosecuting Released Claims against any Releasee.  Furthermore, in the event that Plaintiffs obtain a judgment against AzHHA at trial, Plaintiffs and Class Members shall not seek to recover AzHHA's liability against any Settling Defendant under any theory.  Released Claims do not include any claim unrelated to the conduct at issue in the Complaint, arising in the ordinary course of work, such as a claim based on allegations of personal injury, unpaid wages, overtime, worker's compensation, or breach of contract, or a claim such as discrimination on account of race, gender or age based on violations of federal or state statutes, laws or regulations not at issue in the Complaint.

11.    Co-Lead Class Counsel and Class Counsel have moved for an award of attorneys'

fees and reimbursement of expenses under the common fund doctrine.  Pursuant to Rules

23(h)(3) and 54(d) of the Federal Rules of Civil Procedure, and pursuant to the factors for

assessing whether the common fund is the appropriate method of determining Class Counsels'

fees in *Paul Johnson Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("The common

fund doctrine is properly applied, however, only if (1) the class of beneficiaries is sufficiently

identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting") (internal quotation and citation omitted) and the reasonableness of a class action fee request as set forth in *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048 - 1050 (recognizing that "in common fund cases, the 'benchmark award is 25% of the recovery obtained with 20-30% the usual range'" and identifying the following factors as relevant to determining reasonableness of fee (1) whether counsel obtained exceptional results for the class; 2) the risk Plaintiffs' Counsel undertook in bringing the case; 3) whether counsel's performance generated benefits beyond the cash settlement fund; and 4) the financial burden class counsel bore in litigating the case) this Court makes the following findings of fact and conclusions of law:

a.    the common fund method is the appropriate method of calculating attorneys' fees because each member of the classes has an undisputed and mathematically ascertainable claim to part of the lump sum settlement.

b.    the Settlement confers a monetary benefit on the Classes that is substantial, both in absolute terms and when assessed in light of the risks of establishing liability and damages in this case;

c.    the Settlement confers an additional benefit on the Classes in the form of an enforceable obligation by the Settling Defendants to not repeat the conduct or type of conduct complained of in this action;

d.    there were no objections by members of the Classes to the requested fee award of _____ of the Settlement fund;

e.      Co-Lead Class Counsel and Class Counsel have effectively and efficiently prosecuted this difficult and complex action on behalf of the members of the Classes over three and one-half years, with no guarantee they would be compensated;

f.      Co-Lead Class Counsel and Class Counsel undertook numerous and significant risks of nonpayment in connection with the prosecution of this action;

g.      Co-Lead Class Counsel and Class Counsel have reasonably expended thousands of hours, and incurred _(insert$)_____ dollars in out of pocket expenses, in prosecuting this action, with no guarantee of recovery;

h.      fee awards similar to the fee requested by Co-Lead Class Counsel and Class Counsel here have been awarded in similar cases as 25% is the benchmark award that is given in common fund cases, *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("[W]e established 25% of the fund as the "benchmark" award that should be given in common fund cases.") (quotation in original).

i.      the Settlement achieved for the benefit of the Classes was obtained as a direct result of Co-Lead Class Counsel and Class Counsel's skillful advocacy;

j.      the Settlement was reached following negotiations held in good-faith and in the absence of collusion;

k.      the "percentage-of-the-fund" method is the proper method for calculating attorneys' fees in common fund class actions such as this case because that method provides a "reasonable compensation for creating a common fund". *Graulty,* 886 F.2d at 272;

l.      Members of the Classes were advised in the Notice of Proposed Settlement of Class Action, which notice was approved by this Court, that Class Counsel intended to move for an award of attorneys' fees in an amount up to 25% of the gross Settlement

