David F. Sorensen (Pro Hac Vice)
Neill W. Clark (Pro Hac Vice)
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
dsorensen@bm.net
nclark@bm.net
**Co-Lead Class Counsel and Attorneys for Plaintiffs**
*Additional Counsel on Signature Page*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **Cindy Johnson, Stephanie L. Walker, and Barbara A. Craig, on behalf of themselves and all others similarly situated,** | **CV-07-01292 SRB** |
| **Plaintiffs,** | |
| **v.** | **PLAINTIFFS'MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARDS TO THE CLASS REPRESENTATIVES FOR THEIR EFFORTS ON BEHALF OF CLASS MEMBERS, AND MEMORANDUM IN SUPPORT** |
| **Arizona  Hospital and Healthcare Association, et al.,** | |
| **Defendants.** | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................2

II.     FACTS REGARDING THE CONTRIBUTIONS OF CLASS
        COUNSEL AND THE CLASS REPRESENTATIVES IN
        CREATING THIS COMMON FUND.......................................................4

III     ARGUMENT.....................................................................................8

        A.  The Court Should Award the Requested Attorney Fees.................8

                1.  A Reasonable Percentage of the Fund Recovered is the
                    Appropriate Method For Awarding Class Counsel's
                    Attorneys' Fees in this Common Fund Settlement. ............10

                2.  A Fee Award of 25% of the Common Fund Is Fair and
                    Reasonable. .................................................................13

                a.      Class Counsel Obtained Excellent Results. ...................14

                        (i)      The Result Is Excellent Considering the Quality of
                                 Opposing Counsel .............................................15
                b.      This Litigation Was Very Risky.................................16
                c.      The Settlement Provides Benefits Beyond the Settlement
                        Fund. ..............................................................16
                d.      Class Counsel Carried the Financial Burden of this
                        Litigation, the Time Devoted to this Matter Could Have
                        Been Invested in Other Litigation, and Market Rates
                        for Contingent Litigation Exceed the Recovery Counsel
                        Seek Here ........................................................17
                e.      Analysis of the *Vizcaino* Factors Provides No Basis for
                        Awarding a Fee Below the Benchmark...........................19
                f.      The Reaction of the Settlement Classes to the Settlement
                        Thus Far Strongly Supports the Requested Fee ...........19

                3.  A Lodestar Cross-Check Verifies That The Requested Fee
                    Is Fair and Appropriate. ...............................................20

                4.  Conclusion ................................................................22

        B.  Reimbursement of Cost and Expenses Reasonably and Necessarily
            Incurred and Advanced by Counsel is Appropriate.....................22

        C.  An Incentive Award to the Class Representatives is Appropriate.24

IV.     CONCLUSION ...............................................................................26

L

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alpine Pharmacy, Inc. v. Chas. Pfizer & Co.*,
   481 F.2d 1045 (2d Cir. 1973)..............................................................................9

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)...........................................................................................10

*Camden I Condo Ass'n v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ...........................................................................11

*Carter v. Anderson Merchandisers, LP*,
   No. 08-0025, 2010 U.S. Dist. LEXIS 55629 (C.D. Cal. May 11, 2010) ................20

*Caudle v. Bristow Optical Co.*,
   224 F.3d 1014 (9th Cir. 2000) ...........................................................................20

*Craft v. Cnty. of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) .............................................................21

*Eltman v. Grandma Lee's Inc.*,
   No. 82-1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986)........................................9

*Fischel v. Equitable Life Assurance Society of the United States*,
   307 F.3d 997 (9th Cir. 2002) ...............................................................10, 13,15, 21

*Francisco v. Numismatic Guaranty Corp. of Am.*,
   No. 06-61677-CIV, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008)............................9

*Gottlieb v. Barry*,
   43 F.3d 474 (10th Cir. 1994) .............................................................................11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...........................................................................10

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) .................................................................................."

*Hawaii v. Standard Oil Co.*,
   405 U.S. 251 (1972).............................................................................................9

*Hughes v. Microsoft Corp.*,
No. 98-1646, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) ............................................24

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989) ...............................................................................12, 14

*In re Cont'l. Illinois Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ...........................................................................................11

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig*,
MDL No. 1486, 2007 WL 2416513 (N.D. Cal. Aug. 16, 2007)............................................17

*In re Equity Funding Corp. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977) ...............................................................................15

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)................................................................................................11

*In re Heritage Bond Litig.*, (C.D. Cal. June 10, 2005)
2005 WL 1594389 ........................................................................................................15, 19

*In re Immune Response Sec. Litig,*
497 F. Supp. 2d 1166 (S.D. Cal. 2007)..........................................................................23

*In re Media Vision Tech'y Secs. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) ...............................................................................22

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ...........................................................................................24

*In re Mercury Interactive Corp. Securities Litigation*,
618 F.3d 988 (9th Cir. 2010) .......................................................................................3, 10

*In re Omnivision Techs.*
559 F.Supp. 2d 1036 (N.D. Cal. 2007) ........................................................................17, 23

*In re Pacific Enterprises*,
47 F.3d 373 (9th Cir. 1995) ...........................................................................................14

*In re Prudential Sec. Ltd Pshps. Litig.*
985 F. Supp. 410 (S.D.N.Y. 1997)...................................................................................19

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005).............................................................................................20

ⅼ

iv

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
   268 F. Supp. 2d 907 (N.D. Ohio 2003)..................................................22

*In re Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.*,
   56 F.3d 295 (1st Cir. 1995).......................................................11, 12

*In re Washington Pub. Power Supply Sys. Sec. Litig*,
   19 F.3d 1291 (9th Cir. 1994) ..........................................................8

*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 1986) .........................................................12

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999), *cert. denied*, 528 U.S. 1159 (2000).........................25

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) .........................................................10

*Pelletz v. Weyerhaeuser Co.*,
   255 F.R.D. 537 (W.D. Wash. 2009) ....................................................24

*Perez v. Safety-Kleen Sys.*,
   253 F.R.D. 508 (N.D. Cal. 2008) .....................................................25

*Petrovic v. Amoco Oil Corp.*,
   200 F.3d 1140 (8th Cir. 1999) .......................................................11

*Pillsbury Co. v. Conboy*,
   459 U.S. 248 (1983)...................................................................9

*Rawlings v. Prudential-Bache Properties, Inc.*,
   9 F.3d 513 (6th Cir. 1993) ...........................................................11

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979)...................................................................9

*Romero v. Producers Dairy Foods Inc.*,
   235 F.R.D. 474 (E.D. Cal. 2006) .....................................................25

*Rosiles-Perez v. Superior Forestry Serv.*.,
   250 F.R.D. 332 (M.D. Tenn. 2008) ....................................................25

*Scott v. Aetna Servs. Inc.*,
   210 F.R.D. 261 (D. Conn. 2002)........................................................25

*Sheppard v. Consolidated Edison Co. of New York, Inc.,*
   No. 94-CV-0403, 2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002)........................25

*Six Mexican Workers v. Ariz. Citrus Growers,*
   904 F.2d 1301 (9th Cir. 1990) .........................................................................10

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) ......................................................................23, 24

*Swedish Hosp. Corp. v. Shalala,*
   1 F.3d 1261 (D.C. Cir. 1993) ...........................................................................11

*Thornberry v. Delta Air Lines, Inc.,*
   676 F. 2d 1240 (9th Cir. 1982), *vacated* ..........................................................22

*Torrisi v. Tucson Elec. Power Co.,*
   8 F.3d 1370 (9th Cir. 1993) ..............................................................................10

*Van Vranken v. Atlantic Ritchfield Co.,*
   901 F. Supp. 294 (N.D. Cal. 1995) .............................................................14, 23

*Vincent v. Hughes Air West, Inc.,*
   557 F.2d 759 (9th Cir. 1977) ...........................................................................8, 22

*Vizcaino v. Microsoft Corp.,*
   290 F.3d 1043 (9th Cir. 2002) ................................................................... passim

**STATUTES**

A.R.S. § 44-1401 ......................................................................................................16

15 U.S.C. § 1 .............................................................................................................16

**OTHER AUTHORITIES**

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee
   Awards,* 7 J. EMPIRICAL LEGAL STUD. (forthcoming 2010) .............................13

