David F. Sorensen (Pro Hac Vice)
Neill W. Clark (Pro Hac Vice)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
dsorensen@bm.net
nclark@bm.net
**Co-Lead Class Counsel and Attorneys for Plaintiffs**
*Additional Counsel on Signature Page*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cindy Johnson, Barbara A. Craig, and Stephanie L. Walker on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>vs.<br><br>Arizona Hospital and Healthcare Association et al.,<br><br>   Defendants. | No. CV07-1292-PHX-SRB<br><br>**PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR (1) FINAL APPROVAL OF THE SETTLEMENT AND PLAN OF ALLOCATION; (2) AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES; AND (3) SERVICE AWARDS TO THE REPRESENTATIVE PLAINTIFFS** |

## **TABLE OF CONTENTS**

I.     **MOTION** .................................................................................1

II.    **INTRODUCTION**.....................................................................1

III.   **PROCEDURAL AND FACTUAL BACKGROUND** .............5

     A.    **The Litigation** ..............................................................5

     B.    **Settlement Negotiations** ...............................................7

     C.    **Terms of the Settlement Agreement**...........................8

II.    **ARGUMENT** ...........................................................................12

     A.    **The Settlement Agreement Merits Final Approval** .................12

          1.    **The Strength of Plaintiffs' Case Favors Approval of the Proposed Settlement.** .........................................................15

          2.    **The Risk, Expense, Complexity, and Likely Duration of Further Litigation Weighs in Favor of Approval.** ........16

          3.    **The Risk of Maintaining Class Action Status Throughout the Trial Weighs in Favor of Approval.** ...17

          4.    **The Amount Offered in Settlement Weighs in Favor of Approval.** ......................................................................18

          5.    **The Extent of Discovery Completed and the Stage of the Proceedings Weigh in Favor of Approval.**......................20

          6.    **The Experience and Views of Counsel Weigh in Favor of Approval.** ................................................................21

          7.    **The Presence of a Government Participant Favors Approving the Settlement.**...............................................22

          8.    **Reaction of Class Members to the Proposed Settlement Favors Approval Because No Objections Have Been Received.** ...............................................................23

          9.    **The Plan of Allocation is Fair and Reasonable and Should be  Given Final Approval** ...................................24

III.   **CONCLUSION** .......................................................................27

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Bellows v. NCO Financial Systems, Inc.*,
    No. 3:07-CV-01413, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) ...............................22, 23

*Churchill Village LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ......................................................................................23

*City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 1996) ....................................................................................14

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ....................................................................................12

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ....................................................................................21

*Draney v. Wilson, Morton Assaff McElligot et al.*,
    No. Civ. 79-1029, 1985 WL 5820 (D. Ariz. Sept. 30, 1985)........................................14

*Garner v. State Farm Mut Auto Ins. Co.*,
    No. 08-1365, 2010 WL 1687832 (N.D. Cal. April 22, 2010).................................22

*Health Temp v. Arizona Hospital and Healthcare Association, et al.*,
    No. CV-05-1793-PHX-MHM (D. Ariz.) .....................................................................6

*Horton v. USAA Cas. Ins. Co.*,
    266 F.R.D. 360 (D. Ariz. 2009) ..................................................................................10

*In re Apple Computer Derivative Litig.*,
    2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ........................................................19

*In re Exxon Valdez*,
    No. 89-0095, 1996 WL 384623 (D. Alaska June 11, 1996), *aff'd*, 161 F.3d 12 (9th
    Cir. 1998) .....................................................................................................................24

*In re Immune Response Securities Litig.*,
    497 F.Supp.2d 1166 (S.D. Cal. 2007)........................................................................13

*In re Lifelock Inc. Mktg. & Sales Practices Litig.*,
    No. 08-1977, 2010 WL 3715138 (D. Ariz. Aug. 31, 2010)........................................ passim

*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003) ..................................................................15

*In re Manufacturers Life Ins. Co. Premium Litig.*,
    MDL No. 1109, 1998 U.S. Dist. LEXIS 23217 (S.D. Cal. Dec. 18, 1998) ...........15

*In re Mercury Interactive Corp. Securities Litigation*,
    618 F.3d 988 (9th Cir. 2010) .............................................................................1

*In re Omnivision Technologies Inc.*,
    No. 04-2297, 2007 WL 4293467 (N.D. Cal. Dec. 6, 2007).........................19, 23, 24

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .........................................................................21

*In re Portal Software Inc, Sec. Litig.*,
    No 03-5138, 2007 WL 1991529 at * 7 (N.D. Cal. June 30, 2007)........................10

*In re Tableware Antitrust Litig.*,
    No. C-04-3514 VRW, 2007 WL 4219394 (N.D. Cal. Nov. 28, 2007)...................19

*In re Wireless Facilities, Inc.*,
    253 F.R.D. 630 (S.D. Cal. 2008) ..........................................................................14

*Law v. Nat'l Collegiate Athletic Assoc.*,
    108 F.Supp.2d 1193 (D. Kan. 2000)......................................................................24

*Linney v. Cellualar Alaska P'ship*,
    1997 WL 450064 (N.D. Cal. July 18, 1997)..........................................................13

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ..............................................................................18

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003) ................................................................................14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)..........................................................14, 16, 18, 20, 21

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
    688 F.2d 615,625 (9th Cir. 1982) ..........................................................12, 14, 19

*Oppenlander v.Standard Oil Co.*,
    64 F.R.D. 597 (D. Colo. 1974) .............................................................................16

*Rodriguez v.West Pub. Corp*,
    No. CV05-3222, 2007 WL 2827379 (C.D. Cal. Sept. 10, 2007)..............................24

*San Francisco NAACP v. San Francisco Unified School Dist.*,
    No. C-78-1445, 2001 WL 1922333 ( N.D. Cal. Oct. 24, 2001) ..............................21

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...............................................................................14

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) .................................................................................15

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ...............................................................................12

*Weseley v. Spear, Leeds & Kellogg*,
    711 F. Supp. 713 (E.D.N.Y. 1989) ......................................................................16

**STATUTES & OTHER AUTHORITIES**

A.R.S. § 12-2506(b)......................................................................................................5

A.R.S. § 44-1401 ........................................................................................................22

Arizona Uniform State Antitrust Act, A.R.S. § 44-102..............................................6

Sherman Act, 15 U.S.C. § 1 ....................................................................................6, 22

5 Moore's Federal Practice, § 23.85(2)(e) (3d ed.)...................................................20

Arizona Rule of Civil Procedure 26(b)(5) ..................................................................6

Fed. R. Civ. P. 23(c)(4)................................................................................................7

Fed. R. Civ. P. 23(e)(1)..............................................................................................12

Fed. R. Civ. P. 23(f)......................................................................................................7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   MOTION

Plaintiffs and Class Representatives Cindy Johnson, Barbara A. Craig and Stephanie L. Walker (collectively "Plaintiffs" or "Named Plaintiffs" or "Class Representatives") respectfully move the Court for an Order granting Final Approval of the proposed Settlement[1] and Plan of Allocation, awarding attorneys' fees, reimbursement of expenses and incentive awards to Class Representatives for their efforts on behalf of Class Members[2,3]

## II.   INTRODUCTION

---

[1] Technically, there are two settlements: one relating to nearly all the hospital defendants (the Class Settlement Agreement and Release dated September 3, 2010  (the "Settlement Agreement")) and one relating to the AzHHA defendants (the AzHHA  Class Settlement Agreement and Release dated September 3, 2010 (the "AzHHA Settlement Agreement")) (collectively, the "Settlement Agreements").  The Settlement Agreements were previously provided to the Court as Exhibits A and C to Plaintiffs' Motion for Preliminary Approval of Settlement, Certification of the Settlement Classes, Approval of the Form of Notice and Memorandum In Support ("Prelim. Appr. Mot.") (Doc. Nos. 639, 639-2 & 639-4).  For all practical purposes, there is one overall settlement and this memorandum will treat the combined settlement with all Settling Defendants as a single settlement for convenience, referred to as "the Settlement."

