David F. Sorensen (Pro Hac Vice)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile:  (215) 875-4604
dsorensen@bm.net
nclark@bm.net
**Attorneys for Plaintiffs**
*Additional Counsel on Signature Page*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| Cindy Johnson, Barbara A. Craig, and Stephanie L. Walker, on behalf of themselves and all others similarly situated, | : : : : : : : : : : : : : : : | No. CV07-1292-PHX-SRB **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH ABRAZO, CERTIFICATION OF TRAVELER SETTLEMENT CLASS, APPROVAL OF THE FORM OF NOTICE AND MEMORANDUM IN SUPPORT** |
| Plaintiffs, | | |
| vs. | | |
| Arizona Hospital and Healthcare Association et al., | | |
| Defendants. | | |

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ..................................................................................2

II.    BACKGROUND..................................................................................4

III.   ARGUMENT ......................................................................................8

     A.    The Standards for Preliminary Approval............................................8

     B.    The Proposed Settlement Merits Preliminary Approval...................10

          1.    The Settlement Resulted From Arm's Length and Informed Negotiations. ..............................................................................10

          2.    The Settlement Has No Obvious Deficiencies And Falls Within The Range For Approval...............................................13

          3.    The Settlement Does Not Improperly Grant Preferential Treatment To Class Representatives Or Segments Of The Class...............................................................................................16

          4.    The Proceedings Are Sufficiently Advanced To Permit Preliminary Approval Of The Settlement. .............................17

     C.    Certification of a Traveler Settlement Class is Appropriate.........................................................................................18

          1.    It is Appropriate to Certify a Traveler Settlement Class......19

               a.    The Requirements Of Rule 23(a) Are Met. ................19

               b.    The Traveler Settlement Class May be Certified Under Rule 23(b)(3)........................................................23

     D.    The Plan of Allocation the Court Previously Approved in Connection with the Prior Settlements Will Also Apply to the Abrazo Settlement.......................................................................27

     E.    The Court Should Approve The Notice Plan, The Proposed Form And Manner of Notice And The Proposed Schedule Leading Up To The Fairness Hearing ...............................29

     Proposed Schedule...............................................................................36

IV.   CONCLUSION...............................................................................37

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Alberto v. GMRI, Inc.,*
   No. CIV. 07-1895, 2008 WL 4891201 (E.D. Cal. Nov. 12, 2008)............................. 28

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)........................................................................................ 19, 25

*Arnold v. Ariz. Dep't of Public Safety,*
   No.CV-01-1463-PHX-LOA, 2006 WL 2168637 (D.Ariz. July 31, 2006)................. 32

*Bellows v. NCO Fin. Sys., Inc.,*
   No. 3:07-cv-01413, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008)...................... 15, 32

*Browning v. Yahoo Inc.,*
   No. C04-01463, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ............................... 33

*Browning v. Yahoo Inc.,*
   No. C04-01463, 2006 WL 3826714 (N.D. Cal. Dec. 27, 2006)................................ 34

*Carnegie v. Household Int'l, Inc.,*
   376 F.3d 656 (7th. Cir. 2004) ............................................................................... 26

*Carson v. Am. Brands, Inc.,*
   450 U.S. 79 (1981)................................................................................................ 13

*Cervantez v. Celestica Corp.,*
   No. EDCV 07-729-VAP, 2010 WL 2712267 (C.D. Cal. July 6, 2010) ..................... 35

*Churchill Village LLC v. General Electric,*
   361 F.3d 566 (9th Cir. 2004) ................................................................................. 29

*City P'ship Co. v. Atlantic Acquisition Ltd. P'ship,*
   100 F.3d 1041 (1st Cir. 1996)............................................................................. 8,10

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992) ................................................................................. 8

*Colesberry v. Ruiz Food Prod., Inc.,*
   No. CV F 04-5516, 2006 WL 1875444 (E.D. Cal. June 30, 2006) ............................ 33

*Columbus Drywall & Insulation, Inc. v. Masco Corp.,*
   258 F.R.D. 545 (N.D. Ga. 2007)................................................................. 19, 25

*Craft v. County of San Bernardino,*
   624 F.Supp.2d 1113 (C.D. Cal. 2008) .......................................................... 15

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*
   No. C 06-3903, 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ................................ 15

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) .................................................................. 8,10

*Hernandez v. Kovacevich,*
   No. 1:04CV5515, 2005 WL 2435906 (E.D. Cal. Sept. 30, 2005)............................... 33

*Hopson v. Hanesbrands Inc.,*
   No. CV-08-0844, 2009 WL 928133 (N.D. Cal. April 3, 2009)............................ 28, 29

*In re Carbon Black Antitrust Litig.*
   No. 03-10191, 2005 WL 102966 (D. Mass. Jan. 18, 2005)......................................... 26

*In re Diet Drugs Products Liability Litig.,*
   Nos. 1203, 99-20593, 2000 WL 1222042 (E.D. Pa. Aug. 28, 2000) ........................ 25

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.,*
   256 F.R.D. 82 (D. Conn. 2009) .................................................................. 26

*In re Excess Value Ins. Coverage Litig.,*
   MDL No. 1339, 2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. July 30, 2004) ................ 10

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,*
   MDL No. 901, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) ................ 10

*In re Inter-Op Hip Prosthesis Liability Litig.,*
   204 F.R.D. 330 (N.D. Ohio 2001) .............................................................. 24

*In re Medical X-Ray Film Antitrust Litig.,*
   Master File No. CV 93-5904, 1997 U.S. Dist. LEXIS 21936
   (E.D.N.Y. Dec. 10, 1997) ........................................................................ 10

*In re Mercury Interactive Corp. Securities Litig.,*
   618 F.3d 988 (9th Cir. 2010) ...................................................... 34

*In re MotorSports Merchandise Antitrust Litig.,*
   112 F. Supp. 2d 1329 (N.D. Ga. 2000)........................................ 25

*In re Pharmaceutical Industry Average Wholesale Price Litig.,*
   588 F.3d 24 (1st Cir. 2009)........................................................ 19

*In re Portal Software, Inc. Sec. Litig.,*
   No. 03-5138, 2007 U.S. Dist. LEXIS 51794 (N.D. Cal. June 30, 2007).......... 9, 17, 34

*In re Tableware Antitrust Litig.,*
   484 F.Supp.2d 1078 (N.D. Cal. 2007) ..................................... 9,10

*In re Toys "R" Us Antitrust Litig.,*
   191 F.R.D. 347 (E.D.N.Y. 2000) ............................................... 11

*In re Wells Fargo Securities Litig.,*
   991 F.Supp. 1193 (N.D. Cal. 1998) ........................................... 28

*In re Wireless Facilities, Inc. Securities Litigation II,*
   253 F.R.D. 607 (S.D. Cal. 2008) ............................................... 25

*Linney v. Cellular Alaska P'ship.,*
   Nos. C-96-3008, C-97-0203, C-97-0425, C-97-0457,
   1997 WL 450064 (N.D. Cal. July 18, 1997)............................... 16

*Mullane v. Cent. Hanover Bank & Trust Co.,*
   339 U.S. 306 (1950)................................................................... 29

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.,*
   221 F.R.D. 523 (C.D. Cal. 2004)................................................. 8

*O'Connor v. Boeing,*
   184 F.R.D. 311 (C.D. Cal. 1998).............................................. 22

*Officers for Justice v. Civil Service Com'n of City and County of San
   Francisco,*
   688 F.2d 615 (9th Cir. 1982) ................................................... 13

*O'Keefe v. Mercedes-Benz USA, LLC,*
    214 F.R.D. 266 (E.D. Pa. 2003)...................................................................... 24

*Rankin v. Rots,*
    No. 02-71045, 2006 U.S. Dist. LEXIS 45706 (E.D. Mich. June 28, 2006) ............... 13

*UAW v. GMC,*
    497 F.3d 615 (6th Cir. 2007) ...................................................................... 13

*Wright v. Linkus Enter., Inc.,*
    259 F.R.D. 468 (E.D. Cal. 2009) ................................................................ 33

**FEDERAL STATUTES AND RULES**

15 U.S.C. § 1 .............................................................................................. 5, 15

Fed. R. Civ. P. 23 ...................................................................................... passim

**STATE STATUTES AND RULES**

Ariz. R. Civ. P 26(b)(5) ................................................................................ 5

Ariz. Rev. Stat.
    § 12-2506(b)............................................................................................ 5
    § 44-102 .................................................................................................. 5
    § 44-1401 .............................................................................................. 15

**OTHER AUTHORITIES**

3 ALBA CONTE & HERBERT NEWBERG,
    NEWBERG ON CLASS ACTIONS § 10.15 (4th 2002) .................................... 28

MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004)
    §13.14 ...................................................................................................... 9
    §40.42 ...................................................................................................... 9
    §21.311 .................................................................................................. 30

