David F. Sorensen (Pro Hac Vice)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
dsorensen@bm.net
**Attorneys for Plaintiffs**
*Additional Counsel on Signature Page*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Cindy Johnson, Barbara L. Craig, and Stephanie L. Walker on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> Arizona Hospital and Healthcare Association et al., | No. CV07-1292-PHX-SRB <br><br> **PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, AND INCENTIVE AWARDS TO THE CLASS REPRESENTATIVES, AND MEMORANDUM IN SUPPORT** |

# **TABLE OF CONTENTS**

I.      INTRODUCTION......................................................................1

II.     FACTS REGARDING THE CONTRIBUTIONS OF CLASS
        COUNSEL AND THE CLASS REPRESENTATIVES IN
        CREATING THIS COMMON FUND ....................................3

III.    ARGUMENT.............................................................5

        A.  The Court Should Award the Requested Attorney Fees.................5

                1.  A Reasonable Percentage of the Fund Recovered is the
                    Appropriate Method For Awarding Class Counsel's
                    Attorneys' Fees in this Common Fund Settlement. .............7

                2.  A Fee Award of 25% of the Common Fund Is Fair and
                    Reasonable. ...........................................................9

                a.      Class Counsel Obtained Excellent Results. ...................10
                b.      This Litigation Was Risky.......................................11
                c.      The Settlement Provides Benefits Beyond the Settlement
                        Fund ...............................................................11
                d.      Class Counsel Carried the Financial Burden of this
                        Litigation, the Time Devoted to this Matter Could Have
                        Been Invested in Other Litigation, and Market Rates
                        for Contingent Litigation Exceed the Recovery Counsel
                        Seek Here .......................................................13

                3.  A Lodestar Cross-Check Verifies That The Requested Fee
                    Is Fair and Appropriate. ........................................14

                4.  Conclusion .........................................................15

        B.  Reimbursement of Cost and Expenses Reasonably and Necessarily
            Incurred and Advanced by Counsel is Appropriate......................15

        C.  An Incentive Award to the Class Representatives is Appropriate 16

IV.     CONCLUSION ........................................................17

L

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Carter v. Anderson Merchandisers, LP,*
    2010 U.S. Dist. LEXIS 55629 (C.D. Cal. May 11, 2010) ......................................................14

*Caudle v. Bristow Optical Co.,*
    224 F.3d 1014 (9th Cir. 2000) ...............................................................................................14

*Craft v. San Bernadino et al.,*
    624 F.Supp. 2d 1113 (C.D. Cal. 2008) ..................................................................................12

*Fischel v. Equitable Life Assurance Society of the United States,*
    307 F.3d 997 (9th Cir. 2002) .................................................................................7, 9, 11, 14

*Francisco v. Numismatic Guaranty Corp. of Am.,*
    2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ............................................................................7

*Gottlieb v. Barry,*
    43 F.3d 474 (10th Cir. 1994) ...................................................................................................8

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .................................................................................................7

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) .....................................................................................................15

*Hawaii v. Standard Oil Co.,*
    405 U.S. 251 (1972).................................................................................................................6

*In re Activision Sec. Litig.,*
    723 F. Supp. 1373 (N.D. Cal. 1989) ........................................................................................9

*In re Immune Response Securities Litig.,*
    497 F. Supp. 2d 1166 (S.D. Calif. 2007) ...............................................................................15

*In re Media Vision Tech'y Secs. Litig.,*
    913 F. Supp. 1362 (N.D. Cal. 1996) ......................................................................................15

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) .................................................................................................16

L

*In re Mercury Interactive Corp. Securities Litigation,*
    618 F.3d 988 (9th Cir. 2010) ...........................................................................3, 7

*In re Omnivision Technologies, Inc.,*
    559 F.Supp.2d 1036 (N.D. Calif. 2008)..........................................................15

*In re Rite Aid Corp. Sec. Litig.,*
    396 F.3d 294 (3d Cir. 2005)............................................................................14

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.,*
    268 F. Supp. 2d 907 (N.D. Ohio 2003)...........................................................15

*In re Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.,*
    56 F.3d 295 (1ˢᵗ Cir. 1995)................................................................................8

*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
    19 F.3d 1291 (9th Cir. 1994) .......................................................................6, 13

*Kirchoff v. Flynn,*
    786 F.2d 320 (7ᵗʰ Cir. 1986) .............................................................................8

*Mashburn v. Nat'l Healthcare, Inc.,*
    684 F. Supp. 679 ( M.D. Ala. 1988) .................................................................7

*Paul, Johnson, Alston & Hunt v. Graulty,*
    886 F.2d 268 (9th Cir. 1989) ............................................................................7

*Pillsbury Co. v. Conboy,*
    459 U.S. 248 (1983)...........................................................................................6

*Staton v. Boeing,*
    327 F.3d 938 (9th Cir. 2003) ....................................................................12, 16

*Vincent v. Hughes Air West, Inc.,*
    557 F.2d 759 (9th Cir. 1977) ............................................................................6

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ........................................................................15

## STATUTES AND RULES

A.R.S. § 44-1401 ...................................................................................................11

15 U.S.C. § 1 .........................................................................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ι

Fed. R. Civ. P. 23(h) ........................................................................................................1

Fed. R. Civ. P. 54(d)(2)...................................................................................................1


**OTHER AUTHORITIES**

*Court Awarded Attorney Fees, Report of the Third Circuit Task Force,*
    108 F.R.D. 237..........................................................................................................8