Fund (including the interest accrued thereon), plus reimbursement of reasonable costs and expenses incurred in the prosecution of this action;

    m. Co-Lead Class Counsel and Class Counsel did, in fact, move for an award of attorneys' fees in the amount of 25% of the gross Settlement Fund (including the interest accrued thereon), plus reimbursement of reasonable costs and expenses incurred in the prosecution of this action, which motion has been on the docket and publicly available since **(insert date)**;

    n. As detailed in affidavits of Co-Lead Class Counsel and other Class Counsel, , a **(insert percentage)** award would equate to a lodestar multiplier of approximately **(insert multiplier amount)**.  An examination of recently approved multipliers in similar class actions reveal that the multiplier requested here is well within the acceptable range;

    o. in light of the factors and findings described above, the requested **(insert %)** fee award is within the applicable range of reasonable percentage fund awards.

  Accordingly, Co-Lead Class Counsel and Class Counsel are hereby awarded attorneys' fees in the amount of $_____$ from the Settlement Fund, plus **(insert interest amount)** of the interest earned on the Settlement proceeds from **(insert date)** (the date of funding of the Settlement Fund) to the date of payment, at the same net interest rate earned by the Settlement Fund.  The Court finds this award to be fair and reasonable.

  Further, Co-Lead Class Counsel and Class Counsel are hereby awarded $\_\_\_(insert dollars)_____ out of the Settlement Fund to reimburse them for the costs and expenses they incurred in the prosecution of this lawsuit, which expenses the Court finds to be fair, and reasonably incurred to achieve the benefits to the Classes obtained in the Settlement to the Classes.

The awarded fees and expenses shall be paid to Co-Lead Class Counsel and Class Counsel from the Settlement Fund in accordance with the terms of the Settlement Agreement. Co-Lead Class Counsel shall allocate the fees and expenses among Co-Lead Class Counsel and all of the Class Counsel.

12.     The Final Order and Judgment, the Settlement Agreement, and all negotiations, statements, and proceedings in connection herewith shall not, in any event, be construed or deemed to be evidence of an admission or concession on the part of the Plaintiffs, any Settling Defendant, any member of the Classes, or any other person as an admission of liability or wrongdoing by them, or of the merit of any claim or defense, and shall not be offered into evidence in any action or proceeding (except an action or proceeding to enforce this Settlement Agreement and the settlement contemplated thereby) or be used in any way as an admission, concession or evidence of any liability or wrongdoing of any nature, and shall not be construed or deemed to be evidence of, an admission or concession that the Plaintiffs or any other person has or has not suffered any damage, except that any Settling Defendant may file this Settlement Agreement and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other similar theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13.     Without affecting the finality of this judgment, The United States District Court for the District of Arizona shall retain exclusive jurisdiction over all matters relating to the implementation and enforcement of the Settlement Agreement.

14.     Class Representatives Barbara A. Craig and Stephanie L. Walker are each hereby awarded $15,000, and Cindy Johnson is awarded $30,000 out of the Settlement Fund, for

representing the Classes, which amount is in addition to whatever monies these plaintiffs will receive from the Settlement Fund pursuant to the Plan of Allocation.  The Court finds these awards to be fair and reasonable.

15.     In the event the Settlement does not become final in accordance with paragraph 59 of the Settlement Agreement, this Order and Final Judgment shall be rendered null and void as provided by the Settlement Agreement, shall be vacated, and all orders entered and releases delivered in connection herewith shall be null and voided to the extent provided by and in accordance with the Settlement Agreement.

16.     The Court hereby directs that this judgment be entered by the clerk forthwith pursuant to Federal Rule of Civil Procedure 54(b).  The direction of the entry of final judgment pursuant to Rule 54(b) is appropriate and proper because this judgment fully and finally adjudicates the claims of the Plaintiffs and the Classes against all Settling Defendants in this action, allows consummation of the Settlement, will expedite the distribution of the Settlement proceeds to the members of the Classes, and there is no just reason for delay.

SO ORDERED this the _____ day of _____, 2010.


_____
Honorable Susan R. Bolton
U.S. District Court for the District of Arizona