Charles Silver, *Class Actions in the Gulf South Symposium: Due Process and the
   Lodestar Method: You Can't Get There From Here,* 74 Tul. L. Rev. 1809 (June
   2000) .............................................................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Denise N. Martin, Vinita M. Juneja, Todd M. Foster & Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* Stan. J.L. Bus. & Fin. (1996) ...................................................................................13

F. Patrick Hubbard, *Substantive Due Process Limits on Punitive Damages Awards: "Morals Without Technique"?,* 60 FLA. L. REV. 349 (2008)................................................18

Fed R. Civ. P. 23(f) ..........................................................................................................5

Fed. R. Civ. P. 23(h) and 54(d)(2) ..................................................................................1

Herbert M. Kritzer, *The Wages of Risk: The Returns of Contingency Fee Legal Practice,* 47 DEPAUL L. REV. 267 (1998) ......................................................................18

Joni Hersch, Jeffrey O'Connell & W. Kip Viscusi, *An Empirical Assessment of Early Offer Reform for Medical Malpractice,* 36 J. LEGAL STUD. S231 (2007) ..........................18

Lester Brickman, *ABA Regulation of Contingency Fees: Money Talks, Ethics Walks,* 65 FORDHAM L. REV. 247 (1996) ...............................................................................18

*Report of the Third Circuit Task Force*, 108 F.R.D. 237, 254-59 (1985) .............................11, 12

Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report of the Advisory Committee on Civil Rules* at 69 (Fed. Judicial Ctr. 1996).........................................................13

L

Plaintiffs hereby respectfully move, pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), for an award of attorneys' fees in an amount equal to 25% of the $22,476,818.18 Settlement Fund created plus interest earned thereon until the date of payment[1] ("Settlement Fund" or "Common Fund"), reimbursement of expenses in the amount $872,524.62[2] , and incentive awards of $15,000 each to plaintiffs Ms. Stephanie L. Walker and Ms. Barbara A. Craig, and $30,000 to Ms. Cindy Johnson for serving as Class Representatives.[3]

---

[1]   The Settlement Fund is contained in two separate escrow accounts. The Multiple Defendant Escrow Account holds the $22,256,818.17 deposited within 30 days of the Court's September 27, 2010 Order Granting Plaintiffs' Motion for Preliminary Approval of Settlement, Certification of the Settlement Classes, and Approval of the Form of Notice (Doc No. 642) ("Preliminary Approval Order") by the Defendants that signed the Class Settlement Agreement and Release dated September 3, 2010 ("Class   Settlement Agreement"). *See*  Ex. 2 to Class Settlement Agreement and ¶ 22 (attached as Ex. A to Plaintiffs' Motion for Preliminary Approval of Settlement, Certification of the Settlement Classes, Approval of the Form of Notice and Memorandum in Support. (Doc. No. 639) ("Plaintiffs' Preliminary Approval Motion"). The AzHHA Escrow Account contains the $110,000 AzHHA deposited within 30 days of the Court's Preliminary Approval Order pursuant to the AzHHA Settlement Agreement and Release dated September 3, 2010 ("AzHHA Settlement Agreement") and will also hold the additional $110,000 AZHHA is to deposit by March 31, 2010.  As of January 28, 2011, the total interest earned by both escrow accounts was $10,089.42.

[2]  Of this amount, $57,858.41 are outstanding expenses for expert and court reporting services. *See*  Declaration of David F. Sorensen On Behalf of Class Counsel and Berger & Montague, P.C. In Support of Plaintiffs' Motion For An Award of Attorneys' Fees Reimbursement of Expenses and Incentive Awards to Class Representatives for Their Efforts On Behalf of Class Members at ¶¶ 12-13. (attached to the Compendium of Firm Declarations In Support of Plaintiffs' Motion For Approval of Attorneys' Fees Reimbursement of Expenses and Incentive Awards to Class Representatives for Their Efforts On Behalf of the Class) ("Compendium of Firm Declarations") (attached as Exhibit A).

[3]  Plaintiffs are not submitting a proposed order with this motion as Plaintiffs' request for attorneys' fees, reimbursement of expenses and incentive awards to the class representatives is included in the proposed Final Judgment Order that was attached  as an exhibit to the Class Settlement Agreement and the AZHHA Settlement Agreement that were both included as exhibits to Plaintiffs' Preliminary Approval Motion.  *See* Ex. 9 to

Plaintiffs' Motion is based on the memorandum below and its exhibits, and all other pleadings and matters of record. As provided by ¶ 53 of the September 3, 2010 Class Settlement Agreement and Release ("Class Settlement Agreement") and the AzHHA Class Settlement Agreement and Release ("AzHHA Settlement Agreement") (collectively, the "Settlement"), the Defendants[4] participating in this Settlement take no position with respect to Plaintiffs' Motion.[5]

## I.    INTRODUCTION

After more than three years of vigorous litigation and hard fought, arms-length negotiation by highly experienced, capable counsel, Plaintiffs reached a settlement with nearly all Defendants that provides class members both significant monetary recovery, as well as important prospective, structural relief.    The Settlement provides $22,476,818 in cash plus interest  for members of Per Diem Settlement Class and the Traveler Settlement Class (collectively, "Class Members").[6]    In addition to the Settlement Fund, the Settlement provides significant and valuable structural relief aimed at ensuring that the anticompetitive

---

Exs. A & C in Plaintiffs' Motion for Preliminary Approval.  Plaintiffs may submit a revised Final Judgment Order with their Motion For Final Approval of Settlement that is currently due on February 25, 2011. Preliminary Approval Order at ¶ 16.

[4] The Defendants joining this settlement are Arizona Hospital and Healthcare Association ("AzHHA") and AzHHA Service Corporation and the Defendants listed on Exhibit 1 to the Class Settlement Agreement (attached as Exhibit A to Plaintiffs' Motion for Preliminary Approval of Settlement, Certification of the Settlement Classes, Approval of the Form of Notice and Memorandum in Support (Doc. No.639) (collectively, the "Settling Defendants").

[5] The Class Settlement Agreement is attached as Exhibit A and the AzHHA Class Settlement Agreement is attached as Exhibit C to Plaintiffs' Motion for Preliminary Approval of Settlement, Certification of the Settlement Classes, Approval of the Form of Notice and Memorandum in Support ("Plaintiffs' Preliminary Approval Motion") (Doc. No. 639).

[6] Preliminary Approval Order at  ¶¶ 1-2.

conduct that gave rise to this litigation will not re-occur.   Both the cash recovery and the structural relief were the result of this litigation and settlement.   The prior action brought by the United States Department of Justice and the Arizona Attorney General (the "DOJ Action") was brought against the Arizona Hospital and Healthcare Association ("AzHHA") only, not its member hospitals, and did not seek any compensation for the temporary nursing personnel whose compensation was allegedly suppressed by the alleged anticompetitive conduct of AzHHA and the hospitals.   Nor was the structural relief obtained by the DOJ expressly aimed at the hospitals.   In short, this litigation has resulted in a settlement that, if finally approved, will bring significant monetary and non-monetary relief to Class Members.[7]

On September 27, 2010, this Court certified classes of Per Diem and Traveler Nurses for settlement purposes (the Per Diem class had previously been certified), preliminarily approved the settlement, ordered the sending of notice to members of the settlement classes, and scheduled a final Fairness Hearing for March 4, 2011. That Court-approved notice informed all Class members that Class Counsel would seek an award of attorneys' fees of up to 25% of the Settlement Fund created plus interest. *See*  Mailed Notice at question/answer Nos. 11 & 18 and Published Notice at 2. [8]

In accordance with *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010), counsel appointed by this Court as Co-Lead Class Counsel (David F.

---

[7] The date of the Final Fairness Hearing is March 4, 2011.  Preliminary Approval Order at ¶ 17.

[8] The Mailed Notice was attached as Exhibit 3 and the Published Noticed was attached as Exhibit 4 to the Class Settlement Agreement and AZHHA Settlement Agreement.

Sorensen of Berger & Montague, P.C., and David Balto of Law Offices of David Balto), along with other class counsel (Keller Rohrback, P.L.C., Keller Rohrback L.L.P., Brownstein Hyatt Farber Schreck, LLP, and Kaplan Fox & Kilsheimer, LLP) (collectively, "Class Counsel") respectfully submit this memorandum in support of their motion for an award of attorneys' fees, reimbursement of costs and expenses, and incentive awards to the Class Representatives for their services to the certified settlement classes.  As previously explained in the Mailed and Published Notice, copies of this motion and all supporting materials will be posted on all the Class Counsel's websites and the website established for this litigation  by the Claims Administrator.[9]   Hence Class Members can review the motion before the February 11, 2011 deadline for objections.  Preliminary Approval Order at ¶15.