[2] Pursuant to the schedule approved by the Court in its September 27, 2010 Order Granting Plaintiffs' Motion for Preliminary Approval of Settlement, Certification of Settlement Classes, and Approval of Form of Notice (Doc. No 642) ("Preliminary Approval Order") and in accordance with *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010), Plaintiffs filed their Motion for An Award of  Attorneys' Fees, Reimbursement of Expenses and Incentive Awards to the  Class Representatives for Their Efforts on Behalf of Class Members, and Memorandum in Support (Doc. No. 650) ("Pls.' Mot. for Fees" ) on January 28, 2011, in advance of the February 11, 2011 deadline for Class Members to object to the Settlement.

[3] Capitalized terms not otherwise defined in this memorandum have the same meanings ascribed to them in the Settlement Agreements.  The Settlement is on behalf of two Settlement Classes, the Per Diem Settlement Class and the Traveler Settlement Class. Preliminary Approval Order at ¶¶ 1-2. Plaintiffs will refer to members of both classes, collectively, as "Class Members."  We will refer to the two classes as the "Settlement Classes".

On September 27, 2010, this Court granted preliminary approval of a $22,476,818.18 (plus interest) settlement of the Per Diem Settlement and Traveler Settlement Classes' claims against Settling Defendants[4]. The terms of the Settlement Agreements are set forth in the Class Settlement Agreement and Release and the AzHHA Class Settlement Agreement and Release, both dated September 3, 2010, that were attached to the Prelim. Appr. Mot.   In its Preliminary Approval Order, this Court also certified the Traveler Settlement Class and slightly modified the definition of the Per Diem Class that the Court had previously certified (Doc. No. 584);[5] approved the form and manner of providing notice to Class Members; approved the proposed claim form and Plan of Allocation; appointed the Named Plaintiffs to serve as representatives of the Settlement Classes, and appointed Co-Lead Class Counsel and Class Counsel[6] (collectively, "Class Counsel").

Pursuant to the Preliminary Approval Order, the Mailed Notice and the Claim Form have been distributed to Class Members; the Published Notice has been published in newspapers, journals, magazines and websites likely to be read or viewed by Class Members; and the Settlement Agreement, AzHHA Settlement Agreement and  the proposed Plan of

---

[4] The "Settling Defendants" refers to the Defendants joining this settlement: the Arizona Hospital and Healthcare Association   and AzHHA Service Corporation (collectively, "AzHHA") and the Defendants listed on Exhibit 1 to  the Settlement Agreement (attached as Exhibit A to Plaintiffs' Prelim. Appr. Mot.)

[5] This modification comprised setting a definite end date to the Class Period of September 12, 2007, and identifying  more precisely the positions included in the term "per diem nurse service."   *See* Plaintiffs' Prelim. Appr. Mot. at 20-21 (Doc. No. 639) (describing modifications) and this Court's Preliminary Approval Order at ¶¶1-2.

[6] The Court appointed David F. Sorensen of Berger & Montague, P.C. and David Balto of Law Offices of David Balto as Co-Lead Class Counsel and Keller Rohrback, P.L.C., and Brownstein Hyatt Farber Schreck L.L.P. as Class Counsel (collectively "Class Counsel").

Allocation (as well as Pls.' Mot. for Fees) have been made available to Class Members.  *See* Declaration of Claims Administrator (attached as Exhibit 1).

Final approval should be granted because the Settlement -- which provides cash payments of more than $22.4 million plus important structural, prospective relief -- is fair, adequate and reasonable.  Similarly, Plaintiffs' Mot. for Fees also should be granted because they, too, are fair and reasonable.  Significantly, there have been no objections filed or served to the Settlement or to the Mot. for Fees.[7]

In all, more than 26,000 copies of the Mailed Notice were sent by first class mail to Class Members.[8] Notice was also published.  The opt-out deadline was Jan. 14, 2011, and the deadline for objections was Feb. 11, 2011[9]. To date, no Class Member has objected to the Settlement and fewer than 200 persons have chosen to opt-out.[10]   This response shows overwhelming support for the Settlement.  Moreover, Pls.' Mot. for Fees  (Doc. No. 650) was

---

[7] The deadline for objections was Feb. 11, 2011.  To date, none has been filed of record, nor have any been served on Plaintiffs' counsel or counsel for the Settling Defendants.

[8] See Declaration of Claims Administrator at ¶¶ 4 & 7.  As of February 11, 2011 there were 26,600 Mailed Notices sent to potential Class Members.  Of these, 26,550 were mailed on October 27, 2011, within 30 days of and in accordance with the Court's Preliminary Approval Order.  Fifty Nine additional Mailed Notices were thereafter sent to potential Class Members pursuant to their request.  As explained in the Declaration of Claims Administrator, of the 26,000 Mailed Notices that were sent to potential class members, 2,193 were returned as undeliverable and, despite reasonable efforts, the Claims Administrator was not able to find a valid alternative address.  *See* Declaration of Claims Administrator at ¶¶ 5-7.

[9] The deadline to request exclusion from the Per Diem and Traveler Settlement Class was January 14, 2011 and the deadline to file objections to the Settlement was February 11, 2011. Preliminary Approval Order at ¶¶ 11 & 15.

[10] *See* Declaration of Claims Administrator at ¶ 17.

filed and made publicly available before the deadline for objections, yet again, no objections have been filed.[11]

The Settlement provides for a cash payment of $22,476,818.18 plus interest[12] and important prospective, structural relief. At this time, Plaintiffs are seeking final approval of the Settlement, and final approval of the motion for fees of 25% of the gross Settlement Fund (i.e., $22,476,818 plus interest) costs and expenses of $872,524.62, and service awards totaling $60,000 to the Class Representatives, and dismissal of the Litigation with respect to the Settling Defendants.   A revised form of the Proposed Orders and Final Judgments are attached as   Exhibits 2 and 3.[13] The claims process will continue, as the deadline for submission of claims is June 2, 2011.  After all claims are submitted and reviewed, Plaintiffs

[11] The Mailed Notice and the Publication Notice informed Class Members that (1) the motion for fees, costs, expenses and service awards would be filed by Jan. 28, 2011 and would be available for inspection on the dedicated website and Class Counsels' websites; and (2) notified Class Members that Plaintiffs' would be seeking an award of fees of up to 25% of the gross Settlement Fund.

[12] As of February 25, 2011 the Settlement Fund had accrued $ 12,670.22 in interest. The Settlement Fund is explained in footnote 1 of Pls.' Mot. for Fees.

[13] There are two separate proposed Orders and Final Judgments, one for the Settlement Agreement (previously attached as Exhibit 9 to the Settlement Agreement (Doc No. 639-2)) and the other for the AzHHA Settlement Agreement (previously attached as Exhibit 9 to the AzHHA Settlement Agreement (Doc. No. 639-4)) (collectively, "Proposed Orders and Final Judgments").  Plaintiffs are submitting revised Proposed Orders and Final Judgments to fill in information about certain dates and court filings, the absence of objections and the amount of attorneys' fees and reimbursement of outstanding and unreimbursed expenses requested . *See* [Proposed] Order and Final Judgment Approving Settlement, Awarding Attorneys Fees, Costs and Expenses, Awarding Representative Plaintiff Incentive Awards, Approving Plan of Allocation and Ordering Dismissal as To All Settling Defendants (attached as Exhibit 2) and [Proposed] Order and Final Judgment Approving Settlement, Awarding Attorneys Fees, Costs and Expenses, Awarding Representative Plaintiff Incentive Awards, Approving Plan of Allocation and Ordering Dismissal as To the AzHHA Defendants (attached as Exhibit 3) .

and the Court-appointed Claims Administrator will develop a final schedule of allocated payments pursuant to the Proposed Allocation Plan by Hal J. Singer, Ph.D  (Doc No. 639-6) ("Allocation Plan"), approved by the Court in its Preliminary Approval Order at ¶ 13. The Settlement Fund, net of deductions for any attorneys' fees awarded, unreimbursed and outstanding expenses, claims administration expenses and incentive awards to the class representatives, would be distributed among Class Members after the claim deadline and after claims are reviewed and processed. As directed by and since the Court entered its Preliminary Approval Order on September 27, 2010, the Allocation Plan along with the terms of the Settlement have been made available to Class Members.