Plaintiffs hereby respectfully move, pursuant to Fed. R. Civ. P. 23, for:

(1) preliminary approval of the proposed settlement with Hospital Development of West Phoenix, Inc. (d/b/a  West Valley Hospital), VHS Acquisition Subsidiary Number 1, Inc. (d/b/a Paradise Valley Hospital), VHS Acquisition Corporation (d/b/a Maryvale Hospital Corporation), VHS of Arrowhead, Inc. (d/b/a Arrowhead Hospital), VHS of Phoenix, Inc. (d/b/a Phoenix Baptist Hospital, and VHS Acquisition Company Number 1, L.L.C. (f/k/a Phoenix Memorial Hospital) (collectively, "Abrazo" or the "Abrazo Defendants") (the "Abrazo Settlement");

(2) approval of the proposed form and manner of class notice;

(3) certification, for settlement purposes, of the same settlement class of temporary Traveler nursing personnel ("Traveler Settlement Class") as previously certified in connection with prior settlements, and appointment of plaintiffs Barbara A. Craig and Stephanie L. Walker as class representatives, and David F. Sorensen of Berger & Montague, P.C. and David Balto of the Law Offices of David Balto as co-lead class counsel; and Mark Samson and the law firm of Keller Rohrback, LLP and Allen Grunes and the law firm of Brownstein Hyatt Schreck, LLP as additional class counsel for the Traveler Settlement Class for the Abrazo Settlement;

(4)  approval of the claim form and plan of allocation (essentially identical to those previously approved by the Court in connection with prior settlements in this case);

1

(5) appointment of RG/2 Claims Administration L.L.C. ("RG/2") as Claims Administrator for the Abrazo Settlement (the same claims administrator previously approved); and

(6) establishment of deadlines for filing of a motion for attorney's fees and reimbursement of costs and expenses;  and deadline for members of the Per Diem and Traveler Settlement Class (the "Classes") to opt out, or file objections to the proposed Abrazo Settlement; for filing of papers in support of final approval of the proposed settlement; for a hearing on final approval of the proposed settlement; and for filing of claim forms (and the ability of claimants to participate in the overall settlements).  A proposed form of order has been lodged with the Court.

Plaintiffs' Motion is based on this memorandum, the accompanying exhibits, and all other pleadings and matters of record.

## I.   <u>INTRODUCTION</u>

Plaintiffs have reached a proposed settlement in this litigation with the Abrazo Defendants, the sole remaining defendants in this litigation and the only hospital system that did not participate in the prior, September 3, 2010 settlements[1] with all other defendants ("Prior Settling Defendants"), which the Court approved on March 4, 2011.[2]  As discussed below, the proposed settlement provides additional monetary

---

[1] *See* Doc. Nos. 639-2, 639-4 (copies of the "Prior Settlements").

[2] *See* Doc Nos. 664-665 (prior final approval Orders).

2

and significant non-monetary relief for temporary nursing personnel who have provided temporary "Per Diem" or temporary "Traveler" nursing services for hospitals in Arizona that have participated in the nurse registry program ("Registry Program") operated by defendants Arizona Hospital and Healthcare Association and its subsidiary, the AzHHA Service Corp. (collectively, "AzHHA").

At this stage, Plaintiffs respectfully ask that the Court:

(1) preliminarily approve the proposed settlement, including the proposed claim form and plan of allocation (essentially identical to the prior ones previously approved);

(2) approve the proposed form and manner of class notice;

(3) certify, for settlement purposes, the same settlement class of temporary Traveler nursing personnel ("Traveler Settlement Class") as previously certified in connection with the Prior Settlements, and appoint plaintiffs Barbara A. Craig and Stephanie L. Walker as class representatives, and David F. Sorensen of Berger & Montague, P.C. and David Balto of the Law Offices of David Balto as co-lead class counsel;

(4) appoint RG/2 Claims Administration L.L.C. ("RG/2") as Claims Administrator for the Abrazo Settlement; and

(5) establish deadlines for the filing of a motion for attorney's fees and reimbursement of costs and expenses and service awards for the representative

3

plaintiffs;  for class members to opt out or file objections to the proposed settlement; for filing of papers in support of final approval of the proposed settlement; for a hearing on final approval of the proposed settlement; and for the filing of claim forms for class members who have not already submitted claim forms (and permitting such claimants to share in the total, overall settlements).

All of Plaintiffs' requests are *unopposed* by the Abrazo Defendants.

Accordingly, Plaintiffs respectfully request that their Motion be granted.

## II.    BACKGROUND

This case was filed in July 2007 against AzHHA and a number of Arizona hospitals, and alleged that the hospitals and AzHHA had unlawfully fixed and suppressed the wages paid to temporary nursing personnel, since at least 1997, by agreeing amongst themselves to fix and suppress the "bill rates" paid to temporary nurse staffing agencies.  Plaintiffs alleged that the wrongful suppression of bill rates necessarily suppressed compensation to temporary nursing personnel, because bill rates are correlated to wage rates.

The named plaintiffs are three registered nurses: Cindy Johnson, Barbara A. Craig, and Stephanie L. Walker ("Plaintiffs" or "Class Representatives").  Plaintiffs brought claims both under federal and state antitrust law, and asserted additional state law causes of action and sought compensatory and punitive damages.[3]  Three

---

[3] *See* Consolidated Third Amended Complaint, filed Nov. 10, 2008 (Doc. No. 317) ("Complaint").

defendants moved to dismiss.  The Court denied the motion as to Plaintiffs' claims under the Sherman Act, 15 U.S.C. § 1 (Count I); the Arizona Uniform State Antitrust Act, A.R.S. § 44-102 (Count II); and for unjust enrichment under Arizona state law (Count V); while dismissing other state law claims (Counts III and IV).  *See* Order dated March 19, 2009 (Doc. No. 449).

Various of the originally-named defendants, in February 2008, filed "Notices of Non-Parties at Fault" pursuant to A.R.S. § 12-2506(b), and Arizona Rule of Civil Procedure 26(b)(5), naming additional parties as allegedly "at fault" by virtue of these additional parties' participation in the Registry Program.  *See* Complaint ¶ 35; Doc. Nos. 151-160.  Thereafter, Plaintiffs named these additional parties as defendants (including the Abrazo Defendants).  *See* Complaint ¶¶ 36-64.

After engaging in vigorous discovery, litigating for more than 3 years and participating in two rounds of mediation, Plaintiffs and most defendants settled, and the Prior Settlements were submitted to the Court and approved after notice. Thereafter, Plaintiffs continued to litigate against the Abrazo Defendants, and pursued additional discovery, including additional documents and depositions.  Abrazo left the AzHHA Registry in 2005, and consequently discovery posed a number of challenges, including that a number of the relevant Abrazo personnel no longer worked for the Abrazo Defendants.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Although Abrazo did not join in the Prior Settlements, the prior settling defendants required, as a condition of settling, that the Abrazo Defendants obtain the benefit of a judgment sharing agreement ("JSA") that all defendants had reached. This was spelled out in the Prior Settlements.  *See* Doc. 639-2 at ¶¶ 66-68 & Ex. 8 thereto; Doc. No. 639-4 at ¶¶ 66-68. The JSA (depending on how it would ultimately be applied) basically capped the Abrazo Defendants' potential liability at between 4% and 12% (approximately) of any potential final judgment entered after trial.  *See* Doc. 639-2 at Ex. 8.

On February 3, 2012, the parties engaged in mediation before an outside mediator, Thomas B. Rutter J.D., who has mediated/arbitrated over 3000 cases since 1993 and is Chief Executive Officer of ADR Options, a company specializing in Alternative Dispute Resolution and Mediation.   Subsequently, the parties engaged in numerous additional, arm's length discussions.   The result is that the Abrazo Defendants have agreed (1) to pay $1.6 million in cash;  (2) to abide by the same, significant prospective relief as the prior defendants, to ensure that the conduct that gave rise to this litigation will not be repeated.  *See* Abrazo Settlement Agreement, attached as Exh. A.  Although the cash component may not be huge, as discussed, the Prior Settlements required that the Abrazo Defendants obtain the benefit of the JSA, so that Abrazo's exposure was limited.  Moreover, the non-cash component is very

significant, as it helps protect class members from any re-occurrence of the conduct that spawned this litigation.

In connection with the proposed settlement, Plaintiffs are asking the Court to again   certify a Traveler Settlement Class, the same class the Court certified previously in connection with the Prior Settlements (*see* Doc. No. 642).  As the Court may recall, on July 14, 2009, the Court certified a litigation class of Per Diem personnel but declined to certify a class of Traveler personnel.  *See* Doc. No. 584 ("Class Certification Order").  The Court also denied Plaintiffs' Alternative Motion for Class Certification under Fed R. Civ. P. 23(c)(4),  on September 27, 2011 (after the litigation had resumed against the Abrazo Defendants) (*see* Doc. No. 684).