Hubbard, F. Patrick, *Substantive Due Process Limits on Punitive Damages Awards:*
    *"Morals Without Technique"?,*
    60 FLA. L. REV. 349 (2008)..................................................................................13

Kritzer, Herbert M., *The Wages of Risk: The Returns of Contingency Fee Legal*
    *Practice,*
    47 DEPAUL L. REV. 267 (1998)...........................................................................13

Plaintiffs hereby respectfully move, pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), for an award of attorneys' fees in an amount equal to 25% of the $1,600,000.00 Abrazo Settlement Fund created plus interest earned thereon until the date of payment ("Abrazo Settlement Fund"), reimbursement of costs and expenses in the amount $95,686.01, and incentive awards of $1,500 each to plaintiffs Ms. Stephanie L. Walker and Ms. Barbara A. Craig, and $3,000 to Ms. Cindy Johnson for serving as Class Representatives.

Plaintiffs' Motion is based on the memorandum below and its exhibits, and all other pleadings and matters of record. As provided by ¶ 52 of the April 12, 2012 Abrazo Class Settlement Agreement and Release ("Arbazo Settlement Agreement"), the Abrazo Defendants[1] participating in this settlement take no position with respect to Plaintiffs' Motion.[2]

## I.      INTRODUCTION

Plaintiffs have reached a proposed settlement with the Abrazo Defendants, the sole remaining defendants in this litigation.  The Court has granted preliminary approval to the Abrazo Settlement Agreement, Doc. No. 716 (April 17, 2012), and the Court previously approved settlements with all other defendants (*see* Doc. Nos. 664, 665) (each dated March

---

[1] The  Abrazo Defendants are Hospital Development of West Phoenix, Inc. (c/b/a West Valley Hospital), VHS Acquisition Subsidiary Number 1, Inc. (d/b/a Paradise Valley Hospital), VHS Acquisition Corporation (d/b/a Maryvale Hospital Corporation), VHS of Arrowhead, Inc. (d/b/a/ Arrowhead Hospital), VHS of Phoenix, Inc. (d/b/a Phoenix Baptist Hospital), and VHS Acquisition Company Number 1, L.L.C. (f/k/a Phoenix Memorial Hospital).

[2] The Abrazo Settlement Agreement is attached as Exhibit A to Plaintiffs' Motion for Preliminary Approval of Settlement with Abrazo, Certification of Traveler Settlement Class, Approval of the Form of Notice and Memorandum in Support (Doc. No. 715) (April 16, 2012).

4, 2011).  After additional litigation, Plaintiffs and the Abrazo Defendants, following extensive negotiations including with an outside mediator, reached a settlement that, if finally approved, will bring this litigation to a close.[3]

The Abrazo Settlement Agreement provides additional funds for class members (the "Class"),[4] and, significantly, brings the Abrazo Defendants under the provisions of the prospective relief previously agreed to by the other hospital defendants, to guard against a repetition of the underlying conduct that spawned this litigation.[5]   Both the cash recovery and the structural relief were the result of this litigation and settlement.  The prior action brought by the United States Department of Justice and the Arizona Attorney General (the "DOJ Action") was brought against  the Arizona Hospital and Healthcare Association ("AzHHA") only, not its member hospitals, and did not seek any compensation for the temporary nursing personnel whose compensation was suppressed by the alleged anticompetitive conduct of AzHHA and the hospitals.  Nor was the structural relief obtained by the DOJ expressly aimed at the hospitals.

The Court's April 12 Order has set a final Fairness Hearing for August 13, 2012.  Doc. No. 716 at ¶ 17.  The Court-approved notice informed Class members that Class Counsel would seek an award of attorneys' fees of up to 25% of the Abrazo Settlement Fund

---

[3] Plaintiffs are not submitting a proposed order at this time, as a form of order was previously submitted as an exhibit to the Abrazo Settlement Agreement.  *See* Abrazo Settlement Agreement at Ex. 6 thereto.  Plaintiffs may submit a revised form of order at a later time.

[4] As defined in ¶¶ 1-2 of this Court's April 17, 2012 Order Granting Plaintiffs' Motion for Preliminary Approval of Abrazo Settlement, Certification of the Settlement Class, and Approval of the Form of Notice (Doc No. 716) ("April 17 Order").

[5] *See* Abrazo Settlement Agreement ¶ 65.

created plus interest. *See*  Mailed Notice at question/answer Nos. 11 & 18 and Published Notice at 3.[6]

In accordance with *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010), counsel appointed by this Court as Co-Lead Class Counsel (David F. Sorensen of Berger & Montague, P.C., and David Balto of Law Offices of David Balto), along with other class counsel (Keller Rohrback, P.L.C., Keller Rohrback L.L.P., and Brownstein Hyatt Farber Schreck, LLP) (collectively, "Class Counsel") respectfully submit this memorandum in support of their motion for an award of attorneys' fees, reimbursement of costs and expenses, and an incentive award to the Class Representatives for their services to the certified settlement classes.  As previously explained in the Mailed and Published Notice, copies of this motion and all supporting materials will be posted on all the Class Counsel's websites and the website established for this litigation   by the Claims Administrator.[7]   Hence, Class Members can review the motion before the July 10, 2012 deadline for objections.  April 12 Order at ¶15.