## I.   FACTS REGARDING THE CONTRIBUTIONS OF CLASS COUNSEL AND THE CLASS REPRESENTATIVES IN CREATING THIS COMMON FUND

Plaintiffs' Memorandum in Support of their Motion for Preliminary Approval of Settlement (Doc No. 639) set forth in some detail the history of this litigation.   Class Counsel worked diligently and incurred substantial out-of-pocket expenses to bring this case from filing (in July 2007), to the motion for preliminary approval of the Settlement (filed in September 2010).   The substantial monetary recovery and significant structural relief is the culmination of Class Counsel's hard work over the course of three years of vigorous litigation. Those efforts included substantial motion practice, extensive discovery of the 45

---

[9] See Mailed Notice at question/answer No. 18 and Published Notice at 2-3.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

separate defendants[10] and thirteen third-party temporary nurse staffing agencies, and two separate mediation sessions followed by months of settlement discussions.

Class counsel were required to brief, inter alia: (1) certain Defendants' Motion to Dismiss[11]; (2) Plaintiffs' Motion for Class Certification[12]; (3) Defendants' Proposal regarding Disclosure of Plaintiffs' Identities[13]; (4) Defendants' motion to exclude Plaintiffs' expert, Dr. Hal J. Singer and reconsideration of this Court's Order denying Defendants' motion[14]; (5) Plaintiffs' Motion for Partial Reconsideration of the Court's Class Certification

---

[10] There are 45 separately named defendants in Plaintiffs' Consolidated Third Amended Complaint (Doc. No. 317), though a number are associated with a particular parent company. There are 39 Settling Defendants, including AzHHA and the AzHHA Service Corporation. *See* Ex. 1 to Class Settlement Agreement; AzHHA Class Settlement Agreement.

[11] *See* Plaintiffs' Response In Opposition Defendants' Mayo Clinic Arizona and Phoenix Children Hospital's, Motion to Dismiss Plaintiffs' Third Amended Complaint dated January 9, 2009 (Doc. No. 408). Oral Argument was held on February 13, 2009 (Doc. No. 440).

[12] *See* Plaintiffs' Motion for Class Certification dated December 22, 2008 (Doc. No. 403); Plaintiffs' Reply Memorandum in Support of Class Certification dated June 5, 2009 (Doc. No. 556).

[13] *See* Plaintiffs' Response to Defendants' Proposal on Disclosure of Plaintiffs' Identities dated April 16, 2008 (Doc. No. 174).

[14] On April 13, 2009 the Court entered an Order Striking Defendants' Motion and Memorandum of Law to Exclude the Report of Hal J. Singer and denied as Moot the Stipulation Regarding Extension of Time for Plaintiffs to Respond to Defendants' Motion to Exclude the Report of Hal J. Singer (Doc. No. 470).   On May 8, 2009 Plaintiffs' filed their Response to Defendants' Motion for Reconsideration of Order Striking *Daubert* Motion  (Doc. No. 494). On May 26, 2009 the Court denied Defendants' Motion for Reconsideration of Order Striking *Daubert* Motion (Doc. No. 511).

Order[15]; and (6) Plaintiffs' Fed R. Civ. P. 23(f) appeal of this Court's Class Certification Order[16].

Discovery  in this case was extensive.  Plaintiffs engaged in vigorous discovery, including: (1) propounding three separate Requests for Production of Documents on Defendants; (2) obtaining and reviewing many thousands of documents from Defendants; (3) obtaining and analyzing electronic data from Defendants; (4) serving subpoenas on thirteen third party temporary nurse staffing agencies and obtaining and reviewing documents and data obtained pursuant to those subpoenas; (5) obtaining and reviewing the discovery record from *PC Healthcare Enterprises, Inc. dba Health Temp v. Arizona Hospital and Healthcare Association, et al.,* No. CV-05-1793-PHX-MHM (D.Ariz.) ("Health Temp" case); (6)  taking or defending 17 fact and expert depositions, including taking the depositions of current and former employees of Defendants and Defendants' Expert Dr, David Scheffman, and defending the depositions of the three Class Representatives and Plaintiffs' Expert Dr. Hal J. Singer; and (7) propounding, responding to and negotiating and drafting stipulations to Interrogatories.

---

[15] Plaintiffs'  Motion for  Partial Reconsideration of Order Dated July 14, 2009 dated July 28, 2009 (Doc. No. 588).

[16] Plaintiffs filed their 23(f) Petition on September 1, 2009. *See Cindy Johnson et al v. Arizona Hospital and Healthcare et al*., No. 09-80142, (Doc. No. 1) and Defendants filed their Answer to Plaintiffs' Petition to Appeal Under 23(f) and Conditional Cross Appeal on September 14, 2009 (Doc. No. 2). Plaintiffs' Answer to Respondent's Conditional Cross Petition was filed on October 5, 2009 (Doc. 30).  The Ninth Circuit has stayed  Plaintiffs' Petition to Appeal and Defendants' Cross Petition pending the settlement. *See* Doc. Nos. 31, 34, 35, 40, 44, 45, 50.

Plaintiffs' extensive motion practice and discovery efforts were followed by two rounds of mediation conducted by an outside mediator, the Honorable Edward Infante (Ret.) of JAMS, a leading alternative dispute resolution firm over four full days in the summer of 2009, in June and August. Subsequently the parties engaged in months of discussions, working out numerous issues and complexities involved in settling a case with so many defendants. Through those difficult and complex settlement negotiations over the course of nearly a year, Plaintiffs obtained the $22,476,818.18 Settlement Fund. These efforts required the investment of thousands of hours in this case, representing a total lodestar of $7,048,969 at their standard current hourly rates, and necessary costs and expenses of $872,524.62 (primarily for the cost of developing and presenting expert economic analysis). *See* Compendium of Firm Declarations (attached as Ex. A). In addition to the time and money invested already, Class Counsel will continue to incur additional attorney hours and claims administration expenses[17] in connection with final approval of the Settlement, responding to inquiries from Class members, interacting with the settlement administrator, determining the amount of and overseeing the disbursement of each Class Member's settlement distribution and generally overseeing the implementation of the Settlement.[18]

As to the Class Representatives, during over three years of litigation they have fully cooperated in discovery including responding to document requests (including for certain

---

[17] Pursuant to the Class Settlement Agreement and Release at ¶ 30(c) and the AzHHA Settlement Agreement and Release at ¶ 30(b), costs of notice and claims processing are deducted from the Settlement Fund. *See* Preliminary Approval Motion at Exs. A and C.

[18] In addition, Class Counsel and the Class Representatives will continue to litigate against the non-Settling Defendants.

personal income tax documents), answering interrogatories, and sitting for depositions. Notably, the initial plaintiffs in this case each filed suit under pseudonyms out of fear of retaliation.  After the initial plaintiffs withdrew, the three representative plaintiffs stepped forward and agreed to have their names be made public.  Their determination eliminated the issue of the use of pseudonyms from the case, to the benefit of class members.  Ms. Johnson, Ms. Walker and Ms. Craig have performed a great service for class members, and the service (or incentive) awards sought are comparatively modest.

## II.    ARGUMENT

### A.    The Court Should Award the Requested Attorney Fees.

Courts have long recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees."  *Vincent v. Hughes Air West, Inc.,* 557 F.2d 759, 769 (9th Cir. 1977).   This doctrine avoids unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it."   *In re Washington Pub. Power Supply Sys. Sec. Litig.,* ("*WPPSSSL*") 19 F.3d 1291, 1300 (9th Cir. 1994).  Pursuant to this doctrine, Class Counsel request an award of attorneys' fees of 25% of the Settlement Fund plus all interest earned thereon until the date attorneys fees and expenses are paid. By comparison, as discussed below, the total lodestar of class counsel (hours worked multiplied by hourly rates) is $7,048,969.[19]  As discussed in Section  III (A)(2) below, it is standard in

---

[19] Indeed, as explained in Section III A(3) , comparing Class Counsel's  fee award under the percentage method with the fee award under the lodestar method results in Class Counsel

1    this Circuit to award  attorneys' fees of 25%  of a settlement fund in class cases . Although

2    Class Counsel believes the circumstances here could merit an upward adjustment from the

3    25% benchmark, they are not seeking any such adjustment.