The Settlement resolves all claims asserted by Plaintiffs and the Settlement Classes against nearly all Defendants, and provides for valuable prospective structural relief and is an excellent recovery for the Class.  Both the Settlement and the Plan of Allocation under which the proceeds will be distributed are fair, reasonable, and adequate under the governing standards for evaluating class action settlements in this Circuit.

III.    **PROCEDURAL AND FACTUAL BACKGROUND**

    A.    **The Litigation**

This case was filed in July 2007 against AzHHA and a number of Arizona hospitals that participated in the AzHHA Registry Program, and alleged that the hospitals and AzHHA had unlawfully fixed and suppressed the wages paid to temporary nursing personnel, since at least 1997, by agreeing amongst themselves to fix and suppress the "bill rates" paid to temporary nurse staffing agencies.  Plaintiffs alleged that the wrongful suppression of bill

rates necessarily suppressed compensation to temporary nursing personnel, because bill rates are correlated to wage rates.

The named plaintiffs are three registered nurses: Cindy Johnson, Barbara A. Craig, and Stephanie L. Walker.  Plaintiffs brought claims both under federal and state antitrust law, and asserted additional state law causes of action.   After various of the originally-named defendants filed "Notices of Non-Parties at Fault" pursuant to A.R.S. § 12-2506(b), and Arizona Rule of Civil Procedure 26(b)(5) naming additional parties as allegedly at fault by virtue of these additional parties' participation in the Registry Program, Plaintiffs amended their Complaint by, inter-alia, naming these additional parties as defendants. *See* Consolidated Third Amended Complaint, filed November 10, 2009 at ¶¶ 36-64 (Doc. No. 317).

Three defendants moved to dismiss. After extensive briefing and oral argument, the Court denied the motion as to Plaintiffs' claims under the Sherman Act, 15 U.S.C. § 1 (Count I); the Arizona Uniform State Antitrust Act, A.R.S. § 44-102 (Count II); and for unjust enrichment under Arizona state law (Count V); while dismissing other state law claims (Counts III and IV).  *See* Order dated March 19, 2009 (Doc. No. 449).

The Plaintiffs and Defendants ("Parties") have vigorously litigated this case for nearly three years and engaged in extensive fact and expert discovery before agreeing to a settlement.   Plaintiffs have engaged in vigorous discovery, including: (1) obtaining and reviewing many thousands of documents from Defendants; (2) obtaining and analyzing electronic data from Defendants; (3) obtaining data and documents from a number of third party temporary nurse staffing agencies pursuant to subpoena; (4) obtaining and reviewing

the discovery record from *PC Healthcare Enterprises, Inc. dba Health Temp v. Arizona Hospital and Healthcare Association, et al.*, No. CV-05-1793-PHX-MHM (D. Ariz.); and (5) taking or defending 17 fact and expert depositions.  The Plaintiffs worked with their expert, Dr. Hal Singer, to prepare for and defend his deposition in defense of his Class Certification report and took the deposition of Defendants' expert, Dr. Steven Scheffman.

Plaintiffs moved for Class Certification on January 26, 2009 (Doc No. 428) and on July 14, 2009, the Court certified a litigation class of per diem nurses but declined to certify a class of traveler nurses.[14]

### B.   Settlement Negotiations

The Parties began settlement discussions in the summer of 2009, and completed two rounds of mediation conducted by an outside mediator, the Honorable Edward Infante (Ret.), of JAMS, a leading alternative dispute resolution firm over four full days in June and August, 2009. Subsequently, the Parties engaged in months of discussions, working out numerous issues and complexities associated with settling a case with so many defendants[15], while also taking into account Abrazo's decision not to settle, which, in turn, implicated a judgment sharing agreement among all Defendants.

---

[14] Plaintiffs subsequently filed a petition under Fed. R. Civ. P. 23(f) with the Ninth Circuit Court of Appeals for review of this decision, and Defendants filed a contingent cross-petition. Those proceedings have been stayed by agreement of the Parties (with the concurrence of the Court of Appeals acting through a Court mediator), pending settlement. Plaintiffs also filed, in this Court, an Alternative Motion for Class Certification Under Fed. R. Civ. P. 23(c)(4) (Doc. Nos. 593, 594). That Motion remains pending as well, but briefing has been stayed (again, pending settlement talks).

[15] *See* Consolidated Third Amended Complaint at ¶¶ 20-67.

Ultimately, on September 3, 2010, the Plaintiffs and the Settling Defendants ("the Settling Parties") reached an agreement to settle the Action for $22,476,818.18 plus interest in exchange for, inter-alia, the Class releasing the claims specified in paragraph 48 of the Settlement Agreements against Settling Defendants.

In sum, the Settlement was the result of lengthy and contentious arm's-length negotiations. The process was in all respects thorough, adversarial, and professional.

### C.     Terms of the Settlement Agreement

The complete terms and conditions of the proposed Settlement are set forth in Exhibits A and C to Pls.' Prelim. Appr. Mot. (Doc Nos. 639-2 and 639-4). The following is a summary of certain issues related to the Settlement that are relevant to this Court's consideration of this motion that have not already been described above:

**1.     Notice.**  Pursuant to the Settlement, the Mailed Notice was sent within 30 days of the Court's Preliminary Approval Order by first-class mail to 26,550 persons who had been identified as likely class members from Settling Defendants' records, Arizona nurse licensing data, and records obtained from nurse staffing agencies via subpoena. *See* Declaration of Claims Administrator at ¶ 3; *see also* Declaration of Claims Administrator attached as  Ex. F to Prelim. Appr. Mot.  (Doc. No 639-7), and  Declaration of Stephen M. Durbin attached as Ex. G to Prelim. Appr. Mot. (Doc. No. 639-8).

Likewise, the Publication Plan approved by the Court (as amended, see Doc Nos. 646 & 647) has been fully implemented. The Published Notice appeared in the publications and other media identified in the Publication Plan approved by the Court in its Preliminary Approval Order (attached as Ex. 5 to the Settlement Agreement and the AzHHA Settlement

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Agreement (Doc Nos. 639-2 & 639-4))  (as amended by Order of November 18, 2011 (Doc No. 647).

Pursuant to the Publication Plan, the Published Notice was published in the Sunday edition of four major newspapers whose combined circulation covers nearly all major geographical locations in Arizona, in a local Spanish-speaking newspaper, Prensa Hispana, and in nursing publications and websites that would likely be read/viewed by Class Members nationwide and beyond. *See* Declaration of Claims Administrator at ¶8 ; *see also* Amended Publication Plan (Doc. No. 646); Prelim. Appr. Mot. at 33-37.

A  website devoted to the settlement was also established, which made available for review and downloading the Mailed Notice and Published Notice as well as review of Prelim. Appr. Mot., the Preliminary Approval Order, Settlement Agreements, Allocation Plan, and Pls.' Mot. for Fees.   Declaration of Claims Administrator at ¶¶11-12. Class members were directed to this website in the Mailed Notice and Published Notice. *Id.*  The Settlement website has been operational since October 27, 2010 and is accessible 24 hours a day, seven days a week. *Id.* As of February 25, 2011, the website has received 3,189 unique visitors.   Declaration of Claims Administrator at ¶12.  This same information was also posted on each of Class Counsel's websites.