As we discuss further below, the Court can and should certify a settlement class of traveler personnel, given that: (1) the Court previously certified the same Traveler class for purposes of the Prior Settlements (Doc. No. 642); (2) there will be no trial, and so individual issues that might otherwise arise at such a trial fall away; and (3) as before, the proposed Traveler Settlement Class is, in several significant respects, *narrower* than the prior proposed litigation class.[4]

---

[4] As explained in Paragraph  33 of the Abrazo Settlement, the Abrazo Defendants "are not waiving in any way any objections they may have or may have asserted to certification of any class, whether of traveler or per diem personnel, in the event that this Abrazo Settlement Agreement does not become final, and the Litigation proceeds, in which event the parties will be restored to their respective positions in the Litigation as if no settlement agreement had been reached." Ex. A  at ¶ 33.

## III.   **ARGUMENT**

### A.   **The Standards for Preliminary Approval.**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class basis.  *See* Fed. R. Civ. P. 23(e).  The basic legal guidelines are straightforward.  Approval of a proposed settlement is a matter particularly committed to the district court's authority.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998) ("Fed. R. Civ. P. Rule 23(d) vests a district court with the authority and discretion to protect the interests and rights of class members and to ensure its control over the integrity of the settlement approval process.");  *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1044 (1st Cir. 1996) ("Great deference is given to the trial court [regarding its decision to approve a class action settlement].").  Moreover, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). A court's decision to approve a class action settlement may be reversed "'only upon a strong showing that the district court's decision was a clear abuse of discretion.'"  *Id.,* 955 F.2d at 1276 (citation omitted).

Rule 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted."  *Nat'l Rural Telecomms. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

8

First, "the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing.  If so, the final decision on approval is made after the hearing." *Manual for Complex Litigation, Fourth,* §13.14 (2004). Preliminary approval permits notice to be given to class members of a final settlement approval hearing, at which class members and the settling parties may be heard.

At the preliminary approval stage, the court examines the materials submitted in support of the settlement and decides whether the settlement appears fair on its face, i.e., is "within the range of reasonableness," and ensures that it does not have any obvious deficiencies. *Manual for Complex Litigation, Fourth,* §40.42. The "preliminary determination establishes an initial presumption of fairness."    *In re Portal Software, Inc. Sec. Litig.*, No. 03-5138,  2007 U.S. Dist. LEXIS 51794, *14 (N.D. Cal. June 30, 2007) (internal quotations and citation omitted).

Preliminary approval of a settlement and notice to the proposed class is appropriate:

> [i]f the proposed settlement appears to be the product of serious, informed, non collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.

*In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (internal quotation and citation omitted).

Preliminary approval does not require the district court to answer the ultimate question whether a proposed settlement is fair, reasonable and adequate.    That

1
2
3
4

analysis occurs later, at the final approval stage, after notice of the settlement has been given to the class members, and they have had an opportunity to voice their views of the settlement.

5
6
7

**B.**     **The Proposed Settlement Merits Preliminary Approval.**

**1.**     **The Settlement Resulted From Arm's Length and Informed Negotiations.**

8
9
10
11
12
13
14
15
16

The Court should look to whether the proposed settlement appears to be the product of "serious, informed and non-collusive negotiations." *In re Medical X-Ray Film Antitrust Litig.,* 1997 U.S. Dist. LEXIS 21936, at *19 (E.D.N.Y. Dec. 10, 1997). In applying this factor, courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement. *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1080. *See also Hanlon*, 150 F.3d at 1038.

17
18
19
20
21
22
23
24
25
26
27

When a settlement is negotiated at arm's length by experienced counsel, there is a presumption that it is fair and reasonable.  *See City P'ship,* 100 F.3d at 1043 ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1992 U.S. Dist. LEXIS 14337, at *2 (C.D. Cal. June 10, 1992) (same)); *In re Excess Value Ins. Coverage Litig.*, MDL No. 1339, 2004 U.S. Dist. LEXIS 14822, at *34 (S.D.N.Y. July 30, 2004) (same).

28

Courts may also consider whether the settlement was reached with the assistance of a mediator.  *See In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("[m]ost significantly, the settlements were reached only after arduous settlement discussions conducted in a good faith, non-collusive manner, over a lengthy period of time, and with the assistance of a highly experienced neutral mediator").   Here, the settlement was reached with the assistance of a highly skilled mediator, Thomas B. Rutter of ADR Options.

The proposed settlement here was the product of extensive, arms'-length negotiation by informed counsel supervised by an experienced mediator.  Discovery in this case spanned more than three years, was extensive, and involved review of many thousands of pages of documents produced by Defendants, including documents produced and pleadings submitted in the *Health Temp.* matter, pleadings from the DOJ Action, and documents produced by third party nursing agencies in response to subpoenas.  Plaintiffs  also took extensive discovery of Abrazo including reviewing thousands of documents it produced and taking four depositions of its current or former employees that were responsible for, *inter alia* obtaining per diem and traveler personnel and participating in the Registry Program.   Previously, The representative plaintiffs (Ms. Johnson, Ms. Craig and Ms. Walker) each produced documents, and each was deposed.   Including the depositions of Abrazo's personnel,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs' counsel took 18 fact depositions and an expert deposition, and defended the depositions of their expert and  the three plaintiffs.  *See* Ex. F  (list of depositions).

The parties briefed and argued a motion to dismiss, and during class certification proceedings, Plaintiffs and Defendants submitted lengthy reports by expert economists, reports which -- though submitted in the context of class certification -- analyzed a number of issues, such as methods of proving antitrust damages, that relate to the merits of the case as well.[5]  Both side's experts were deposed.

Armed with this knowledge, Class Counsel (having already participated in two rounds of mediation in connection with the Prior Settlements, on June 29-30, 2009, in Phoenix; and on August 20-21, 2009, in San Francisco), participated in a third round, just with Abrazo, on February 3, 2012.  The parties continued to negotiate thereafter.

As noted, the Prior Settlements required that the Abrazo Defendants obtain the benefit of defendants' JSA.  That meant that Abrazo's liability was capped at a fraction of any final judgment that might be obtained after trial.  This was, of course, part of the Prior Settlements, which included nearly all the named defendants.  No objections to the Prior Settlements were filed, and they were approved.  But the JSA

---

[5] *See* Class Certification Report of Hal J. Singer, Ph.D., dated Dec. 22, 2008 (Doc. No. 428, Ex. 1) (opening, 53-page report by Plaintiffs' expert economist); Class Certification Declaration of David T. Scheffman, Ph. D., dated April 3, 2009 (91-page report by Defendants' expert economist) (Doc. No. 461);  Reply Class Certification Report of Hal J. Singer, dated June 5, 2009 (65-page reply report by Plaintiffs' expert economist) (Doc. No. 556).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

provision meant that the practical economic calculus facing Plaintiffs and the Abrazo Defendants had changed.   Put simply, the Abrazo Defendants had less to lose, and litigated vigorously.   The Abrazo Defendants left the AzHHA Registry in 2005, and among their defenses, they pressed the defense of statute of limitations.   They also made clear their plan to ask the Court to revisit class certification.   As the Ninth Circuit has observed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Service Commn.*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

## 2.     The Settlement Has No Obvious Deficiencies And Falls Within The Range For Approval.

When evaluating the adequacy of a settlement, the court does "not decide the merits of the case or resolve unsettled legal questions."  *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).   Nor should a court "substitute its business judgment for that of the parties."  *Rankin v. Rots,* No. 02-71045, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006).[6]

This complex case involves a range of disputed issues, including Plaintiffs' ability or inability to prove an antitrust violation under *per se*, quick look, or rule of reason analysis; whether the Plaintiffs have suffered antitrust injury; and the amount of damages.   While Plaintiffs believe that they have very meritorious claims, the

---

[6] As the Sixth Circuit explains: "Our task is not to decide whether one side is right or even whether one side has the better of the[] arguments.  Otherwise, we would be compelled to defeat the purpose of a settlement in order to approve a settlement."  *UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007).

13

1   Abrazo Defendants have denied, and continue to deny, each and all of the arguments

2   and contentions asserted by Plaintiffs.  For example, Abrazo Defendants have argued

3   that, even if Plaintiffs can establish liability, class members did not suffer any

4   damages, or any significant damages.

5        As part of the compromise embodied in any settlement, however, the Abrazo

6   Defendants have agreed to pay $1.6 million in cash, and agreed to very significant

7   prospective relief, designed to prevent a re-occurrence of the alleged conduct that

8   gave rise to this litigation, in return for the dismissal of the litigation and the release

9   of all claims against them.[7]  When viewed in light of the JSA provision, the very

10  significant non-monetary relief obtained, and the monetary and non-monetary relief

11  obtained in the Prior Settlements, the proposed settlement with Abrazo -- which if

12  finally approved will bring this case to an end -- is fair, adequate and reasonable.