## II.     FACTS REGARDING THE CONTRIBUTIONS OF CLASS COUNSEL AND THE CLASS REPRESENTATIVES IN CREATING THIS COMMON FUND

Plaintiffs' Memorandum in Support of their Motion for Preliminary Approval of Settlement with Abrazo (Doc. No. 715), along with Plaintiffs' prior briefs in support of preliminary and final approval of the prior settlements (Doc. Nos. 639, 660) set forth in some detail the history of this litigation.   Subsequent to final approval of the prior settlements on

---

[6] The Mailed Notice was attached as Exhibit 1 and the Published Noticed was attached as Exhibit 2 to the Abrazo Settlement Agreement.

[7] See Mailed Notice at question/answer No. 18 and Published Notice at 3.

March 4, 2011, Class Counsel worked diligently and incurred significant out-of-pocket expenses to continue to litigate this case against the Abrazo Defendants.  The monetary recovery and significant structural relief is the result of Class Counsel's continued hard work.

Class counsel were required to conduct additional discovery regarding the Abrazo Defendants, including additional document review and depositions, and additional work with an expert economist (Dr. Hal J. Singer) to prepare the case moving forward.  *See* Doc. No. 715-6 (list of 23 depositions taken or defended, including five taken after March 4, 2011).

Prior discovery had been extensive, including: (1) propounding  and enforcing three separate Requests for Production of Documents on Defendants; (2) obtaining and reviewing many thousands of documents from Defendants; ( 3) obtaining and analyzing electronic data from Defendants; (4) propounding and enforcing discovery upon and reviewing data and documents obtained from  thirteen third party temporary nurse staffing agencies pursuant to subpoena; (5) obtaining and reviewing the discovery record from *PC Healthcare Enterprises, Inc. dba Health Temp v. Arizona Hospital and Healthcare Association, et al.,* No. CV-05-1793-PHX-MHM (D.Ariz.); (6)  taking or defending 18 depositions which included taking the depositions of current and former employees of Defendants and Defendants' Expert, Dr. David Scheffman, and defending the depositions of the three Class Representatives and Plaintiffs' Expert Dr. Hal J. Singer; and (7) propounding, responding to and negotiating and drafting stipulations to Interrogatories.

Since final approval of the prior settlements, Class Counsel have invested more than 2,500 additional hours in the case, both litigating against the Abrazo Defendants and in preparing for claims distribution for the Class, representing a lodestar of $929,663 at their

standard current hourly rates, and have advanced or incurred necessary costs of $95,686.01.

*See* Exs. A-D (declarations of counsel).  In addition, Class Counsel will continue to incur additional attorney hours to complete the claims administration process, in connection with final approval of the Settlement, responding to inquiries from Class members, interacting with the settlement administrator, and overseeing disbursements (none of which is included in the current lodestar figure).[8]

As to the Class Representatives, during over four years of litigation they have fully cooperated in discovery including responding to document requests (including for certain income tax materials), answering interrogatories, and sitting for depositions.  Notably, the initial plaintiffs in this case each filed suit under pseudonyms out of fear of retaliation.  After the initial plaintiffs withdrew, the three representative plaintiffs stepped forward and agreed to have their names be made public.  Their determination eliminated the issue of the use of pseudonyms from the case, to the benefit of class members.  Ms. Johnson, Ms. Walker and Ms. Craig have performed a great service for class members, and the service (or incentive) awards sought are modest.

## III.   ARGUMENT

### A.   The Court Should Award the Requested Attorney Fees

Courts have long recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to

---

[8] In addition, the Berger & Montague firm alone invested substantial additional time between Jan. 1, 2011 (the cut off used in connection with the firm's prior fee submission, *see* Doc. 650-1 at ¶ 4) through March 3, 2011 in connection with briefing on final approval of the prior settlements.  That time is not included here, nor was it previously.

recover from the fund the costs of his litigation, including attorneys' fees."   *Vincent v. Hughes Air West, Inc.,* 557 F.2d 759, 769 (9th Cir. 1977).   This doctrine avoids unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it."   *In re Washington Pub. Power Supply Sys. Sec. Litig.,*("*WPPSSSL*") 19 F.3d 1291, 1300 (9th Cir. 1994).  Pursuant to this doctrine, Class Counsel request an award of attorneys' fees of 25% of the Abrazo Settlement Fund plus all interest earned thereon until the date attorneys' fees and expenses are paid. That would equate to $400,000 (not counting any interest).  By comparison, the total lodestar of class counsel (hours worked multiplied by current hourly rates) since March 4, 2011 (the date of final approval of the prior settlements) on the litigation and preparing for claims distribution is $929,663.  Thus, plaintiffs seek a fee that would result in a multiplier below 1.

The Court previously awarded 25% of the prior settlements in attorneys' fees.  *See* Doc. Nos. 664, 665. Calculating the fee award based upon the percentage method is both straightforward and fair under the circumstances of this case, and was the method stated in the Class Notice distributed to Class members.  Moreover, cross-checking this fee request against the lodestar fee calculation validates its reasonableness.

Awarding attorneys' fees in antitrust cases such as this one is particularly appropriate because the Supreme Court has repeatedly recognized the importance of private antitrust litigation as a necessary and desirable tool to assure the effective enforcement of the antitrust laws. *See e.g. Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983);  *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 266 (1972).  Awards of counsel fees help to ensure adequate enforcement of Class members' legal rights. "A financial incentive is necessary to entice capable

attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." *Francisco v. Numismatic Guaranty Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, at * 13 (S.D. Fla. Jan. 31, 2008) (quoting *Mashburn v. Nat'l Healthcare, Inc.* 684 F. Supp. 679, 687 ( M.D. Ala. 1988)).