4
5            Calculating the fee award based upon the percentage method is both straightforward

6    and fair under the circumstances of this case, and was the method stated in the Class Notice

7    distributed to Class members.  Moreover, cross-checking this fee request against the lodestar

8    fee calculation validates its reasonableness, as explained below.

9
10           Awarding attorneys' fees in antitrust cases such as this one is particularly appropriate

11   because the Supreme Court has repeatedly recognized the importance of private antitrust

12   litigation as a necessary and desirable tool to assure the effective enforcement of the antitrust

13   laws. *See e.g. Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983); *Reiter v. Sonotone

14   Corp.*, 442 U.S. 330, 331 (1979); *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 266 (1972). "In

15   the absence of adequate attorneys' fee awards, many antitrust actions would not be

16
17   commenced . . . ." *Alpine Pharmacy, Inc. v. Chas. Pfizer & Co.*, 481 F.2d 1045, 1050 (2d

18   Cir. 1973). Fee awards in successful cases encourage and support meritorious class actions,

19   and promote private enforcement of, and compliance with, the antitrust laws.. "[A] financial

20
21   incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by

22   hourly-rate clients, to devote their time to complex, time-consuming cases for which they

23   may never be paid." *Francisco v. Numismatic Guaranty Corp. of Am.*, No. 06-61677-CIV,

24
25   2008 WL 649124, at * 13 (S.D. Fla. Jan. 31, 2008) (quoting *Mashburn v. Nat'l Healthcare,*

26
27
28

---

obtaining a negative multiplier because the amount of Class Counsel's fee award under the
percentage method, not including interest earned on the Settlement Fund is $5,619,204.55.

*Inc*. 684 F. Supp. 679, 687 ( M.D. Ala. 1988). "To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding." *Eltman v. Grandma Lee's Inc.*, No. 82-1912, 1986 WL 53400, at * 9 (E.D.N.Y. May 28, 1986).

> **1.      A Reasonable Percentage of the Fund Recovered is the Appropriate Method For Awarding Class Counsel's Attorneys' Fees in this Common Fund Settlement.**

The Ninth Circuit has repeatedly approved the use of the percentage method in awarding fees in class actions.  *See, e.g., Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir. 2002). In *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), the Court concluded that the attorneys for the class may recover a fee based on the entire common fund created for the class, even if some class members make no claims against the fund so that money remains in the fund.  While the Ninth Circuit recently re-affirmed that "[t]he district court may exercise its discretion to choose between the lodestar and percentage method in calculating fees," *Mercury Interactive*, 618 F.3d at 992, since *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989), district courts in this Circuit have almost uniformly shifted to the percentage method in awarding fees in representative actions.[20]  This movement, which has occurred over the same time

---

[20] To the extent courts in this Circuit still apply the lodestar method, this tends to occur either: (1) when the primary relief is non-financial, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("In employment, civil rights and other injunctive relief class actions, courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof."); or (2) to avoid a possible windfall in cases with large settlements early in the litigation where "[t]here has been no discovery, no lengthy settlement negotiations, no protracted litigation of any kind." *Fischel v. Equitable Life Assurance*

frame in many Circuits, follows the findings of a task force established by the Third Circuit to examine the issue of awards of attorneys' fees in common fund cases. *See, Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 254-59 (1985) ("*Task Force*").

The trend in this Circuit is consistent with decisions nationwide awarding fees in common fund cases based on a percentage of the total recovery. Manual For Complex Litigation (Fourth) §14.121 (2004) (noting that "the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common fund cases"). In addition to this circuit, at least eight other circuits - the First, Third, Sixth, Seventh, Eighth, Tenth, Eleventh and the D.C. Circuit  - have endorsed the percentage-of-recovery method as an appropriate method for awarding attorneys' fees.[21]  The rationale for compensating

---

*Society of the United States*, 307 F.3d 997, 1003 (9th Cir. 2002) (citations omitted).  Neither circumstance applies here.

[21]   *See In re Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.,* 56 F.3d 295, 305 (1st Cir. 1995) ("[c]ontrary to popular belief, it is the lodestar method, not the [percentage] method, that breaks from precedent"); *Gottlieb v. Barry*, 43 F.3d 474, 484 (10th Cir. 1994) (fee award should be calculated using the percentage method; "use of the lodestar in common fund cases is 'out of fashion'"); *Rawlings v. Prudential-Bache Properties, Inc.,* 9 F.3d 513, 515-16 (6th Cir. 1993) (noting "the recent trend toward adoption of a percentage of the fund method," and permitting use of the "percentage of the fund method" in common fund cases); *In re Cont'l. Illinois Sec. Litig.,* 962 F.2d 566, 572 (7th Cir. 1992) ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client"). "*Petrovic v. Amoco Oil Corp.,* 200 F.3d 1140, 1157 (8th Cir. 1999) ("It is well established in this circuit that a district court may use the 'percentage of the fund' methodology to evaluate attorney fees in a common-fund settlement."); *Camden I Condo Ass'n v. Dunkle,* 946 F.2d 768, 774-75 (11th Cir. 1991) (percentage method mandatory in common fund cases); *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("[W]e join the Third Circuit Task Force . . . in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases.");  *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995)

counsel on the basis of a percentage of the fund created by their efforts is sound, and Plaintiffs respectfully suggest should be followed here.  First, it is consistent with practice in individual litigation where contingent attorney fees are customarily determined as a percentage of recovery.  Second, it more closely aligns the lawyer's interest in being compensated with the interest of the class in achieving the maximum possible recovery as efficiently as possible.[22]  Third, use of the percentage method decreases the burden on the court (and the resulting delay in distributing funds) by eliminating a full-blown, detailed and time consuming lodestar analysis.  *See, In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375-76 (N.D. Cal. 1989) (noting that, based on the court's experience, a lodestar analysis "consume[s] an undue amount of court time with little resulting advantage to anyone, but, in fact, it may be to the detriment of the class members.").[23]

---

("[i]n common fund cases, a district judge can award attorneys' fees as a percentage of the fund recovered"); *Task Force,* 108 F.R.D. at 254-59.

[22]   The court in *Kirchoff v. Flynn*, 786 F.2d 320, 325-326 (7th Cir. 1986) explained how the contingent fee method of awarding attorneys' fees aligned the  lawyers' and clients' interests:

> The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains . . . . At the same time it automatically aligns interests of lawyer and client, rewards exceptional successes, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation.

*See also* Charles Silver, *Class Actions in the Gulf South Symposium: Due Process and the Lodestar Method: You Can't Get There From Here*, 74 Tul. L. Rev. 1809 (June 2000).

[23]   *See also Task Force*, 108 F.R.D. at 258 (referring to the lodestar query as the "cumbersome, enervating, and often surrealistic process of preparing and evaluating fee petitions" and favoring the percentage approach); *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) (noting that the First Circuit allows a court to choose between a lodestar or percentage of the fund ("POF")

**2.     A Fee Award of 25% of the Common Fund Is Fair and Reasonable.**

The Ninth Circuit has adopted a 25% "benchmark" for attorneys' fee awards in cases with a common fund recovery.  *Fischel,* 307 F.3d at 1006 ("We have established a 25 percent 'benchmark' in percentage-of-the-fund cases that can be 'adjusted upward or downward to account for any unusual circumstances involved in [the] case.'") (quoting *Graulty* 886 F.2d at 272).  Deviations from this benchmark must be supported by an explanation of the Court's reasons for choosing a different percentage. *Graulty*, 886 F.2d at 272.  The Ninth Circuit's benchmark is in line with nationwide practice.  For example,  a study by National Economic Research Associates concluded: "Regardless of case size, fees average approximately 32 percent of the settlement." Denise N. Martin, Vinita M. Juneja, Todd M. Foster & Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* Stan. J.L. Bus. & Fin. (1996).  Another study found that the both the mean and the median award during 2006 and 2007 was 25%.  Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL LEGAL STUD. (forthcoming 2010) (manuscript at 26 tbl.7), available at http://ssrn.com/abstract=1442108.[24]

fee award, but recognizing as benefits of the POF award, that "the POF approach is often less burdensome to administer than the lodestar method"; that "using the POF method in a common fund case enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency [because] [u]nder the latter approach, attorneys not only have a monetary incentive to spend as many hours as possible (and bill for them) but also face a strong disincentive to early settlement"; and "because the POF technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace.")