In  addition to a dedicated website, a toll free number was established where class members could call and obtain more information about the Settlement by speaking with  live operators or by following automated prompts. As of  February 25, 2011, the toll free number

had received 390 telephone inquires where an individual elected to speak with a live representative. *See* Declaration of Claims Administrator at ¶ 14.[16]

The method of Notice consisting of mailing the Mailed Notice to Class Members that could be identified from Defendants' Records, nurse licensing data and records from third party nurse staffing agencies, publishing the Published Notice in media likely to be read or viewed by Class Members and establishing a dedicated website and toll-free phone number satisfies Rule 23(e)'s requirements and due process. *In re Lifelock Inc. Mktg. & Sales Practices Litig*., No. 08-1977, 2010 WL 3715138 at * 6 (D. Ariz. Aug. 31, 2010) (finding that notice by mail, publication and posting on a dedicated website satisfy the requirements of due process and Rule 23); *see also Horton v. USAA Cas. Ins. Co.,* 266 F.R.D. 360, 369 (D. Ariz. 2009) (finding that notice by mail and publication satisfy due process); *In re Portal Software Inc, Sec. Litig*., No 03-5138, 2007 WL 1991529 at * 7 (N.D. Cal. June 30, 2007) (finding that notice by mail and publication satisfy the requirements of due process and Rule 23 ).

**2.       Allocation Plan.**  As more fully discussed in Section IV B of this Motion, the Allocation Plan sets forth the manner in which the Net Settlement Fund [17] will be allocated amongst members of the Settlement Classes who submit timely and valid claims.

---

[16] Class Counsel have also received and answered inquires about the Settlement from  Class Members.

[17] As described in the Mailed Notice at Question No. 11, the Net Settlement Fund is the amount of the Settlement Fund that remains after interest is included and attorneys' fees of 25% of the Settlement Fund, costs, incentive awards, notice costs and claims administration expenses are deducted.  *See* Ex. 3 to Settlement Agreement  and AzHHA Settlement Agreement.

As described in the Allocation Plan, factors considered and incorporated into the Allocation Plan include: (a) whether the class member is a member of the Per Diem or Traveler Settlement Class; (b) what position the class member occupied (such as RN, LPN, CNA etc); (c) how many hours the class member worked for a Defendant hospital or other AzHHA hospital during the Class Period (Jan. 1, 1997-to Sept. 12, 2007) and (d) whether the hospital and the agency with whom the class member worked was participating in the Registry program at the time of the class member's placement at the defendant hospital.   *See* Allocation Plan at ¶¶3 and 7.   As between the Settlement Classes, the weights attached to members of the Per Diem and the Traveler Classes differ to reflect this Court's decision not to certify the class of Traveler nurses for purposes of litigation.   Allocation Plan at ¶3.   In addition, Class Members who worked in positions with higher bill rates (e.g. RNs) will receive more per hour than those who worked in positions with lower bill rates (e.g. LPNs, CNAs), all else being equal.   Allocation Plan at ¶3.[18]

A copy of the proposed Allocation Plan was made available on both the website established for this litigation and on Class Counsels' websites. The Court-approved Mailed

---

[18] As explained in the Allocation Plan at ¶ 21, the per-hour amount that Class Members could receive has been capped at $30 per hour. If so few claims are made that this cap is reached and there are excess funds remaining in the Settlement Fund, Class Counsel will request that the Court approve a *cy pres* award to one or more accredited nursing schools within the State of Arizona. Allocation Plan at ¶ 21. *See also* Settlement Agreement and AzHHA Settlement Agreement at ¶ 52.  The Settling Defendants have agreed to this and have agreed that in no event shall any of the settlement funds revert to them (unless the Settlement does not become final).

Notice also expressly described the proposed method of allocation.  That text is reproduced below[19]:

> If the Court grants final approval to the Settlement, your share of the Net Settlement Fund will depend, first, on which class you are part of. More money will go to members of the Per Diem Class than the Traveler Class because the Court previously certified a Per Diem Class to go forward to trial, but previously denied a Traveler Class. The Settling Defendants agreed to certification of a Traveler Settlement Class in light of settlement, and the Court has certified a Traveler Settlement Class in light of settlement. But the different allocation amounts reflect the risk that, absent a settlement, no travel class would ever be certified in the face of opposition by Defendants, which would mean that temporary travel nurses would not recover anything unless they hired a lawyer, brought their own individual lawsuit, and then won at trial or obtained their own settlement. Generally, Per Diem Class members will receive, on average, four times what Traveler Class members receive for each hour claimed.
>
> Next, the amount you get will depend on the temporary position you filled, and for how many hours. Temporary RNs will get more per hour generally than LPNs, for example, because the AzHHA Registry rates were higher for RNs than LPNs. The total number of hours you worked also will affect the amount. Also, hours worked through agencies that did not participate in the AzHHA program will be allocated less than hours worked through agencies that did participate.
>
> Your share of the Net Settlement Fund will also depend on the total number of valid claim forms that Class Members submit. The money will be distributed among all the class members submitting timely, valid claims.  If very few claims are submitted, there will be a maximum amount that anyone can receive, and the remaining money, and any money from uncashed checks, will be donated to one or more accredited nursing schools in Arizona.
>
> The Allocation Plan is available at www.rg2claims.com/azhha/courtdocuments.html.
>
> The benefits available under the Settlement will become available after the claims against the Settling Defendants are resolved, either through final approval of this Settlement, or after trial and any appeals or appeal rights have expired.

Mailed Notice at Question No. 1 (attached as Exhibit A to Declaration of Claims Administrator).

## II.     ARGUMENT

### A.     The Settlement Agreement Merits Final Approval

There is a "strong judicial policy that favors settlement particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976). Having preliminarily approved the Settlement and caused notice to issue to members of the Settlement Classes consistent with Fed. R. Civ. P. 23(e)(1) (Doc. No. 642),

---

[19] The Published Notice also described how the Settlement Fund would be allocated. *See* Published Notice  at 2-3 (attached as Exhibit 4 to the Settlement Agreements).

- 12 -

the Court must decide whether final approval is warranted.   Ultimately, after affording Settlement Class members the opportunity to comment on the proposed Settlement at the Fairness Hearing, the Court should finally approve the Settlement if it determines that the Settlement is "fundamentally fair, adequate and reasonable."   *Officers for Justice v. Civil Service Com'n of City and County of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982).  *See also id.* ( the "court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.") The Ninth Circuit has explained that:

> Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators.

*Id.* (emphasis in original)

Indeed, a settlement is presumptively fair if "the settlement agreement was reached in arm's length negotiations after relevant discovery [has] taken place."  *In re Immune Response Securities Litig.,* 497 F.Supp.2d 1166, 1171  (S.D. Cal. 2007) (quoting *Linney v. Cellualar Alaska P'ship*, 1997 WL 450064, at * 5 (N.D. Cal. July 18, 1997)).

The initial presumption of fairness applies to this Settlement.   Negotiations occurred at arm's-length for many months during, and with the assistance of Justice Edward Infante (Ret.) of JAMS and there is no hint of collusion; the parties engaged in significant discovery

before negotiating this Settlement allowing Plaintiffs to understand the factual and legal issues of the case; and, as previously explained (*see* Prelim. Appr. Mot. at 26), Class Counsel have extensive experience litigating precisely this type of antitrust class action claim, and Defendants were represented by, inter alia, 25 separate, experienced and well-known law firms. *See In re Wireless Facilities, Inc.,* 253 F.R.D. 630, 634 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiations are presumed fair."); *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement.)[20]

Further, the Settlement satisfies the eight factors articulated by the Ninth Circuit to determine whether a settlement is fair, adequate, and reasonable:

(1)     strength of the plaintiff's case;
(2)     risk, expense, complexity, and likely duration of further litigation;
(3)     risk of maintaining class action status throughout the trial;
(4)     amount offered in settlement;
(5)     extent of discovery completed and stage of the proceedings;
(6)     experience and views of counsel;
(7)     presence of a governmental participant; and
(8)     reaction of the Class members to the proposed settlement.

*Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2003) (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)); *Draney v. Wilson, Morton Assaff McElligot et al*., No. Civ. 79-1029, 1985 WL 5820 at * 1 (D. Ariz. Sept. 30, 1985). These factors are not exclusive, and one factor may warrant more weight than  others depending on the circumstances. *See Officers for Justice,* 688 F.2d at 625 (9th Cir. 1982) ("The relative degree of importance to be

---

[20] *See* Pls.' Mot. for Fees at 5-6 for a description of the significant motions Plaintiffs filed prior to reaching the Settlement.

attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case."); *see also*, *Nat'l Rural Telecoms. Coop. v. DIRECTV Inc.*, 221 F.R.D. 525-526 (C.D. Cal. 2004) ("one factor alone may prove determinative in finding sufficient grounds for court approval".) (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)).

Under these criteria, the proposed Settlement merits final approval.

1. **The Strength of Plaintiffs' Case Favors Approval of the Proposed Settlement.**

As evidenced by the vigor with which Class Counsel have prosecuted this action, Class Counsel believe strongly in the merits of this case, and believe the evidence developed supports the claims alleged.

Nonetheless, Plaintiffs also recognize the risks of continued litigation.  The Settling Defendants have not, by settling, admitted to any wrongdoing or liability.  Had they not settled, the Settling Defendants were prepared to mount a vigorous defense and a number of key issues would be hotly contested.  Thus, while Plaintiffs and Class Counsel believe this is a strong case for Plaintiffs, the outcome of continued litigation was not guaranteed. *See In re Manufacturers Life Ins. Co. Premium Litig.*, MDL No. 1109, 1998 U.S. Dist. LEXIS 23217 at * 17 (S.D. Cal. Dec. 18, 1998) ("even if it is assumed that a successful outcome for plaintiffs at summary judgment or at trial would yield a greater recovery than the Settlement--which is not at all apparent--there is easily enough uncertainty in the mix to support settling the dispute rather than risking no recovery in future proceedings") (citation omitted).

1    Accordingly, the overall strength of the case and the substantial recovery obtained supports

2    final approval of the proposed Settlement.

3            2.    **The Risk, Expense, Complexity, and Likely Duration of Further**
                   **Litigation Weighs in Favor of Approval.**
4

5            It has often been observed that "[a]n antitrust class action is arguably the most

6    complex action to prosecute." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639

7    (E.D. Pa. 2003) (internal citations omitted); *see also Weseley v. Spear, Leeds & Kellogg*, 711

8    F. Supp. 713, 719 (E.D.N.Y. 1989) (noting that antitrust class actions are "notoriously

9

10   complex, protracted, and bitterly fought").   It is equally well established that "unless the

11   settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and

12

13   expensive litigation with uncertain results."   *Nat'l Rural Telecomms. Coop. v. DIRECTV,*

14   *Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citing Newberg on Class Actions, § 11:50 at

15

16   155).  To conduct this inquiry

17              [t]he Court shall consider the vagaries of litigation and compare the
                significance of immediate recovery by way of the compromise to the mere
18              possibility of relief in the future, after protracted and expensive litigation. In
                this respect, [i]t has been held proper to take the bird in the hand instead of a
19              prospective flock in the bush.
20

21   *Id.* at 526 (quoting *Oppenlander v.Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974));

22   *see also Lifelock*, 2010 WL 3715138 at * 4 ("Courts also make a related assessment in

23

24   considering the risk of continued litigation balanced against the certainty and immediacy of

25   recovery from the Settlement.") (internal quotation and citation omitted).

26           As indicated above, continued litigation of this case against the Settling Defendants

27   posed risks for both sides.  This case presents complex legal and factual issues.  The Settling

28   Defendants, for example, vigorously disputed whether their conduct and agreement, even

assuming they were deemed wrongful, had any effect or any material effect on the compensation to Class Members. To meet these and other defenses and to address the complexities and nuances of this case adequately, significant expenditures of time and money would be required, including particularly the time and cost of enforcing and completing discovery against each of the 39 Settling Defendants and consulting with experts going forward    Indeed, as explained in Pls.' Mot. for Fees, Class Counsel has already expended 17,907.35 hours and incurred $872,524.62 in unreimbursed and outstanding expenses in litigating the case thus far.[21] Given the nature of this case, a judgment at trial might well be appealed by the losing party.  Therefore, delay not just through the trial stage but post-trial motions and the appellate process as well could force Class Members to wait many  years for recovery, further reducing the Settlement's value. Balancing the risks and uncertainty of continued litigation against the Settling Defendants with the substantial monetary and non-monetary relief obtained now, the Settlement is an excellent resolution of the Class Members' Claims against the Settling Defendants.

   3.    **The Risk of Maintaining Class Action Status Throughout the Trial Weighs in Favor of Approval.**

      As noted, this Court declined to certify the claims of Traveler nurses for purposes of litigation.  Plaintiffs have filed a petition to appeal that ruling to the Ninth Circuit, but there are no guarantees that petition will be accepted and, if accepted, succeed.  Moreover, the

---

[21] *See* Declaration of David F. Sorensen on Behalf of Class Counsel and Berger & Montague, P.C. In Support of Plaintiffs' Motion for An Award of Attorneys' Fees, Reimbursement of Expenses and Incentive Awards to the Class Representatives for Their Efforts On Behalf of Class Members at ¶¶ 9 & 11 (attached as Exhibit A-1 to Pls.' Mot. for  Fees (Doc. No 650-1)).

Defendants filed a contingent cross-petition, seeking to have the Ninth Circuit review this Court's decision certifying a class of Per Diem personnel.  While Plaintiffs believe their own petition to be meritorious, and believe Defendants' contingent cross-petition to be both untimely and meritless, Defendants hold opposite views on both scores.   While Plaintiffs accord this factor more weight in relation to the Traveler Settlement Class than the Per Diem Settlement Class, given the pending 23(f) proceedings, class certification remained an issue which, if decided finally against Plaintiffs, could deny Class Members any effective means of recovery.

    4.    **The Amount Offered in Settlement Weighs in Favor of Approval.**

The Settlement here provides for payment of more than $22.4 million in cash.  Even after deductions for fees, costs, etc., the amount for Class Members (approximately $15 million) is very substantial. A settlement should not be judged against a "speculative measure" of what could have been attained.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).  *See also Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 (a proposed settlement "may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.").[22]  Here, assuming liability can be established, several variables would be at work in fixing the  amount of damages.  Among the factors to be considered would be the  magnitude of the effect of the alleged conspiracy on the bill rates and the relationship between the bill rates and the

---

[22]  Indeed some courts approve settlements where injunctive relief is the only form of recovery obtained for the class.  *See Lifelock* 2010 WL 3715138 at * 5 ("Many Courts have approved settlements where, as here, the consideration offered consists of  injunctive relief.").

compensation of Class Members. These matters have been, and would be, hotly contested in the absence of Settlement.

Though merits discovery had not closed, and merits expert reports had not yet been exchanged, Plaintiffs have identified a number of AzHHA documents that, Plaintiffs contend, show that AzHHA bill rates were at least $10 per hour lower than they otherwise would have been but for the alleged wrongful conduct.  Defendants have disputed, *inter alia,* the probative value of the AzHHA documents, but multiplying the $10/hr figure by all AzHHA Registry usage hours (i.e. Per Diem and Traveler) for the entire 1997-2007 time period (approximately 23.9 million hours), yields an overall figure of $239 million in single damages.   Using that figure as a point of comparison (a figure which does not factor in, *inter alia*, Defendants' argument that the class period should be shorter, their arguments about the value of the AzHHA documents, or their other arguments concerning damages) a settlement of more than $22.4 million is well within the range of reasonableness.  *See, e.g., In re Tableware Antitrust Litig*., No. C-04-3514 VRW, 2007 WL 4219394 at * 2 (N.D. Cal. Nov. 28, 2007) (settlement representing 4 percent of estimated single damages was reasonable);  *In re Omnivision  Technologies Inc.*,  No. 04-2297, 2007 WL 4293467 at * 5 (N.D. Cal. Dec. 6, 2007) (approving settlement that was 9% of the "maximum potential recovery");  *In re Apple Computer Derivative Litig*., 2008 WL 4820784 at * 2 (N.D. Cal. Nov. 5, 2008) (citing to study of settlements in securities litigation and observing that average settlement was 2.4 percent of estimated damages).