13       As noted, the Abrazo Defendants have agreed that they will not participate in,

14  or establish, a program similar to the Registry Program for obtaining temporary

---

[7] This amount will cover notice and claims costs, as well as any service awards for the named plaintiffs, attorneys' fees and reimbursement of costs that may be awarded.  Based on prior experience with the Prior Settlements, we have allocated $275,000 for notice/claims costs (though the final figure may be higher).  See Exh. A at ¶ 50.  Assuming plaintiffs seek an attorneys' fee of 25% (as stated in the proposed notices) and that request is approved (at time of final approval), that would be $400,000.  Plaintiffs intend to seek service awards for the named plaintiffs totaling $6,000 (also at time of final approval).  Plaintiffs expect that additional, reimbursable litigation costs incurred in connection with the continued litigation will be about $75,000.  Again, while the monetary component here is not huge (funds after the above deductions would be approximately $840,000, depending on final claims costs), the Prior Settlements covered nearly all the defendants and the fund there is more than $15.5 million.  See Status Report, Doc. 711 at 1 n.1.

nursing services unless such program operates in compliance with Section 1 of the Sherman Act, 15 U.S.C. § 1, the Arizona state antitrust act, A.R.S. § 44-1401, and the limitations imposed by the DOJ Final Judgment.  Additionally, like the Prior Settlements, the Abrazo Settlement  provides members of the classes with special rights including accelerated discovery and attorneys' fees in case of any violation by the Abrazo Defendants.  *See* Abrazo Settlement Agreement ¶ 65.  Significantly, though the DOJ Final Judgment named AzHHA, it did not expressly name any hospitals, and the hospital defendants including Abrazo have contended that the Final Judgment did not bind them.

The significant prospective relief provided by the proposed settlement is a factor that may be weighed in evaluating the settlement's reasonableness.  *See, e.g., Bellows v. NCO Fin. Sys., Inc.*, 2008 WL 5458986  at *8 (S.D. Cal. Dec. 10, 2008); *Curtis-Bauer v. Morgan Stanley & Co., Inc*. 2008 WL 4667090 at *5 (N.D. Cal. Oct. 22, 2008) ("Most important, however, are the strength of the injunctive and monetary relief the Settlement provides. This Court has already found, on preliminary approval of the settlement, that the Settlement Agreement provides substantial injunctive relief to the Plaintiff class."); *Craft v. County of San Bernardino,* 624 F.Supp.2d 1113, 1121 (C.D. Cal. 2008)( "Nor can the results in this case be judged solely by the monetary component of the settlement. Due to the litigation, the County has stopped all of the strip search practices addressed in this settlement. . . .  That is a major

accomplishment, independently of the monetary settlement." ); *Linney v. Cellular Alaska P'ship.,* 1997 WL 450064 at * 7 (N.D. Cal. July 18, 1997) ("The settlement approved today by the Court continues to provide a benefit based upon injunctive relief . . .[.]").

In short, the proposed settlement here is well within the range of possible approval and has no obvious deficiencies.

**3.      The Settlement Does Not Improperly Grant Preferential Treatment To Class Representatives Or Segments Of The Class.**

The relief provided in the settlement will benefit all members of the Classes. The Court previously approved a plan of allocation[8] that permits class members to share in the settlement funds depending on, inter alia, whether they provided per diem or traveler nurse services, what position they held (RN, LPN, etc.), the number of hours worked, whether the hospitals at which they worked were participating in the Registry Program at the time of their placement, and whether the agency that placed them participated in the Registry Program.   And all members of the classes will benefit from the significant prospective relief obtained.

The Court previously certified a class of Per Diem nursing personnel, but not one of Traveler nursing personnel.  Plaintiffs, without opposition from the Abrazo

---

[8] The Allocation Plan was attached as Exhibit E to Plaintiffs' Motion for Preliminary Approval of Settlement, Certification of the Settlement Classes, Approval of the Form of Notice and Memorandum in Support. (Doc No. 639-6).  A copy is attached again as Exh. C. It is the same plan.

Defendants, are asking that a settlement class of traveler nursing personnel be certified (for settlement purposes only) which, as explained further below, is warranted here.  Absent settlement, however, traveler class members faced the risk that their only recovery would come only through expensive, and highly impractical, individual litigation.  Thus, in the previously approved allocation plan, Per Diem Settlement class members will recover, overall and on average with everything else being equal, four times more per hour claimed than Traveler Settlement Class members.  *See* Allocation Plan ¶ 4.  As this difference reflects an underlying difference in risks, it supports the reasonableness of the settlement.  *See In re Portal Software, Inc. Sec. Litig*. 2007 U.S. Dist. LEXIS 51794 at * 17 ("Courts frequently endorse distributing settlement proceeds according to the relative strengths and weaknesses of the various claims.") (collecting cases).

**4.    The Proceedings Are Sufficiently Advanced To Permit Preliminary Approval Of The Settlement.**

As discussed, Plaintiffs have conducted sufficient discovery to fairly evaluate the fairness of the proposed settlement with Abrazo.  Plaintiffs' counsel reviewed thousands of documents, and conducted 18 fact depositions including  4 depositions of Abrazo personnel and a deposition of  Dee Patrick, President of Health Temp, an agency that significantly participated in the Registry Program and that sued AzHHA and some of the Defendants for some of the same conduct alleged in this litigation; deposed Defendants' expert economist (in the context of class certification

proceeding); and defended the depositions of the three plaintiffs.   Plaintiffs also subpoenaed certain third party nurse staffing agencies (*see* list of subpoenas attached as Ex. G).  Plaintiffs' economic expert, Hal. J. Singer, Ph.D., conducted an extensive economic analysis which, though done in the context of class certification proceedings, included extensive analysis of data and documents bearing on both liability issues and damages.

The discovery record and the defenses put forth by the Abrazo Defendants, considered in light of the JSA provision and the uncertainties of any trial, and the unpredictable delays that would attend waiting for recovery after trial, verdict and any appeal, all strongly counsel in favor of preliminary approval of the proposed settlement. The Court should therefore grant preliminary approval of the settlement and direct that notice of it be given to the settlement classes in order to give class members the express their views of the settlement with Abrazo.

In conjunction with the settlement with Abrazo, Plaintiffs are asking that the Court certify a settlement class of Traveler nursing personnel.

## C.   <u>Certification of a Traveler Settlement Class is Appropriate.</u>

The definition of both the Per Diem Class and the Traveler Settlement class are the same here as the contained in the Court's prior order preliminarily approving the Prior Settlements.  *See* Doc. No. 642;  Abrazo Settlement Agreement at ¶ 23.

18

1

2

3            **1.      It is Appropriate to Certify a Traveler**
4                        **Settlement Class.**

5            This Court may, and should, certify a settlement class of temporary traveler

6    nursing personnel, as it did before, in light of the proposed settlement and for

7    purposes of the settlement.   The Abrazo Defendants agree (in light of settlement).

8    The Court's prior litigation class decision, made in the context of Defendants'

9    opposition and set against the demands of a trial, and involving a broader proposed

10   class, does not prevent the Court from certifying a Traveler Settlement Class now in

11   connection with settlement.   As the Supreme Court has explained, the fact of

12   "[s]ettlement is relevant to a class certification.… Confronted with a request for

13   settlement-only class certification, a district court need not inquire  whether the case,

14   if tried, would present intractable management problems."   *Amchem Prods., Inc. v.*

15   *Windsor*, 521 U.S. 591, 619-20 (1997).

16           The First Circuit, for example, affirmed a settlement, including certification of

17   a settlement class that included individuals whom the district court had previously

18   excluded based on predominance of common issues. *See In re Pharmaceutical*

19   *Industry Average Wholesale Price Litig.*, 588 F.3d 24, 29, 40-41 (1st Cir. 2009).  *See*

20   *also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 557-58

21   (N.D. Ga. 2007) (fact of settlement can weigh in favor of certification) (discussing

22   csaes).

23           **a.      The Requirements Of Rule 23(a) Are Met.**

19

The proposed Traveler Settlement Class is defined as follows:

> (a) The "Traveler Settlement Class," is defined as: All natural persons who have provided Traveling Nurse Services in the state of Arizona for any Defendant or other Participating Hospital at any time from January 1, 1997, until September 12, 2007.
>
> "Travel Nurse Services" are those positions, for those years, as set forth in Exhibit 4 to the Abrazo Settlement Agreement.
>
> **Excluded** from the Traveler Settlement Class are (a) Defendants and their parents, officers, directors, subsidiaries and affiliates; (b) those natural persons whose sole activity during the Class Period was (i) working for one of the Defendants' or other Participating Hospitals' internal registries or pools and not through an agency, and/or (ii) being employed directly by one or more of the Defendants or Participating Hospitals but not working through an agency; and (c) those natural persons whose sole activity working for one or more of the Defendants or Participating Hospitals during the Class Period was for a Defendant or other Participating Hospital which was not at that time participating in the AzHHA registry program (collectively, the "Classes").