       **1.**      **A Reasonable Percentage of the Fund Recovered is the Appropriate Method For Awarding Class Counsel's Attorneys' Fees in this Common Fund Settlement.**

The Ninth Circuit has approved the use of the percentage method in awarding fees in representative actions. *See, e.g., Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir. 2002). While the Ninth Circuit recently re-affirmed that "[t]he district court may exercise its discretion to choose between the lodestar and percentage method in calculating fees," *Mercury Interactive*, 618 F.3d at 992, since *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989), district courts in this Circuit have almost uniformly shifted to the percentage method in awarding fees in representative actions.[9]  This movement, which has occurred over the same time frame in many Circuits, follows the findings of a task force established by the Third Circuit to investigate the question of awards of attorney fees in

---

[9] To the extent courts in this Circuit still apply the lodestar method, this tends to occur either: (1) when the primary relief is non-financial, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("In employment, civil rights and other injunctive relief class actions, courts often use a lodestar calculation because there is no way to gauge the net value of the settlement or any percentage thereof."); or (2) to avoid a possible windfall in cases with large settlements early in the litigation where "[t]here has been no discovery, no lengthy settlement negotiations, no protracted litigation of any kind." *Fischel v. Equitable Life Assurance Society of the United States*, 307 F.3d 997, 1003 (9th Cir. 2002) (citations omitted).

common fund cases.  *See Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 254-59 (1985) ("*Task Force*").

The trend in this Circuit is consistent with the decisions nationwide awarding fees in common fund cases based on a percentage of the total recovery.  *See* Manual For Complex Litigation (Fourth) §14.121 (2004) (noting that "the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common fund cases") (footnotes omitted).[10]

The rationale for compensating counsel on the basis of a percentage of the fund created by their efforts is sound and Plaintiffs respectfully suggest should be followed here, as it was previously by the Court as to the prior settlements.  First, it is consistent with practice in the private marketplace where contingent attorney fees are customarily determined as a percentage of recovery. Second, it more closely aligns the lawyer's interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time.[11]  Third, use of the percentage method decreases the

---

[10]  *See, e.g., In re Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.,* 56 F.3d 295, 305 (1st Cir. 1995) ("[c]ontrary to popular belief, it is the lodestar method, not the [percentage] method, that breaks from precedent"); *Gottlieb v. Barry*, 43 F.3d 474, 484 (10th Cir. 1994) (fee award should be calculated using the percentage method). *See Court Awarded Attorney Fees, Report of the Third Circuit Task Force,* 108 F.R.D. 237, 254-59 (3d Cir. 1985).

[11]  The court in *Kirchoff v. Flynn*, 786 F.2d 320, 325-326 (7th Cir. 1986) explained how the contingent fee  method of awarding attorneys' fees aligned the  lawyers' and clients' interests:

The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains . . . The unscrupulous lawyer paid by the hour may be willing to settle for a lower recovery coupled with a payment for more hours. Contingent fees eliminate this

burden on the court (and the resulting delay in distributing funds) by eliminating a full-blown, detailed and time consuming lodestar analysis.  *See In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (lodestar analysis "consume[s] an undue amount of court time with little resulting advantage to anyone, but, in fact, it may be to the detriment of the class members.").[12]

### 2.  A Fee Award of 25% of the Common Fund Is Fair and Reasonable.

The Ninth Circuit has adopted a 25% "benchmark" for attorneys' fee awards in cases with a common fund recovery.  *Fischel,* 307 F.3d at 1006 ("We have established a 25 percent 'benchmark' in percentage-of-the-fund cases that can be 'adjusted upward or downward to account for any unusual circumstances involved in [the] case.'") (citation ommitted).  That is the figure this Court approved regarding the prior settlements. *See* Doc. Nos. 664, 665.

In evaluating whether any deviation from the benchmark is justified a court may consider (1) the result achieved; (2) the risk of the litigation; (3) non-monetary benefits achieved; (4) market rates; and (5) the extent to which counsel had to forego other work and had to invest significant out-of-pocket funds in the litigation. *Vizcaino*, 290 F.3d at 1048-49. Plaintiffs respectfully suggest that these factors support the award of 25% sought by Class Counsel.

---

incentive and also ensure a reasonable proportion between the recovery and the fees assessed to defendants . . . At the same time it automatically aligns interests of lawyer and client, rewards exceptional successes, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation.

[12] *See also Task Force*, 108 F.R.D. at 258 (referring to the lodestar query as the "cumbersome, enervating, and often surrealistic process of preparing and evaluating fee petitions" and favoring the percentage approach).

### a.      Class Counsel Obtained Excellent Results.

The settlement here for $1.6 million, plus prospective structural relief, is a significant achievement.  The Abrazo Defendants not only litigated vigorously, their exposure had been limited under the terms of the prior settlements.  The prior settling defendants had required, as a condition of the prior settlements, that the Abrazo Defendants get the benefit of a judgment sharing agreement ("JSA") that all defendants had reached.  This was spelled out in the prior settlements.  *See* Doc. 639-2 at ¶¶ 66-68 & Ex. 8 thereto;  Doc. No. 639-4 at ¶¶ 66-68; Plaintiffs' Motion for Preliminary Approval of Settlement with Abrazo, Doc. No. 715 at 6.