[24] A Federal Judicial Center study of class action attorneys' fees in four federal district courts with a high number of class actions found "[m]edian rates ranged from 17% to 30%." Thomas E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class*

1

2          In evaluating whether any deviation from the benchmark is warranted, a court may

3   consider (1) the result achieved; (2) the risk of the litigation; (3) non-monetary benefits

4   achieved; (4) market rates; and (5) the extent to which counsel had to forego other work and

5   had to invest significant out-of-pocket funds in the litigation. *Vizcaino*, 290 F.3d at 1048-

6   49.[25]  Plaintiffs respectfully suggest that these factors not only support the award of 25%

7   sought by Class Counsel, but would support an upward adjustment, though no such upward

8   adjustment is sought.[26]

9

10              a.       **Class Counsel Obtained Excellent Results.**

11         The settlement here for over $22 million in cash, plus prospective structural relief, is

12  a significant achievement.  The numerous Defendants argued, inter alia, that the agreement

13  between AzHHA  and the participating hospitals in the AzHHA Registry Program was not a

14  prohibited  agreement  to  fix  wages,  but  a  legitimate  joint  purchasing  arrangement.

15  Defendants also hotly disputed that their conduct and agreement had any effect on the

16

17  compensation to Class Members.  Despite these, and other, defenses, Plaintiffs were able to

18

19

20      *Actions in Four Federal District Courts: Final Report of the Advisory Committee on Civil
    Rules* at 69 (Fed. Judicial Ctr. 1996).

21

22  [25] A survey by the *Vizcaino* Court revealed that a majority of "mega fund" cases can
    result in fee awards in the 20-30 percent range. *Id. at 1050 n. 4*. Indeed in *Vizcaino,* the Court
23  adjusted the benchmark upward and awarded the attorneys 28% of the $96 million settlement
    fund.  Given the comparatively more modest size of the fund created here, an award of 25%
24  is imminently reasonable.

25
    [26] Indeed, many courts in this Circuit have approved common fund fee awards greater
26  than the percentage requested here. *See e.g., Van Vranken v. Atlantic Ritchfield Co.*, 901 F.
    Supp. 294, 297-298 (N.D. Cal. 1995) (citing cases awarding an award of 33%); *In re Pacific
27  Enterprises*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming an award equal to 33% of common
    fund); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (awarding
28  32.8% of the common settlement fund).

obtain a cash settlement of more than $22 million, as well as prospective relief (though in settling, Defendants have not acknowledged any wrongdoing or liability).  Plaintiffs' counsel pursued written discovery, voluminous document and data review, took or defended 17 depositions; developed economic evidence and analysis; defeated (in part) Defendants' motion to dismiss, and more.   In the end, the settlement that was reached provides real and significant financial benefit to members of the class.  It is a substantial and excellent result for Class Members that was the result of effective, hard-fought litigation on the part of Plaintiffs' Counsel.

          **(i)**       **The Result Is Excellent Considering the Quality of Opposing Counsel.**

This result is particularly commendable given the quality of opposing counsel, an important factor in evaluating the quality of the work done by Class Counsel. *See e.g., In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (recognizing that "plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly").   The 39 Settling Defendants were represented by, inter alia, 25 separate, experienced and well-known law firms.  The ability of Class Counsel to obtain such a significant settlement in the face of such skilled legal opposition further reflects on the quality of Class Counsel's work.[27]

---

[27] *See also In re Heritage Bond Litig.*, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005) ("The experience of [Class] counsel is also a factor in determining the appropriate fee award."). Class Members here were represented by  attorneys with substantial antitrust experience from firms with long and successful track records in such cases. *See* Firm Biographies attached as Exhibits to the Compendium of Firm Declarations.

**b.      This Litigation Was Risky.**

For the purpose of evaluating this factor, risk is to be measured at the outset of the litigation.  *Fischel*, 307 F.3d at 1009.  Though this case was filed following a government investigation, as noted, the DOJ Action neither sought nor obtained any compensation for the Class Members (temporary nursing personnel).  Nor did the DOJ Final Judgment name any of the hospitals. [28]  The DOJ Action, since it did not seek damages, did not have to develop the kind of factual and expert economic evidence required in this litigation.  Nor was class certification an issue.  At the outset of this case, therefore, Class Counsel faced a number of significant risks of ever obtaining recovery for class members or being compensated for their work and expenditures.

**c.      The Settlement Provides Benefits Beyond the Settlement Fund.**

The Settlement provides a substantial recovery to Class Members, as well as significant structural relief that will benefit as Class Members. AzHHA, which is subject to the DOJ Final Judgment until 2017, has agreed to an additional five years of prospective relief on top of that, which provides that AzHHA will not operate its Registry Program in a manner that violates Section 1 of the Sherman Act, 15 U.S.C. § 1, the Arizona state antitrust act, A.R.S. § 44-1401, and the limitations imposed by the DOJ Final Judgment. *See* AzHHA Settlement Agreement (attached as Ex. C to Plaintiffs' Preliminary Approval Motion). Similarly, the other Settling Defendants have agreed to seven years of prospective relief

---

[28] See *United States of America v. Arizona Hospital and Healthcare Association and AzHHA Service Corp.*, NO. CV07-1030, Final Judgment (attached as Ex. 3 to Plaintiffs' Motion for Class Certification dated December 22, 2009 (Doc. No. 403) (" DOJ Final Judgment") .

(beginning when the settlement becomes final) with provisions and restrictions similar to those agreed to by AzHHA.  *See* Class Settlement Agreement attached as Ex.  A to Plaintiffs' Preliminary Approval Motion; *see also* Plaintiffs'  Preliminary Approval Motion  at 15-16.

### d. Class Counsel Carried the Financial Burden of this Litigation, the Time Devoted to this Matter Could Have Been Invested in Other Litigation, and Market Rates for Contingent Litigation Exceed the Recovery Counsel Seek Here.

The Ninth Circuit has confirmed that a determination of a fair and reasonable fee must include consideration of the contingent nature of the fee and the obstacles surmounted in obtaining the settlement.

> It is an established practice in the private legal market to reward attorneys for taking the risk of non payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law*, § 21.9, at 534-535 (3d ed. 1986). Contingent fees that may far exceed the market value of the services rendered on a non contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose. *WPPSSSL*, 19 F.3d 1291, 1299 (9th Cir. 1994) .[29]

Class Counsel have litigated this case for over three years without any compensation. In addition to the thousands of hours invested in it, they have placed $872,524.62 at risk by

---

[29] *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig*, 2007 WL 2416513, at * 1 (N.D. Cal, Aug. 16, 2007) ("Plaintiffs' counsel risked time and effort and advanced costs and expenses with no ultimate guarantee of compensation."); *see also  In re Omnivision Techs.* 559 F.Supp. 2d 1036, 1047 (N.D. Cal. 2007), ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept maters on a contingent fee basis a larger fee than if they were billing by the hour or on a flat fee.") (citations omitted)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

advancing that amount for litigation expenses.[30]  Litigating this case over that extended period of time necessarily diverted counsel from working on other remunerative matters.

   As to a comparison with market rates, as discussed below, the 25% fee sought would result in a fee that is *below* the combined lodestar of Class Counsel.  And the 25% figure is a commonly accepted benchmark in this circuit, and is below the standard privately-negotiated contingent fee recovery of 33% or more.  *See* Lester Brickman, *ABA Regulation of Contingency Fees: Money Talks, Ethics Walks*, 65 FORDHAM L. REV. 247, 248 (1996) (noting that "standard contingency fees" are "usually thirty-three percent to forty percent of gross recoveries" (emphasis omitted)); Joni Hersch, Jeffrey O'Connell & W. Kip Viscusi, *An Empirical Assessment of Early Offer Reform for Medical Malpractice*, 36 J. LEGAL STUD. S231, S238 (2007) (referencing "the more typical one-third contingency fee rate"); F. Patrick Hubbard, *Substantive Due Process Limits on Punitive Damages Awards: "Morals Without Technique"?*, 60 FLA. L. REV. 349, 383 (2008) (referring to "the usual 33-40 percent contingent fee") (quoting *Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 677 (7th Cir. 2003)); Herbert M. Kritzer, *The Wages of Risk: The Returns of Contingency Fee Legal Practice*, 47 DEPAUL L. REV. 267, 286 (1998) (reporting the results of a survey of Wisconsin lawyers, which found that "a contingency fee of 33% was by far the most common, accounting for 92% of [negotiated contingent fee] cases").  Indeed, courts in the Ninth Circuit have often awarded fees above  25%. *See supra* note 26.