Because this litigation will continue against the non-settling defendants, we are hesitant to say much more.[23]   Suffice it to say that the $22.4 million settlement is a very substantial sum that falls well within any reasonable estimate of an appropriate recovery  *See Officers for Justice*, 688 F.2d at 624 ("[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.") (citations and internal quotations omitted).

5.   **The Extent of Discovery Completed and the Stage of the Proceedings Weigh in Favor of Approval.**

The extent of discovery conducted helps to determine the parties' grasp of the strengths and weaknesses of the case.  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 (citing Manual for Complex Litigation § 30.42 (3d ed. 1995)).  Approval of a settlement is more likely if the settlement was reached after careful investigation and consideration of the "'legal and factual issues surrounding the case.'"  *Id.* (quoting 5 Moore's Federal Practice, § 23.85(2)(e) (3d ed.)).

Class Counsel have undertaken extensive discovery in this action.  As described previously, Plaintiffs received significant document and data productions from Settling Defendants including AzHHA, deposed many critical witnesses and obtained important documents from multiple third parties, as well as developed expert testimony and marshaled substantial evidence on various critical issues including proof of antitrust injury and damages and analyzed the opposing expert report produced by Defendants.  Given that Plaintiffs have

---

[23] *See* Manual for Complex Litigation - Fourth § 21.651 (2004) ("Given that the litigation might continue against other defendants. The parties may be reluctant to disclose fully and candidly their assessment of the proposed settlement's strengths and weaknesses that led them to settle separately.")

litigated this case for  three years, substantial  discovery has been completed, and that the Court has already ruled on Defendants' Motion to Dismiss and Plaintiffs' Motion for Class Certification,  the  proceedings  are  sufficiently  advanced  to  permit   Class  Counsel  to evaluatethe strengths  and  weaknesses  of  their case against Settling Defendants. *Lifelock,* 2010 WL 3715138 at * 5 ("The Parties have litigated these class actions for over two full years, have conducted extensive discovery, and initiated and adjudicated dispositive motions. These actions have therefore progressed sufficiently to enable the Parties and counsel to assess the risks of proceeding as opposed to settlement").

6.      **The Experience and Views of Counsel Weigh in Favor of Approval.**

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (citing *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)).  Thus, in the absence of fraud or collusion during negotiation, deference should be afforded to the judgment of counsel.  *Id.* (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

This action has been litigated and settled by experienced and competent counsel on both sides.  The law firms representing the Class are well known for their extensive experience in handling antitrust class action cases and other complex litigation, having served as lead counsel in a large number of similar antitrust cases throughout the country. *See*  Firm Biographies attached as Exhibit A-1-4 to Pls.' Mot. for Fees. (Doc No. 650-1). That such qualified and well informed counsel endorse the Settlement as being fair, reasonable and adequate to the Class heavily favors this Court's approval of the Settlement.

7.    **The Presence of a Government Participant Favors Approving the Settlement**

When the government participates in the litigation that is a factor that weighs in favor of the settlement. *See San Francisco NAACP v. San Francisco Unified School Dist*., No. C-78-1445,  2001 WL 1922333 at * 8 ( N.D. Cal. Oct. 24, 2001).[24]

The United States Department of Justice and the Arizona Attorney General participated in prior litigation against AzHHA and entered a final judgment in *United States of America and State of Arizona v. Arizona Hospital and Healthcare Association and AzHHA Service Corporation*, No. CV,07-1020PHX (D.Ariz) on September 12, 2007 (the "DOJ Action") .  The government, however did not participate in the above-captioned case.   The DOJ action was brought against AzHHA only, not its member hospitals, and did not seek any compensation for the temporary nursing personnel whose compensation was allegedly suppressed by the alleged anticompetitive conduct of AzHHA and the hospitals.  Nor was the structural relief obtained by the DOJ expressly aimed at the hospitals.  In short, in this action, Class Counsel obtained relief for Class Members that was not obtained in the DOJ action and will provide significant monetary and non-monetary relief to Class Members.

---

[24] Under this factor the Court should also consider whether government officials were notified of the Settlement pursuant to the notice requirements of the Class Action Fairness Act ("CAFA"). *See Garner v. State Farm Mut Auto Ins. Co*., No. 08-1365, 2010 WL 1687832 at * 14 (N.D. Cal. April 22, 2010)( "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures. . . . To date, no state or federal official has raised any objection or concern regarding the Agreement."); *see also Bellows v. NCO Financial Systems, Inc.,* No. 3:07-CV-01413, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008).  Here, CAFA Notice was provided, and no federal or state officials objected to or sought to participate in this action.  Thus, this factor weighs in favor of settlement. *See* Declaration of Claims Administrator at ¶ 16 .

The prospective relief obtained for Class Members here goes beyond the relief acquired in the DOJ action. AzHHA, which is subject to the DOJ Final Judgment until 2017, has agreed to an additional five years of prospective relief on top of that, which provides that AzHHA will not operate its Registry Program in a manner that violates Section 1 of the Sherman Act, 15 U.S.C. § 1, the Arizona state antitrust act, A.R.S. § 44-1401, and the limitations  imposed by the DOJ Final Judgment. *See* AzHHA Settlement Agreement at ¶ 70. Similarly, the other Settling Defendants have agreed to seven years of prospective relief (beginning when the Settlement becomes final) with provisions similar to those agreed to by AzHHA.  *See* Settlement Agreement at ¶ 70.  Additionally, the Settlement provides members of the Settlement Classes with special rights including accelerated discovery and attorneys' fees in case of any violation by the Settling Defendants. *See* Settlement Agreement at ¶ 70; AzHHA Settlement Agreement at ¶ 70.  In short, in this action, Class Counsel obtained relief for Class Members that was not obtained in the DOJ action and will provide significant monetary and non-monetary relief to Class Members.[25]

8.    **Reaction of Class Members to the Proposed Settlement Favors Approval Because No Objections Have Been Received.**

As noted above,  no class member has objected to the Settlement before or after the February 11, 2011 deadline to submit objections.   Furthermore, fewer than 200 persons

---

[25] To the extent that the structural relief obtained here compliments the relief obtained in the DOJ action, this factor weighs in favor of the Settlement. *See Lifelock*, 2010 WL 3715138 at * 4 ("Combined with the FTC settlement redress remedy, Class Members secure relief, both monetary and injunctive that they sought when they initiated the Litigation.")

requested exclusion from the class, a tiny fraction of  the 26,600 persons to whom Mailed Notice was sent.[26]

"By any standard, the lack of objection of the Class Members favors approval of the Settlement." *In re Omnivision Technologies, Inc*., 2007 WL 4293467 at * 6 (N.D. Cal. 2007) (approving settlement with three objections) (citing *Churchill Village LLC v. Gen. Elec*., 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections out of 90,000 notices sent))*; Bellows,* 2008 WL 5458986 at * 8 ("The absence of any meaningful objection by a Class Member is an important factor in evaluating the fairness, reasonableness, and adequacy of the settlement and supports approval of the settlement here."); *Rodriguez v.West Pub. Corp*, 563 F.3d 948, 967 (9th Cir. 2009) (upholding approval of a settlement with 54 objections out of 376,000 notices). Here, there have been no timely objections to the Settlement.