The Abrazo Settlement Agreement also identifies the specific temporary traveler nursing positions included in the Traveler Settlement Class, and for what years. *See* Abrazo Settlement Agreement ¶ 23 and Ex. 4 thereto (identifying specific Traveler positions and years included.

The proposed Traveler Settlement Class meets all the requirements of Rule 23(a), i.e., numerosity, commonality, typicality, and adequacy (as it did before, in light of the Prior Settlements).

**Numerosity:** Class certification requires that the class is so numerous that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). There is no

20

dispute here that a settlement class of Traveler nursing personnel satisfies the numerosity requirement.  The class period spans 10 years, and involves purchases by AzHHA Registry Program participating hospitals of millions of hours of traveler nursing services.

**Commonality:**  Rule 23(a)(2) requires the existence of "questions of law or fact common to the Class."

Notably, the Court previously concluded -- in evaluating a proposed single, broader class that included both Per Diem and Traveler nursing personnel -- that: "common issues of law and fact exist across the proposed class, thus satisfying the commonality requirement of Rule 23(a)(2)."  Class Certification Order at 5.  That conclusion plainly still holds with respect to a Traveler-only settlement class.  Among the issues common to the entire Traveler Settlement class are whether Defendants' conduct violated federal and/or state antitrust law, and whether the conduct constitutes a *per se* antitrust violation.  *See* Class Certification Order at 5.

**Typicality:**  The typicality requirement of Rule 23(a) is established where, as here, the claims of the Plaintiffs arise from the same event or course of conduct that gives rise to the claims of other class members, and where the claims are based on the same legal theory.  *See* Class Certification Order at 5-8.

The claims of the class representatives for the Traveler Settlement Class (Ms. Craig and Ms. Walker) arise from the same course of allegedly wrongful conduct that

gives rise to the claims of the entire Traveler Settlement class, namely Defendants' allegedly wrongful and illegal agreement and conduct to jointly and collusively fix and suppress bill rates for Traveler nursing personnel. Hence, the typicality requirement is satisfied for the Traveler Settlement Class.

**Adequacy:**  Rule 23(a)(4) requires that plaintiffs will "fairly and adequately protect the interests of the class."  *See, e.g., O'Connor v. Boeing*, 184 F.R.D. 311, 335 (C.D. Cal. 1998).  *See also* Class Certification Order at 8-9 (Court's prior discussion of the adequacy requirement).

As the Court noted in certifying the Per Diem class, "Defendants have not made any … arguments as to adequacy[] beside the statute of limitations issue [as to Ms. Johnson], and Defendants have not suggested that proposed class counsel are in any way inadequate.  The Court concludes that the adequacy requirement is met." Class Certification Order at 8-9.  Nothing has occurred since that would alter that conclusion as to a Traveler Settlement Class, and Plaintiffs Ms. Walker and Ms. Craig.  And the Court previously found that Class Counsel David Balto and David F. Sorensen "are qualified and experienced."  Class Certification Order at 9; Doc. No. 642 at ¶ 3. Similarly, Mark Samson and the law firm of Keller Rohrback, LLP and Allen Grunes and the law firm of Brownstein Hyatt Farber Schreck have antitrust class action and complex litigation experience, and have served as co-counsel for Plaintiffs in this case.   Accordingly, Plaintiffs request appointment of (1) Ms. Craig

and Ms. Walker as representatives of the Traveler Settlement Class; and (2) David F. Sorensen and the law firm of Berger & Montague, P.C. and David Balto and the law firm Law Offices of David Balto as Co-Lead Counsel for the Traveler Settlement Class; and Mark Samson and the law firm of Keller Rohrback, LLP and Allen Grunes and the law firm of Brownstein Hyatt Farber Schreck as additional Class Counsel for the Traveler Settlement Class.

b.    **The Traveler Settlement Class May be Certified Under Rule 23(b)(3).**

In addition to meeting the prerequisites of Rule 23(a), the Traveler Settlement Class also satisfies Rule 23(b)(3) in light of settlement.  The Court reached this same conclusion earlier, in light of the Prior Settlements.[9]  *See* Doc. No. 642.

As discussed above, and in previous briefs, there are numerous common issues of law and fact in this case.  *See* Class Certification Order at 5 ("common issues of law and fact exist across the proposed class").

In previously denying certification of a single litigation class that included traveler personnel in the face of opposition by Defendants, the Court focused on the issue of proof of antitrust impact, or injury.  *See* Class Certification Order at 14-15. The proposed Traveler Settlement Class, however, is significantly *narrower* than the

---

[9]  Because the earlier certification of the Traveler Class was made in light of and in connection with the Prior Settlements, it does not pertain to the Abrazo Defendants, who did not settle before.

prior class that the Court declined to certify.  First, the prior proposed class included both traveler and per diem personnel in one class, while here traveler nursing personnel are in their own class.  Second, the Traveler Settlement Class includes a fixed end date (September 12, 2007) that was not set forth in the prior proposed class. Third, the Traveler Settlement Class is limited by specified exclusions, such as traveler personnel who never worked for a hospital when the hospital was participating in the AzHHA Registry Program.  *See* Abrazo Settlement Agreement ¶ 23.  Fourth, the Traveler Settlement Class is limited by the specific traveler nurse positions (and applicable time periods) set forth in Ex. 4 to the agreement.  In short, the Court may evaluate the Traveler Settlement Class on its own terms.

The Abrazo Defendants are not contesting certification of a Traveler Settlement Class for purposes of settlement (while preserving their rights to contest class certification if the settlement does not become final for any reason).  *See* Abrazo Settlement Agreement ¶ 33.  Under similar circumstances, many courts have concluded that certification is appropriate.  *See O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 291-92 & n.19 (E.D. Pa. 2003) (noting that individual questions regarding damages, variations in state law and reliance do not prevent a finding of predominance for the purpose of certifying a settlement class because those issues go to the question of manageability); *In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. 330, 347 (N.D. Ohio 2001) (noting that the settlement established a means of

resolving issues of causation, injury and damage that otherwise potentially gave rise to individual questions, so satisfying predominance for purpose of certification of settlement class); *In re Diet Drugs Products Liability Litig.*, 2000 WL 1222042 at *43 (E.D. Pa. Aug. 28, 2000) ("[W]hen taking the settlement into consideration for purposes of determining class certification, individual issues which are normally present in personal injury litigation become irrelevant, allowing the common issues to predominate."); *Masco Corp.*, 258 F.R.D. at 557 (same); *In re MotorSports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1334 (N.D. Ga. 2000) ("[t]he settlements are a positive alternative to the prospect of receiving no recovery[.]"). *See also In re Wireless Facilities, Inc. Secs. Litig.*, 253 F.R.D. 607 (S.D. Cal. 2008) (certifying class for purposes of settlement and granting preliminary approval of settlement).

The limitations of the Traveler Settlement Class can be viewed as increasing class cohesion, and diminishing the relative importance of any remaining individual issues. And, the Abrazo Defendants have agreed to pay a settlement sum which is to be distributed to members of the Traveler Settlement Class, obviating any need for a trial to establish the extent of damages.[10] *See also Amchem*, 521 U.S. at 635-36

---

[10] Moreover, Plaintiffs contend that even if some traveler nurses may have negotiated certain terms of their compensation, it does not mean they were not impacted. As one court recently stated:

> Proving damages proves injury because damages necessarily indicate that the plaintiff has been impacted or injured by the antitrust violation; the converse, however, is not necessarily true. That is, it is possible for a plaintiff to suffer

(Breyer, J., concurring in part and dissenting in part) ("The [fact of] settlement is relevant [to the question of class certification] because it means that … the differences [that exist among class members] … are of diminished importance in respect to a proposed settlement in which the defendants have waived all defenses and agreed to compensate all those who were injured.").

In addition, this Court has already recognized that "a class action is superior to other methods of adjudication for Per Diem Nurses, because the amount of each nurse's damages is relatively small and would not provide sufficient incentive for most individual nurses to pursue litigation against a large group of deep-pocketed hospitals." Class Certification Order at 17. This conclusion applies equally, or even more so, to the claims of the Traveler Settlement Class members, who face the same prospect of costly individual litigation.[11]

---

antitrust injury-in-fact and yet have no damages because it has taken steps to mitigate the actual price paid through rebates, discounts, and other non-price factors such as lowered shipping costs, technical services, or any other type of purchase incentive. By expending resources to negotiate down from the supracompetitive prices established by the cartel, plaintiffs who have suffered no damages may still have suffered an injury-in-fact from the antitrust conspiracy. The fact that a plaintiff may have successfully employed bargaining power to fend off the *effect* of the conspiratorial practices does not mean that it has not been put in a worse position but-for the conspiracy.