Thus, the Abrazo Defendants' exposure was limited, while their litigation posture was aggressive, as they conceded nothing, and made clear their plans to challenge both plaintiffs' expert(s) on the merits, and to seek to revisit class certification (as well as continue to raise other defenses including statute of limitations).  Despite these, and other, defenses, plaintiffs were able to obtain a settlement of $1.6 million,[13] as well as important prospective relief.

It is a good result for the Class that was the result of effective, hard-fought litigation on the part of Plaintiffs' Counsel.

---

[13] Up to $275,000 of the Abrazo Settlement Fund may be used for notice and claims administration costs (additional Abrazo settlement funds may be used with Court approval).  Abrazo Settlement Agreement, at ¶ 50.  And up to 9.5% of the net amount may go to the employers' portion of payroll taxes, as required.  *Id.* ¶ 63 and Exs. 1-2 thereto (forms of class notice, as substituted with Court approval, see Order dated April 18, 2012, Doc. No. 718).  Thus, while the additional monetary recovery is not huge, it should be evaluated in the context of the overall litigation results.

### b.        This Litigation Was Risky

For the purpose of evaluating this factor, risk is to be measured at the outset of the litigation.  *Fischel*, 307 F.3d at 1009.  Though this case was filed following a government investigation, as noted, the DOJ Action neither sought nor obtained any compensation for temporary nursing personnel.  Nor did the DOJ Final Judgment entered name any of the hospitals.[14]

The DOJ Action, since it did not seek damages, did not have to develop the kind of factual and expert evidence required in this litigation.  Nor was class certification an issue. Nor did AzHHA confess liability in the DOJ Action (and, again, none of the hospitals named as Defendants in this litigation were defendants in the DOJ Action).  At the outset of this case, therefore, Class Counsel faced a number of significant risks of ever obtaining recovery for class members or being compensated for their work and expenditures.

### c.        The Settlement Provides Benefits Beyond the Settlement Fund

The Abrazo Settlement Agreement provides an additional recovery to Class members, and includes structural relief that will benefit them.   AzHHA, which is subject to the DOJ Final Judgment until 2017, previously agreed to an additional five years of prospective relief on top of that, which provides that AzHHA will not operate its Registry Program in a manner that violates Section 1 of the Sherman Act, 15 U.S.C. § 1, the Arizona state antitrust act, A.R.S. § 44-1401, and the limitations imposed by the DOJ Final Judgment.

---

[14] See *United States of America v. Arizona Hospital and Healthcare Association and AzHHA Service Corp.*, NO. CV07-1030, Final Judgment (attached as Ex. 3 to Plaintiffs' Motion for Class Certification dated December 22, 2009 (Doc. No. 403) (" DOJ Final Judgment") .

*See* AzHHA Settlement Agreement (Doc. 639-4) at ¶ 70.  Similarly, the other previously settling defendants agreed to seven years of prospective relief (beginning when the settlements became final) with provisions and restrictions similar to those agreed to by AzHHA.  *See* Doc. No. 639-2 at ¶ 70.[15]   Defendants agreed that Plaintiffs or other Class members may bring an action to enforce compliance with these provisions and, in the event of such an action, defendants agreed to expedited proceedings, and that, "in  the event the Court finds any Settling Defendant to be in breach . . . such Settling Defendant shall pay Plaintiffs, or other Class member, their reasonable attorneys' fees, costs and expenses, in addition to any other relief awarded by the Court." *Id*.

The Abrazo Defendants have agreed to the same provisions as the other hospital defendants.  Abrazo Settlement Agreement at ¶  65 (prospective relief provisions).  *See Staton v. Boeing,* 327 F.3d 938, 946 (9th Cir. 2003) ("The fact that counsel obtained injunctive relief in addition to monetary relief for their clients is, however, a relevant circumstance to consider in determining what percentage of the fund is reasonable as fees"); *Craft v. San Bernadino et al.,* 624 F.Supp. 2d 1113, 1121 (C.D. Cal. 2008) ("Nor can the results in this case be judged solely by the monetary component of the settlement. . . .Attorneys' fees [in class action cases] may be awarded even though the benefit conferred is purely non-pecuniary in nature") (internal citations and quotations omitted).

---

[15] While this Court suggested that it believed the DOJ Final Judgment did bind the defendant hospitals here, *see* Doc. No. 584 (Class Order) at 9-10, the defendant hospitals denied that.

  **d.** **Class Counsel Carried the Financial Burden of this Litigation, the Time Devoted to this Matter Could Have Been Invested in Other Litigation, and Market Rates for Contingent Litigation Exceed the Recovery Counsel Seek Here**

The Ninth Circuit has confirmed that a determination of a fair and reasonable fee must include consideration of the contingent nature of the fee and the obstacles surmounted in obtaining the settlement.

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law*, § 21.9, at 534-535 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*WPPSSSL*, 19 F.3d 1291, 1299 (9th Cir. 1994).

Class Counsel continued to litigate this case against the Abrazo Defendants and prepare for claims distribution without any compensation, expending more than 2,500 additional hours.  The 25% figure is a commonly accepted benchmark in this circuit, was approved by the Court previously in this case, and is below the standard privately-negotiated contingent fee recovery of 33% or more.  *See, e.g.,* F. Patrick Hubbard, *Substantive Due Process Limits on Punitive Damages Awards: "Morals Without Technique"?,* 60 FLA. L. REV. 349, 383 (2008) (referring to "the usual 33-40 percent contingent fee") (citation omitted); Herbert M. Kritzer, *The Wages of Risk: The Returns of Contingency Fee Legal Practice*, 47 DEPAUL L. REV. 267, 286 (1998) (reporting the results of a survey of Wisconsin lawyers, which found that "a contingency fee of 33% was by far the most common, accounting for 92% of [negotiated fixed percentage contingent fee] cases").