---

[30]  This amount includes $57,858.41 in outstanding expert and court reporting expenses.  *Supra note 2.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     **e.**    **Analysis of the *Vizcaino* Factors Provides No Basis for Awarding a Fee Below the Benchmark.**

   In conclusion, none of the *Vizcaino* factors here provides any basis for awarding a fee below the Ninth Circuit 25% benchmark – indeed Class Counsel respectfully suggest that if anything these factors support an upward adjustment from the benchmark, though Class Counsel seek no such upward adjustment as to this Settlement.

     **f.**    **The Reaction of the Settlement Classes to the Settlement Thus Far Strongly Supports the Requested Fee.**

   Pursuant to the Court's Preliminary Approval Order, the Notice of Class Action and accompanying Claim Form were mailed to 26,591 persons that had been identified as likely class members from Defendants' records and the records obtained from the Arizona Nurse Licensing Board.  In addition, notice was published in the Sunday edition of four major Arizona newspapers whose combined circulation covers nearly all major geographical locations in Arizona and in Nursing Publications and websites  that would likely be read/viewed by Class Members. *See* Ex. 5 to Class Settlement Agreement and AzHHA Settlement Agreement; *See also* Stipulation to Amend Publication Notice Plan (Doc. No. 646); November 16, 2010 Order Amending Publication Notice Plan and Entering Stipulation (Doc. No. 647). The deadline for Class Members to object to the Settlement and/or Class Counsels' fee application is February 11, 2011, and the deadline for opting out of the Settlement Classes expired on January 14, 2011. Preliminary Approval Order at ¶¶ 11& 15. To date, fewer than 200 persons have opted out[31] and not a single person has objected thus far to any aspect of the Settlement, the Plan of Allocation, or the request for attorneys' fees

---

[31] We are still reviewing these to determine the precise number.

and reimbursement of expenses.[32]  *See  In re Heritage Bond Litig.*, 2005 WL 1594389  at 48-50; *See e.g.*, *In re Prudential Sec. Ltd Pshps. Litig.* 985 F. Supp. 410, 416 (S.D.N.Y. 1997) ("In determining the reasonableness of a requested fee, numerous courts have recognized that 'the lack of objection from members of the class is one of the most important reasons.'") (quoting *In re Gen Pub. Utils. Sec. Litig.* 1983 U.S. Dist. LEXIS 11641 at * 22 (D.N.J. Nov. 16, 1983) .

### 3.     A Lodestar Cross-Check Verifies That The Requested Fee Is Fair and Appropriate.

Evaluation of the lodestar here confirms the reasonable of the fee sought. *See Carter v. Anderson Merchandisers, LP,* No. 08-0025, 2010 U.S. Dist. LEXIS 55629 at *11-12 (C.D. Cal. May 11, 2010) (applying lodestar cross-check, citing cases).[33]  In applying a lodestar cross-check, courts engage in a two-step process.   First, the lodestar is computed by multiplying the number of hours reasonably expended by the reasonable rates requested by the attorneys.  *Caudle v. Bristow Optical Co.,* 224 F.3d 1014, 1028 (9th Cir. 2000).  Second, the court may compare the lodestar to the percentage-of-the-fund request made by counsel to

---

[32]    Objections to the Settlement are to be filed with the Court and copies given to David F. Sorensen, Co-Lead Counsel, and Joel W. Nomkin,  Counsel for Banner Health and Sun Health Corporation (as liaison counsel for Settling Defendants for, *inter alia*, purposes of notification concerning objections to the Settlement). *See* Mailed Notice (question 19). As of the date of this filing, no objections appeared on the Docket Report and neither David F. Sorensen nor Joel W. Nomkin have received copies of any objections.

[33]    The use of this cross-check is more common in cases that settle very early to guard against any windfall that a percentage-of-fund method might yield.  No such danger is present here.

determine the multiplier that the percentage method would yield.[34] *See Vizcaino,* 290 F.3d at

1051 n.6. (approving a fee award of 28% of $96,885,000 settlement, finding that the

percentage method of determining attorneys' fees yielded a multiplier of 3.65 and noting that

"multiples ranging from one to four are frequently awarded in common fund cases when the

lodestar method is applied.") .

Class Counsel have invested 17,907.35 hours litigating this matter, for a lodestar of

$7,048,969. This lodestar has been computed based upon the current regular hourly rates

charged by counsel. [35] *See* Compendium of Firm Declarations In Support of Plaintiffs'

Motion for An Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive

Awards to the Class Representatives for Their Efforts on Behalf of Class Members. (attached

as Ex. A). The propriety of the lodestar cross-check of the 25% fee requested is supported

---

[34] "The cross check requires neither mathematical precision or bean counting; it allows you to 'rely on summaries submitted by the attorneys and [you] need not review the actual billing records,' *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-307 (3d Cir. 2005)." Barbara Rothstein & Thomas Willging, Managing Class Action Litigation: A pocket Guide for Judges, (Federal Judicial Center 3d ed. 2010.)

[35] As allowed under 9th Circuit law, Class Counsel are seeking compensation at current rates for all hours billed during the course of the litigation. *Fischel ,*307 F.3d at 1010 ( "Attorneys in common fund cases must be compensated for any delay in payment, *Coordinated Pretrial, 109 F.3d at 609*, and thus Plaintiffs' counsel are entitled to such compensation. ... [T]he district court ha[s] discretion to compensate them either '(1) by applying the attorneys' current rates to all hours billed during the course of the litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement.' " (quoting *WPPSSSL, 19 F.3d at 1305*).

further by the fact that it does not include the continuing work that will be necessary following final approval to administer the settlement.[36]

Even without that additional time, the multiplier produced by cross-checking the 25% award against the total lodestar is negative (i.e., below 1).  That obviously falls well within the multipliers commonly awarded in the Ninth Circuit where significant positive multipliers are the norm.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 n6. (observing that 83% of the courts in common fund cases it surveyed assessed a multiplier between 1 and 4.); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving 25% fee award resulting in a multiplier of 5.2, and collecting similar cases).  These cases are, again, consistent with nationwide practice.  *See, generally, In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.,* 268 F. Supp. 2d 907, 938 n.45 (N.D. Ohio 2003) (relying on a 2003 study of fee awards in 1,120 cases to conclude that "the courts' effective multipliers averaged … 3.89 across all 1,120 cases").

### 4.    Conclusion

In light of the above considerations, Plaintiffs respectfully suggest that the requested fee award is reasonable and fair.

### B.    Reimbursement of Cost and Expenses Reasonably and Necessarily Incurred and Advanced by Counsel is Appropriate.

It is well established that Class Counsel are entitled to reimbursement of all out-of-pocket expenses advanced throughout the litigation so long as those expenses were

---

[36] Such work includes preparing for and participating in the final fairness hearing, overseeing the processing of claim forms, answering inquiries from Class members, supervising the distribution of the Settlement Fund to the Class.

reasonable and necessary to the litigation. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (approving recovery of "out-of-pocket expenses that 'would normally be charged to a fee paying client.'"); *Vincent*, 557 F.2d at 769 ("The common fund doctrine provides that a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation…."); *In re Media Vision Tech'y Secs. Litig.*, 913 F. Supp. 1362, 1368 (N.D. Cal. 1996) (award of costs subject to reasonableness test).

Certain counsel were required to travel in connection with this case. The travel expenses are reasonable in amount, and are properly charged against the fund created. *See Thornberry v. Delta Air Lines, Inc.*, 676 F. 2d 1240, 1244 (9th Cir. 1982), *vacated and remanded on other grounds*, 461 U.S. 952 (1983); *In re Immune Response Sec. Litig.*, ("*Immune Response*") 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).