9. **The Plan of Allocation is Fair and Reasonable and Should be Given Final Approval**

The same standards that govern the assessment of the settlement as a whole- whether the settlement is fair, reasonable and adequate-also apply to the plan of allocation. *Omnivision* 2007 WL 4293467 at * 7 ("Approval of a plan of allocation of settlement proceeds in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate.") (internal quotations and citations omitted).  In addition, "it is reasonable to allocate the settlement

---

[26] *See supra* note 7-8.

funds to class members based on the extent of their injuries or the strength of their claims on the merits." *Id.*

In an antitrust action alleging class members suffered decreased compensation as a result of defendants' price fixing conspiracy, the court in *Law v. Nat'l Collegiate Athletic Assoc.,* 108 F.Supp.2d 1193, 1196 (D. Kan. 2000) stated: "if differences exist between the likelihood of ultimate success for different plaintiffs, it is appropriate to weigh distribution of the settlement ... in favor of plaintiffs whose claims comprise the set that was more likely to succeed." (internal citations and quotations omitted); *see also, In re Exxon Valdez,* No. 89-0095, 1996 WL 384623 (D. Alaska June 11, 1996), *aff'd,* 161 F.3d 12 (9th Cir. 1998) (approving plan of allocation that applied discount to recovery for class members whose claims had been weakened by prior court rulings).

Under the proposed Plan of Allocation here, the Net Settlement Amount will be distributed among the members of each Settlement Class based upon the Class Members': (1) membership in the Per Diem or Traveler Settlement Class; (2) position (RN, LPN, etc.) the class member occupied; (3) how many hours the class member worked for a Defendant hospital or other AzHHA hospital during the Class Period (Jan. 1, 1997 to Sept. 12, 2007); and (4) whether the hospital and agency with whom the Class Member worked participated in the AzHHA Registry Program at the time of the Class Member's placement at the defendant hospital. *See* Allocation Plan at ¶¶ 1 & 7. As between the two Settlement Classes, as the Mailed Notice and Published Notice explained, the members of the Per Diem Settlement Class will be allocated more per-hour (a 4 to 1 ratio), all else being equal, than members of the Traveler Settlement Class, reflecting this Court's rulings on class

certification. *See* Mailed Notice at Question 12; Published Notice at 2-3; Allocation Plan at ¶¶ 3-4.    Within each class, AzHHA bill rates have been used to determine the relative share to be awarded to different nursing positions included in the classes, such as RNs, LPNs, etc. Allocation Plan at ¶ 6.  Positions with higher AzHHA bill rates are allocated higher per-hour allocation amounts. *Id.*  Further, Class Members' settlement distribution amount will differ as to whether the hours they worked were through agencies that participated in the Registry Program and whether the hospital where they worked was in the Registry Program at the time they worked there. Allocation Plan at ¶¶ 6 & 7.  Adjustments have been made to reflect all of these factors so as to achieve a fair allocation.

Accordingly, the Allocation Plan is fair, reasonable and adequate under the Ninth Circuit's factors for determining whether a settlement is fair, adequate and reasonable.  The plan reflects the relative strengths, risks and complexities of class member claims, has been recommended by experienced counsel backed by detailed expert analysis from Dr. Singer, and has met no objection from Class Members who were apprised of the Allocation Plan through the Notice, and should be approved.

III.   **CONCLUSION**

For the reasons discussed above, Plaintiffs respectfully request that their Motion be granted.

Dated: February 25, 2011.               BERGER & MONTAGUE, P.C.

                                        By: /s/ David F. Sorensen
                                        David F. Sorensen
                                        Neill W. Clark
                                        1622 Locust Street
                                        Philadelphia, PA 19103
                                        Tel: 215-875-3000
                                        Fax: 215-875-4673


                                        LAW OFFICES OF DAVID BALTO
                                        David Balto
                                        1350 I Street, N.W., Suite 850
                                        Washington, D.C. 20005-3355
                                        Tel: 202-577-5424
                                        Fax: 202-333-4186

                                        KELLER ROHRBACK, P.L.C.
                                        Mark Samson
                                        Ron Kilgard
                                        3101 North Central Avenue, Suite 1400
                                        Phoenix, AZ 85012
                                        Tel: 602-248-0088
                                        Fax: 602-248-2822

                                        KELLER ROHRBACK L.L.P
                                        Mark A. Griffin
                                        Raymond J. Farrow
                                        1201 Third Avenue, Suite 3200,
                                        Seattle, WA 98101
                                        Tel: 206-623-1900
                                        Fax: 206-623-3384

                                        BROWNSTEIN HYATT FARBER
                                        SCHRECK, LLP
                                        Allen P. Grunes
                                        1350 I Street, Suite 510
                                        Washington, D.C. 20005-3355
                                        Tel: 202-296-7353
                                        Fax: 202-296-7009

Timothy R. Beyer
Martha L. Fitzgerald
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
Tel: 303-223-1100
Fax: 303-223-1111

Jeffrey S. Rugg
100 City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Tel: 702-382-2101
Fax: 702-382-8135

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 25, 2011 the foregoing **PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR (1) FINAL APPROVAL OF THE SETTLEMENT AND PLAN OF ALLOCATION; (2) AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES; AND (3) SERVICE AWARDS TO THE REPRESENTATIVE PLAINTIFFS** was served and notice of this filing will be sent to all parties listed below by operation of the Court's CM/ ECF System:

Keith Beauchamp
Lauren Jacqueline Weinzweig
Roopali H. Desai
**COPPERSMITH SCHERMER
  & BROCKELMAN PLC**
2800 North Central Avenue, Suite 1200
Phoenix, AZ  85004
kbeauchamp@csblaw.com
lweinzweig@csblaw.com
rdesai@csblaw.com
*Attorneys for Arizona Hospital and Healthcare Association and AzHHA Service Corporation*

Timothy J. Burke
Jamie Brown
**FENNEMORE CRAIG PC**
3003 North Central Avenue, Suite 2600
Phoenix, AZ 85012
tburke@fclaw.com
pklein@fclaw.com
*Attorneys for Northern Arizona Healthcare Corporation, Catholic Healthcare West, Bullhead City Hospital Corporation, Payson Hospital Corporation, Oro Valley Hospital, LLC, Northwest Hospital, LLC*

Teisha C. Johnson
Katherine I. Funk
**SONNENSCHEIN NATH &
ROSENTHAL LLP**
1301 K Street N.W.
Suite 600 East Tower
Washington, DC 20005
tcjohnson@sonnenschein.com
kfunk@sonnenschein.com
*Attorneys for University Medical Center Corporation*

David A. Ettinger
**HONIGMAN MILLER SCHWARTZ &
COHN LLP**
2290 1st National Building
660 Woodward Avenue
Detroit, MI 48226
dettinger@honigman.com
*Attorneys for Northern Arizona Healthcare Corporation*

Randall Papetti

Andrew L. Pringle

**LEWIS & ROCA LLP**
40 North Central Avenue
Phoenix, AZ 85004-4429
rpapetti@lrlaw.com
*Attorneys for University Medical
Center Corporation*

Joel W. Nomkin
Jessica L. Everett-Garcia
Michael T. Liburdi
Jill Louise Ripke
Scott Sebastian Minder
Tyler Reese Bowen
**PERKINS COIE LLP**
P.O. Box 400
Phoenix, AZ 85012
jnomkin@perkinscoie.com
jeverettgarcia@perkinscoie.com
mliburdi@perkinscoie.com
jripke@perkinscoie.com
sminder@perkinscoie.com
tbowen@perkinscoie.com
*Attorneys for Banner Health
and Sun Health Corporation*

Dennis Palmer
**POLSINELLI SHUGHART  PC**
120 West 12th Street, Suite 1700
Kansas City, MO 64105
*Attorneys for Summit Healthcare
Association and University Physicians
Healthcare*

**MARISCAL WEEKS MCINTYRE &
FRIEDLANDER PA**
2901 North Central Avenue, Suite 200
Phoenix, AZ 85012-2705
larry.pringle@mwmf.com
*Attorneys for John C. Lincoln Health
Network*