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 88-89 (D. Conn. 2009).

[11] *See also, Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th. Cir. 2004) ("[T]he realistic alternative to a class action is not [a large number of] individual suits, but zero individual suits, as only a lunatic or a fanatic sues for [a recovery that is insignificant relative to the cost of suit]."); *In re Carbon Black Antitrust Litig.* No. 03-10191, 2005 WL 102966 at

26

**D.      The Plan of Allocation the Court Previously Approved in Connection with the Prior Settlements Will Also Apply to the Abrazo Settlement.**

The Plan of Allocation that the Court approved with the Prior Settlements will also apply to the Abrazo settlement.  See copy of plan attached as Ex. C.

As explained in Allocation Plan, the settlement funds will be allocated to class members depending on: (1) whether they worked as a Per Diem or Traveler Nurse; (2) the position they worked (e.g. RN, LPN, Or/Surg Tech); (3) whether the hospital and agency were participants in the AzHHA Registry Program;  (4) the number of hours worked; and  (5) how many class members submit timely and valid claim forms.  *See* Allocation Plan.

The formula for computing each class member's recovery uses objective data that will fairly allocate the settlement.  For example, the amount allocated to each nursing position is determined by and reflects the hourly AzHHA Registry bill rate for that position. And the relative allocation amounts, similarly, reflect the relative relationship between the Registry Program bill rates.[12]  Allocation Plan ¶¶ 14-20.

---

*22 (D. Mass. Jan. 18, 2005) ("Antitrust class actions are expensive endeavors and joining forces with other similarly situated plaintiffs is often the only way to effectuate a case.").

[12] As with the Prior Settlements, final distributions will be subject to applicable taxes, and may be accompanied by W-2 forms.  See Abrazo Settlement Agreement ¶ 63 (providing that the Claims Administrator "shall make appropriate employee withholding and employers payroll tax deductions from such payments as required by law.").  *See* Prior Settlements (Doc. 639-2 at ¶ 64 (same); Doc. 639-4 at ¶ 64) (same)).

1
2
3
4
5
6
7
8
9
10

Additionally, because not all eligible Class Members may actually file claims, and thus the total hours claimed will be less than the total hours worked,  some settlement funds may be reallocated, both among the two classes and among positions, to reflect the filed claims.  *See* Allocation Plan at ¶¶ 13, 21.  This process of reallocation is the same as redistributing unclaimed funds to class members that previously submitted a claim form -- a procedure courts often approve as a method of allocating the settlement amount.[13]  If there are any uncashed checks, the money will

11
12

---

[13] It is entirely proper to redistribute unclaimed funds to Class Members that previously submitted a claim form. As discussed in *3 Newberg On Class Actions* §10:15 at 512 (4th ed)**:**

13
14
15

> In a settlement context, subject to court approval, counsel for the parties have great flexibility in negotiating an agreement concerning how unclaimed balance of an aggregate class recovery should be distributed.

16
17
18

> The parties may agree that any surplus funds . . .should be distributed in a designated manner to class members who have filed individual claims, or they may agree that the distribution of the surplus funds for the benefit of the class will be determined by the court or determined by the parties subject to court approval.

19
20
21
22
23
24
25
26
27
28

*See also Alberto v. GMRI, Inc.*, 2008 WL 4891201 at * 7 n.4 (E.D. Cal. Nov. 12, 2008) ("The settlement administrator will calculate Individual Payment Amounts twice. First he will calculate Individual Payment Amounts assuming every class member opted into the settlement and allocate the Net Payment using the three-step process described above. Because it is realistic to assume that many class members will not return claim forms, the settlement administrator will also calculate the remainder, or the unclaimed portion of the net payment, and allocate it to the claimants using the same three-step process.") (citation omitted);  *Hopson v. Hanesbrands Inc.*, 2009 WL 928133 at * 9-10 (N.D. Cal. April 3, 2009) (granting final approval of class settlement where "[t]he parties propose[d] that if the residual settlement amount (the amount of settlement checks not cashed after 120 days) is more than $15,000, then that amount will be distributed to claimants on a pro rata basis according to the value of their settlement shares.");  *In re Wells Fargo Securities Litig.,* 991 F.Supp. 1193 (N.D. Cal. 1998) (granting plaintiffs' motion to distribute some of the residue of the settlement fund to class members that previously submitted claim forms where the residue was the result of  interest that accrued after distribution checks were mailed and unanticipated savings in administering fund).

1

2

either donated to one or more accredited nursing schools in Arizona,[14] or, if feasible,

reallocated among class members.[15]

3

4

5

      **E.**      **The Court Should Approve The Notice Plan, The Proposed Form And Manner of Notice And The Proposed Schedule Leading Up To The Fairness Hearing.**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

      Rule 23(e)(1) provides "[t]hat the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed R. Civ. P. 23(e)(1).  A class action settlement notice is "satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard'." *Churchill Village LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted). To be substantively acceptable under Rule 23(c)(2), the notice given to a class must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

20

21

22

23

      The Notice Plan Plaintiffs propose for notifying class members about the Abrazo Settlement is very similar to the Notice Plan implemented for the Prior

24

25

26

[14] *See, e.g., Hopson v. Hanesbrands Inc.*, 2009 WL 928133 at * 9-10 (N.D. Cal. April 3, 2009) (granting approval of cy pres award to two charities, United Way and Family and Children's Law Center in a case alleging that employer failed to pay overtime and committed other violations of the Fair Labor Standards Act).

27

28

[15] See Abrazo Settlement at ¶ 51.  Although given the number of claims to date, there is no chance of there being any other, unallocated "excess" funds, if there were, they would be returned to Abrazo.  Id.

Settlements, and Plaintiffs request that RG2 be appointed to continued as claims administrator.

For the Prior Settlements, Plaintiffs mailed the Class Notice approved by the Court to  26,550 potential class members that had been identified from the list of class members provided by prior settling Defendants.  *See* Declaration of Claims Administrator dated February 25, 2011 at ¶ 4 (attached as Exhibit 1 to Plaintiffs' Motion for Final Approval of the September 3, 2010 Settlements") (Doc No. 658-1).

As discussed in the Status Report filed by Plaintiffs on March 2, 2012, Plaintiffs have been able to supplement this mailing list with names of additional potential class members.  See Doc. No. 711.  See also Ex. D (Declaration of Claims Administrator dated April 11, 2012) ("April 2012 Declaration").

As before, Plaintiffs also intend to establish a website and toll free number where class members can find out about the Abrazo Settlement, and publish notice in Arizona newspapers and publications likely to be read by Class members. *See* April 2012 Declaration..

The  proposed Mailed Notice (Ex. 1 to the Abrazo Settlement Agreement) complies with the requirements of Rule 23(c)(2)(B) and the recommendations contained in Section 21.311 of the *Manual for Complex Litigation (Fourth)*, which suggests that such notice should: (1) describe succinctly the positions of the parties; (2) identify the opposing parties, class representatives, and counsel; (3) describe the

relief sought; and, (4) explain any risks and benefits of retaining class membership and opting out, while emphasizing that the court has not ruled on the merits of any claims or defenses.

The proposed Mailed Notice explains in plain language, and in a question/answer format: (1) the nature of the action (see Mailed Notice at question/answer No. 2); (2) the definitions of the classes certified (question/answer No. 6); (3) the class claims, issues, or defenses (question/answer No. 2); (4) that a class member may enter an appearance through an attorney if the member so desires (question/answer No. 17); ( and (5) the binding effect of a class judgment on members under Rule 23(c)(3) (questions 7, 10).

Similarly, the Mailed Notice succinctly describes each party's position (page 1 and question 2); identifies the opposing parties, class representatives and counsel (page 1 and questions 3, 16);  describes the relief sought (page 1 and question 2); explains any risks and benefits of retaining class membership  (questions 8-10) while emphasizing that the Court has not yet ruled on the merits (page 1 and question 2). The proposed Mailed Notice also describes the proposed settlement and how the settlement will be allocated (question 11-12);  how class counsel will seek to be compensated (question 18); how to object, and when and where the Fairness Hearing will be held and whether and how to enter an appearance at the Fairness Hearing (questions 19-22);  and how to obtain more information (question 23).