In conclusion, none of the *Vizcaino* factors here provides any basis for awarding a fee below the Ninth Circuit 25% benchmark.

### 3.      A Lodestar Cross-Check Verifies That The Requested Fee Is Fair and Appropriate.

Evaluation of the lodestar here confirms the reasonableness of the fee sought. *See Carter v. Anderson Merchandisers, LP,* 2010 U.S. Dist. LEXIS 55629 at *11-12 (C.D. Cal. May 11, 2010) (applying lodestar cross-check, citing cases).   In applying a lodestar cross-check courts engage in a two-step process.  First, the lodestar is computed by multiplying the number of hours reasonably expended by the reasonable rates requested by the attorneys. *Caudle v. Bristow Optical Co.,* 224 F.3d 1014, 1028 (9th Cir. 2000).  Second, the court may compare the lodestar to the percentage-of-the-fund request made by counsel to determine the multiplier that the percentage method would yield.[16]  *See Vizcaino,* 290 F.3d at 1051 n.6.

Class Counsel here have invested 2,522 hours on this matter since March 4, 2011 (the date of final approval of the prior settlements), for a lodestar of $929,663, based upon the current regular hourly rates charged by counsel.[17]   *See* Exs. A-D.  Thus, the multiplier produced by cross-checking the 25% award against the total lodestar is below 1 (as it was

---

[16]  The cross check requires "neither mathematical precision nor bean counting;" it allows the court to "rely on summaries submitted by the attorneys and [the court] need not review actual billing records,' *In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294, 306-307 (3d Cir. 2005).

[17]  *See Fischel* 307 F.3d at 1010 ( "Attorneys in common fund cases must be compensated for any delay in payment, *Coordinated Pretrial,* 109 F.3d at 609, and thus Plaintiffs' counsel are entitled to such compensation. ... [T]he district court ha[s] discretion to compensate them either '(1) by applying the attorneys' current rates to all hours billed during the course of the litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement.' " (citation omitted).

previously in connection with the prior fee award).  *See*, *e.g.*, *Vizcaino*, 290 F.3d at 1051 n.6. (observing that 83% of the courts in common fund cases it surveyed assessed a multiplier between 1 and 4.).  *See*, *generally*, *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 938 n.45 (N.D. Ohio 2003) (relying on a 2003 study of fee awards in 1,120 cases to conclude that "the courts' effective multipliers averaged … 3.89 across all 1,120 cases").

### 4.     Conclusion

In light of the above considerations, Plaintiffs suggest that the requested fee award is reasonable and fair.

### B.     Reimbursement of Cost and Expenses Reasonably and Necessarily Incurred and Advanced by Counsel is Appropriate.

It is well established that Class Counsel are entitled to reimbursement of all out-of-pocket expenses advanced throughout the litigation so long as those expenses were reasonable and necessary to the litigation. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (approving recovery of "out-of-pocket expenses that 'would normally be charged to a fee paying client.'");  *In re Media Vision Tech'y Secs. Litig.*, 913 F. Supp. 1362, 1368 (N.D. Cal. 1996) (award of costs subject to reasonableness test).

Plaintiffs' outstanding expenses in connection with the continued litigation and preparing for claims distribution (including outstanding expenses that have been incurred, but not yet paid, for court reporters and expert fees totaling $29,207.32) total $95,686.01.  *See* Exs. A-D.  *See*, *e.g.*, *In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1048 (N.D. Calif. 2008) (approving expenses for copying, printing, postage, and messenger services, court costs, computerized research, experts, and travel); *In re Immune Response Securities*

*Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Calif. 2007) (approving reimbursement for meals, hotels, transportation, copies, postage, telephone and fax, filing fees, overnight deliveries, online legal research, experts and mediation fees.).

###    C.    An Incentive Award to the Class Representatives is Appropriate

Finally, it is well-recognized that "named plaintiffs … are eligible for reasonable incentive payments" as part of a class action settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).   The award also compensates class representatives for their time, effort and inconvenience. *See Staton*, 327 F.3d at 976-77 (collecting cases).  When evaluating the reasonableness of a participation award, courts consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions … [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* at 977 (citation omiotted).   *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming $5,000 payments from a $1.725 million settlement fund).

The Court  previously awarded $15,000 each to Ms. Walker and Ms. Craig, and $30,000 to Ms. Johnson for serving as Class Representatives.  For their continued service, Plaintiffs respectfully request additional awards of $1,500 each to Ms. Walker and Ms. Craig, and $3,000 to Ms. Johnson (who is the only per diem class representative and serves as the representative of both the Per Diem and the Traveler Settlement Classes).  Although these plaintiffs were not required to undertake additional efforts since March 4, 2011, they remained committed to the case, and their continued commitment (after prior class representatives had withdrawn) has permitted the entire Class to benefit.

**IV.     CONCLUSION**

For the reasons stated above:

(i)      The proposed 25% fee award is fair and reasonable and represents an appropriate percentage recovery from the Common Fund in light of all the circumstances.

(ii)     The proposed Incentive Awards are fair and reasonable and represent an appropriate reward for the efforts of the Class Representatives in achieving this settlement;

(iii)    Class Counsel are entitled to recover reasonable and necessary out-of-pocket expenses (including outstanding expenses) of $95,686.01.