Photocopying, computerized legal research, postage and expert costs are also customarily reimbursed in common fund cases. *Omnivision*, 559 F.Supp.2d at 1048-1049; *Immune Response*, 497 F. Supp. 2d at 1177-78. The services of an experienced mediator were also reasonably necessary because they assisted in achieving a timely settlement of this complex case. The expenses of the mediator should be reimbursed. *Id.*   Accordingly, Class Counsel's request for reimbursement of $872,524.62 for all such expenses is reasonable and should be granted.[37]

---

[37] The previously unreimbursed expenses for which Class Counsel now seek reimbursement are contained in the Compendium of Firm Declarations In Support of Class Counsel's Motion for An Award of Attorneys' Fees and Reimbursement of Costs and Expenses and Incentive Awards to the Class Representatives for Their Efforts on Behalf of Class Members.   Expenses related to the claims administration process have been and will

**C.      Incentive Award to the Class Representatives Are Appropriate.**

Finally, it is well-recognized that "named plaintiffs … are eligible for reasonable incentive payments" as part of a class action settlement.  *Staton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir. 2003).  Courts regularly award such enhancements, which are intended to advance public policy by encouraging individuals to come forward and take action to protect their rights and the rights of the class.  *See Van Vranken v. Atl. Richfield Co*., 901 F.Supp. 294, 300 (N.D.Cal. 1995).  The award also compensates class representatives for their time, effort and inconvenience.  *See Staton*, 327 F.3d at 976-77 (collecting cases).  When evaluating the reasonableness of a participation award, courts consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions … [and] the amount of time and effort the plaintiff expended in pursuing the litigation."  *Id*. at 977; see also Manual for Complex Litigation, § 21.62 n. 971 (4th ed. 2004) (noting that enhancement payments may be "warranted for time spent meeting with class members, monitoring cases, or responding to discovery").  *See, e.g., In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 457 (9th Cir. 2000) (affirming $5,000 payments from a $1.725 million settlement fund*); Pelletz v. Weyerhaeuser Co.,* 255 F.R.D. 537, 543 (W.D. Wash. 2009) (awards of $7,500 to each of the named plaintiffs in a $1.75 million settlement); *Hughes v. Microsoft Corp*., No. 98-1646, 2001 WL 34089697, at 12-13 (W.D. Wash. 2001) (awards of $7,500, $25,000, and $40,000 to the representative plaintiffs).

---

also be deducted from the Settlement Fund, but Class Counsel are not seeking reimbursement for those expenses. Instead, consistent with the Settlement Agreements, as those expenses are incurred, Class Counsel, following the procedures outlined in the Escrow Agreements, will instruct the Escrow Agent to pay such expenses.    *See* Escrow Agreements at ¶ (8)(a) (attached at Exhibit B and D respectively to Plaintiffs' Motion for Preliminary Approval).

1    An award of $15,000 each to Ms. Walker and Ms. Craig, and $30,000 to Ms. Johnson

2   for serving as Class Representatives is appropriate here for the significant work they have

3   done on behalf of Class Members.  The award requested for Ms. Johnson is higher because

4   she is representing the Per Diem Settlement Class, whose allocated share of the settlement is

5   greater in light of the greater litigation risks faced by the Traveler Settlement Class as

6   explained in Plaintiffs' Motion for Preliminary Approval at 30-31. *See* Proposed Allocation

7   Plan by Hal J. Singer PH.D (attached as Exhibit E to Plaintiffs' Motion for Preliminary

8   Approval).   It is also noteworthy that Ms. Walker, Ms. Craig and Ms. Johnson stepped

9   forward as plaintiffs and allowed their names to be made public after prior plaintiffs had filed

10  under pseudonyms out of fear of retaliation and who subsequently withdrew as representative

11  plaintiffs.[38]   These circumstances underscore the significance of the services performed by

12  Ms. Walker, Ms. Craig and Ms. Johnson on behalf of Class Members.   The requested awards

13  here are reasonable.  *See, e.g., Sheppard v. Consolidated Edison Co. of New York, Inc*., No.

14  94-CV-0403 2002 WL 2003206 (E.D.N.Y. Aug. 1,  2002) (reviewing cases approving

15  incentive awards, finding most awards were in the $10,000 to $50,000 range).[39]

16  Significantly, the Class Notice advised that Plaintiffs would be seeking incentive awards in

17  the amounts requested and no Class Member has, thus far, objected.

---

[38] Courts have recognized that in the employment context the willingness of a class representative to step forward is worthy of special consideration.  *See, e.g., Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624-25 (5th Cir. 1999)*, cert. denied*, 528 U.S. 1159 (2000); *Romero v. Producers Dairy Foods Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006); *Rosiles-Perez v. Superior Forestry Serv.*. 250 F.R.D. 332, 348 (M.D. Tenn. 2008); *Perez v. Safety-Kleen Sys.,* , 253 F.R.D. 508, 520 (N.D. Cal. 2008); *Scott v. Aetna Servs. Inc.,* 210 F.R.D. 261, 268 (D. Conn. 2002).

**III.    CONCLUSION**

For the reasons stated above:

(i)      The proposed 25% fee award is fair and reasonable and represents an appropriate percentage recovery from the Common Fund in light of all the circumstances.

(ii)     The proposed Incentive Awards are fair and reasonable and represent an appropriate reward for the efforts of the Class Representatives in achieving this settlement;

(iii)    Class Counsel are entitled to recover the reasonable and necessary expenses they have incurred in this matter, which sums amount to $872,524.62

Dated: January 28, 2011

**BERGER & MONTAGUE, P.C.**

By: /s/ David F. Sorensen
David F. Sorensen
Neill W. Clark
1622 Locust Street
Philadelphia, PA  19103
Tel: 215-875-3000
Fax: 215-875-4673

**LAW OFFICES OF DAVID BALTO**
David Balto
1350 I Street, N.W., Suite 850
Washington, D.C. 20005-3355
Tel: 202-577-5424
Fax: 202-333-4186

**KELLER ROHRBACK, P.L.C.**
Mark Samson
Ron Kilgard
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012

Tel: 602-248-0088
Fax: 602-248-2822

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
Allen P. Grunes
1350 I Street, Suite 510
Washington, D.C. 20005-3355
Tel: 202-296-7353
Fax: 202-296-7009

Timothy R. Beyer
Martha F. Bauer
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
Tel: 303-223-1100
Fax: 303-223-1111

Jeffrey S. Rugg
100 City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Tel: 702-382-2101
Fax: 702-382-8135

1

## **CERTIFICATE OF SERVICE**

2

      The undersigned hereby certifies that on January 28, 2011 the foregoing

3

Plaintiffs' Motion For An Award Of Attorneys' Fees, Reimbursement Of Expenses And

Incentive Awards To  The Class Representatives For Their Efforts On Behalf Of The Class,

4

And Memorandum In Support was served via electronic mail to the following parties

5

and notice of this filing will be sent to all parties listed below by operation of the

Court's CM/ ECF System:

6

7

Keith Beauchamp                                    Timothy J. Burke

8

Lauren Jacqueline Weinzweig              Jamie Brown

Roopali H. Desai                                     **FENNEMORE CRAIG PC**

9

**COPPERSMITH SCHERMER**                     3003 North Central Avenue, Suite 2600

10

  **& BROCKELMAN PLC**                          Phoenix, AZ 85012

2800 North Central Avenue, Suite 1200   tburke@fclaw.com

11

Phoenix, AZ  85004                               pklein@fclaw.com

12

kbeauchamp@csblaw.com                     *Attorneys for Northern Arizona*

13

lweinzweig@csblaw.com                        *Healthcare Corporation,  Catholic*

rdesai@csblaw.com                               *Healthcare West, Bullhead City*

14

*Attorneys for Arizona Hospital and*      *Hospital Corporation, Payson Hospital*

15

*Healthcare Association and AzHHA*       *Corporation, Oro Valley Hospital, LLC,*

*Service Corporation*                            *Northwest Hospital, LLC*

16

17

Teisha C. Johnson                                 David A. Ettinger

18

Katherine I. Funk                                  **HONIGMAN MILLER SCHWARTZ &**

**SONNENSCHEIN NATH &**                        **COHN LLP**

19

**ROSENTHAL LLP**                                   2290 1ˢᵗ National Building

20

1301 K Street N.W.                              660 Woodward Avenue

21

Suite 600 East Tower                           Detroit, MI 48226

Washington, DC 20005                         dettinger@honigman.com

22

tcjohnson@sonnenschein.com              *Attorneys   for   Northern   Arizona*

23

kfunk@sonnenschein.com                     *Healthcare Corporation*

*Attorneys for University Medical Center*

24

*Corporation*

25

26

27

28

Randall Papetti
**LEWIS & ROCA LLP**
40 North Central Avenue
Phoenix, AZ 85004-4429
rpapetti@lrlaw.com
*Attorneys for University Medical*
*Center Corporation*