Allen Spencer Boston
David B. Helms
Richard B. Walsh, Jr.
Stephen Michael Durbin
Winthrop Blackstone Reed, III
**LEWIS RICE & FINGERSH LC**
500 North Broadway, Suite 2000
St. Louis, MO 63102
aboston@lewisrice.com
dhelms@lewisrice.com
rwalsh@lewisrice.com
sdurbin@lewisrice.com
wreed@lewisrice.com
*Attorneys for Carondelet Health
Network*

CLARKE H. GREGER
**RYLEY CARLOCK & APPLEWHITE PC**
1 North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4417
cgreger@rcalaw.com
*Attorneys for Carondelet Health
Network*

Brian M. Flaherty

James A. Craft

1

**POLSINELLI SHUGHART  PC**
3636 North Central Avenue, Suite 1200
Phoenix, Arizona 85012
bflaherty@stklaw.com
*Attorneys for Summit Healthcare
Association and University Physicians
Healthcare*

**GAMMAGE & BURNHAM PLC**
2 North Central Avenue, 18th Floor
Phoenix, AZ 85004
jcraft@gblaw.com
*Attorneys for Yuma Regional Medical
Center, Inc.*

2

3

4

5

6

Randy Yavitz
**HUNTER, HUMPHREY & YAVITZ, PLC**
2633 East Indian School Road, Suite
440
Phoenix, AZ 85008
randy@hhylaw.com
***Attorneys for Cobre Valley Community
Hospital and Brim Healthcare***

Douglas Gerlach
**JENNINGS STROUSS & SALMON PLC**
201 East Washington, Suite 1100
Phoenix, AZ 85004
dgerlach@jsslaw.com
*Attorneys for Regional Care Services
Corp.*

7

8

9

10

11

12

13

James R. Broening
Robert T. Sullivan
**BROENING OBERG WOODS &
WILSON**
P.O. Box 20527
Phoenix, Arizona 85036
jrb@bowwlaw.com
rts@bowwlaw.com
*Attorneys for Sierra Vista Regional
Health Center*

Jeffrey A. LeVee
Catherine T. Broderick
**JONES DAY**
555 South Flower Street
50th Floor
Los Angeles, CA 90071
jlevee@jonesday.com
cbroderick@jonesday.com
*Attorneys for TMC Healthcare*

14

15

16

17

18

19

20

21

Jeffrey J. Campbell
**CAMPBELL YOST CLARE & NORELL
PC**
101 North 1st Avenue, Suite 2500
Phoenix, AZ 85003
jcampbell@cycn-phx.com
*Attorneys for TMC Healthcare*

22

23

24

25

26

27

28

Joan McPhee

Jane E. Willis
Matthew P. Garvey
**ROPES & GRAY LLP**
One International Place
Boston, MA 02110-2624
joan.mcphee@ropesgray.com
jane.willis@ropesgray.com
matthew.garvey@ropesgray.com
*Attorneys for Iasis Healthcare
Holdings, Inc., St. Luke's Medical
Center, L.P., St. Luke's Behavioral
Hospital, L.P., Mesa General Hospital,
L.P.*


David B. Rosenbaum
Debbie A. Hill
Robert T. Weeks
**OSBORN MALEDON, P.A.**
2929 North Central Avenue
Phoenix, AZ 85012-2794
drosenbaum@omlaw.com
dhill@omlaw.com
rweeks@omlaw.com
*Attorneys for Iasis Healthcare
Holdings, Inc., St. Luke's Medical
Center, L.P., St. Luke's Behavioral
Hospital, L.P., Mesa General Hospital,
L.P.*

Lawrence Allen Katz
P. Bruce Converse
Kami S. Galvani
**STEPTOE & JOHNSON LLP**
Collier Center
201 East Washington Street, Suite 1600
Phoenix, AZ 85004-2382
lkatz@steptoe.com
bconverse@steptoe.com
kgalvani@steptoe.com
*Attorneys for Healthsouth Valley of the
Sun, L.P., Healthsouth Rehabilitation
Institute of Tucson, LLC and Southern
Arizona Regional Rehabilitation
Hospital, L.P.*

Brian A. Hayles

Kerry Scott Martin

|   |   |   |
|---|---|---|
| 1 | Mark J. Horoschak | **OGLETREE DEAKINS NASH SMOAK &** |
|   | Debbie Weston Harden | **STEWART** |
| 2 | **WOMBLE CARLYLE SANDRIDGE &** | 2415 East Camelback Road, Suite 800 |
| 3 | **RICE PLLC** | Phoenix, AZ 85016 |
|   | 301 South College Street, Suite 3500 | kerry.martin@ogletreedeakins.com |
| 4 | Charlotte, NC 28202-6037 | *Attorneys for Hospital Development of* |
| 5 | bhayles@wcsr.com | *West Phoenix, Inc., VHS Acquisition* |
|   | mhoroschak@wcsr.com | *Subsidiary Number 1, Inc., VHS* |
| 6 | dharden@wcsr.com | *Acquisition Corporation,VHS of* |
| 7 | *Attorneys for Bullhead City Hospital* | *Arrowhead, Inc.,VHS of Phoenix, Inc.,* |
| 8 | *Corporation, Payson Hospital* | *VHS Acquisition Company Number 1,* |
|   | *Corporation, Oro Valley Hospital,* | *L.L.C., PHC-Fort Mohave, Inc.,* |
| 9 | *L.L.C.,* | *Havasu Regional Medical Center,* |
| 10 | *Northwest Hospital, L.L.C.* | *L.L.C.,* |
| 11 |   | *Kingman Hospital, Inc.* |
| 12 |   |   |
| 13 | James P. McLoughlin, Jr. | Barry D. Halpern |
|   | Tonya L. Mitchell | Daniel Joseph McAuliffe |
| 14 | Penny Hirsch Edwards | Dan W. Goldfine |
| 15 | Charles Price | **SNELL & WILMER LLP** |
| 16 | **MOORE & VAN ALLEN, P.L.L.C.** | 1 Arizona Center |
|   | 100 North Tryon Street, Suite 4700 | 400 East Van Buren |
| 17 | Charlotte, North Carolina 28202 | Phoenix, AZ 85004-2202 |
| 18 | jimmcloughlin@mvalaw.com | bhalpern@swlaw.com |
| 19 | tonyamitchell@mvalaw.com | dmcauliffe@swlaw.com |
|   | pennyedwards@mvalaw.com | dgoldfine@swlaw.com |
| 20 | Charles.Price@mwmf.com | *Attorneys for Mayo Clinic Arizona,* |
| 21 | *Attorneys for Arizona Heart Hospital,* | *Phoenix Children's Hospital, Inc.,* |
| 22 | *LLC and AHH Management, Inc.* | *Scottsdale Healthcare Corporation* |
| 23 |   | Thomas P. Hanrahan |
| 24 |   | **SIDLEY AUSTIN LLP** |
|   |   | 555 West Fifth Street, Suite 4000 |
| 25 |   | Los Angeles, California 90013 |
| 26 |   | thanrahan@sidley.com |
| 27 |   | *Attorneys for Kindred Hospitals, West* |
|   |   | *LLC* |
| 28 |   |   |
|   | Nicole Maroulakos Goodwin |   |

**QUARLES & BRADY LLP**
1 Renaissance Square
2 North Central Avenue
Phoenix, AZ 85004-2391
ngoodwin@quarles.com
*Attorneys for Select Specialty Hospital*
*– Phoenix, Inc.and Select Specialty*
*Hospital – Arizona, Inc.*

Franklin J. Hoover
**MANGUM, WALL, STOOPS &**
**WARDEN, PLLC**
100 N. Elden St.
P.O. Box 10
Flagstaff, Arizon  86002-0010
fhoover@mwswlaw.com
*Attorneys for Navajo Health*
*Foundation – Sage Memorial Hospital,*
*Inc.*

_/s/_ Neill W. Clark
**Neill W. Clark**