31

The proposed Publication Notice (Ex. 2 to the settlement agreement) likewise complies with Rule 23(e).  The Publication Notice informs Class members about the litigation (notice at 1);  provides the class definitions and how individuals can obtain more information to determine whether they are class members (*id*. at 1-2); provides information regarding attorneys' fees (*id.* at 2); describes the settlement (*id.* at 2-3); explains how to participate in and object to the settlement (*id.* at 2-3);  and provides the date and location of the Fairness Hearing and how Class Members can obtain more information about the Settlement from the litigation website or calling the toll-free number (*id*. at 2-3).  The proposed notice thus meets the requirements of Rule 23. *See e.g. Arnold v. Ariz. Dep't of Public Safety*, No.CV-01-1463-PHX-LOA, 2006 WL 2168637 at *5 (D.Ariz. July 31, 2006) (approving published notice that "describes the essential terms of the Settlement Agreement, provides information regarding attorneys' fees, indicates the time and place of the hearing to consider approval of the Settlement Agreement, prominently displays the address and phone number of counsel and the procedure for making inquiries or objections regarding the Settlement Agreement."); *Bellows v. NCO Financial Sys., Inc.* No. 3:07-cv-01413, 2008 WL 5458986 at * 3 (S.D. Cal. Dec. 10, 2008) (approving published notice that "directed Class Members to the Settlement Website to obtain information regarding the case and class settlement  . . .[and provided a ] toll-free telephone number . . .[.]");

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Significantly, "[f]or approval, the notice need not have been perfect.  Rather it needed to be the 'best notice that is practicable under the circumstances' and directed 'in a reasonable manner to all members who would be bound.'"  *Browning v. Yahoo Inc.*, 2007 WL 4105971, at *7 (N.D. Cal. Nov. 16, 2007) (citing FRCP 23(c)(2) and 23(e)(1)(B)).  "Rule 23(e) gives the court 'virtually complete' discretion as to the manner of service of settlement notice."  *Colesberry v. Ruiz Food Prod., Inc.*, 2006 WL 1875444, at *7 (E.D. Cal. June 30, 2006) (citation omitted).

Plaintiffs propose a combination of first class mailing to those potential class members contained in the prior mailing list (as supplemented);[16] and published notice in publications and websites that target the same populations encompassing the potential classes.  This meets the requirements of Rule 23.  *See Wright v. Linkus Enter., Inc.*, 259 F.R.D. 468, 475 (E.D. Cal. 2009) (approving mailed notice); *Hernandez v. Kovacevich*, 2005 WL 2435906, at *3 (E.D. Cal. Sept. 30, 2005) (approving mail and publication notice).

Plaintiffs propose to place the Published Notice in journals, magazines, newspapers and websites with  national and regional circulation including wide circulation among the class members, and to establish a dedicated website.  This method of notice is both "extensive, multifaceted, and innovative" and thus satisfies

---

[16] The Abrazo Defendants searched for reasonably accessible information in electronic form identifying class members (as required by the Abrazo Settlement Agreement), but were not able to locate any.  *See* Exh. E (affidavit of Kerry S. Martin).

Rule 23(e)'s requirements.  *Browning,* 2006 WL 3826714, at *8;  *Portal Software,* 2007 U.S. Dist. LEXIS 51794, at *19 (finding that notice by mail and publication satisfy the requirements of due process and Rule 23).

Additionally, all pertinent documents (the Mailed Notice, Settlement Agreement, and other documents related to the Settlement) will be posted on a dedicated website established and maintained by RG/2.

Plaintiffs propose mailing the Mailed Notice within thirty days after the Court grants preliminary approval of the settlement and approves the form of Class Notice. Plaintiffs also propose publishing the Published notice in the next available publication dates after preliminary approval.

Class members will be provided an opportunity to object to the proposed settlement or opt out of the classes,[17] as well as object to the attorney's fee and costs and expenses application of Plaintiffs' counsel, which will be filed before the deadline for objections, in accord with *In re Mercury Interactive Corp. Securities Litig.,* 618 F.3d 988 (9th Cir. 2010).

---

[17] The parties have reached a confidential agreement that permits the Abrazo Defendants to withdraw from the settlement if a certain number of class members choose to opt out.  Such agreements typically are identified, though not filed, to satisfy Rule 23(e) (requiring identification of agreements), while encouraging settlement.  E.g., *In re Healthsouth Corp., Secs. Litig.,* 2009 WL 1684422 (11th Cir. 2009).  Thus, the agreement is not being filed at this time, and will not be unless a dispute arises, or the Court requires its filing.

1
2
3
4

        In addition, Plaintiffs request that the Court approve the Claim Form attached to the proposed form of Mailed Notice.[18] It is essentially identical to the Claim Form previously approved by the Court in connection with Prior Settlements.[19]

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

        As discussed in the Status Report (Doc. No. 711), Plaintiffs believe that all claimants should be permitted to share in the overall, total settlements (the Abrazo Settlement and the Prior Settlements). It is the same group of class members, and considering the supplemented mailing list, and that a number of class members have reported fears of retaliation for filing claims, we believe the most reasonable, fairest approach would be to permit class members who file claims (up to the final deadline) to share in the total settlement funds.   Additional claims may affect allocation amounts (depending on how many additional claims are filed as compared to the additional funds being provided by the Abrazo Defendants), but the interests of overall fairness, prudence, and of maximizing class participation, we believe, support this approach.   Hence, we request that the Court effectively extend the prior claim deadline (June 2, 2011) to permit any additional claimants to share in the total settlements.

24
25
26
27
28

---

[18] *Cervantez v. Celestica Corp.,* 2010 WL 2712267 at * 6 (C.D. Cal. July 6, 2010) (reviewing and approving proposed claim form at time of preliminary approval).

[19] The changes are that Class Members are told that they need not submit a claim form again if they have already submitted one in connection with the Prior Settlements.   It also now requests claimants to submit supporting work records up front (previously, the Claims Administrator made follow up requests, but asking for records up front will be more efficient).

**Proposed Schedule**

Plaintiffs propose the following schedule:

| Event | Deadline/Time |
|---|---|
| Date by which the Claims Administrator shall serve notice on the Attorney General of the United States and all state attorneys general pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715. | Within 10 days after this Motion is filed with the Court. |
| Date by which the Claims Administrator shall cause a copy of Mailed Notice to be mailed by first class mail to all class members who can be identified with reasonable effort: | Within 30 days of preliminary approval by the Court, and certification of the settlement classes as proposed. |
| Completion of publishing the Publication Notice: | June 1, 2012 (this date, and hence other dates following it, may change depending on date of preliminary approval) |
| | |
| Filing of memoranda in support of Class Counsels' application for an award of attorneys' fees and reimbursement of costs and expenses, and award of incentive awards to representative plaintiffs: | June 1, 2012 |
| Mailing of opt-out notices or objections: | July 10, 2012 |
| Filing of memoranda in support of final approval of the settlement | July 23, 2012 |
| [proposed] Final Fairness Hearing[20]: | August 14, 2012 |
| Final Deadline for Submitting Claim Forms: | August 7, 2012 |

---

[20] The Class Notice will alert the class members that the date may change, and that they should check the website for updated information.

36

IV.   **CONCLUSION**

Plaintiffs respectfully request that the Court grant this motion. A form of order is being separately lodged with the Court.

Dated  April 13, 2012

**BERGER & MONTAGUE, P.C.**

By: /s/ David F. Sorensen
David F. Sorensen
1622 Locust Street
Philadelphia, PA  19103
Tel: 215-875-3000
Fax: 215-875-4673

**LAW OFFICES OF DAVID BALTO**
David Balto
1350 I Street, N.W., Suite 850
Washington, D.C. 20005-3355
Tel: 202-577-5424
Fax: 202-333-4186

**KELLER ROHRBACK, P.L.C.**
Mark Samson
Ron Kilgard
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: 602-248-0088
Fax: 602-248-2822

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
Allen P. Grunes
1350 I Street, Suite 510
Washington, D.C. 20005-3355
Tel: 202-296-7353
Fax: 202-296-7009

Timothy R. Beyer

37

Martha F. Bauer
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
Tel: 303-223-1100
Fax: 303-223-1111

Jeffrey S. Rugg
100 City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Tel: 702-382-2101
Fax: 702-382-8135

*Attorneys for Plaintiffs*

1

2

## CERTIFICATE OF SERVICE

3

     The undersigned hereby certifies that on April 13, 2012 the foregoing

4

Plaintiffs' Preliminary Approval of  Settlement with Abrazo, Certification of the

Traveler  Settlement Class, Approval of the Form of Notice and Memorandum in

5

Support was served via electronic mail to the following parties and notice of this

6

filing will be sent to all parties listed below by operation of the Court's CM/ ECF

7

System:

8

Keith Beauchamp                       Timothy J. Burke

9

Lauren Jacqueline Weinzweig       Jamie Brown

Roopali H. Desai                     **FENNEMORE CRAIG PC**

10

**COPPERSMITH SCHERMER**        3003 North Central Avenue, Suite 2600

11

 **& BROCKELMAN PLC**         Phoenix, AZ 85012

2800 North Central Avenue, Suite 1200   tburke@fclaw.com

12

Phoenix, AZ  85004                 pklein@fclaw.com

13

kbeauchamp@csblaw.com        *Attorneys for Northern Arizona*

lweinzweig@csblaw.com         *Healthcare Corporation,  Catholic*

14

rdesai@csblaw.com              *Healthcare West, Bullhead City*

15

*Attorneys for Arizona Hospital and*  *Hospital Corporation, Payson Hospital*

16

*Healthcare Association  and AzHHA*  *Corporation, Oro Valley Hospital, LLC,*

*Service Corporation*              *Northwest Hospital, LLC*

17

18

Teisha C. Johnson               David A. Ettinger

19

Katherine I. Funk                **HONIGMAN MILLER SCHWARTZ &**

**SONNENSCHEIN NATH &**        **COHN LLP**

20

**ROSENTHAL LLP**              2290 1st National Building

21

1301 K Street N.W.              660 Woodward Avenue

Suite 600 East Tower            Detroit, MI 48226

22

Washington, DC 20005          dettinger@honigman.com

23

tcjohnson@sonnenschein.com     *Attorneys for Northern Arizona*

kfunk@sonnenschein.com       *Healthcare Corporation*

24

*Attorneys for University Medical Center*

25

*Corporation*

26

27

Randall Papetti                Andrew L. Pringle

**LEWIS & ROCA LLP**         **MARISCAL WEEKS MCINTYRE &**

28

40 North Central Avenue         **FRIEDLANDER PA**

Phoenix, AZ 85004-4429       2901 North Central Avenue, Suite 200

rpapetti@lrlaw.com
*Attorneys for  University Medical*
*Center Corporation*


Joel W. Nomkin
Jessica L. Everett-Garcia
Michael T. Liburdi
Jill Louise Ripke
Scott Sebastian Minder
Tyler Reese Bowen
**PERKINS COIE BROWN & BAIN PA**
P.O. Box 400
Phoenix, AZ 85012
jnomkin@perkinscoie.com
jeverettgarcia@perkinscoie.com
mliburdi@perkinscoie.com
jripke@perkinscoie.com
sminder@perkinscoie.com
tbowen@perkinscoie.com
*Attorneys for Banner Health*
*  and Sun Health Corporation*


Dennis Palmer
**POLSINELLI SHUGHART  PC**
120 West 12th Street, Suite 1700
Kansas City, MO 64105
*Attorneys for Summit Healthcare*
*Association and University Physicians*
*Healthcare*

Brian M. Flaherty
**POLSINELLI SHUGHART  PC**
3636 North Central Avenue, Suite 1200
Phoenix, Arizona 85012
bflaherty@stklaw.com
*Attorneys for Summit Healthcare*
*Association and University Physicians*
*Healthcare*

Phoenix, AZ 85012-2705
larry.pringle@mwmf.com
*Attorneys for  John C. Lincoln Health*
*Network*


Allen Spencer Boston
David B. Helms
Richard B. Walsh, Jr.
Stephen Michael Durbin
Winthrop Blackstone Reed, III
**LEWIS RICE & FINGERSH LC**
500 North Broadway, Suite 2000
St. Louis, MO 63102
aboston@lewisrice.com
dhelms@lewisrice.com
rwalsh@lewisrice.com
sdurbin@lewisrice.com
wreed@lewisrice.com
*Attorneys for Carondelet Health*
*Network*


James A. Craft
**GAMMAGE & BURNHAM PLC**
2 North Central Avenue, 18th Floor
Phoenix, AZ 85004
jcraft@gblaw.com
*Attorneys for Yuma Regional Medical*
*Center, Inc.*

Randy Yavitz
**HUNTER, HUMPHREY & YAVITZ, PLC**
2633 East Indian School Road, Suite 440
Phoenix, AZ 85008
randy@hhylaw.com
*Attorneys for Cobre Valley Community Hospital and Brim Healthcare*

Douglas Gerlach
**JENNINGS STROUSS & SALMON PLC**
201 East Washington, Suite 1100
Phoenix, AZ 85004
dgerlach@jsslaw.com
*Attorneys for Regional Care Services Corp.*

James R. Broening
Robert T. Sullivan
**BROENING OBERG WOODS & WILSON**
P.O. Box 20527
Phoenix, Arizona 85036
jrb@bowwlaw.com
rts@bowwlaw.com
*Attorneys for Sierra Vista Regional Health Center*

Jeffrey A. LeVee
Catherine T. Broderick
**JONES DAY**
555 South Flower Street
50th Floor
Los Angeles, CA 90071
jlevee@jonesday.com
cbroderick@jonesday.com
*Attorneys for TMC Healthcare*

Joan McPhee
Jane E. Willis
Matthew P. Garvey
**ROPES & GRAY LLP**
One International Place
Boston, MA 02110-2624
joan.mcphee@ropesgray.com
jane.willis@ropesgray.com
matthew.garvey@ropesgray.com
*Attorneys for Iasis Healthcare Holdings, Inc., St. Luke's Medical Center, L.P., St. Luke's Behavioral Hospital, L.P., Mesa General Hospital, L.P.*

Jeffrey J. Campbell
**CAMPBELL YOST CLARE & NORELL PC**
101 North 1st Avenue, Suite 2500
Phoenix, AZ 85003
jcampbell@cycn-phx.com
*Attorneys for TMC Healthcare*

David B. Rosenbaum
Debbie A. Hill
Robert T. Weeks
**OSBORN MALEDON, P.A.**
2929 North Central Avenue
Phoenix, AZ 85012-2794
drosenbaum@omlaw.com
dhill@omlaw.com
rweeks@omlaw.com
*Attorneys for Iasis Healthcare*
*Holdings, Inc., St. Luke's Medical*
*Center, L.P., St. Luke's Behavioral*
*Hospital, L.P., Mesa General Hospital,*
*L.P.*

Lawrence Allen Katz
P. Bruce Converse
Kami S. Galvani
**STEPTOE & JOHNSON LLP**
Collier Center
201 East Washington Street, Suite 1600
Phoenix, AZ 85004-2382
lkatz@steptoe.com
bconverse@steptoe.com
kgalvani@steptoe.com
*Attorneys for Healthsouth Valley of the*
*Sun, L.P., Healthsouth Rehabilitation*
*Institute of Tucson, LLC and Southern*
*Arizona Regional Rehabilitation*
*Hospital, L.P.*

Brian A. Hayles
Mark J. Horoschak
Debbie Weston Harden
**WOMBLE CARLYLE SANDRIDGE &**
**RICE PLLC**
301 South College Street, Suite 3500
Charlotte, NC 28202-6037
bhayles@wcsr.com
mhoroschak@wcsr.com
dharden@wcsr.com
*Attorneys for Bullhead City Hospital*
*Corporation, Payson Hospital*
*Corporation, Oro Valley Hospital,*
*L.L.C.,*
*Northwest Hospital, L.L.C.*

Kerry Scott Martin
**OGLETREE DEAKINS NASH SMOAK &**
**STEWART**
2415 East Camelback Road, Suite 800
Phoenix, AZ 85016
kerry.martin@ogletreedeakins.com
*Attorneys for Hospital Development of*
*West Phoenix, Inc., VHS Acquisition*
*Subsidiary Number 1, Inc., VHS*
*Acquisition Corporation, VHS of*
*Arrowhead, Inc., VHS of Phoenix, Inc.,*
*VHS Acquisition Company Number 1,*
*L.L.C., PHC-Fort Mohave, Inc.,*
*Havasu Regional Medical Center,*
*L.L.C.,*
*Kingman Hospital, Inc.*

James P. McLoughlin, Jr.
Tonya L. Mitchell
Penny Hirsch Edwards
Charles Price
**MOORE & VAN ALLEN, P.L.L.C.**
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
jimmcloughlin@mvalaw.com
tonyamitchell@mvalaw.com
pennyedwards@mvalaw.com
Charles.Price@mwmf.com
*Attorneys for Arizona Heart Hospital,*
*LLC and AHH Management, Inc.*

Barry D. Halpern
Daniel Joseph McAuliffe
Dan W. Goldfine
**SNELL & WILMER LLP**
1 Arizona Center
400 East Van Buren
Phoenix, AZ 85004-2202
bhalpern@swlaw.com
dmcauliffe@swlaw.com
dgoldfine@swlaw.com
*Attorneys for Mayo Clinic Arizona,*
*Phoenix Children's Hospital, Inc.,*
*Scottsdale Healthcare Corporation*

Nicole Maroulakos Goodwin
**QUARLES & BRADY LLP**
1 Renaissance Square
2 North Central Avenue
Phoenix, AZ 85004-2391
ngoodwin@quarles.com
*Attorneys for Select Specialty Hospital*
*– Phoenix, Inc.and Select Specialty*
*Hospital – Arizona, Inc.*

Franklin J. Hoover
**MANGUM, WALL, STOOPS &**
**WARDEN, PLLC**
100 N. Elden St.
P.O. Box 10
Flagstaff, Arizon  86002-0010
fhoover@mwswlaw.com
*Attorneys for Navajo Health*
*Foundation – Sage Memorial Hospital,*
*Inc.*

*/s/* David F. Sorensen
**David F. Sorensen**

43