Dated:  June 1, 2012

**BERGER & MONTAGUE, P.C.**

By: /s/ David F. Sorensen
David F. Sorensen
1622 Locust Street
Philadelphia, PA  19103
Tel: 215-875-3000
Fax: 215-875-4673

**LAW OFFICES OF DAVID BALTO**
David Balto
1350 I Street, N.W., Suite 850
Washington, D.C. 20005-3355
Tel: 202-577-5424
Fax: 202-333-4186


**KELLER ROHRBACK, P.L.C.**
Mark Samson
Ron Kilgard
3101 North Central Avenue, Suite 1400

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Phoenix, AZ 85012
Tel: 602-248-0088
Fax: 602-248-2822

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
Allen P. Grunes
1350 I Street, Suite 510
Washington, D.C. 20005-3355
Tel: 202-296-7353
Fax: 202-296-7009

Timothy R. Beyer
Martha F. Bauer
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
Tel: 303-223-1100
Fax: 303-223-1111

Jeffrey S. Rugg
100 City Parkway, Suite 1600
Las Vegas, NV 89106-4614
Tel: 702-382-2101
Fax: 702-382-8135

*Attorneys for Plaintiffs*

1

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on June 1, 2012 the foregoing Plaintiffs' Motion For An Award Of Attorneys' Fees, Reimbursement Of Costs And Expenses, And Incentive Awards To The Class Representatives, And Memorandum In Support was served via electronic mail to the following parties and notice of this filing will be sent to all parties listed below by operation of the Court's CM/ ECF System:

Keith Beauchamp
Lauren Jacqueline Weinzweig
Roopali H. Desai
**COPPERSMITH SCHERMER & BROCKELMAN PLC**
2800 North Central Avenue, Suite 1200
Phoenix, AZ  85004
kbeauchamp@csblaw.com
lweinzweig@csblaw.com
rdesai@csblaw.com
*Attorneys for Arizona Hospital and Healthcare Association and AzHHA Service Corporation*

Timothy J. Burke
**FENNEMORE CRAIG PC**
3003 North Central Avenue, Suite 2600
Phoenix, AZ 85012
tburke@fclaw.com
*Attorneys for Northern Arizona Healthcare Corporation,  Catholic Healthcare West, Bullhead City Hospital Corporation, Payson Hospital Corporation, Oro Valley Hospital, LLC, Northwest Hospital, LLC*

Teisha C. Johnson
Katherine I. Funk
**SONNENSCHEIN NATH & ROSENTHAL LLP**
1301 K Street N.W.
Suite 600 East Tower
Washington, DC 20005
tcjohnson@sonnenschein.com
kfunk@sonnenschein.com
*Attorneys for University Medical Center Corporation*

David A. Ettinger
**HONIGMAN MILLER SCHWARTZ & COHN LLP**
2290 1st National Building
660 Woodward Avenue
Detroit, MI 48226
dettinger@honigman.com
*Attorneys   for   Northern   Arizona Healthcare Corporation*

1

Randall Papetti
**LEWIS & ROCA LLP**
40 North Central Avenue
Phoenix, AZ 85004-4429
rpapetti@lrlaw.com
*Attorneys for  University Medical
Center Corporation*


Joel W. Nomkin
Jessica L. Everett-Garcia
Michael T. Liburdi
Jill Louise Ripke
Scott Sebastian Minder
Tyler Reese Bowen
**PERKINS COIE BROWN & BAIN PA**
P.O. Box 400
Phoenix, AZ 85012
jnomkin@perkinscoie.com
jeverettgarcia@perkinscoie.com
mliburdi@perkinscoie.com
jripke@perkinscoie.com
sminder@perkinscoie.com
tbowen@perkinscoie.com
*Attorneys for Banner Health
  and Sun Health Corporation*


Dennis Palmer
**POLSINELLI SHUGHART  PC**
120 West 12th Street, Suite 1700
Kansas City, MO 64105
*Attorneys for Summit Healthcare
Association and University Physicians
Healthcare*

Andrew L. Pringle
**MARISCAL WEEKS MCINTYRE &
  FRIEDLANDER PA**
2901 North Central Avenue, Suite 200
Phoenix, AZ 85012-2705
larry.pringle@mwmf.com
*Attorneys for  John C. Lincoln Health
Network*


Allen Spencer Boston
David B. Helms
Richard B. Walsh, Jr.
Stephen Michael Durbin
Winthrop Blackstone Reed, III
**LEWIS RICE & FINGERSH LC**
500 North Broadway, Suite 2000
St. Louis, MO 63102
aboston@lewisrice.com
dhelms@lewisrice.com
rwalsh@lewisrice.com
sdurbin@lewisrice.com
wreed@lewisrice.com
*Attorneys for Carondelet Health
Network*


James A. Craft
**GAMMAGE & BURNHAM PLC**
2 North Central Avenue, 18th Floor
Phoenix, AZ 85004
jcraft@gblaw.com
*Attorneys for Yuma Regional Medical
Center, Inc.*

2

Brian M. Flaherty
**POLSINELLI SHUGHART  PC**
3636 North Central Avenue, Suite 1200
Phoenix, Arizona 85012
bflaherty@stklaw.com
*Attorneys for Summit Healthcare*
*Association and University Physicians*
*Healthcare*