Andrew L. Pringle
**MARISCAL WEEKS MCINTYRE &**
  **FRIEDLANDER PA**
2901 North Central Avenue, Suite 200
Phoenix, AZ 85012-2705
larry.pringle@mwmf.com
*Attorneys for John C. Lincoln Health*
*Network*

Joel W. Nomkin
Jessica L. Everett-Garcia
Michael T. Liburdi
Jill Louise Ripke
Scott Sebastian Minder
Tyler Reese Bowen
**PERKINS COIE BROWN & BAIN PA**
P.O. Box 400
Phoenix, AZ 85012
jnomkin@perkinscoie.com
jeverettgarcia@perkinscoie.com
mliburdi@perkinscoie.com
jripke@perkinscoie.com
sminder@perkinscoie.com
tbowen@perkinscoie.com
*Attorneys for Banner Health*
  *and Sun Health Corporation*

Allen Spencer Boston
David B. Helms
Richard B. Walsh, Jr.
Stephen Michael Durbin
Winthrop Blackstone Reed, III
**LEWIS RICE & FINGERSH LC**
500 North Broadway, Suite 2000
St. Louis, MO 63102
aboston@lewisrice.com
dhelms@lewisrice.com
rwalsh@lewisrice.com
sdurbin@lewisrice.com
wreed@lewisrice.com
*Attorneys for Carondelet Health*
*Network*

Dennis Palmer
**POLSINELLI SHUGHART  PC**
120 West 12th Street, Suite 1700
Kansas City, MO 64105
*Attorneys for Summit Healthcare*
*Association and University Physicians*
*Healthcare*

CLARKE H. GREGER
**RYLEY CARLOCK & APPLEWHITE PC**
1 North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4417
cgreger@rcalaw.com
*Attorneys for Carondelet Health*
*Network*

1

2

3

4

5

6

Brian M. Flaherty
**POLSINELLI SHUGHART  PC**
3636 North Central Avenue, Suite 1200
Phoenix, Arizona 85012
bflaherty@stklaw.com
*Attorneys for Summit Healthcare*
*Association and University Physicians*
*Healthcare*

James A. Craft
**GAMMAGE & BURNHAM PLC**
2 North Central Avenue, 18th Floor
Phoenix, AZ 85004
jcraft@gblaw.com
*Attorneys for Yuma Regional Medical*
*Center, Inc.*

7

8

9

10

11

12

13

Randy Yavitz
**HUNTER, HUMPHREY & YAVITZ, PLC**
2633 East Indian School Road, Suite
440
Phoenix, AZ 85008
randy@hhylaw.com
***Attorneys for Cobre Valley Community***
***Hospital and Brim Healthcare***

Douglas Gerlach
**JENNINGS STROUSS & SALMON PLC**
201 East Washington, Suite 1100
Phoenix, AZ 85004
dgerlach@jsslaw.com
*Attorneys for Regional Care Services*
*Corp.*

14

15

16

17

18

19

20

21

James R. Broening
Robert T. Sullivan
**BROENING OBERG WOODS &**
**WILSON**
P.O. Box 20527
Phoenix, Arizona 85036
jrb@bowwlaw.com
rts@bowwlaw.com
*Attorneys for Sierra Vista Regional*
*Health Center*

Jeffrey A. LeVee
Catherine T. Broderick
**JONES DAY**
555 South Flower Street
50th Floor
Los Angeles, CA 90071
jlevee@jonesday.com
cbroderick@jonesday.com
*Attorneys for TMC Healthcare*

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Joan McPhee
Jane E. Willis
Matthew P. Garvey
**ROPES & GRAY LLP**
One International Place
Boston, MA 02110-2624
joan.mcphee@ropesgray.com
jane.willis@ropesgray.com
matthew.garvey@ropesgray.com
*Attorneys for Iasis Healthcare*
*Holdings, Inc., St. Luke's Medical*
*Center, L.P., St. Luke's Behavioral*
*Hospital, L.P., Mesa General Hospital,*
*L.P.*

David B. Rosenbaum
Debbie A. Hill
Robert T. Weeks
**OSBORN MALEDON, P.A.**
2929 North Central Avenue
Phoenix, AZ 85012-2794
drosenbaum@omlaw.com
dhill@omlaw.com
rweeks@omlaw.com
*Attorneys for Iasis Healthcare*
*Holdings, Inc., St. Luke's Medical*
*Center, L.P., St. Luke's Behavioral*
*Hospital, L.P., Mesa General Hospital,*
*L.P.*

Jeffrey J. Campbell
**CAMPBELL YOST CLARE & NORELL**
**PC**
101 North 1st Avenue, Suite 2500
Phoenix, AZ 85003
jcampbell@cycn-phx.com
*Attorneys for TMC Healthcare*

Lawrence Allen Katz
P. Bruce Converse
Kami S. Galvani
**STEPTOE & JOHNSON LLP**
Collier Center
201 East Washington Street, Suite 1600
Phoenix, AZ 85004-2382
lkatz@steptoe.com
bconverse@steptoe.com
kgalvani@steptoe.com
*Attorneys for Healthsouth Valley of the*
*Sun, L.P., Healthsouth Rehabilitation*
*Institute of Tucson, LLC and Southern*
*Arizona Regional Rehabilitation*
*Hospital, L.P.*

Brian A. Hayles
Mark J. Horoschak
Debbie Weston Harden
**WOMBLE CARLYLE SANDRIDGE & RICE PLLC**
301 South College Street, Suite 3500
Charlotte, NC 28202-6037
bhayles@wcsr.com
mhoroschak@wcsr.com
dharden@wcsr.com
*Attorneys for Bullhead City Hospital Corporation, Payson Hospital Corporation, Oro Valley Hospital, L.L.C., Northwest Hospital, L.L.C.*

Kerry Scott Martin
**OGLETREE DEAKINS NASH SMOAK & STEWART**
2415 East Camelback Road, Suite 800
Phoenix, AZ 85016
kerry.martin@ogletreedeakins.com
*Attorneys for Hospital Development of West Phoenix, Inc., VHS Acquisition Subsidiary Number 1, Inc., VHS Acquisition Corporation,VHS of Arrowhead, Inc.,VHS of Phoenix, Inc., VHS Acquisition Company Number 1, L.L.C., PHC-Fort Mohave, Inc., Havasu Regional Medical Center, L.L.C., Kingman Hospital, Inc.*

James P. McLoughlin, Jr.
Tonya L. Mitchell
Penny Hirsch Edwards
Charles Price
**MOORE & VAN ALLEN, P.L.L.C.**
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
jimmcloughlin@mvalaw.com
tonyamitchell@mvalaw.com
pennyedwards@mvalaw.com
Charles.Price@mwmf.com
*Attorneys for Arizona Heart Hospital, LLC and AHH Management, Inc.*

Barry D. Halpern
Daniel Joseph McAuliffe
Dan W. Goldfine
**SNELL & WILMER LLP**
1 Arizona Center
400 East Van Buren
Phoenix, AZ 85004-2202
bhalpern@swlaw.com
dmcauliffe@swlaw.com
dgoldfine@swlaw.com
*Attorneys for Mayo Clinic Arizona, Phoenix Children's Hospital, Inc., Scottsdale Healthcare Corporation*

Nicole Maroulakos Goodwin
**QUARLES & BRADY LLP**
1 Renaissance Square
2 North Central Avenue
Phoenix, AZ 85004-2391
ngoodwin@quarles.com
*Attorneys for Select Specialty Hospital – Phoenix, Inc.and Select Specialty Hospital – Arizona, Inc.*

Thomas P. Hanrahan
**SIDLEY AUSTIN LLP**
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
thanrahan@sidley.com
*Attorneys for Kindred Hospitals, West LLC*

1

Franklin J. Hoover
**MANGUM, WALL, STOOPS &**

2

**WARDEN, PLLC**

3

100 N. Elden St.
P.O. Box 10

4

Flagstaff, Arizon  86002-0010

5

fhoover@mwswlaw.com

6

*Attorneys for Navajo Health*
*Foundation – Sage Memorial Hospital,*

7

*Inc.*

8

9

10

11

*/s/* Neill W. Clark

12

**Neill W. Clark**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28