Randy Yavitz
**HUNTER, HUMPHREY & YAVITZ, PLC**
2633 East Indian School Road, Suite 440
Phoenix, AZ 85008
randy@hhylaw.com
*Attorneys for Cobre Valley Community*
*Hospital and Brim Healthcare*

Douglas Gerlach
**JENNINGS STROUSS & SALMON PLC**
201 East Washington, Suite 1100
Phoenix, AZ 85004
dgerlach@jsslaw.com
*Attorneys for Regional Care Services*
*Corp.*

James R. Broening
Robert T. Sullivan
**BROENING OBERG WOODS &**
**WILSON**
P.O. Box 20527
Phoenix, Arizona 85036
jrb@bowwlaw.com
rts@bowwlaw.com
*Attorneys for Sierra Vista Regional*
*Health Center*

Jeffrey A. LeVee
Catherine T. Broderick
**JONES DAY**
555 South Flower Street
50th Floor
Los Angeles, CA 90071
jlevee@jonesday.com
cbroderick@jonesday.com
*Attorneys for TMC Healthcare*

Joan McPhee
Jane E. Willis
Matthew P. Garvey
**ROPES & GRAY LLP**
One International Place
Boston, MA 02110-2624
joan.mcphee@ropesgray.com
jane.willis@ropesgray.com
matthew.garvey@ropesgray.com
*Attorneys for Iasis Healthcare*
*Holdings, Inc., St. Luke's Medical*
*Center, L.P., St. Luke's Behavioral*
*Hospital, L.P., Mesa General Hospital,*
*L.P.*

3

Jeffrey J. Campbell
**CAMPBELL YOST CLARE & NORELL PC**
101 North 1st Avenue, Suite 2500
Phoenix, AZ 85003
jcampbell@cycn-phx.com
*Attorneys for TMC Healthcare*

David B. Rosenbaum
Debbie A. Hill
Robert T. Weeks
**OSBORN MALEDON, P.A.**
2929 North Central Avenue
Phoenix, AZ 85012-2794
drosenbaum@omlaw.com
dhill@omlaw.com
rweeks@omlaw.com
*Attorneys for Iasis Healthcare Holdings, Inc., St. Luke's Medical Center, L.P., St. Luke's Behavioral Hospital, L.P., Mesa General Hospital, L.P.*

Lawrence Allen Katz
P. Bruce Converse
Kami S. Galvani
**STEPTOE & JOHNSON LLP**
Collier Center
201 East Washington Street, Suite 1600
Phoenix, AZ 85004-2382
lkatz@steptoe.com
bconverse@steptoe.com
kgalvani@steptoe.com
*Attorneys for Healthsouth Valley of the Sun, L.P., Healthsouth Rehabilitation Institute of Tucson, LLC and Southern Arizona Regional Rehabilitation Hospital, L.P.*

Brian A. Hayles
Mark J. Horoschak
Debbie Weston Harden
**WOMBLE CARLYLE SANDRIDGE & RICE PLLC**
301 South College Street, Suite 3500
Charlotte, NC 28202-6037
bhayles@wcsr.com
mhoroschak@wcsr.com
dharden@wcsr.com
*Attorneys for Bullhead City Hospital Corporation, Payson Hospital Corporation, Oro Valley Hospital, L.L.C., Northwest Hospital, L.L.C.*

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kerry Scott Martin
**OGLETREE DEAKINS NASH SMOAK & STEWART**
2415 East Camelback Road, Suite 800
Phoenix, AZ 85016
kerry.martin@ogletreedeakins.com
*Attorneys for Hospital Development of West Phoenix, Inc., VHS Acquisition Subsidiary Number 1, Inc., VHS Acquisition Corporation,VHS of Arrowhead, Inc.,VHS of Phoenix, Inc., VHS Acquisition Company Number 1, L.L.C., PHC-Fort Mohave, Inc., Havasu Regional Medical Center, L.L.C.,*
*Kingman Hospital, Inc.*

Barry D. Halpern
Daniel Joseph McAuliffe
Dan W. Goldfine
**SNELL & WILMER LLP**
1 Arizona Center
400 East Van Buren
Phoenix, AZ 85004-2202
bhalpern@swlaw.com
dmcauliffe@swlaw.com
dgoldfine@swlaw.com
*Attorneys for Mayo Clinic Arizona, Phoenix Children's Hospital, Inc., Scottsdale Healthcare Corporation*

James P. McLoughlin, Jr.
Tonya L. Mitchell
Penny Hirsch Edwards
Charles Price
**MOORE & VAN ALLEN, P.L.L.C.**
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202
jimmcloughlin@mvalaw.com
tonyamitchell@mvalaw.com
pennyedwards@mvalaw.com
Charles.Price@mwmf.com
*Attorneys for Arizona Heart Hospital, LLC and AHH Management, Inc.*

Nicole Maroulakos Goodwin
**QUARLES & BRADY LLP**
1 Renaissance Square
2 North Central Avenue
Phoenix, AZ 85004-2391
ngoodwin@quarles.com
*Attorneys for Select Specialty Hospital – Phoenix, Inc.and Select Specialty Hospital – Arizona, Inc.*

5

Franklin J. Hoover
**MANGUM, WALL, STOOPS &
WARDEN, PLLC**
100 N. Elden St.
P.O. Box 10
Flagstaff, Arizon  86002-0010
fhoover@mwswlaw.com
*Attorneys for Navajo Health
Foundation – Sage Memorial Hospital,
Inc.*

                                        /s/ David F. Sorensen
                                        **David F. Sorensen**

6